1  **CALLAHAN & BLAINE, APLC**
Daniel J. Callahan, SBN 91490
2  Christopher B. Queally, SBN 229154
Damon D. Eisenbrey (Bar No. 215927)
3  3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
4  Telephone: (714) 241-4444
Facsimile: (714) 241-4445
5
Attorneys for Defendants ASI CORPORATION, and ASI
6  COMPUTER TECHNOLOGIES, INC.
7  **WHITE & CASE, LLP**
Bryan A. Merryman, SBN 134357
8  Earle Miller, SBN 116864
Amara Levy-Moore, SBN 285803
9  555 S. Flower Street, Suite 2700
Los Angeles, CA 90071
10  Telephone: (213) 620-7700
Facsimile: (213) 452-2329
11
Attorneys for Plaintiff THE EXPORT-IMPORT BANK
12  OF KOREA

13                  UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                      WESTERN DIVISION

16

17  THE EXPORT-IMPORT BANK OF          **CASE NO.  2:16-cv-02056-MWF-JPR**
    KOREA, an agency or instrumentality
18  of the Republic of Korea,           **JOINT STIPULATION ON
                                        DEFENDANT ASI COMPUTER
19              Plaintiff,              TECHNOLOGIES, INC.'S MOTION
                                        FOR AN ORDER TO COMPEL
20       v.                             PLAINTIFF THE EXPORT-
                                        IMPORT BANK OF KOREA TO: (1)
21  ASI CORPORATION, a Delaware         PROVIDE SUPPLEMENTAL
    corporation; ASI COMPUTER           RESPONSES TO REQUESTS FOR
22  TECHNOLOGIES, INC., a California     PRODUCTION, SET ONE AND
    corporation,                        PRODUCE DOCUMENTS; AND (2)
23                                       TO SUPPLEMENT THE
                Defendant.              CALCULATION OF DAMAGES IN
24                                       THE INITIAL DISCLOSURES;
                                        AND ATTACHMENTS**
25
                                        Judge:   Hon. Jean J. Rosenbluth
26                                       Date:    February 16, 2017
                                        Time:    10:00 a.m.
27                                       Dept.:   Courtroom A

28

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

# TABLE OF CONTENTS

2

**Page**

3    I.    ASI'S (MOVING PARTY) INTRODUCTORY STATEMENT ....................................... 2

4    II.   PLAINTIFF THE EXPORT-IMPORT BANK OF KOREA'S INTRODUCTORY

     STATEMENT ................................................................................................................. 5

5

6    III.  REQUESTS FOR PRODUCTION PERTAINING TO THE KEXIM OFFICERS
     WHO WERE CONVICTED OF ACCEPTING BRIBES FROM MONEUAL ................ 8

7          A.    ASI's Contentions Regarding Request Nos. 37-44, 64-65, 68, 69, 73, 74,
             and 77-79 ......................................................................................................... 15
8

9                1.    The Standard of Relevance And The New Proportionality
                   Requirements Under Rule 26 ............................................................ 19

10               2.    The Documents At Issues Are Relevant To Disprove KEXIM's
                   Claims And to Establish ASI's Defenses .......................................... 20
11

12               3.    ASI's Demands For The Complete Personnel Files Of Each Officer
                   Are Proportional To The Needs Of The Case .................................... 25

13         B.    KEXIM's Contentions Regarding RFP Nos. 37-44, 64-65, 68, 69, 73, 74,
             and 77-79 ........................................................................................................ 27
14

15               1.    Relevancy and Proportionality Standards .......................................... 28

16               2.    ASI's Requests for Documents Unrelated to Moneual or Mr. Park
                   Seek Irrelevant Documents ............................................................... 29

17               3.    ASI's Requests for Documents Unrelated to Moneual or Mr. Park
                   are Disproportionate to this Case ...................................................... 32
18

19   IV.   REQUESTS FOR PRODUCTION RELATING TO COMMUNICATIONS WITH
     OTHER BANKS THAT ISSUED CREDIT TO MONEUAL ......................................... 33

20         A.    ASI's Contentions Regarding Request Nos. 85 And 141-160 ........................... 39

21               1.    The Communications Between KEXIM And Other Banks Which
                   Issued Credit To Moneual Are Relevant ............................................ 39
22

23               2.    The Requests for Communications Between KEXIM And Other
                   Banks Are Proportional To The Needs Of The Case ........................... 42

24         B.    KEXIM's Contentions Regarding Request Nos. 85 And 141-160 ...................... 43

25               1.    Requests for Communications between KEXIM and Other Banks
                   that Issued Credit to Moneual and KEXIM and the Bankruptcy
26                 Trustee for KT Engcore are Irrelevant .............................................. 44

27               2.    ASI's Requests are Disproportionate to the Needs of the Case ............... 45

28   V.    PRODUCTION OF DOCUMENTS TRANSLATED BY KEXIM FROM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**TABLE OF CONTENTS**
**(CONTINUED)**

Page

KOREAN INTO ENGLISH ....................................................... 47

A.   ASI Contentions Regarding Production of Translated Documents ..................... 47

B.   KEXIM's Contentions Regarding Production of Translated Documents............. 52

    1.   Case Law Confirms that ASI Cannot Compel KEXIM to Translate Documents in Response to ASI's Requests for Production ..................... 52

    2.   KEXIM's Translations Completed at the Request of its Counsel and for Purposes of This Litigation are Work Product .................................... 53

    3.   ASI's Other Arguments Do Not Support Requiring KEXIM to Reveal its Work Product Translations....................................................... 55

VI.   KEXIM'S INITIAL DISCLOSURE OF DAMAGES ................................................ 57

A.   ASI's Contentions Regarding KEXIM's Initial Disclosures ............................... 57

B.   KEXIM's Contentions Regarding KEXIM's Initial Disclosures......................... 59

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

This Joint Stipulation is submitted by the parties through their undersigned counsel of record pursuant to Local Rule 37-2 in connection with Defendant ASI Computer Technologies, Inc.'s ("ASI") Motion to Compel Plaintiff The Export-Import Bank of Korea ("KEXIM") to: (1) Provide Supplemental Responses To Requests for Production, Set One and to produce documents; and (2) Supplement the Calculation of Damages In KEXIM's Initial Disclosures.

### JOINT INTRODUCTORY STATEMENT OF THE CASE

On March 25, 2016, KEXIM filed the above referenced complaint against defendants ASI Computer Technologies, Inc. and ASI Corp. (collectively, "ASI"). KEXIM alleges that ASI participated with Korean manufacturing company Moneual, Inc. ("Moneual") in what is believed to be the largest financial fraud in the history of Korea.  The fraud involved an elaborate foreign import-export financial scheme of circular transactions, through which Moneual sold fraudulent receivables based on bogus purchase orders issued by foreign importers, such as ASI.  Moneual then used those bogus purchase orders to defraud financial institutions like KEXIM that factored the fraudulent credit receivables.  KEXIM further alleges that Moneual secured the connivance of its customers, such as ASI, by paying kickbacks to ASI employees that, in turn, caused ASI to issue the bogus purchase orders.  According to KEXIM, it factored/advanced Moneual approximately $52 million against such purchase orders issued by ASI, of which approximately $40 million has not been repaid.

As further alleged, Moneual management personnel involved in the purported financial scheme – including its Chief Executive Officer, Hong-seok Park a/k/a Harold Park ("Mr. Park"), the ringleader of the fraud – have been imprisoned in Korea and fined for their criminal misconduct in the financial scheme.

ASI denies KEXIM's allegations and denies that it is responsible or liable for KEXIM's alleged damages in any sum whatsoever.  ASI contends that it did not receive any kickbacks and that it did not participate in nor have knowledge of any

- 1 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

alleged financial scheme to defraud KEXIM.  ASI further contends that officers of both KEXIM and the Korea Trade Insurance Corporation ("KSURE") were bribed by Moneual to approve the alleged factoring agreements and/or to take other action beneficial to Moneual and Mr. Park.  ASI asserts that two officers of KEXIM and at least four from KSURE have been convicted of felonies in Korea for accepting bribes from Mr. Park.  As such, ASI contends that Mr. Park, Moneual, KEXIM, and KSURE are responsible and liable for KEXIM's alleged losses, not ASI.

## I.   ASI'S (MOVING PARTY) INTRODUCTORY STATEMENT

This discovery dispute pertains to KEXIM's refusal to produce: (1) the personnel files of two KEXIM officers who were convicted of accepting bribes from Moneual in Korea; (2) communications between KEXIM and the other financial institutions in Korea which were victimized by Moneual and Mr. Park; and (3) those documents which have been translated from Korean into English.  This dispute further pertains to KEXIM's refusal to provide any breakdown in the statement of damages from its Initial Disclosures, including any calculation of out of pocket losses versus lost profits, figures which are within the exclusive control and knowledge of KEXIM.

ASI denies participating in Moneual's scheme and ASI denies causing any of KEXIM's losses.  KEXIM did not communicate with ASI when performing its underwriting on the factoring loans.  Indeed, ASI had no contact with KEXIM until *after* KEXIM had entered its Export Factoring Agreement ("EFA") with Moneual and had already factored $40,000,000 worth of purchase orders.

More importantly, KEXIM's action is barred by the doctrines of unclean hands and in *pari delicto*.  Woo Taek Seo, the senior loan officer at KEXIM who signed the EFA on behalf of KEXIM, was convicted of accepting bribes from ringleader Harold Park.  According to the verdict in the criminal trial of Mr. Park, Mr. Park paid approximately $83,000 to Mr. Seo over an 18-month period in exchange for helping Moneual procure loans from KEXIM.  Mr. Seo was the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

General Manager of KEXIM's Small Business Finance Department and its Medium-Sized Entrepreneur Finance Department. Since the EFA between KEXIM and Moneual was the product of an illegal bribe from Moneual to KEXIM's General Manager, KEXIM is barred from recovery under the doctrines of unclean hands and pari delicto.

Accordingly, the first category of requests at issue pertain to the personnel files of Mr. Seo and a second KEXIM officer, Chang Jong Lee, who was also convicted of accepting bribes from Moneual. The files and documents are relevant to rebut the elements in KEXIM's causes of action and to establish ASI's affirmative defenses.

The second category of requests at issue pertain to communications between KEXIM and the other Korean banks defrauded by Moneual. KEXIM is one of approximately 14 financial institutions in Korea which factored Moneual's receivables and lost money on the scheme. These documents are relevant to the issues of reliance and causation. For instance, If KEXIM made requests to other banks for verification of items on Moneual's loan factor applications or otherwise communicated about Moneual as a credit risk the information furnished would potentially disprove the elements of reasonable and actual reliance.

Further, ASI is demanding that KEXIM produce the English translations for all documents wherein the Korean version has been produced by KEXIM in response to a request for production but the English version withheld.

KEXIM has produced approximately 4,600 pages of documents to date. *Almost all of the documents are in Korean.* ASI has been informed that nearly all of the documents which will be produced by KEXIM in this case are in Korean as well.

This case pertains to conduct occurring almost exclusively in Korea. Moneual was headquartered in Korea, the EFA between KEXIM and Moneual was negotiated and executed in Korea, Mr. Park and the KEXIM employees were convicted in Korean, and Moneual's bankruptcy is pending in Korea. Despite these

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

facts KEXIM, a foreign sovereignty, has availed itself of the jurisdiction of a U.S. court where all proceedings are conducted in English. KEXIM is majority-owned by the Government of the Republic of Korea which is responsible for the bank's solvency. KEXIM has virtually unlimited resources to prosecute this matter whereas ASI is a small, private company of limited resources.

KEXIM should be required to produce the English translations of all Korean documents which have been produced in response to ASI's Requests for Production of Documents, Set One. ASI is not requesting that KEXIM be ordered to translate documents. Rather, ASI merely seeks an order requiring KEXIM to produce the English translations of those Korean documents which KEXIM has already produced *if* such translations exist. *See*, *e.g.*, *In Contreras v. Isuzu Motors, Ltd.*, 1999 U.S. Dist. LEXIS 23615, at *8-9 (W.D. Tex. Apr. 2, 1999) (holding that responding party "must provide the English translations, to the extent they have custody or control over such translations, of such responsive documents if English translations have ever been made of such responsive documents.").

ASI has even offered to reimburse KEXIM for a reasonable share of the translation costs (up to 50%) upon KEXIM furnishing written verification of the costs (e.g., translator's invoice). KEXIM has refused. It would be pointless for both parties to spend thousands of dollars translating the same documents since the expense of document translation is not recoverable as a cost by the prevailing party. *See Kouichi Taniguchi v. Kan Pac. Saipan*, Ltd., 132 S. Ct. 1997, 2000 (2012) (holding that the phrase "compensation of interpreters" in 28 U.S.C. § 1920 is "limited to the cost of oral translation and does not include the cost of document translation" which is not recoverable as a cost).

Finally, KEXIM should be ordered to supplement the "approximately $40,000,000" lump sum figure listed by KEXIM in the statement of damages portion of its Initial Disclosures. KEXIM claims its damages are the face amount of the invoices KEXIM agreed to factor. However, KEXIM does not provide a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

calculation for what portion of its actual damages are out of pocket losses versus purported lost profits.  Based on the documents produced by KEXIM it appears that KEXIM withheld from its advances to Moneual a percentage of the invoices as fees and reserves.  Therefore, if KEXIM is seeking the face value of the invoices as damages, some part of this must be lost profits since KEXIM did not advance the full face value of the invoices.  In any case, a lump sum of "approximately $40,000,000" is insufficient under Rule 26 and KEXIM should be ordered to supplement its Initial Disclosure or risk having damages precluded at trial.

## II.    PLAINTIFF THE EXPORT-IMPORT BANK OF KOREA'S INTRODUCTORY STATEMENT

KEXIM has consistently sought to cooperate with ASI in discovery.  For example, although ASI has served on KEXIM a burdensome and disproportionate number of requests for production of documents ("RFPs") – 179, as compared to only 81 served on ASI by KEXIM – KEXIM has agreed to produce documents in response to most of ASI's RFPs, and has only refused to search for and produce documents in response to improper RFPs.  KEXIM, moreover, has located and produced nearly 5,600 pages of responsive documents and continues to expend substantial resources to search for and produce documents on a rolling basis, as each party has agreed to do with respect to the other party's RFPs.

Moreover, to further facilitate the discovery process and limit the need for this Court's intervention, and consistent with the parties' agreement in the Amended Joint Rule 26(f) Scheduling Conference Report, KEXIM has prepared and provided to ASI a draft e-discovery protocol.  ASI, however, has thus far refused to negotiate such protocol and, instead, seeks an order from the Court in three general areas: (i) compelling KEXIM to search for and produce documents in response to two categories of ASI's First Set of RFPs that are irrelevant and/or disproportionate to the needs of this case; (ii) requiring KEXIM to provide English translations of Korean-language documents that KEXIM may have prepared under direction of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -

1  counsel and for purposes of this litigation and to thereby reveal its litigation

2  strategy; and (iii) requiring KEXIM to supplement the computation of damages in

3  its initial disclosures with information that is not required pursuant to Rule

4  26(a)(1)(A)(iii).

5      *First*, ASI seeks an order compelling KEXIM to search for and produce

6  documents related to KEXIM's former employees, Woo Taek Seo ("Mr. Seo") and

7  Chang Jong Lee ("Mr. Lee").  The RFPs in this category concern the personnel files

8  of Mr. Seo and Mr. Lee (RFP Nos. 37-38); documents relating to internal

9  investigations of Messrs. Seo or Lee (RFP Nos. 39-40); documents relating to any

10  disciplinary actions by KEXIM against Mr. Seo or Mr. Lee (RFP Nos. 41-42);

11  documents relating to any termination of Mr. Seo or Mr. Lee (RFP Nos. 43-44);

12  communications between KEXIM and the Korea Customs Service related to Mr.

13  Seo or Mr. Lee (RFP Nos. 64-65); reports prepared by the Korea Customs Service

14  relating to Mr. Seo or Mr. Lee (RFP Nos. 68-69); communications between KEXIM

15  and the Financial Supervisory Service relating to Mr. Seo or Mr. Lee (RFP Nos. 73-

16  74); reports prepared by the Financial Supervisory Service relating to Messrs. Seo or

17  Lee (RFP Nos. 77-78); and reports prepared by the Financial Supervisory Service

18  relating to KEXIM (RFP No. 79).  *KEXIM agreed to produce documents responsive*

19  *to these RFPs insofar as such documents relate to Moneual or Mr. Park.*  KEXIM

20  refused, however, to search for or produce documents that do not relate to Moneual

21  or Mr. Park.  Such documents, if they exist, would be irrelevant and

22  disproportionate to the needs of this case, as they would have no bearing on

23  KEXIM's claims or ASI's defenses.

24      ASI also seeks an order compelling KEXIM to search for and produce

25  communications between KEXIM and ten other banks concerning Moneual or Mr.

26  Park: Standard Chartered Bank, Busan Bank, Citibank, Daegu Bank, Suhyup Bank,

27  NongHyup Bank, KB Kookmin Bank, Industrial Bank of Korea, Korea

28  Development Bank, and Korea Exchange Bank (RFP Nos. 141-160), as well as

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 6 -

communications between KEXIM and the bankruptcy trustee for KT Engcore Corporation ("KT Engcore") – an unrelated company with which ASI is also engaged in litigation, in Alameda County state court – concerning Moneual or Mr. Park (RFP No. 85).  KEXIM refused to search for or produce documents responsive to these RFPs because communications between KEXIM and other banks that ASI alleges lent to Moneual, if such communications even exist, are – contrary to ASI's suggestions – irrelevant as to whether KEXIM relied on ASI's misrepresentations. The requests are also overbroad and disproportionate because they will require KEXIM to search for, review, and produce communications concerning ten separate banks.  Similarly, ASI's request for communications with the bankruptcy trustee for KT Engcore requires KEXIM to search for and produce documents related to a separate company involved in a separate litigation with ASI and which therefore have no bearing on KEXIM's claims or ASI's defenses.

*Second*, ASI requests that KEXIM translate documents for it, or at least produce documents that may have been translated at the direction of KEXIM or its counsel for purposes of this litigation.  But case law confirms that a requesting party cannot compel a responding party to translate documents for it or share the costs of such translations.  That is the requesting party's burden.  If KEXIM's counsel chooses to translate certain documents for internal use, ASI is not entitled to obtain these translations unless KEXIM uses them in the litigation.  Allowing ASI to access these translations (and thereby determine which documents KEXIM's counsel may deem to be of strategic importance) would directly contravene the work product doctrine.  ASI has not shown, and cannot show, a substantial need or undue hardship in order to force KEXIM to turn over documents it has translated for internal use at the direction of its counsel.

*Third*, contrary to ASI's allegation, KEXIM has fully complied with its Rule 26 obligations.  In its initial disclosures, KEXIM provided a computation of the category and amount of the damages it claims, and also stated with specificity in the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 7 -

1  complaint that KEXIM advanced $52 million in funds to Moneual, by virtue of the

2  fraud and conspiracy that Moneual and ASI entered into, of which approximately

3  $40 million was never repaid.  The amount claimed represents the face amount of

4  the purchase orders on which the invoices from ASI that Moneual presented to

5  KEXIM for factoring were based.  Such disclosure satisfies the requirements of

6  Rule 26, and more detailed information is properly a subject for interrogatory

7  discovery – discovery that ASI has so far chosen not to propound.

8  **III.    REQUESTS FOR PRODUCTION PERTAINING TO THE KEXIM**

9  **OFFICERS WHO WERE CONVICTED OF ACCEPTING BRIBES**

10  **FROM MONEUAL**

11  **REQUEST FOR PRODUCTION NO. 37:**

12        The PERSONNEL FILE for Mr. Seo (서 ), former head secretary at KEXIM

13  who was convicted on charges of bribery on June 12, 2015, and such conviction was

14  upheld on January 20, 2016 at the appellate level.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

16        KEXIM will produce all nonprivileged documents from the personnel file of

17  Mr. Seo in its possession, custody, or control relating to Moneual or Mr. Park.

18  KEXIM objects to, and will not search for or produce materials that are responsive

19  to, the remainder of this Request, as any other documents from the personnel file of

20  Mr. Seo are irrelevant to this dispute.

21  **REQUEST FOR PRODUCTION NO. 38:**

22        The PERSONNEL FILE for Mr. Lee (이 ), former manager at KEXIM who

23  was convicted of bribery and such conviction was upheld at the appellate level

24  January 29, 2016 and at the Supreme Court level on April 6, 2016.

25  **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

26        KEXIM will produce all nonprivileged documents from the personnel file of

27  Mr. Lee in its possession, custody, or control relating to Moneual or Mr. Park.

28  KEXIM objects to, and will not search for or produce materials that are responsive

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    to, the remainder of this Request, as any other documents from the personnel file of

2    Mr. Lee are irrelevant to this dispute.

3    **REQUEST FOR PRODUCTION NO. 39:**

4          ALL DOCUMENTS RELATING TO any internal investigation by YOU of

5    Mr. Seo (서 ), former head secretary at KEXIM who was convicted on charges of

6    bribery on June 12, 2015, and such conviction was upheld on January 20, 2016 at

7    the appellate level.

8    **RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

9          KEXIM will produce all nonprivileged documents in its possession, custody,

10    or control relating to any internal investigation by KEXIM of Mr. Seo in relation to

11    Moneual or Mr. Park. KEXIM objects to, and, will not search for or produce

12    materials that are responsive to, the remainder of this Request, as documents relating

13    to any other internal investigation by KEXIM of Mr. Seo are irrelevant to this

14    dispute.

15    **REQUEST FOR PRODUCTION NO. 40:**

16          ALL DOCUMENTS RELATING TO any internal investigation by YOU of

17    Mr. Lee (이 ), former manager at KEXIM who was convicted of bribery and the

18    conviction was upheld at the appellate level January 29, 2016 and at the Supreme

19    Court level on April 6, 2016.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

21          KEXIM will produce all nonprivileged documents in its possession, custody,

22    or control relating to any internal investigation by KEXIM of Mr. Lee in relation to

23    Moneual or Mr. Park. KEXIM objects to, and will not search for or produce

24    materials that are responsive to, the remainder of this Request, as documents relating

25    to any other internal investigation by KEXIM of Mr. Lee are irrelevant to this

26    dispute.

27    **REQUEST FOR PRODUCTION NO. 41:**

28          ALL DOCUMENTS RELATING TO any disciplinary action taken by YOU

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1  against Mr. Seo (서 ), former head secretary at KEXIM who was convicted on

2  charges of bribery on June 12, 2015, and such conviction was upheld on January 20,

3  2016 at the appellate level.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

5       KEXIM will produce all nonprivileged documents in its possession, custody,

6  or control relating to any disciplinary action taken by KEXIM against Mr. Seo in

7  relation to Moneual or Mr. Park. KEXIM objects to, and will not search for or

8  produce materials that are responsive to, the remainder of this Request, as

9  documents relating to any other disciplinary action by KEXIM against Mr. Seo are

10  irrelevant to this dispute.

11  **REQUEST FOR PRODUCTION NO. 42:**

12       ALL DOCUMENTS RELATING TO any disciplinary action taken by YOU

13  against Mr. Lee (이 ), former manager at KEXIM who was convicted of bribery and

14  the conviction was upheld at the appellate level January 29, 2016 and at the

15  Supreme Court level on April 6, 2016.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

17       KEXIM will produce all nonprivileged documents in its possession, custody,

18  or control relating to any disciplinary action taken by KEXIM against Mr. Lee in

19  relation to Moneual or Mr. Park. KEXIM objects to, and will not search for or

20  produce materials that are responsive to, the remainder of this Request, as

21  documents relating to any other disciplinary action by KEXIM against Mr. Lee are

22  irrelevant to this dispute.

23  **REQUEST FOR PRODUCTION NO. 43:**

24       ALL DOCUMENTS RELATING TO the termination by YOU of Mr. Seo

25  (서 ), former head secretary at KEXIM who was convicted on charges of bribery on

26  June 12, 2015, and such conviction was upheld on January 20, 2016 at the appellate

27  level.

28  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  KEXIM will produce all nonprivileged documents in its possession, custody,
2  or control relating to any termination by KEXIM of Mr. Seo in relation to Moneual
3  or Mr. Park. KEXIM objects to the production of, and will not search for, materials
4  that are responsive to any termination by KEXIM of Mr. Seo but that do not refer to
5  Moneual or Mr. Park, as such documents are irrelevant to this dispute.

6  **REQUEST FOR PRODUCTION NO. 44:**

7  ALL DOCUMENTS RELATING TO the termination by YOU of Mr. Lee
8  (이 ), former manager at KEXIM who was convicted of bribery and the conviction
9  was upheld at the appellate level January 29, 2016 and at the Supreme Court level
10  on April 6, 2016.

11  **RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

12  KEXIM will produce all nonprivileged documents in its possession, custody,
13  or control relating to any termination by KEXIM of Mr. Lee in relation to Moneual
14  or Mr. Park. KEXIM objects to the production of, and will not search for, materials
15  that are responsive to any termination by KEXIM of Mr. Lee but that do not refer to
16  Moneual or Mr. Park, as such documents are irrelevant to this dispute.

17  **REQUEST FOR PRODUCTION NO. 64:**

18  ALL COMMUNICATIONS between YOU and the Korea Customs Service
19  RELATING TO Mr. Lee (이 ), former manager at KEXIM who was convicted of
20  bribery and the conviction was upheld at the appellate level January 29, 2016 and at
21  the Supreme Court level on April 6, 2016, including any documents or records
22  furnished by YOU to the Korea Customs Service.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

24  KEXIM will produce all nonprivileged communications in its possession,
25  custody, or control between KEXIM and the Korea Customs Service relating to Mr.
26  Lee and Moneual or Mr. Park. KEXIM objects to, and will not search for or produce
27  materials that are responsive to, the remainder of this Request, as any other
28  communications between KEXIM and the Korea Customs Service relating to Mr.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 11 -

1  Lee are irrelevant to this dispute.

2  **REQUEST FOR PRODUCTION NO. 65:**

3       ALL COMMUNICATIONS between YOU and the Korea Customs Service

4  RELATING TO Mr. Seo (서 ), former head secretary at KEXIM who was convicted

5  on charges of bribery on June 12, 2015, and such conviction was upheld on January

6  20, 2016 at the appellate level, including any documents or records furnished by

7  YOU to the Korea Customs Service.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

9       KEXIM will produce all nonprivileged communications in its possession,

10  custody, or control between KEXIM and the Korea Customs Service relating to Mr.

11  Seo and Moneual or Mr. Park. KEXIM objects to, and will not search for or produce

12  materials that are responsive to, the remainder of this Request, as any other

13  communications between KEXIM and the Korea Customs Service relating to Mr.

14  Seo are irrelevant to this dispute.

15  **REQUEST FOR PRODUCTION NO. 68:**

16       ALL reports, including investigative reports or any other type of report,

17  prepared by the Korea Customs Service RELATING TO Mr. Lee (이 ), former

18  manager at KEXIM who was convicted of bribery and the conviction was upheld at

19  the appellate level January 29, 2016 and at the Supreme Court level on April 6,

20  2016.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

22       KEXIM will produce all nonprivileged reports in its possession, custody, or

23  control prepared by the Korea Customs Service relating to Mr. Lee and Moneual or

24  Mr. Park.  KEXIM objects to, and will not search for or produce materials that are

25  responsive to, the remainder of this Request, as any other reporters prepared by the

26  Korea Customs Service relating to Mr. Lee are irrelevant to this dispute.

27

28  **REQUEST FOR PRODUCTION NO. 69:**

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 12 -

1   ALL reports, including investigative reports or any other type of report,

2   prepared by the Korea Customs Service RELATING TO Mr. Seo (서 ), former head

3   secretary at KEXIM who was convicted on charges of bribery on June 12, 2015, and

4   such conviction was upheld on January 20, 2016 at the appellate level.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

6   KEXIM will produce all nonprivileged reports in its possession, custody, or

7   control prepared by the Korea Customs Service relating to Mr. Seo and Moneual or

8   Mr. Park.  KEXIM objects to, and will not search for or produce materials that are

9   responsive to, the remainder of this Request, as any other reports prepared by the

10   Korea Customs Service relating to Mr. Seo are irrelevant to this dispute.

11   **REQUEST FOR PRODUCTION NO. 73:**

12   ALL COMMUNICATIONS between YOU and the Financial Supervisory

13   Service RELATING TO Mr. Lee (이 ), former manager at KEXIM who was

14   convicted of bribery and the conviction was upheld at the appellate level January 29,

15   2016 and at the Supreme Court level on April 6, 2016, including any documents or

16   records furnished by YOU to the Financial Supervisory Service.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

18   KEXIM will produce all nonprivileged communications in its possession,

19   custody, or control between KEXIM and the Financial Supervisory Service relating

20   to Mr. Lee and Moneual or Mr. Park.  KEXIM objects to, and will not search for or

21   produce materials that are responsive to, the remainder of this Request, as any other

22   communications between KEXIM and the Financial Supervisory Service relating to

23   Mr. Lee are irrelevant to this dispute.

24   **REQUEST FOR PRODUCTION NO. 74:**

25   ALL COMMUNICATIONS between YOU and the Financial Supervisory

26   Service RELATING TO Mr. Seo (서 ), former head secretary at KEXIM who was

27   convicted on charges of bribery on June 12, 2015, and such conviction was upheld

28   on January 20, 2016 at the appellate level, including any documents or records

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1  furnished by YOU to the Financial Supervisory Service.

2  **RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

3       KEXIM will produce all nonprivileged communications in its possession,

4  custody, or control between KEXIM and the Financial Supervisory Service relating

5  to Mr. Seo and Moneual or Mr. Park.  KEXIM objects to, and will not search for or

6  produce materials that are responsive to, the remainder of this Request, as any other

7  communications between KEXIM and the Financial Supervisory Service relating to

8  Mr. Seo are irrelevant to this dispute.

9  **REQUEST FOR PRODUCTION NO. 77:**

10      ALL reports, including investigative reports or any other type of report,

11  prepared by the Financial Supervisory Service RELATING TO Mr. Lee (이 ),

12  former manager at KEXIM who was convicted of bribery and the conviction was

13  upheld at the appellate level January 29, 2016 and at the Supreme Court level on

14  April 6, 2016.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

16      KEXIM will produce all nonprivileged reports by the Financial Supervisory

17  Service in its possession, custody, or control relating to Mr. Lee and Moneual or Mr.

18  Park.  KEXIM objects to, and will not search for or produce materials that are

19  responsive to, the remainder of this Request, as any other reports by the Financial

20  Supervisory Service relating to Mr. Lee are irrelevant to this dispute.

21  **REQUEST FOR PRODUCTION NO. 78:**

22      ALL reports, including investigative reports or any other type of report,

23  prepared by the Financial Supervisory Service RELATING TO Mr. Seo (서 ),

24  former head secretary at KEXIM who was convicted on charges of bribery on June

25  12, 2015, and such conviction was upheld on January 20, 2016 at the appellate level.

26  **RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

27      KEXIM will produce all nonprivileged reports by the Financial Supervisory

28  Service in its possession, custody, or control relating to Mr. Seo and Moneual or Mr.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 14 -

1  Park.  KEXIM objects to, and will not search for or produce materials that are

2  responsive to, the remainder of this Request, as any other reports by the Financial

3  Supervisory Service relating to Mr. Seo are irrelevant to this dispute.

4  **REQUEST FOR PRODUCTION NO. 79:**

5    ALL reports, including investigative reports or any other type of report,

6  prepared by the Financial Supervisory Service RELATING TO YOU.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

8    KEXIM will produce all nonprivileged reports by the Financial Supervisory

9  Service in its possession, custody, or control relating to KEXIM and Moneual or Mr.

10  Park.  KEXIM objects to, and will not search for or produce materials that are

11  responsive to, the remainder of this Request, as any other reports by the Financial

12  Supervisory Service relating to KEXIM are irrelevant to this dispute.

13    A.    **ASI's Contentions Regarding Request Nos. 37-44, 64-65, 68, 69, 73,**

14    **74, and 77-79**

15    Document requests pertaining to the two KEXIM officers who were

16  convicted of accepting bribes from Moneual should not be strictly limited to

17  information "relating to Moneual."  The employment history of each officer is

18  relevant to determining whether KEXIM was aware that the officers were

19  susceptible to undue influence or bribery.  If either officer had been disciplined in

20  the past for accepting gifts from credit applicants then KEXIM was on notice that

21  such officers could not reasonably be trusted to process applications.  Moreover, if

22  there were previous incidents of corruption and KEXIM took no action to discipline

23  the individuals it would be evidence of ratification of such conduct by KEXIM.

24    The two officers in question are Woo Taek Seo and Chang Jong Lee.  Mr. Seo

25  was the General Manager of both KEXIM's Small Business Finance ("SBF")

26  Department, and Small and Medium-Sized Entrepreneur Finance ("SME")

27  Department.  *See* below.  Mr. Lee was a "team manager" in the SBF Department.

28  Both men were convicted of accepting bribes from Mr. Park in exchange for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 15 -

1   providing assistance to Moneual in securing loans from KEXIM.

2        KEXIM's factoring of Moneual's receivables was pursuant to an "Export

3   Factoring Transaction Letter of Commitment (For Revolving Credit Line)" between

4   KEXIM and Moneual dated December 2013.[1]  Queally Dec. ¶ 7, Ex. C [K00017].

5   The EFA was signed by four officers of KEXIM, including General Manager Woo

6   Taek Seo.  *Id.* at ¶ 7; *see also* ¶ 21 Ex. Q [KEXIM's Responses to ASI's RFA, Set

7   Two, No. 43 (admitting the EFA was signed by Woo Taek Seo)].

8        KEXIM has produced a certified copy of the Pronouncement of Judgment

9   from the first criminal trial of Mr. Park and three of his accomplices issued by the

10  Seoul Central District Court, dated October 16, 2015.  *See* Queally Dec. ¶ 9, Ex. E

11  [K000494-000554].  The Judgment discusses the bribes Mr. Park paid to Woo Taek

12  Seo for his cooperation in securing loans for Moneual:

13               B.      Bribes Given to Export-Import Bank of Korea Employees

14               1) Woo Taek Seo

15               As the general manager of Korea Export-Import

16       Bank's Small Business Financing Department, and Small,

17       Medium, and Upper-Middle Sized Business Financing

18       Department from about June 29, 2012 to about June 25,

19       2014, Woo Taek Seo was responsible for the approval,

20       execution, and post-execution management tasks related to

21       Moneual's loan.

22               A) On October 16, 2012, at 'Sandang,' a Korean

23       restaurant in Cheongdam-dong in Gangnam-gu, Seoul, the

24       defendant gave Woo Taek Seo 50 million KRW in cash

25

26  [1] The document is referred to in KEXIM's Complaint as the Export Factoring
27  Agreement.  *See* Attachment A [Declaration of Christopher B. Queally ("Queally
    Dec.") ¶ 4, Exhibit ("Ex.") A, Complaint ("Compl.") ¶ 34.  It will be referred to
28  hereinafter as simply "the EFA."

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    with a request to increase Moneual's loan limit since

2    Moneual was in need of a lot of funds.

3         B) On October 1, 2013, at the Marriott hotel buffet

4    restaurant in Banpo-dong, Seoul, the defendant gave Woo

5    Taek Seo 13 gift cards with a value of 500,000 KRW each,

6    worth 6.5 million KRW in total, for the sake of thanks for

7    helping Moneual to continue receiving loans from Korea

8    Export-Import Bank, and as solicitation for assistance in

9    helping Moneual to continue receiving loans.

10        C) On December 4, 2013, at the above Marriott

11   hotel buffet restaurant, the defendant gave Woo Taek Seo

12   one gift card worth 500,000 KRW by the same token as

13   above in B).

14        D) On March 26, 2014, at the above Marriott hotel

15   buffet restaurant, the defendant gave Woo Taek Seo 40

16   million KRW in cash with solicitation for aid in helping

17   Moneual receive an additional loan from Export-Import

18   Bank of Korea.

19        Thus, the defendant gave a bribe worth 97 million

20   KRW[2] to Export-Import Bank of Korea employee Woo

21   Taek Seo, who is deemed a government employee, in

22   connection with the job duty of the latter person.

23   Queally Dec. ¶ , Ex. E [October 16, 2015 Pronouncement Of Judgement (K000522-

24   K000523)].

25       Notably, the bribe described in section C above was paid to Mr. Seo in the

26   same month KEXIM entered into the EFA with Moneual, December 2013. Compl.

27   _____

28   [2]Approximately $83,000.

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

¶ 34.  The bribe described in section D above was paid three months before KEXIM agreed to factor the third set of purchase orders on June 26, 2014.  Compl. ¶ 48. KEXIM has alleged in its Complaint:

> On or about June 26, 2014 (a week after purchasing the
> purported account receivable from ASI Computer for the
> invoices pertaining to the Second Set of Purchase Orders,
> *and after acceding to Moneual's request to increase*
> *Moneual's credit limit to accommodate this new*
> *purchase*), pursuant to the EFA, KEXIM purchased
> Moneual's purported account receivable from ASI
> Computer for the invoices pertaining to the Third Set of
> Purchase Orders.

*Id. (Emphasis added).*

The Judgment thereafter discusses the bribes paid by Mr. Park to Chang Jong Lee under nearly identical circumstances.  Queally Dec. ¶ 9, Ex. E  [K000523].  The Judgment notes that Mr. Lee was also in charge of approval, execution, and post management tasks related to Moneual loans.  *Id.*  Mr. Park paid a total of 105 million KRW (approximately $89,885) in December 2012 and January 2013 to Mr. Lee.  *Id.*

KEXIM has agreed to produce, for both individuals, their personnel files, internal investigations, disciplinary action, termination, and reports to certain government agencies but *only* as they "relate to Moneual and Hong-seok Park." KEXIM's qualification is improper since the requests are not limited to those documents which relate only to Moneual or Mr. Park.  The complete personnel file of each individual is necessary to assess whether KEXIM was on notice of the untrustworthy character of either individual.  If the officers had a history of soliciting or accepting bribes it would support ASI's comparative negligence, waiver, and in pari delicto defenses.  If the officers engaged in similar conduct in the

- 18 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

past without any reprimand it would support ASI's defense that KEXIM ratified and accepted such conduct. The documents could also contain information about other KEXIM officers who were implicated in the bribery scandal by Mr. Seo and Mr. Lee but who were not investigated or disciplined by KEXIM for some reason.

### 1.   The Standard of Relevance And The New Proportionality Requirements Under Rule 26

Rule 26(b) of the Federal Rules of Civil Procedure permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. ..." Federal Rules of Civil Procedure ("FRCP") 26(b)(1). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. (Citation)". *A. Farber & Ptnrs., Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. (Citations)." *Id.*

A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("*Oppenheimer Fund*"). "[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, 296 F.R.D. 632, 634 (C.D. Cal. 2013) (*citations omitted*). Furthermore, "[d]iscovery is not limited to the merits of a case, 'for a variety of fact-oriented issues may arise during litigation that are not related to the merits.'" *Best Buy Stores, L.P. v. Manteca Lifestyle Ctr., LLC*, 2011 U.S. Dist. LEXIS 62817 / 2011 WL 2433655, at *11 (E.D. Cal. June 13, 2011), *quoting Oppenheimer Fund*, 437 U.S. at 351.

Rule 26(b) was recently amended and now provides that parties may obtain discovery regarding:

any nonprivileged matter that is relevant to any party's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 19 -

1    claim or defense *and* proportional to the needs of the case,

2    considering the importance of the issues at stake in the

3    action, the amount in controversy, the parties' relative

4    access to relevant information, the parties' resources, the

5    importance of the discovery in resolving the issues, and

6    whether the burden or expense of the proposed discovery

7    outweighs its likely benefit.

8    FRCP 26(b) (*emphasis added*).

9       "The amendments to the Federal Rules of Civil Procedure effective December

10   1, 2015 emphasize that '[t]he parties and the court have a collective responsibility to

11   consider the proportionality of all discovery and consider it in resolving discovery

12   disputes.'" *Burnett v. United States,* 2016 U.S. Dist. LEXIS 77503 / 2016 WL

13   3392263, at *4 (C.D. Cal. June 14, 2016).  "Thus, there is a shared responsibility on

14   all the parties to consider the factors bearing on proportionality before propounding

15   discovery requests, issuing responses and objections, or raising discovery disputes

16   before the courts." *Id.* at *4-5 (*citations omitted*).

17              **2.    The Documents At Issues Are Relevant To Disprove**
18                     **KEXIM's Claims And to Establish ASI's Defenses**

19       One of ASI's affirmative defenses to KEXIM's third cause of action for

20   negligence is comparative negligence.  KEXIM is responsible for the conduct of its

21   agents, including the General Manager of its SME Department who signed the EFA

22   with Moneual.  Civil Code § 2338.  If KEXIM was on notice of similar conduct on

23   the part of either officer in the past it would support ASI's defense of comparative

24   negligence on the part of KEXIM.

25       For example, if Mr. Seo's personnel file reflects that Mr. Seo has a history of

26   accepting bribes or giving special treatment to credit applicants in violation of

27   internal guidelines then KEXIM could not argue that Mr. Seo's conduct was

28   unforeseeable.  The same is true for internal investigations.  *See* RFP No. 39.  If

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1    KEXIM had conducted internal investigations previously on Mr. Seo for improper

2    conduct it would be relevant to the issue of foreseeability.

3         Equally relevant are communications between KEXIM and the various

4    regulatory agencies which oversee KEXIM's operations regarding Mr. Seo and Mr.

5    Lee.  According to a recent filing by KEXIM with the Securities and Exchange

6    Commission, KEXIM has a "Risk Management Department" which "reports our

7    loan portfolio to the Financial Supervisory Service on a quarterly basis. The Risk

8    Management Department also monitors our operating groups' compliance with

9    internal guidelines and procedures."  Queally Dec. ¶ 6, Ex. F [March 22, 2013 Post-

10   Effective Amendment No. 2 To Registration Statement Under Schedule B of the

11   Securities Act of 1933, p. 26].

12        If KEXIM's Risk Management Department (or any other department) had

13   communicated with the Financial Supervisory Service ("FSS")[3] in the past regarding

14   Mr. Seo or Mr. Lee's deviation from internal guidelines, KEXIM would be on

15   notice of the risks inherent in allowing Mr. Seo to evaluate credit applicants.  *See*

16   RFP No. 74, *supra*, (seeking communications between KEXIM and the FSS

17   regarding Mr. Seo).

18        The personnel files may also contain resumes, job applications, background

19   checks, performance evaluations, and other information which would bear on the

20   foreseeability of Mr. Seo and Mr. Lee's conduct but which does not explicitly

21   mention Mr. Park or Moneual.  According to the Judgment in Mr. Park's criminal

22   trial, the personnel file of Mr. Lee was offered evidence at Mr. Park's trial.  *See*

23   Queally Dec. ¶ 9 Ex. E [K000537 "Facts of B. 2) of the 5th Judgment 11) … 1 set

24   _____

25   [3] *See Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*, 476 F.3d 140, 142 (2d
     Cir. 2007) (noting that the FSS is the executive arm of the Korean Financial
26   Supervisory Commission and "acts as their financial oversight agency-supervising,
     investigating, examining, and enforcing sanctions against financial institutions. FSS
27   oversees, inter alia, banks, …(etc.)")

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

of Chang Jong Lee's personnel file…"].  In addition, KEXIM's 2008 Annual Report which is publicly available discusses the measures taken by KEXIM to implement "ethical management."  The Annual Report notes, in relevant part:

> CYBER SELF-TESTING SYSTEM OF ETHICS AWARENESS
>
> The Cyber Self-testing System of Ethics Awareness is a computerized program made available through the Bank's intranet system to help employees better determine their level of compliance with Bank policies. *Every quarter employees answer a brief set of questions about the Bank's ethics management* policies as an on-going measure to strengthen the ethical values of the entire staff.
>
> \*          \*          \*
>
> ETHICS MANAGEMENT REFLECTED ON THE PERFORMANCE EVALUATION SYSTEM
>
> The *performance evaluation system includes an index on ethics management* as an added measure to induce employee participation in ethics management and highlight Bank values. The index influences the overall results of the performance evaluations of each employee thus encouraging active participation in ethics management.

Queally Dec. ¶ 14, Ex. **J** [KEXIM 2008 Annual Report, p. 40 (*emphasis added*)].

It is unlikely that the quarterly self-testing of Mr. Seo and Mr. Lee mention Moneual, yet such testing would be relevant to foreseeability and notice.  The same is true for the annual performance evaluation of both individuals which includes questions on ethics management.  The ethical self-testing and performance evaluations are mentioned again in KEXIM's 2010 Annual Report except that in

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  2010 the former is characterized as "self-diagnosis for ethical practices." Queally

2  Dec. ¶ 15, Ex. K [KEXIM 2010 Annual Report, p. 54].

3    The analysis applies equally to the concept of ratification. "[A]n employer's

4  failure to discharge an employee after learning of the employee's misconduct may

5  be evidence of ratification (Citations)." *Allied Mut. Ins. Co. v. Webb*, 91 Cal. App.

6  4th 1190, 1194 (2001); *Murillo v. Rite Stuff Foods, Inc.*, 65 Cal. App. 4th 833, 852

7  (1998). KEXIM will likely argue that Mr. Seo's wrongful conduct cannot be

8  imputed to KEXIM because it was unaware of such conduct until Korean authorities

9  investigated Moneual. However, if Mr. Seo and Mr. Lee committed similar acts in

10 the past but were not disciplined it would support ASI's argument that KEXIM

11 ratified such conduct and promoted an environment where this type of behavior was

12 condoned. If KEXIM is deemed equally at fault for the fraudulent scheme under the

13 doctrine of in pari delicto it would provide ASI with a complete defense. *Casey v.*

14 *U.S. Bank Nat. Assn.* 127 Cal. App. 4th 1138, 1143 (2005) ("The doctrine of in pari

15 delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct

16 seeks to recover from another participant in that conduct, the parties are deemed in

17 pari delicto, and the law will aid neither, but rather, will leave them where it finds

18 them.")

19   KEXIM has argued during the meet and confer process that *in pari delicto*

20 and unclean hands are not defenses to fraud. However, this is untrue and in many

21 cases these defenses are asserted directly in response to a fraud cause of action:

22    The general principle behind the clean hands doctrine is

23    that a court will neither aid in the commission of a fraud

24    by enforcing a contract, *nor relieve one of two parties to a*

25    *fraud* from its consequences, where both are in pari

26    delicto. Any unconscientious conduct in the transaction

27    may give rise to the defense.

28 *Burton v. Sosinsky*, 203 Cal. App. 3d 562, 573 (1988) (*emphasis added*).

- 23 -

KEXIM has alleged that three employees of ASI accepted bribes from Moneual as part of the fraudulent scheme and that ASI is responsible for their conduct.  *See* Compl.  ¶¶ 70 & 79.e.  KEXIM avers that ASI "rendered substantial assistance to HS Park and Moneual to enable them to carry out the scheme … by … suffering or permitting their executives, officers, and employees to receive … bribes in the form of kickbacks from Moneual; …"  *Id.* at ¶ 79.e.  KEXIM demanded in its First Set of Requests for Production of Documents to ASI the personnel files of the employees whom KEXIM alleges were bribed, including:

> 36. ASI's Personnel File for Christine Liang.
>
> 37. ASI's Personnel File for Marcel Liang.
>
> 38. ASI's Personnel File for Bill Chen.
>
> 39. ASI's Personnel File for Henry Chen.
>
> 40. ASI's Personnel File for Frances Chou.

Queally Dec. ¶ 19, Ex. **O** [KEXIM's Requests for Production, Set One to ASI, Nos. 36-40].

KEXIM did not exempt from its requests information in a personnel file which was unrelated to Moneual or Mr. Park.  In fact, during the meet and confer process KEXIM argued that the entire personnel files were relevant simply because the individuals were employees of ASI and ASI was responsible for their conduct. *See* Queally Dec. ¶ 22, Ex. **R** [KEXIM's Sept. 14, 2016 Letter, pp. 3-4].  ASI initially objected to the requests but eventually produced the personnel files with minor redactions for social security numbers, bank account numbers, and family information pursuant to an agreement with KEXIM.

Therefore, KEXIM's argument that the personnel files of the KEXIM officers who were bribed are "irrelevant" is disingenuous.  The personnel files of the KEXIM officers are even more relevant since it has been established as a matter of law that the officers accepted bribes from Mr. Park and were convicted of as much. *See* Queally Dec. ¶ 21, Ex. **Q** [KEXIM's Responses To ASI's Requests For

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

Admission, Set Two, Nos. 45, 47 & 48]. ASI believes the relationship between KEXIM and Moneual was more than simply lender-borrower, that the two were partners in Moneual's scheme and that the bank knowingly sought to profit from the scheme. According to the Judgement against Mr. Park, out of all the banks which loaned money to Moneual, KEXIM is the *only* bank wherein the management accepted bribes from Mr. Park. *See, e.g.,* Queally Dec. ¶ 9, Ex. E [Judgment K00504-K00513 (listing banks which suffered losses); *and* K00518-K00524 (listing government officials who accepted bribes)].

Since the entire personnel files, internal investigations, disciplinary action, termination, and communications with regulators relating to the KEXIM officers who are now convicted felons are relevant to ASI's defenses, the files and documents should be produced.

### 3. ASI's Demands For The Complete Personnel Files Of Each Officer Are Proportional To The Needs Of The Case

One of the most significant issues in this case will be the legal effect of Mr. Seo and Mr. Lee accepting bribes. KEXIM will attempt to distance itself from the actions of Mr. Seo and Mr. Lee by arguing such conduct should not be imputable to KEXIM. However, if KEXIM was aware that either or both officers were susceptible to bribery or were otherwise untrustworthy then KEXIM is responsible for their conduct. If KEXIM has a history of failing to discipline executives and sweeping such conduct under the rug it would demonstrate KEXIM's ratification, acceptance, and support for such behavior.

KEXIM is suing ASI for approximately $40,000,000 plus punitive damages and attorney's fees. KEXIM has made allegations of fraud and bribery against ASI and its employees whom KEXIM contends were participants in a criminal conspiracy. ASI should be given wide latitude to procure the documents necessary to defend itself and its employees from the malicious allegations.

ASI has no access to the personnel files other than through KEXIM. The

- 25 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   government agencies which KEXIM communicated with about the officers

2   including, e.g. the Korean Financial Supervisory Service, enjoy sovereign immunity

3   and as such are beyond the subpoena power of the Court.  *See, e.g.*, *Peninsula Asset*

4   *Mgmt. v. Hankook Tire Co.*, 476 F.3d 140 (2d Cir. 2007) (holding that entities which

5   are considered "organs" of the government of South Korea enjoy sovereign

6   immunity under 28 U.S.C. § 1604 and are beyond the jurisdiction and subpoena

7   power of district courts).  There is absolutely no other way to obtain the information.

8        KEXIM has far greater resources that ASI.  ASI is a small, privately held

9   company based in Fremont, California.  Conversely, KEXIM is a multi-billion

10  dollar international bank that is majority-owned by the Government of the Republic

11  of Korea which provides periodic capital injections to the bank.  Queally Dec. ¶ 20,

12  Ex. **P** [KEXIM's Responses to ASI's Requests for Admission, Set One, No. 18].

13  According to KEXIM's 2014-2015 audited financial statements, KEXIM had

14  available total assets of KRW 82,507,731,000,000 (approximately $70,956,000,000)

15  in 2015.  Queally Dec. ¶ 16, Ex. **L** [Relevant portions of KEXIM's Consolidated

16  Financial Statements For The Years Ended December 31, 2015 and 2014].

17       The cost to KEXIM of procuring the information would be infinitesimal and

18  the information is undeniably within KEXIM's control.  The personnel file of Chang

19  Jong Lee has already been gathered and turned over to the Seoul Central District

20  Prosecutor based on the fact it is identified as evidence in support of the conviction

21  of Mr. Park.  *See* Queally Dec. ¶ 9 Ex. **E** [K000537 "Facts of B. 2) of the 5th

22  Judgment 11) … 1 set of Chang Jong Lee's personnel file…"].  All of the other

23  information has likely been gathered as well.  The Moneual financial scandal made

24  headlines across Korea.  The President of KEXIM was even called before the

25  Korean National Assembly to testify about the Moneual scandal and its impact on

26  the bank.  Queally Dec. ¶ 23 Ex. **S** [11/4/16 Letter from A. Levy-Moore, p. 4

27  ("transcripts of testimony by KEXIM's president to the Korean National Assembly

28  relating to Moneual or Mr. Park are available online at the National Assembly's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 26 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1 official government website, http://w3.assembly.go.kr/index.do"). It is more than

2 likely that, in response to the multiple government investigations which were

3 opened by, among others, the Korea Customs Service and the Seoul Central District

4 Prosecutor, KEXIM has already compiled all of information on the two officers who

5 were convicted and turned over copies to the authorities.

6       Finally, KEXIM should be estopped from arguing that the information is not

7 proportional to the needs of the case since KEXIM has demanded the exact same

8 information from ASI (personnel files of those alleged to have accepted bribes from

9 Moneual) and argued during meet and confer the personnel files are relevant.

10       Therefore, KEXIM should be ordered to produce the documents at issue.

11     **B.**     <u>**KEXIM's Contentions Regarding RFP Nos. 37-44, 64-65, 68, 69,**</u>

12       <u>**73, 74, and 77-79**</u>

13       Request Nos. 37-44 seek documents relating to Mr. Seo or Mr. Lee: their

14 personnel files; internal investigations of them; and documents related to any

15 termination of them. Request Nos. 64-65, 68, 69, 73, 74, and 77-79 seek all

16 communications relating to Mr. Seo or Mr. Lee between KEXIM and the Korea

17 Customs Service ("KCS") or the Financial Supervisory Service ("FSS"), all reports

18 prepared by the FSS relating to Mr. Seo or Mr. Lee, and all reports prepared by the

19 FSS relating to KEXIM. In response to these requests, KEXIM agreed to produce

20 responsive documents that relate to Moneual or Mr. Park.

21       ASI's requests for documents that do not relate to Moneual or Mr. Park are

22 disproportionate to the needs of the case. Further, comparative fault and unclean

23 hands are not defenses to intentional torts; the defense of *in pari delicto* does not

24 apply on the facts asserted by ASI; and ASI does not allege a "ratification"

25 affirmative defense in its answer. Therefore, these requests seek documents that are

26 not relevant to ASI's defenses or KEXIM's claims.

27

28

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

## 1.    Relevancy and Proportionality Standards

A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  "The party moving to compel [discovery] bears the burden of demonstrating why the information sought is relevant and why the responding party's objections lack merit." *Sinohui v. CEC Entm't, Inc.*, No. 14-2516, 2016 U.S. Dist. LEXIS 62481 / 2016 WL 2743458, at *3 (C.D. Cal. May 11, 2016) (citations omitted).  Rule 26(b)(1) was amended in 2015 to limit the scope of permissible discovery.   Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.  Rule 26(b)(1) now requires that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Therefore, "[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence." *Gilead Scis., Inc. v. Merck & Co.*, No. 5:13-cv-04057, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016).  "Instead, a party seeking discovery of relevant, non-privileged information must still show, before anything else, that the discovery sought is proportional to the needs of the case." *Id.*  As explained by a district court for the Northern District of California:

> Merck presses on, protesting that it should not have to take
> Gilead's word as to what exactly is in those tubes.
> Merck's demands are the type of disproportionate
> demands that Rule 26(b)(1) proscribes.  Sure, it's possible
> that Gilead's evidence confirming the compounds are not
> PSI-6130 is false and even concocted.  But Merck offers

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1    no real evidence that this is the case, and as the court

2    recently explained in denying a motion to compel by

3    Gilead, '[w]ithout more specific information triggering

4    some reason for doubt, the Court must take the producing

5    party . . . at its word.'

6    *Id.* at \*2; *see also Dobro v. Allstate Ins. Co.*, No. 16-cv-1197, 2016 U.S. Dist.

7    LEXIS 119198 / 2016 WL 4595149, at \*\*5-7 (S.D. Cal. Sept. 2, 2016) (denying a

8    motion to compel further response to a special interrogatory, finding that the moving

9    party's assertion that "some of the 10,082 files *may* contain relevant claims" was

10    "insufficient to justify the extremely time- and labor-intensive search of [the

11    responding party's] files").

12          Even where it would not be burdensome to produce a document, parties and

13    courts must consider whether a request is overbroad or disproportionate. *See Jones*

14    *v. Nutiva Inc.*, No. 16-cv-00711, 2016 U.S. Dist. LEXIS 140001 / 2016 WL

15    5858467, at \*3 (N.D. Cal. Oct. 7, 2016) (denying a motion to compel production of

16    an easily produced audit trail).  Under the newly amended Rule 26(b)(1), not only

17    does a requesting party have the burden to show why the information it requests is

18    relevant, it is also now insufficient to merely state that the requested documents *may*

19    be relevant to claims or defenses. *See Gilead*, 2016 U.S. Dist. LEXIS 5616 / 2016

20    WL 146574, at \*\*1-2.

21          **2.    ASI's Requests for Documents Unrelated to Moneual or Mr.**
22                 **Park Seek Irrelevant Documents**

23          Even assuming that Mr. Seo and Mr. Lee accepted bribes from Mr. Park,

24    ASI's requests would only be relevant to the extent that the requested documents

25    and communications relate to Moneual or Mr. Park.  ASI speculates that the

26    personnel files may be relevant to show that KEXIM "was on notice of the

27    untrustworthy character" of Mr. Seo or Mr. Lee, that KEXIM might have "ratified"

28    their poor conduct, or that the requested documents "could contain" information

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 29 -

1   about other KEXIM officers that may have received bribes.  However, ASI's

2   speculations – which, in any event, do not appear to be grounded in any evidence –

3   are entirely irrelevant, as this dispute concerns whether KEXIM relied on

4   misrepresentations by ASI, or with which ASI is chargeable, not on whether

5   KEXIM relied, or should have relied, on any other factors.  ASI's speculation that

6   the requested documents *may* be relevant to its defense is insufficient to justify these

7   requests.  *See Gilead*, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574, at **1-2.

8       As a preliminary matter, ASI's argument that the requested documents might

9   be relevant to "the concept of ratification" is invalid.  ASI alleged *thirty-one*

10  affirmative defenses, but "ratification" was not one of them.  *See* Def.'s Answer ¶¶

11  91-121.  Under Rule 26(b)(1), parties may obtain discovery regarding nonprivileged

12  matter that is "relevant to any party's claim or defense . . ."  ASI cannot allege its

13  requests are relevant to support ratification, as it is neither a claim nor a defense in

14  this case.

15      ASI's allegations that its requests are relevant to its *in pari delicto* and

16  unclean hands defenses are similarly misplaced.  According to case law ASI itself

17  cites, the "in pari delicto defense appl[ies] only if fraudulent actors 'controlled and

18  dominated' the corporation."  *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th

19  1138, 1144 (2005) (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty

20  & Co.*, 267 F.3d 340, 360 (3d Cir. 2001)).  ASI has not alleged that Mr. Lee or Mr.

21  Seo controlled or dominated KEXIM.

22      Moreover, unclean hands is not a defense to an intentional tort.  *See, e.g.*,

23  *People v. Parker*, 235 Cal. App. 2d 86 (1995); Cal Civ. Code § 2306; *People v.

24  Zimmer*, 23 Cal. App. 2d 581, 584-85 (1937).  In *Burton v. Sosinsky* – the one case

25  ASI cites in support of its unclean hands defense – the court found that the plaintiff

26  subcontractor could not foreclose on a mechanic's lien because it had defrauded the

27  defendant car dealer, and therefore had "unclean hands."  203 Cal. App. 3d 562, 574

28  (1988).  But ASI does not, and cannot, claim that KEXIM defrauded ASI, so it

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 30 -

cannot use unclean hands as a justification for relevancy.  The doctrine of unclean hands is not applicable.  Additionally, comparative negligence is not a defense to fraud.  *See, e.g.*, *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985, 2002 U.S. Dist. LEXIS 26622 / 2002 WL 35454612, at *18 (C.D. Cal. Aug. 5, 2002).

ASI's speculation that Mr. Seo and Mr. Lee's personnel files "might show" a history of accepting bribes or special treatment, or contain resumes, background checks, or other information that bears on foreseeability, without more, is insufficient.  It is further inadequate for ASI to justify its request, not restricted to Moneual or Mr. Park, by assuming that communications between KEXIM and the FSS and KEXIM and the KCS might have put KEXIM "on notice of risks inherent in allowing Mr. Seo to evaluate credit applicants."  "No longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence."  *Gilead Scis., Inc.*, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574, at *1.  In order to meet its burden, ASI needs to show facts demonstrating why the documents it requests are relevant.

ASI finally contends that because KEXIM requested the personnel files of the five ASI employees that accepted bribes from Moneual and Mr. Park, ASI's requests must be relevant.  This "sauce-for-the-goose" argument is erroneous for two reasons.  First, KEXIM requested the personnel files of five of ASI's employees who are implicated not only in receiving bribes, but in taking the actions central to this case: entering into a fraudulent supply agreement; issuing bogus purchase orders; making fraudulent misrepresentations to KEXIM; aiding and abetting Moneual's fraud; and conspiring with Moneual and Mr. Park to commit the fraud.  By contrast, ASI's requests are much broader, as it seeks not only personnel files, but internal investigations, termination related documents, all communications between KEXIM and the FSS and the KCS, and all reports prepared by the FSS.  Even if relevancy were judged by what the other party requested, KEXIM's requests

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

are much more narrowly targeted than ASI's.  Second, KEXIM's requests for production do not bear on the relevancy of ASI's.  If ASI had an issue with KEXIM's requests for production, it could have objected.  A party cannot comply with an opposing party's requests for production and then argue that its agreement to produce documents in response to such requests renders its own much broader requests relevant.

Overall, the requests at issue here are based on nothing more than ASI's speculations that the requested documents *may* be relevant, which is insufficient to justify compelling KEXIM's production.  *See Gilead*, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574, at **1-2.

### 3.   ASI's Requests for Documents Unrelated to Moneual or Mr. Park are Disproportionate to this Case

Considering the case law ASI cites does not support its affirmative defenses to KEXIM's fraud claim, the legal effect of Mr. Seo and Mr. Lee accepting bribes will not be "[o]ne of the most significant issues in this case."  It is disproportionate to require ASI to search for and produce documents responsive to these requests when ASI's relevancy arguments are based in speculation.

Here, ASI fails to demonstrate that the requested documents are relevant, let alone proportionate.  ASI is wrong when it suggests that it would not be burdensome for KEXIM to search its email servers for these terms, to review the search returns to determine whether the documents are responsive to these requests, and to then produce responsive documents to ASI.  However, even where it would not be burdensome to produce a document, parties and courts must consider whether a request is overbroad or disproportionate.  *See Nutiva*, 2016 U.S. Dist. LEXIS 140001 / 2016 WL 5858467, at *3.  And it is erroneous whether or not ASI could obtain the documents it requests from third parties.  Such a conclusion does not alter the fact that compelling KEXIM to produce the documents here would be disproportionate to ASI's likely benefits.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1  KEXIM has and will continue to produce documents responsive to these
2  requests that relate to Moneual or Mr. Park.  But ASI has failed to meet its burden of
3  demonstrating why information unrelated to Moneual and Mr. Park is relevant and
4  why KEXIM's objections lack merit.  *See Sinohui*, 2016 U.S. Dist. LEXIS 62481 /
5  2016 WL 2743458, at *3.

**IV.  REQUESTS FOR PRODUCTION RELATING TO COMMUNICATIONS WITH OTHER BANKS THAT ISSUED CREDIT TO MONEUAL**

**REQUEST FOR PRODUCTION NO. 85:**

10  ALL COMMUNICATIONS between YOU and the trustee of the bankruptcy
11  estate for KT Engcore Corporation, formerly KT ENS, formerly KT Networks
12  RELATING TO MONEUAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

14  KEXIM objects to this Request, as communications between KEXIM and the
15  trustee of the bankruptcy estate for KT Engcore Corporation, a separate company
16  that is involved in a separate litigation with ASI, are irrelevant to this dispute; ASI
17  cannot seek to have KEXIM collect and produce documents for ASI's litigation with
18  KT Engcore Corporation.  Based on the foregoing general and specific objections,
19  KEXIM will not search for and will not produce documents in response to this
20  Request.

**REQUEST FOR PRODUCTION NO. 141:**

22  ALL COMMUNICATIONS between YOU and Standard Chartered Bank
23  Korea RELATING TO MONEUAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 141:**

25  KEXIM objects to this Request, as communications between KEXIM and
26  Standard Chartered Bank Korea relating to Moneual are irrelevant to this dispute.
27  Based on the foregoing general and specific objections, KEXIM will not search for
28  and will not produce documents in response to this request.

- 33 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  **REQUEST FOR PRODUCTION NO. 142:**

2      ALL COMMUNICATIONS between YOU and Standard Chartered Bank

3  Korea RELATING TO PARK.

4

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 142:**

6      KEXIM objects to this Request, as communications between KEXIM and

7  Standard Chartered Bank Korea relating to Mr. Park are irrelevant to this dispute.

8  Based on the foregoing general and specific objections, KEXIM will not search for

9  and will not produce documents in response to this Request.

10 **REQUEST FOR PRODUCTION NO. 143:**

11     ALL COMMUNICATIONS between YOU and Busan Bank RELATING TO

12 MONEUAL.

13 **RESPONSE TO REQUEST FOR PRODUCTION NO. 143:**

14     KEXIM objects to this Request, as communications between KEXIM and

15 Busan Bank relating to Moneual are irrelevant to this dispute.  Based on the

16 foregoing general and specific objections, KEXIM will not search for and will not

17 produce documents in response to this Request.

18 **REQUEST FOR PRODUCTION NO. 144:**

19     ALL COMMUNICATIONS between YOU and Busan Bank RELATING TO

20 PARK.

21 **RESPONSE TO REQUEST FOR PRODUCTION NO. 144:**

22     KEXIM objects to this Request, as communications between KEXIM and

23 Busan Bank relating to Mr. Park are irrelevant to this dispute.  Based on the

24 foregoing general and specific objections, KEXIM will not search for and will not

25 produce documents in response to this Request.

26 **REQUEST FOR PRODUCTION NO. 145:**

27     ALL COMMUNICATIONS between YOU and Citibank RELATING TO

28 MONEUAL.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 34 -

1   **RESPONSE TO REQUEST FOR PRODUCTION NO. 145:**

2          KEXIM objects to this Request, as communications between KEXIM and

3   Citibank relating to Moneual are irrelevant to this dispute.  Based on the foregoing

4   general and specific objections, KEXIM will not search for and will not produce

5   documents in response to this Request.

6   **REQUEST FOR PRODUCTION NO. 146:**

7          ALL COMMUNICATIONS between YOU and Citibank RELATING TO

8   PARK.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 146:**

10          KEXIM objects to this Request, as communications between KEXIM and

11   Citibank relating to Mr. Park are irrelevant to this dispute.  Based on the foregoing

12   general and specific objections, KEXIM will not search for and will not produce

13   documents in response to this Request.

14   **REQUEST FOR PRODUCTION NO. 147:**

15          ALL COMMUNICATIONS between YOU and Daegu Bank RELATING TO

16   MONEUAL.

17   **RESPONSE TO REQUEST FOR PRODUCTION NO. 147:**

18          KEXIM objects to this Request, as communications between KEXIM and

19   Daegu Bank relating to Moneual are irrelevant to this dispute.  Based on the

20   foregoing general and specific objections, KEXIM will not search for and will not

21   produce documents in response to this Request.

22   **REQUEST FOR PRODUCTION NO. 148:**

23          ALL COMMUNICATIONS between YOU and Daegu Bank RELATING TO

24   PARK.

25   **RESPONSE TO REQUEST FOR PRODUCTION NO. 148:**

26          KEXIM  objects to this Request, as communications between KEXIM and

27   Daegu Bank relating to Mr., Park are irrelevant to this dispute.  Based on the

28   foregoing general and specific objections, KEXIM will not search for and will not

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 35 -

1   produce documents in response to this Request.

2   **REQUEST FOR PRODUCTION NO. 149:**

3       ALL COMMUNICATIONS between YOU and Suhyup Bank RELATING

4   TO MONEUAL.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 149:**

6       KEXIM objects to this Request, as communications between KEXIM and

7   Suhyup Bank relating to Moneual are irrelevant to this dispute.  Based on the

8   foregoing general and specific objections, KEXIM will not search for and will not

9   produce documents in response to this Request.

10  **REQUEST FOR PRODUCTION NO. 150:**

11      ALL COMMUNICATIONS between YOU and Suhyup Bank RELATING

12  TO PARK.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 150:**

14      KEXIM objects to this Request, as communications between KEXIM and

15  Suhyup Bank relating to Mr. Park are irrelevant to this dispute.  Based on the

16  foregoing general and specific objections, KEXIM will not search for and will not

17  produce documents in response to this Request.

18  **REQUEST FOR PRODUCTION NO. 151:**

19      ALL COMMUNICATIONS between YOU and NongHyup Bank

20  RELATING TO MONEUAL.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 151:**

22      KEXIM objects to this Request, as communications between KEXIM and

23  NongHyup Bank relating to Moneual are irrelevant to this dispute.  Based on the

24  foregoing general and specific objections, KEXIM will not search for and will not

25  produce documents in response to this Request.

26  **REQUEST FOR PRODUCTION NO. 152:**

27      ALL COMMUNICATIONS between YOU and NongHyup Bank

28  RELATING TO PARK.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 152:**

KEXIM objects to this Request, as communications between KEXIM and NongHyup Bank relating to Mr. Park are irrelevant to this dispute. Based on the foregoing general and specific objections, KEXIM will not search for and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 153:**

ALL COMMUNICATIONS between YOU and KB Kookmin Bank RELATING TO MONEUAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 153:**

KEXIM objects to this Request, as communications between KEXIM and KB Kookmin Bank relating to Moneual are irrelevant to this dispute. Based on the foregoing general and specific objections, KEXIM will not search for and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 154:**

ALL COMMUNICATIONS between YOU and KB Kookmin Bank RELATING TO PARK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 154:**

KEXIM objects to this Request, as communications between KEXIM and KB Kookmin Bank relating to Mr. Park are irrelevant to this dispute. Based on the foregoing general and specific objections, KEXIM will not search for and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 155:**

ALL COMMUNICATIONS between YOU and Industrial Bank of Korea RELATING TO MONEUAL.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 155:**

KEXIM objects to this Request, as communications between KEXIM and Industrial Bank of Korea relating to Moneual are irrelevant to this dispute. Based on the foregoing general and specific objections, KEXIM will not search for and

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  will not produce documents in response to this Request.

2  **REQUEST FOR PRODUCTION NO. 156:**

3      ALL COMMUNICATIONS between YOU and Industrial Bank of Korea

4  RELATING TO PARK.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 156:**

6      KEXIM objects to this Request, as communications between KEXIM and

7  Industrial Bank of Korea relating to Mr. Park are irrelevant to this dispute.  Based

8  on the foregoing general and specific objections, KEXIM will not search for and

9  will not produce documents in response to this Request.

10  **REQUEST FOR PRODUCTION NO. 157:**

11      ALL COMMUNICATIONS between YOU and Korea Development Bank

12  RELATING TO MONEUAL.

13  **RESPONSE TO REQUEST FOR PRODUCTION NO. 157:**

14      KEXIM objects to this Request, as communications between KEXIM and

15  Korea Development Bank relating to Moneual are irrelevant to this dispute.  Based

16  on the foregoing general and specific objections, KEXIM will not search for and

17  will not produce documents in response to this Request.

18  **REQUEST FOR PRODUCTION NO. 158:**

19      ALL COMMUNICATIONS between YOU and Korea Development Bank

20  RELATING TO PARK.

21  **RESPONSE TO REQUEST FOR PRODUCTION NO. 158:**

22      KEXIM objects to this Request, as communications between KEXIM and

23  Korea Development Bank relating to Mr. Park are irrelevant to this dispute.  Based

24  on the foregoing general and specific objections, KEXIM will not search for and

25  will not produce documents in response to this Request.

26  **REQUEST FOR PRODUCTION NO. 159:**

27      ALL COMMUNICATIONS between YOU and Korea Exchange Bank or its

28  successor RELATING TO MONEUAL.

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

**RESPONSE TO REQUEST FOR PRODUCTION NO. 159:**

KEXIM objects to this Request, as communications between KEXIM and Korea Exchange Bank or its successor relating to Moneual are irrelevant to this dispute.  Based on the foregoing general and specific objections, KEXIM will not search for and will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 160:**

ALL COMMUNICATIONS between YOU and Korea Exchange Bank or its successor RELATING TO PARK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 160:**

KEXIM objects to this Request, as communications between KEXIM and Korea Exchange Bank or its successor relating to Mr. Park are irrelevant to this dispute.  Based on the foregoing general and specific objections, KEXIM will not search for and will not produce documents in response to this Request.

**A.    ASI's Contentions Regarding Request Nos. 85 And 141-160**

KEXIM's communications with other banks and victims of Moneual's fraud are critical to establishing KEXIM's knowledge of the scheme at the time of lending.  If any of the other banks informed KEXIM of their suspicions as to Moneual or shared their due diligence prior to KEXIM factoring the purchase orders KEXIM would have been on notice of the fraud and could not have justifiably relied upon any representation of ASI.

**1.    The Communications Between KEXIM And Other Banks Which Issued Credit To Moneual Are Relevant**

Some of the other banks victimized by Moneual, including The Industrial Bank of Korea (IBK) and the Korea Development Bank (KDB), are either owned or financially supported by the Government of the Republic of Korea.  Queally Dec. ¶ 17, Ex. **M** [Moody's Report on IBK and KDB].  Government sponsored banks may have a policy of communicating with one another about borrowers who have outstanding credit.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

The meeting minutes from KEXIM's Factoring Evaluation Committee which have been produced to date reflect that KEXIM was aware Moneual had outstanding loans from 11 other banks at the time Moneual applied for factoring loans with KEXIM.  For example, the meeting minutes from June 25, 2014, show that KEXIM was aware at the time that Moneual had outstanding loans of KRW 624,281,000,000 (approximately USD 526,605,994.74) from 11 different banks.  *See* Queally Dec. ¶ 11 Ex. **G**.  Similar borrowings are listed in the meeting minutes from December 20, 2013 and September 19, 2014.  *See id.* at ¶¶ 10 & 12 and Exs. **F** & **H**.  These dates roughly correspond to the dates when KEXIM first entered into the EFA with Moneual in December 2013; when KEXIM agreed to factor the third set of purchase orders from ASI on June 26, 2014; and when KEXIM agreed to factor the fourth set of purchase orders from ASI on September 24, 2016.  *See* Compl., ¶¶ 34, 48 & 52. If KEXIM contacted any of the other banks before or after agreeing to factor the purchase orders the information would be relevant to determining the reasonableness of KEXIM's alleged reliance upon ASI's purported representations.

"The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience. 5 Witkin, Summary of Cal. Law, supra, Torts, § 808, p. 1164.)"  *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 864-65 (2007).  "In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, the knowledge, education and experience of the person claiming reliance must be considered." *Guido v. Koopman*, 1 Cal. App. 4th 837, 843-44 (1991), *citing*, *Gray v. Don Miller & Associates, Inc.*, 35 Cal. 3d 498, 503 (1984); *see also Ralph Andrews Productions, Inc. v. Paramount Pictures Corp.*, 222 Cal. App. 3d 676, 685 (1990) ("In determining reasonable reliance, one's experience and intelligence, along with the business environment are considered.").  As one California court has noted:

> It is only where a party to whom a representation is made
> has the means at hand for determining its truth or

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 40 -

1  falsehood and resorts to such means, without interference
2  by the other party, and after investigation learns that the
3  statement was false, that he is precluded from asserting
4  that he relied upon the representation. The rationale for
5  this is that the investigation and ascertainment of the facts
6  exclude the idea that any reliance was placed upon the
7  falsehood.

8  *Mercer v. Elliott*, 208 Cal. App. 2d 275, 279 (1962).

9      If KEXIM made inquiries about Moneual to the other banks that issued loans
10  to Moneual during KEXIM's underwriting and such banks responded with
11  information which placed KEXIM on notice of Moneual's fraud it would disprove
12  justifiable reliance.  At least one bank, Woori Bank, was able to discover Moneual's
13  fraud in 2012 and cut its losses.  According to an article from the *Korea Joongang*
14  *Daily*, an analyst working at Woori Bank detected Moneual's fraud in 2012 after the
15  bank had loaned KRW 85,000,000,000 (approximately USD 72,000,000) to
16  Moneual.  Queally Dec. ¶ 18, Ex. N.  Moneual requested additional credit from
17  Woori and the analyst became suspicious when he noticed that, in spite of
18  Moneual's claim of exceptional sales overseas, Moneual "did not have products …
19  available on any online shopping malls including eBay, Best Buy or Walmart." *Id.*
20  The employee ultimately determined Moneual's financial records were not
21  trustworthy and Woori did not issue further credit.  *Id.*

22      If KEXIM communicated with Woori at the time it was considering factoring
23  Moneual's receivables in 2013 or 2014 KEXIM may have been informed by Woori
24  of the untrustworthy nature of Moneual's purported sales figures, and the fact that at
25  least one major bank in Korea refused to issue credit.  The timing of the discovery
26  by Woori is critical since it occurred before KEXIM's factoring.  The meeting
27  minutes from KEXIM's Factory Evaluation Committee shows that as of December
28  19, 2013, KEXIM was aware Moneual had outstanding loans of KRW

- 41 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1,682,000,000 (approximately USD 1,418,834) with Woori.  Queally Dec. ¶ 11 Ex. **G**.  The meeting minutes for September 19, 2014 show that as of September 4, 2014 Moneual's borrowing from Woori had been reduced to zero.  *Id*. at ¶ 12, Ex. **H**.  The other ten banks still had outstanding loans to Woori at the time in the millions of won.  This peculiarity may have prompted KEXIM to contact Woori and inquire as to why Moneual's borrowing was brought down to zero.

Finally, the other  banks are likely members of the unsecured creditors committee in the Moneual bankruptcy along with KEXIM.  The banks may communicate with one another about how the losses occurred, their credit evaluation processes, internal weakness, corruption, and other subjects which are relevant.[4]

### 2.    The Requests for Communications Between KEXIM And Other Banks Are Proportional To The Needs Of The Case

For the same reasons as discussed above with regard to the personnel files, the communications between KEXIM and other banks are proportional to the needs of the case.  At least two of the other banks are owned or controlled by the Government of South Korea rendering them beyond the Court's subpoena power as foreign sovereignties.  The remaining banks are all headquartered in Korea. Obtaining the communications from them may require letters rogatory under The Convention on the Taking of Evidence Abroad in Civil or Commercial Matters for each of the banks.  Some of the banks may oppose the letters in Korea requiring ASI to spend unnecessary time and money seeking enforcement of the letters.

Compliance with ASI's request would simply be a matter of KEXIM running

---

[4] KEXIM did not object to any of the requests in RFP Nos. 85 and 141-160 based on the attorney client privilege or the attorney work product doctrine.  KEXIM has not raised any such objection in the three months since the responses were served. Therefore, any objection is waived.  *Natland v. McGowen*, 2013 U.S. Dist. LEXIS 193949, at *3 (C.D. Cal. Nov. 18, 2013), *citing Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (finding waived objection that party did not raise within time to respond to "discovery requests and interrogatories").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

word searches for "Moneual," "Hong-seok Park," and similar terms on KEXIM's email servers and document repository and producing those emails and letters where the author or recipient is a representative of one of the banks.  KEXIM's assets justify requiring KEXIM to expend this slight effort based on what KEXIM is alleging.

Finally, it is worthy of noting that in its First Set of Requests for Production of Documents to ASI KEXIM demanded all communications between ASI and any of the other alleged 12 co-conspirators regardless of subject or content dating back 13 years.  *See, e.g.*, Queally Dec. ¶ 19, Ex. **O** [KEXIM's RFP No. 7 ("All Documents concerning, including Communications between, ASI and PK Paradigms Holdings Ltd. (including any of its directors, officers, employees, agents, or representatives) for the time period January 1, 2003 to present.")  By comparison ASI's requests seek only communications between KEXIM and the other Moneual victims pertaining specifically to Moneual or Mr. Park for the limited time period January 1, 2007 to the present.[5]

Since the requests are proportional to the needs of the case and the documents are relevant to KEXIM's claims and ASI's defenses the Motion should be granted.

**B.     KEXIM's Contentions Regarding Request Nos. 85 And 141-160**

Request Nos. 141-160 seek communications between KEXIM and other Korean banks that lent to Moneual.  Request No. 85 seeks communications between KEXIM and the bankruptcy trustee for KT Engcore, a separate company that is involved in litigation with ASI in the Superior Court of Alameda County.  ASI does not address the relevance of the KT Engcore request at all.  ASI only addresses the requests related to the banks, and omits any discussion of KT Engcore, a company

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[5] ASI's original requests did not include a date restriction.  ASI agreed, in an effort to compromise, to limit the requests to communications during the period January 1, 2007 to date.  Queally Dec. ¶ 24, Ex. **T** [Nov. 16, 2016 Letter to Earle Miller, p. 7].  ASI's Motion is limited to communications between KEXIM and the other victim banks from the time period January 1, 2007 to the present.

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1  ASI alleges was an importer for Moneual.  These requests are irrelevant and
2  disproportionate to this dispute.

3      ASI's central argument as to why KEXIM should be forced to produce these
4  documents is the hypothetical idea that if KEXIM communicated with these other
5  banks about Moneual it may be relevant to disproving that KEXIM justifiably relied
6  on ASI's misrepresentations.  ASI fails to allege facts or a reasoned argument as to
7  whether these communications even exist, whether banks "share due diligence," or
8  how banks that also chose to lend to Moneual would have been able to "tip"
9  KEXIM off as to its fraud.  ASI has not met its burden under Rule 26(b)(1) to show
10  that these documents are relevant and proportional to the needs of this case.  *See*
11  *Sinohui*, 2016 U.S. Dist. LEXIS 62481 / 2016 WL 2743458, at *3.

12      **1.    Requests for Communications between KEXIM and Other**
13      **Banks that Issued Credit to Moneual and KEXIM and the**
14      **Bankruptcy Trustee for KT Engcore are Irrelevant**

15      ASI's justification for these requests is that if KEXIM communicated with the
16  other banks the information might disprove that KEXIM reasonably relied on ASI's
17  purported representations.  ASI's argument misses the mark.  ASI's requests seek
18  communications between other banks that also lent to Moneual.  It is illogical to
19  think that banks that determined Moneual to be a reliable borrower would have
20  communicated to KEXIM "information which placed KEXIM on notice of
21  Moneual's fraud," as alleged by ASI.

22      ASI tries to strengthen its relevancy argument by discussing Woori Bank
23  ("Woori"), a red herring.  ASI alleges that because KEXIM knew Woori had loans
24  with Moneual that then were reduced to zero, this "may have prompted" KEXIM to
25  contact Woori and inquire the reasoning.  Yet ASI does not make *any* requests for
26  documents that relate to or involve Woori.  Moreover, ASI does not even allege that
27  KEXIM ever communicated with Woori.  ASI's discussion of Woori therefore does
28  not support any relevancy argument.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 44 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    ASI's requests at issue here are ultimately a fishing expedition.  There is no

2 evidence that these communications exist or that they are relevant.  All of ASI's

3 alleged relevancy justifications are hypothetical: "If KEXIM contacted . . . the

4 banks"; "If KEXIM made inquiries about Moneual . . ."; "If KEXIM communicated

5 with Woori . . ."; "The banks may communicate with one another . . ."  ASI's

6 speculation that the requested documents *may* exist or *may* be relevant to disprove

7 KEXIM's justifiable reliance is insufficient to justify the burden of searching for,

8 reviewing, and producing responsive documents.  *See Gilead*, 2016 U.S. Dist.

9 LEXIS 5616 / 2016 WL 146574, at **1-2.

10    Communications between the bankruptcy trustee for KT Engcore and KEXIM

11 are similarly irrelevant.  ASI fails to explain why the alleged fact that Moneual used

12 KT Engcore as an exporter is at all relevant to this dispute, whereas KEXIM alleges

13 that ASI directly participated in Moneual's fraud.  If communications between KT

14 Engcore and KEXIM were relevant, then every communication with every company

15 that served as an exporter for Moneual at any time would be relevant to this dispute.

16 This logic is erroneous.  Again, ASI's speculation that the requested documents *may*

17 be relevant is insufficient to justify the burden of searching for and producing

18 responsive documents.  *See Gilead*, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574,

19 at **1-2.  This is particularly the case because it appears that ASI is simply using

20 this request as a means of obtaining free discovery for its separate litigation with KT

21 Engcore.

22    ASI's requests for communications between KEXIM and other banks that lent

23 to KEXIM and the bankruptcy trustee for KT Engcore are ultimately irrelevant.

24 ASI's requests provide no factual support and are merely a fishing expedition that

25 hypothesizes fictional possibilities.

26    **2.    ASI's Requests are Disproportionate to the Needs of the Case**

27 In addition to seeking irrelevant communications, ASI's requests are

28

- 45 -

disproportionate to the needs of the case.  The burden on KEXIM to produce documents responsive to these requests "outweighs its likely benefit."  *See* Fed. R. Civ. P. 26(b)(1).  Requests for irrelevant documents are not made proportional by referencing facts about the case, naively claiming the production process for an opposing party would be simple, the fact that it may be difficult to access these documents through third parties, or by referencing the opposing party's own requests for production.  *See Gilead*, 2016 U.S. Dist. LEXIS 5616 / 2016 WL 146574, at *1 ("[n]o longer is it good enough to hope that the information sought might lead to the discovery of admissible evidence.").

Initially, ASI's allegation that the documents it requests might be difficult to access from third parties is immaterial.  Even if this were true, there is no need to preserve ASI's access to irrelevant documents that ASI admits might not even exist.  KEXIM further disagrees with ASI's suggestion that it would not be burdensome to search its email servers for these terms, to review the search returns to determine whether the documents are responsive to this request, and to then produce the documents to ASI.  However, even if it would not be burdensome to produce the requested documents, parties and courts must still consider whether requests are overbroad and disproportionate.  *See Nutiva*, 2016 U.S. Dist. LEXIS 140001 / 2016 WL 5858467, at *3.  Requesting that KEXIM run searches for, review, and produce communications pertaining to KT Engcore and ten different banks is overbroad, particularly when ASI merely alleges that these documents *may* exist and *may* have relevant information.  Similarly, it is insufficient to rely on the fact that KEXIM is a bank to justify that it must search for and produce irrelevant documents.

ASI mistakenly equates KEXIM's requests for communications between ASI and other participants in Moneual's fraud with ASI's requests here for communications between KEXIM and other banks ASI alleges Moneual lent to.  KEXIM sues ASI in this action based on its participation with Moneual in a fraudulent scheme that caused KEXIM to lose approximately $40 million.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 46 -

1  KEXIM's requests for documents regarding other participants in the fraud are

2  relevant and proportional to proving the extent of and ASI's involvement in

3  Moneual's fraud, which necessarily requires communications between it and other

4  participants.  On the other hand, ASI's requests are for communications between

5  KEXIM and banks unrelated to this case, which are unlikely to be relevant to

6  disprove KEXIM's justifiable reliance.  A moving party's assertion that "some of

7  the files *may* contain relevant" documents or communications does not justify a

8  search of the responding party's files.  *See Dobro*, 2016 U.S. Dist. LEXIS 119198 /

9  2016 WL 4595149, at **5-7.  The fact that KEXIM requested communications

10 between participants in Moneual's fraud does not thereby make ASI's requests here

11 proportional.

12      Ultimately, ASI's requests for communications between KEXIM and the KT

13 Engcore bankruptcy trustee and KEXIM and other banks are irrelevant and

14 disproportionate to the needs of the case.  ASI failed to overcome its burden of

15 demonstrating why the communications were relevant and why KEXIM's

16 objections lack merit.  *See Sinohui*, 2016 U.S. Dist. LEXIS 62481 / 2016 WL

17 2743458, at *3.

18 **V.      PRODUCTION OF DOCUMENTS TRANSLATED BY KEXIM FROM**

19 **KOREAN INTO ENGLISH**

20      **A.      ASI Contentions Regarding Production of Translated Documents**

21      KEXIM should be required to produce the English translations of Korean

22 documents it has produced.  ASI's Requests for Production did not exempt the

23 English translations of any documents if the original Korean version was responsive.

24 In fact the instructions to the Requests for Production demanded English translations

25 and KEXIM did not object.  If KEXIM is in possession of English translations for

26 the documents which have been produced, such translations are equally responsive

27 and should be produced.

28      The issue was addressed in *Contreras v. Isuzu Motors, Ltd.*, 1999 U.S. Dist.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 47 -

LEXIS 23615, at *8-9 (W.D. Tex. Apr. 2, 1999) ("*Contreras*") wherein the court noted: "[a]lthough the defendants cannot be compelled to translate, defendants do not contend that [citation] governs the issue of whether defendants must disclose documents *that have already been translated.*"  *Contreras*, at *4 (*emphasis and brackets added*).  The defendants in *Contreras* argued that because an attorney's "selection and ordering of documents" may be protected by the attorney client privilege and the attorney work product doctrine, ordering the production of responsive documents which have been translated may violate the privilege.  *Id.*

The *Contreras* court disagreed, noting that such a rule "would not preclude ordering the disclosure of <u>all</u> documents that have been translated."  *Id.* at *7 (original emphasis).  The court pointed out that the gathering and transmission of responsive documents to counsel did not "immunize" such documents from production based on privilege.  *Id.* at *3.

The *Contreras* court further noted that the defendant had not decided precisely which documents it would use at trial.  Therefore, the defendant could not claim that production of the English translations for all documents produced would reveal any work product.  *Id.*  The *Contreras* court concluded:

> For these reasons, in regard to the Japanese documents responsive to request number 26, the defendants must provide the English translations, to the extent they have custody or control over such translations, of such responsive documents if English translations have ever been made of such responsive documents. It does not matter when such translations were made, and it does not matter if the translations are "authenticated," as that undefined term was used by defendants. If a document has been partially translated, then the translations must be produced.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1   *Id.* at *8-9; *see also In re Air Crash Disaster near Warsaw, Poland, MDL 787*, 1996

2   U.S. Dist. LEXIS 22711 / 1996 WL 684434, at *1 (E.D.N.Y. Nov. 19, 1996) ("*In re*

3   *Air Crash Poland*") (ordering the production of the English translations of 7,000

4   documents contingent upon plaintiff sharing the cost since the selection by counsel

5   of which documents to translate had only a "speculative" relation to counsel's

6   thought processes and plaintiff demonstrated a substantial need).[6]

7          The same conclusion was reached by the court in *Nature's Plus Nordic A/S v.*

8   *Nat. Organics*, 274 F.R.D. 437, 440 (E.D.N.Y. 2011) ("*Nature's Plus*") wherein the

9   court concluded: "it is clear with regard to foreign documents produced that the

10  receiving party has a substantial need to also have any existing translations in order

11  to understand the content of the documents." *Nature's Plus*, 274 F.R.D. at 440; *see*

12  *also Hajek v. Kumho Tire Co.*, 2010 U.S. Dist. LEXIS 10551 / 2010 WL 5030544 at

13  *11 (D. Neb. Feb. 8, 2010) (directing defendant to produce any English translations

14  of documents produced to the extent defendant was in possession of such

15  translations); *and Ice Corp. v. Hamilton Sundstrand Corp.*, 2007 U.S. Dist. LEXIS

16  88358 / 2007 WL 4239454, at *2 (D. Kan. Nov. 30, 2007) (finding that "defendants

17  are required to produce all responsive documents [to all prior requests for

18  production] in their care, custody and control, including any versions they have of

19  these documents in English").

20         The same reasoning should apply to the case at bar.  Documents which have

21  been translated into English are still responsive to ASI's requests.  The fact that such

22  documents may have been translated at the request of KEXIM's counsel does not

23  render the documents privileged since such documents were not privileged to begin

---

25  [6] Any privilege objection by KEXIM has been waived.  The instructions to ASI's
    RFPs, Set One stated explicitly "For all DOCUMENTS appearing in a language
26  other than English you are requested to provide a translation by a federal court
    certified interpreter into English."  KEXIM did not object to this demand on the
27  basis of privilege.  KEXIM's "General Objections" do not include the attorney
    client privilege or the attorney work product doctrine and none of the requests at
28  issued were objected to on the basis of either privilege in KEXIM's responses.

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   with and any relation to counsel's though processes would be speculative at best.  *In*

2   *re Air Crash Poland, supra, at* *1.

3          ASI has a significant need for the translations due to costs and would suffer

4   substantial hardship if KEXIM is allowed to withhold them.  ASI has obtained

5   estimates from three different translation services for complete translations of the

6   4,600 pages produced to date: (1) $230,000 (Tomedes Translation); (2) a range of

7   $55,200 - $220,800 (Transperfect); and (3) $184,000 (Korean Translation Group).

8   Queally Dec. ¶¶ 26-28, Ex. **U-W**.  These estimates do not include certification and

9   notarization which would be necessary for filing documents with the Court.  The

10  figures are also estimates which could be exceeded and do not include

11  administrative time on the part of ASI and its counsel.

12         KEXIM has only produced a fraction of what it has agreed to produce to date.

13  Due to the complexity of this case and the history of Moneual's scheme KEXIM's

14  production of documents will likely reach 50,000-100,000 pages, all of which will

15  likely be in Korean.  Extrapolating from the estimates for translation of the 4,600

16  pages to date, the full cost of translation to ASI could exceed $5,000,000.

17         During the meet and confer process KEXIM identified case law holding that a

18  party should not be forced to translate specific documents at the demand of an

19  opposing party.  *See, e.g., Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,*

20  2014 U.S. Dist. LEXIS 166962 / 2014 WL 6788182, at *8 (N.D. Cal. Dec. 2, 2014).

21  However, this case and others like it are distinguishable.  ASI is not demanding that

22  KEXIM translate documents it has not otherwise translated.  Rather, ASI seeks an

23  order requiring KEXIM to produce the English translations of documents which

24  KEXIM has already translated and, on a going forward basis, to produce the

25  translations for all documents it produces in Korean.  ASI offered to enter into a

26  cost-sharing agreement with KEXIM upon written verification of the costs, but

27  KEXIM refused.  Queally Dec. ¶ 25.  This protocol was approved by the court in *E.*

28  *& J. Gallo Winery v. Rallo*, 2006 U.S. Dist. LEXIS 84048 / 2006 WL 3251830

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 50 -

1    (E.D. Cal. Nov. 8, 2006) ("*Rallo*"), wherein the court ordered the parties to share the

2    costs 50/50 of translating documents from Italian to English. *Rallo*, at *13-14; *see*

3    *also Nature's Plus*, 274 F.R.D. at 440 ("Further, to force the Defendant to have to

4    translate documents already translated would cause an undue hardship."). KEXIM

5    has no reason to refuse ASI's offer other than to increase the costs of litigation for

6    ASI needlessly.

7         Ordering the production of documents translated into English would also

8    relieve, in part, an inherent unfairness in this case. KEXIM is a foreign sovereignty

9    which has decided to avail itself of the jurisdiction of a U.S. court. Proceedings in

10   federal courts are conducted in English. *United States v. Rivera-Rosario*, 300 F.3d

11   1, 5 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal

12   court proceedings must be conducted in English."). KEXIM did not attempt to sue

13   ASI in a Korean court or another jurisdiction around the world[7] before resorting to

14   the U.S. court system. ASI, in order to defend itself, will be required to expend

15   enormous sums of money translating documents in KEXIM's files which, in all

16   likelihood, have already been translated by KEXIM or White & Case's Seoul office.

17   If the Government of South Korea, through KEXIM, wishes to avail itself of the

18   jurisdiction of the U.S. courts then the Government should be required to turn over

19   all documents which have been translated into English.

20        In sum, ASI requests that the Court issue an order compelling KEXIM to

21   produce the English translations of all documents in Korean which have been

22   produced to ASI as part of KEXIM's initial disclosures and in response to requests

23   for production now and in the future. In the alternative, ASI requests the Court

24   issue an order that all such documents be produced contingent upon ASI agreeing to

25   share a percentage (up to 50%) of the reasonable costs of translation upon written

26   verification of such costs.

27   _____

28   [7] ASI has locations in Canada and Mexico.

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**B.**     **KEXIM's Contentions Regarding Production of Translated Documents**

ASI cannot compel KEXIM to translate documents for it or to produce work product translations.  Before any meaningful argument can occur on the issue of translations, ASI must clarify its requests.  ASI seems to alternate arguing on the one hand that KEXIM must produce translations for all documents "in response to requests for production now and in the future," and on the other limiting its request to translations that KEXIM has already made or will make under direction of counsel and for purposes of this litigation.  KEXIM did not and does not object to producing English versions of documents that it translated or possessed in the ordinary course of business, independent of this litigation.  KEXIM agreed to and will produce such documents if they exist.

**1.**     **Case Law Confirms that ASI Cannot Compel KEXIM to Translate Documents in Response to ASI's Requests for Production**

Compelling KEXIM to translate into English all documents responsive to ASI's requests is beyond the proper scope of discovery.  Further, the case law ASI cites does not support the issuance of such an order.  *See Contreras v. Isuzu Motors, Ltd.*, No. SA-98-CA-442, 1999 U.S. Dist. LEXIS 23615 / 1999 WL 33290667, at *1 (W.D. Tex. Apr. 2, 1999) (confirming that a party "cannot be compelled to translate" documents in response to an opposing party's requests for production).  It is well settled that a requesting party cannot compel a responding party to translate documents it produces in response to requests for production.  *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-03844, 2014 U.S. Dist. LEXIS 166962 / 2014 WL 6788182, at *3 (N.D. Cal. Dec. 2, 2014);  *E. & J. Gallo Winery v. Rallo*, No. 1:04-cv-5153, 2006 U.S. Dist. LEXIS 84048 / 2006 WL 3251830, at *5 (E.D. Cal. Nov. 8, 2006) ("Normally, in responding to a request for production of documents, the requesting party would bear the cost of translating documents

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

written in a foreign language"); *In re P.R. Elec. Power Auth.*, 687 F.2d 501, 509 (1st Cir. 1982). As such, KEXIM cannot be compelled to translate documents it produces in response to requests for production from Korean into English. That is ASI's burden.

### 2.   KEXIM's Translations Completed at the Request of its Counsel and for Purposes of This Litigation are Work Product

The actual point of contention between the parties is whether or not KEXIM must produce documents that its attorneys may have had translated for purposes of this litigation. KEXIM has not objected to producing English translations of documents that it possessed in the ordinary course of business. KEXIM did object, however, to producing documents that it translated at the direction of its attorneys for the purposes of litigation. Producing such documents to ASI would reveal which documents KEXIM's attorneys selected as most important to this litigation – i.e., work product: attorney opinion and legal theories.

In support of ASI's argument that KEXIM must turn over its translations completed at the direction of its counsel and for purposes of litigation, ASI cites a litany of cases, none of which are from California district courts. Further, most of the cases ASI cites do not support its argument. *See e.g., Hajek v. Kumho Tire Co.*, No. 4:08-cv-3157, 2010 U.S. Dist. LEXIS 10551 / 2010 WL 503044, at *11 (D. Neb. Feb. 8, 2010) (not mentioning documents translated at the direction of counsel), *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 U.S. Dist. LEXIS 88358 / 2007 WL 4239453 (D. Kan. Nov. 30, 2007) (not even mentioning translations at all), *and Nature's Plus Nordic A/S v. Nat. Organics*, 274 F.R.D. 437, 440 (E.D.N.Y. 2011) (finding that documents translated in discovery deserved work product protection). ASI also cited two-decade-old district court cases from Texas and New York. *See Contreras*, 1999 U.S. Dist. LEXIS 23615 / 1999 WL 33290667, *and In re Air Crash Disaster near Warsaw, Poland*, MDL 787,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1   1996 U.S. Dist. LEXIS 22711 / 1996 WL 684434 (E.D.N.Y. Nov. 19, 1996). These

2   cases are directly contradicted by relevant and recent precedent in this circuit.

3       ASI notably omits discussion of *Shionogi & Co., Ltd. v. Intermune Inc.*, a

4   recent case in the Northern District of California. No. C -12-03495, 2012 U.S. Dist.

5   LEXIS 173452, at *5 (N.D. Cal. Dec. 5, 2012). There, the court found that

6   translations done at the request of the responding party's counsel constituted work

7   product because production would "reveal the results of a culling process with

8   multiple levels." *Shionogi*, 2012 U.S. Dist. LEXIS 173452, at *3. In *Shionogi*,

9   bilingual attorneys for the responding party reviewed documents in Japanese and

10  then the bilingual attorneys made a decision as to what documents to translate. *Id.*

11  Because the responding party did not translate documents other than those judged by

12  its bilingual counsel to be "hot," "production of the subset of documents selected for

13  translation would reveal which documents Plaintiff's attorneys selected as most

14  important to the litigation." *Id.* at *4. Without determining whether the translations

15  were ordinary or opinion work product, the court found that even if they were

16  ordinary work product, the requesting party "had not shown a substantial need or

17  undue hardship." *Id.* The requesting party "focused on the cost of the translations,

18  but such costs do not ordinarily constitute undue hardship . . . and [the requesting

19  party] did not show a substantial need to piggyback on the [responding party's]

20  translations because it can obtain its own." *Id.* at *5.

21      Just as in *Shionogi*, if KEXIM were forced to produce translations of

22  documents its counsel had deemed significant, that would reveal its litigation

23  strategy and opinions as to what documents are important. This is the epitome of

24  work product. *See id.* at *2-3 (finding that an attorney's mental impressions,

25  conclusions, opinions, and legal theories are opinion work product and are afforded

26  heightened protection). Even further, if, as requested by ASI, the Court compels

27  KEXIM to turn over its work product translations on a continuing basis, KEXIM

28  will be unable to adequately prepare its case because any document that it translates

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 54 -

at the direction of counsel will have to be produced to ASI.  ASI should not be given a continuing, always-open window into KEXIM's litigation strategy and attorney work product.

Even if the Court were to find that KEXIM's translations at the direction of counsel were simply ordinary work product – as opposed to opinion work product which deserves heightened protection – ASI has not demonstrated a substantial need or undue hardship.  ASI, foreseeing that the Court would find KEXIM's attorney directed translations in anticipation of litigation to be work product, first argues that it has a significant need for the translations due to costs.  As *Shionogi* held, the costs of translation do not constitute undue hardship.  *Id.* at *4.  Further, ASI's translation cost figures are inflated.  With no basis other than speculation, ASI argues that KEXIM's production could reach 50,000 to 100,000 pages – ten to twenty times what it has produced to date.  Additionally, ASI's costs projections improperly assume that it must get every document it receives from KEXIM professionally translated.  These reasons are insufficient to overcome even ordinary work product protection.

### 3. ASI's Other Arguments Do Not Support Requiring KEXIM to Reveal its Work Product Translations

ASI goes on to state that it would be unfair for KEXIM to withhold translations because it chose to sue ASI in a court in the United States.  However, KEXIM did not choose to be defrauded by a company that had its headquarters in California.  Nearly all of ASI and its officers, directors, and employees' actions took place in California.  Undoubtedly, ASI would have vigorously contested jurisdiction in Korea if KEXIM had attempted to sue there.  Critiquing KEXIM's "choice" to sue in California is disingenuous.

Contrary to ASI's assertion, KEXIM is also not obligated to share in the costs of ASI's translation of documents.  "Normally, in responding to a request for

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 55 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  production of documents, the requesting party [] bear[s] the cost of translating

2  documents written in a foreign language." *Icon-IP Pty Ltd.*, 2014 U.S. Dist. LEXIS

3  166962 / 2014 WL 6788182, at \*3; *see also In re P.R. Elec. Power Auth.*, 687 F.2d

4  501, 509 n.3 (1st Cir. 1982) ("It must be borne in mind that discovery of the sort

5  involved here ranges far beyond basic and highly probative documents into large

6  quantities of documents of the most marginal significance.  To empower the

7  discovering party to force his opponent to pay for translation of such materials long

8  before their true significance can be known is to empower one party to impose a

9  possibly crushing economic burden on the other.").  ASI improperly cites *E. & J.*

10  *Gallo Winery v. Rallo* to support its argument that KEXIM should be forced to share

11  in the cost of translating documents it produces in response to ASI's requests for

12  production.  2006 U.S. Dist. LEXIS 84048 / 2006 WL 3251830, at \*5.  However,

13  the court there did not require the parties to share the costs of documents produced

14  in response to *requests for production*.  *Id.*  Instead, the court ordered that a party

15  responding to an *interrogatory* with documents, in lieu of answering the

16  interrogatory, must share in the costs to translate those documents into English.  *Id.*

17  Consequently, ASI cannot compel KEXIM to share in ASI's burden.  ASI must

18  translate its own documents.

19  　　　　Finally, KEXIM did not waive its right to claim work product protection.  In

20  its definitions for its First Set of RFPs, ASI stated that "[f]or all DOCUMENTS

21  appearing in a language other than English you are requested to provide a translation

22  by a federal court certified interpreter into English."  KEXIM declined ASI's

23  request.  In its responses and objections to ASI's First Set of RFPS, KEXIM

24  "object[ed] to the definition of the term 'DOCUMENTS' … to the extent that it

25  seeks information that exceeds the obligations of a responding party under the

26  FRCP."  The federal rules do not require a responding party to translate documents

27  into English.  *See Icon-IP Pty Ltd.*, 2014 U.S. Dist. LEXIS 166962 / 2014 WL

28  6788182, at \*3 (N.D. Cal. Dec. 2, 2014).  KEXIM sufficiently objected to ASI's

1    request to preserve its right to claim work product protection, despite ASI's

2    assertion in a footnote of its argument.

3          Ultimately, the Court must deny ASI's request that KEXIM must

4    produce the English version of documents it translated at the direction of its counsel

5    and for purposes of litigation.  Any contrary determination would violate KEXIM's

6    work product protection and reveal its attorneys' litigation strategy surrounding

7    which documents are important.  ASI has not shown a substantial need or an undue

8    hardship to vitiate this protection.

9    **VI.    KEXIM'S INITIAL DISCLOSURE OF DAMAGES**

10         "As set forth in its complaint, KEXIM seeks judgment against ASI Corp. and

11   ASI Computer in the approximate amount of $40,000,000.00, plus interest thereon."

12   KEXIM's July 7, 2016 Initial Disclosures, p. 4.

13         **A.    ASI's Contentions Regarding KEXIM's Initial Disclosures**

14         ASI contends KEXIM's damages "calculation" is incomplete and deficient

15   since KEXIM does not identify the amount of damages for each cause of action or

16   specify what portion of its damages are out of pocket losses versus purported lost

17   profits.  KEXIM, as plaintiff, is required to disclose a *computation of each category*

18   of damages claimed, and to make available for copying any documents or

19   evidentiary materials upon which the damage calculation is based.  FRCP

20   26(a)(1)(A)(iii); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006)

21   ("*Design*") ("by its very terms Rule 26(a) requires … a 'computation,' supported by

22   documents.").  The failure to specify lost profits in an initial disclosure is grounds

23   for excluding such amounts from trial.  *Design*, 469 F.3d at 295-297 (upholding the

24   district court's exclusion of evidence relating to lost profits where plaintiff failed to

25   adequately disclose a computation of lost profits in plaintiff's initial disclosures);

26   *Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal.

27   2009) ("If Plaintiff intends to seek lost profits, it should also state its computation of

28   expenses and lost profits").

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

1    KEXIM has alleged in its Complaint that KEXIM factored four sets of

2    purchase orders that were made by ASI to Moneual.  Factoring, or "invoice

3    discounting" as it is sometimes referred to, is a form of financing whereby a factor

4    advances cash to a seller secured against that seller's accounts receivables or

5    invoices.  The factor typically charges what is referred to as a "discount fee" for the

6    advancement which is calculated as a percentage of the invoice.  Factors also

7    typically withhold a portion of the face amount of the invoice as a reserve until

8    payment is made by the customer to the factor or seller.

9        For example, suppose KEXIM agreed to factor a $100,000 invoice by

10   Moneual for a discount fee of 2% with a reserve of 10%.  Once KEXIM and

11   Moneual agreed to all of the terms KEXIM would immediately release $88,000 to

12   Moneual.  When the customer pays KEXIM directly the $100,000 owed, KEXIM

13   would release the $10,000 reserve to Moneual leaving only the $2,000 in discount

14   fee which KEXIM keeps as its gross profit.  This is generally how Moneual and

15   KEXIM's arrangement worked.  Section 3 of the EFA between the two entitled

16   "Discount Rate, Processing Fee, and Other Fees" provides: "The discount rate of the

17   Export Receivables purchase pursuant to this Letter of Commitment will be Libor +

18   markup% of the affected period of the amount of receivables subject to purchase."

19   Queally Dec. ¶ 7, Ex. **C**.

20       Another document produced by KEXIM entitled "Contents of the Export

21   Factoring Revolving Limit Set-up Approval" shows the markup percentage of the

22   discount rate for the factoring to be 1.6%.  Queally Dec. ¶ 8, Ex. **D**.  This same

23   document also shows KEXIM withheld 5% of the total amount factored as a reserve

24   or retention.  *Id.*

25       KEXIM claims its damages from ASI's non-payment are "approximately

26   $40,000,000" which is the face amount of the invoices KEXIM factored.  However,

27   this lump sum is insufficient and does not resolve the issue what amount is out of

28   pocket losses (i.e. actually transmitted to Moneual) and what amount is gross loss

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 58 -

profit.  If KEXIM withheld more than 6.6% of what was factored as a combination of reserves plus the discount fee, then its alleged "damages" consisting of the full face value of the invoices must be more than out of pocket losses, it must include a lost profit component.

However, ASI cannot tell from the initial disclosures since KEXIM has failed and refused to provide a calculation of categories of damages in violation of Rule 26.  KEXIM's lump sum of "approximately $40,000,000" is insufficient for purposes of Rule 26.  *See City & Cty. Of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (stating that a damages disclosure must be "more than a lump sum statement").  During the meet and confer process KEXIM continued to insist that if ASI wanted further detail on KEXIM's damages, ASI would have to serve interrogatories on the issue.  But ASI should not be required to waste one of its limited interrogatories on information which KEXIM has an obligation to include in its initial disclosures.  The information is uniquely within KEXIM's possession and KEXIM's reference to the Complaint in its Initial Disclosures is not helpful since the Complaint does not disclose how much money KEXIM advanced to Moneual and how much it withheld as part of the factoring process.

Since KEXIM has not provided a computation of its categories of damages as part of its Initial Disclosures but rather a lump sum of "approximately $40,000,000," and since the information necessary to provide a calculation is within the exclusive knowledge and control of KEXIM, KEXIM should be ordered to supplement its Initial Disclosures.

## B.   KEXIM's Contentions Regarding KEXIM's Initial Disclosures

KEXIM has complied with its Rule 26(a) initial disclosures requirement. "Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure"; rather, a plaintiff need only "provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable [the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  defendant] to understand the contours of its potential exposure and make informed

2  decisions as to settlement and discovery." *City & Cnty. of San Francisco v. Tutor-*

3  *Saliba Corp.*, 218 F.R.D. 219, 220-21 (N.D. Cal. 2003).   KEXIM has done exactly

4  that.

5          KEXIM's claim is based on the fact that by virtue of the fraud and conspiracy

6  that Moneual and ASI entered into, KEXIM advanced funds to Moneual in the

7  amount of approximately $52 million, of which approximately $40 million was

8  never repaid.   That claim is set forth directly and with specificity in the Complaint,

9  *see e.g.*, Compl. ¶¶ 38-53, and in KEXIM's Initial Disclosures, Section C.   In both

10  places, KEXIM has computed a dollar amount.   KEXIM, moreover, has identified,

11  by Bates numbers, the documents that support that claim.   That is sufficient to meet

12  the Rule 26 initial disclosure requirements.

13          ASI's reliance on *Design Strategy, Inc. v. Davis* and *Frontline Med. Assocs.*

14  *v. Coventry Health Care* is misplaced, and neither case alters the conclusion that

15  KEXIM met its initial disclosure requirements.   Both cases involved complex lost

16  profit claims, the computation of which was not readily apparent, and which the

17  plaintiffs disclosed only in the most general terms as "estimates" or along the

18  parameters of revenue, before or after expenses.   *See Design Strategy, Inc. v. Davis*,

19  469 F.3d 284, 293-95 (2d Cir. 2006); *Frontline Med. Assocs. v. Coventry Health*

20  *Care*, 263 F.R.D. 567, 568 (C.D. Cal. 2009).   In both cases, the plaintiff did not set

21  forth in its initial disclosures a dollar amount for its claimed damages – not even a

22  computation, much less a calculation.   The posture in *Design Strategy* was even

23  more inapposite, as the plaintiff there did not disclose lost profits as even a category

24  of damages until shortly before trial, a year and a half after discovery had closed,

25  thereby creating serious prejudice to the defendant.   *See Design Strategy*, 469 F.3d

26  at 295-297.

27          KEXIM's claim here, and its disclosures, are much different.   The amount

28  claimed in the Complaint represents the face amount of the purchase orders on

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 60 -

1  which the invoices that Moneual presented to KEXIM for factoring were based.

2  KEXIM specified a dollar amount, disclosed the sources that it used to come to that

3  computation, and even further identified documents by their bates numbers that

4  support its claim.   KEXIM therefore provided an ample assessment of its damages

5  in sufficient enough detail so as to enable ASI to understand the contours of its

6  potential exposure and to make informed decisions as to settlement and discovery.

7  Any additional details that ASI may wish to investigate – such as the withholding or

8  "discount fees" – are properly the subject of discovery, not Rule 26 initial

9  disclosures.  ASI is free to propound interrogatories to elicit the specifics of

10  KEXIM's claim for damages.  A motion to compel revision of KEXIM's initial

11  disclosures is an improper vehicle to do so, as those initial disclosures complied

12  with the requirements of Rule 26.

13

14

15  Dated:  January 23, 2017            **CALLAHAN & BLAINE, APLC**

16                                       By:  */s/ Christopher B. Queally*
                                              Daniel J. Callahan
17                                            Christopher B. Queally
                                              Damon D. Eisenbrey
18                                            Attorneys for Defendants ASI Corp. and
                                              ASI Computer Technologies, Inc.
19

20

21  Dated:  January 23, 2017            **WHITE & CASE LLP**

22                                       By:  */s/ Earle Miller*
                                              Bryan A. Merryman
23                                            Earle Miller
                                              Amara Levy-Moore
24                                            Attorneys for Plaintiff THE EXPORT-
                                              IMPORT BANK OF KOREA
25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 61 -

JOINT STIPULATION ON MOTION TO COMPEL SUPPLEMENTAL RESPONSES
TO RFPS AND PRODUCTION OF DOCUMENTS

# ATTACHMENTS

1  **CALLAHAN & BLAINE, APLC**
   Daniel J. Callahan, SBN 91490
2  Christopher B. Queally, SBN 229154
   Damon D. Eisenbrey, SBN 215927
3  3 Hutton Centre Drive, Ninth Floor
   Santa Ana, California 92707
4  Telephone: (714) 241-4444
   Facsimile: (714) 241-4445
5
6  Attorneys for Defendants ASI CORPORATION, and ASI
   COMPUTER TECHNOLOGIES, INC.
7
8                  UNITED STATES DISTRICT COURT
9                 CENTRAL DISTRICT OF CALIFORNIA
10                      WESTERN DIVISION
11  THE EXPORT-IMPORT BANK OF            **CASE NO.  2:16-cv-02056-MWF-JPR**
    KOREA, an agency or instrumentality
12  of the Republic of Korea,            **DECLARATION OF**
                                         **CHRISTOPHER B. QUEALLY IN**
13                  Plaintiffs,          **SUPPORT OF DEFENDANT ASI**
                                         **COMPUTER TECHNOLOGIES,**
14        v.                             **INC.'S MOTION FOR AN ORDER**
                                         **TO COMPEL PLAINTIFF THE**
15  ASI CORPORATION, a Delaware          **EXPORT-IMPORT BANK OF**
    corporation; ASI COMPUTER            **KOREA TO: (1) PROVIDE**
16  TECHNOLOGIES, INC., a California     **SUPPLEMENTAL RESPONSES TO**
    corporation,                         **REQUESTS FOR PRODUCTION,**
17                                       **SET ONE AND PRODUCE**
                    Defendants.          **DOCUMENTS; AND (2) TO**
18                                       **SUPPLEMENT THE**
                                         **CALCULATION OF DAMAGES IN**
19                                       **THE INITIAL DISCLOSURES**
20                                       Judge:    Hon. Jean J. Rosenbluth
                                         Date:     February 16, 2017
21                                       Time:     10:00 a.m.
                                         Dept.:    Courtroom A
22
                                         Complaint Filed:  March 25, 2016
23                                       Discovery Cutoff: January 29, 2018
                                         PreTrial Conf:    April 2, 2018
24                                       Trial Date:       April 24, 2018
25
26
27
28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

I, Christopher B. Queally, hereby declare:

1.      I am an attorney at law duly licensed to practice before all courts of the State of California and before this Court, the United States District Court for the Central District of California.  I am counsel for defendants ASI Corporation and ASI Computer Technologies, Inc. in the above-styled action.  This declaration is based on my personal knowledge and if called as a witness I could competently testify thereto.

2.      This declaration is offered in support of Defendant ASI Computer Technologies, Inc.'s ("ASI") Motion to Compel Plaintiff The Export-Import Bank of Korea to Supplement Responses to Requests for Production of Documents, Set One, To Produce Documents Under Rule 34 of the Federal Rules of Civil Procedure, and to Supplement the Statement of Damages Calculation in Kexim's Initial Disclosures.

3.      The parties participated in two conferences of counsel pursuant to Local Rule 37-1 prior to the filing of this Motion.  The first was a teleconference between myself, Earle Miller, and Amara Levy-Moore, both of White & Case LLP, on November 14, 2016 which lasted approximately 2 hours.  The second was a teleconference among the same participants on November 28, 2016 which lasted approximately 1 hour.  My office is in Orange County and the offices of White & Case, LLP are located in Los Angeles.

4.      Attached hereto as Exhibit **A** is a true and correct copy of Plaintiff The Export-Import Bank of Korea's (hereinafter "Plaintiff" or "Kexim") March 25, 2016 Complaint.

5.      Attached hereto as Exhibit **B** is a true and correct copy of the first two pages from the Court's October 21, 2016 Order Re Jury Trial which lists all of the pretrial deadlines leading up to the April 24, 2018 trial date.

6.      On September 1, 2016, Kexim served its Responses to ASI's First Set

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (74) 241-4444
WWW.CALLAHAN-LAW.COM

- 2 -

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

1  of Requests of Production of Documents.  Kexim's objections and responses are the

2  subject of this Motion.  Pursuant to its Responses Kexim began a rolling production

3  of documents on October 27, 2016.  Kexim has produced, to date, approximately

4  4,600 pages of documents and almost all of them are in Korean.

5       7.      Attached hereto as Exhibit **C** is the English translation of a document

6  entitled Export Factoring Transaction Letter of Commitment (For Revolving Credit

7  Line).  The original Korean version was produced by Kexim and is Bates labeled

8  K00017-K00019.  ASI has included as part of the Exhibit the original Korean

9  version and a copy of the translator's certificate.

10      8.      Attached hereto as Exhibit **D** is the English translation of a document

11 entitled Contents of the Export Factoring Revolving Limit Set-up Approval.  The

12 original Korean version was produced by Kexim and is Bates labeled K00070.  ASI

13 has included as part of the Exhibit the original Korean version and a copy of the

14 translator's certificate.

15      9.      Attached hereto as Exhibit **E** is the English translation of the

16 Pronouncement of Judgment from the first criminal trial of Hong-seok Park and his

17 accomplices issued by the Seoul Central District Court, dated October 15, 2015.

18 The original Korean version was produced by Kexim and is Bates labeled K00494-

19 K00554.  ASI has included as part of the Exhibit the original Korean version and a

20 copy of the translator's certificate.

21      10.     Attached hereto as Exhibit **F** is the English translation of certain

22 meeting minutes from the December 20, 2013 meeting of the Kexim Factoring

23 Evaluation Committee.  The original Korean version was produced by Kexim and is

24 Bates labeled K00218.  ASI has included as part of the Exhibit the original Korean

25 version and a copy of the translator's certificate.

26      11.     Attached hereto as Exhibit **G** is the English translation of certain

27 meeting minutes from the June 25, 2014 meeting of the Kexim Factoring Evaluation

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

1    Committee.  The original Korean version was produced by Kexim and is Bates

2    labeled K00247.  ASI has included as part of the Exhibit the original Korean version

3    and a copy of the translator's certificate.

4           12.    Attached hereto as Exhibit **H** is the English translation of certain

5    meeting minutes from the September 19, 2014 meeting of the Kexim Factoring

6    Evaluation Committee.  The original Korean version was produced by Kexim and is

7    Bates labeled K00315.  ASI has included as part of the Exhibit the original Korean

8    version and a copy of the translator's certificate.

9           13.    Attached hereto as Exhibit **I** is a true and correct copy of a document

10   entitled The Export-Import Bank of Korea's March 22, 2013 Post-Effective

11   Amendment No. 2 To Registration Statement Under Schedule B of the Securities

12   Act of 1933.  I obtained the document from the U.S. Securities and Exchange

13   Commission Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system.

14   ASI requested as part of its First Set of Requests for Production that Kexim produce

15   all filings with the SEC over the last five years.  Kexim objected that the

16   information was equally available to ASI and directed ASI to the SEC's website.

17          14.    Attached hereto as Exhibit **J** is a true and correct copy of Kexim's 2008

18   Annual Report entitled "Your Partners for Global Business."  I obtained the Report

19   from Kexim's English website at https://www.koreaexim.go.kr/site/main/index002.

20          15.    Attached hereto as Exhibit **K** is a true and correct copy of Kexim's

21   2010 Annual Report entitled "Making the Right Moves."  I obtained the Report

22   from Kexim's English website at https://www.koreaexim.go.kr/site/main/index002.

23          16.    Attached hereto as Exhibit **L** is a true and correct copy of Kexim's

24   2014-2015 audited financial statements.  I obtained the statements from Kexim's

25   English website at https://www.koreaexim.go.kr/site/main/index002.

26          17.    Attached hereto as Exhibit **M** is a true and correct copy of a Moody's

27   Investors Service Announcement for the Industrial Bank of Korea and Korea

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

1  Development Bank dated July 17, 2014.  I obtained the document from Moody's

2  website.  I have bracketed the relevant portions in blue ink.

3       18.     Attached hereto as Exhibit **N** is a true and correct copy of an online

4  article from the Korea JoongAng Daily dated January 27, 2015 entitled *Woori*

5  *Rewards Employee Who Noticed Loan Scam*.  I obtained the article from Korea

6  JoongAng Daily's website.

7       19.     Attached hereto as Exhibit **O** is a true and correct copy of Kexim's

8  First Set of Requests for Production of Documents to ASI served on July 6, 2016.

9       20.     Attached hereto as Exhibit **P** is a true and correct copy of Kexim's

10  Responses to ASI's Requests for Admission, Set One served on September 1, 2016.

11       21.     Attached hereto as Exhibit **Q** is a true and correct copy of Kexim's

12  Responses to ASI's Requests for Admission, Set Two served on November 21,

13  2016.

14       22.     Attached hereto as Exhibit **R** is a true and correct copy of a meet and

15  confer letter from Kexim's counsel dated September 14, 2016.  On page 4 of the

16  letter counsel for Kexim argues that the personnel files of Henry Chen and Bill

17  Chen, two employees whom Kexim accuses of accepting bribes from Moneual, Inc.,

18  are relevant for the same reasons that agreements between these individuals and ASI

19  are relevant.  Namely, that Bill Chen was a vice president of ASI and engaged in

20  conduct on behalf of ASI.

21       23.     Attached hereto as Exhibit **S** is a true and correct copy of a meet and

22  confer letter from Kexim's counsel dated November 4, 2016.  On page 4 of the letter

23  counsel for Kexim discusses the testimony from Kexim's president to the Korea

24  National Assembly.

25       24.     Attached hereto as Exhibit **T** is a true and correct copy of a November

26  16, 2016 meet and confer letter from myself to Earle Miller, counsel for Kexim.

27       25.     During the meet and confer process I offered on behalf of ASI to share

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

1  the costs of translation for those documents which Kexim or its counsel have

2  already translated from Korean to English.  For example, in my meet and confer

3  letter of November 16, 2016 attached as Exhibit **T**, I offered on behalf of ASI to

4  "share the reasonable costs of translation (up to 50%) with Kexim provided Kexim

5  can furnish documentation evidencing the costs, i.e., invoices from a translation

6  service."  ASI, as part of the accompanying Motion, stands by this offer.

7       26.     Attached hereto as Exhibit **U** is a true and correct copy of a quote from

8  Tomedes translation service for fully translating the 4,600 pages of documents

9  Kexim has produced to date.

10       27.     Attached hereto as Exhibit **V** is a true and correct copy of an estimate

11  range from Transperfect translation services for fully translating the 4,600 pages of

12  documents Kexim has produced to date.

13       28.     Attached hereto as Exhibit **W** is a true and correct copy of an estimate

14  range from the Korean Translation Group for fully translating the 4,600 pages of

15  documents Kexim has produced to date.

16

17

18       I declare under penalty of perjury of the laws of the United States of America

19  that the foregoing is true and correct.  Executed on January*23*, 2017, in Santa Ana,

20  California.

21

22

23  Christopher B. Queally

24

25

26

27

28

- 6 -

DECLARATION OF CHRISTOPHER B. QUEALLY IN SUPPORT OF
MOTION FOR AN ORDER TO COMPEL

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1

**CERTIFICATE OF SERVICE**

2   Case Name: The Export-Import Bank of Korea v. ASI Corporation, et al.

3   No.:  2:16-cv-02056

4        On January 23, 2017, I filed the following document(s) described as

5   **JOINT STIPULATION ON DEFENDANT ASI COMPUTER
TECHNOLOGIES, INC.'S MOTION FOR AN ORDER TO COMPEL**

6   **PLAINTIFF THE EXPORT-IMPORT BANK OF KOREA TO: (1) PROVIDE
SUPPLEMENTAL RESPONSES TO REQUESTS FOR PRODUCTION, SET**

7   **ONE AND PRODUCE DOCUMENTS; AND (2) TO SUPPLEMENT THE
CALCULATION OF DAMAGES IN THE INITIAL DISCLOSURES; AND**

8   **ATTACHMENTS** electronically through the CM/ECF system.  All parties on the

9   Notice of Electronic Filing to receive electronic notice have been served through the
CM/ECF system.

10        The party(ies) listed below are currently on the list to receive e-mail notices
for this case.

11

| | |
|---|---|
| 12   Bryan A. Merryman<br>James K. Lee<br>13   Earle Miller<br>WHITE & CASE LLP<br>14   555 South Flower Street<br>Suite 2700<br>15   Los Angeles, CA 90071<br>*Attorneys for Plaintiff The Export-*<br>16   *Import Bank of Korea* | |

| | |
|---|---|
| 17   ☒ | **BY EMAIL:** I have caused the above-mentioned document(s) to be<br>electronically served on the above-mentioned person(s), who are currently<br>18   on the list to receive e-mail notices for this case. |

19       Executed on January 23, 2017, at Santa Ana, California.

20        I declare under penalty of perjury under the laws of the United States that the

21   foregoing is true and correct, and that I am employed in the office of a member of
the bar of this court at whose direction the service was made.

22

23                  Megan Walters

24

25

26

27

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM