# EXHIBIT "E"




www.scourt.the
goods for exporto.kr

Barcode for voice output

**Seoul Central District Court**

**Criminal Department 25**

**Decision**

This is a true and correct copy.
Oct. 19, 2015
Jae [*illegible*] Shin
Assistant Clerk of the Court



Case    2014 Gohap 1348 and 2015 Gohap 55 (joined)

A.  Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Crime of Unlawful Expatriation of Assets to Foreign Country)
B.  Violation of Customs Law
C.  Violation of the Foreign Exchange Transactions Act
D.  Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)
E.  Creation of false negotiable instruments
F.  Usage of falsely created negotiable instruments
G.  Violation of the Act on External Audit of Stock Companies
H.  Bribery
I.  Breach of duty by giving bribery
J.  Aiding and Abetting Fraud [recognized name of the crime: Aiding and Abetting the violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)]

Defendants    1.  A, B, D, E, F, G, H, and I

Hong Seuk Park (620704-0000000), CEO of Moneual, Inc.

Place of Residence        Apt. #401 of Building 105, Charmnuri Ecorich Apartments

Umyeon-dong, Seocho-gu, Seoul

Registered Address        47 Yeonhui-ro 27-gil, Seodaemun-gu, Seoul

2.  B, C, and D

K000494





www.scourt.go.kr

Barcode for voice output

Chul Wook Shin (651230-0000000), Executive Vice President of Moneual, Inc.

| | |
|---|---|
| Place of Residence | Apt. #1201 of Building 209, 165 Siheung-daero, Geumcheon-gu Seoul (Siheung-dong, South Seoul Hillstate Apartments) |
| Registered Address | 787 Hagoe-ri, Gaeun-eup, Mungyeong-si |

3.  B, C, D, and G

Kyung Shik Kang (720624-0000000), Director of Finance of Moneual, Inc. and Zalman Tech Co., Ltd.

| | |
|---|---|
| Place of Residence | Apt. #802, 187 Baekjegobun-ro, Songpa-gu, Seoul (Jamsil-dong, Parkinsu) |
| Registered Address | 1222 Sinbok-ri, Dolsan-eup, Yeosu-si |

4.  D, E, F, G, and J

Hyun Oh Cho (680106-0000000), CEO of HBL, Inc. (former Vice President of Finance at Moneual, Inc.)

| | |
|---|---|
| Place of Residence | Apt. #301 of Building 1503, 70-14 Naeson-ro, Uiwang-si (Naeson-dong, Uiwang; Naeson ePyunhansaesang Apartments) |
| Registered Address | 200 Gameun-ri, Andoek-myeon, Cheongsong-gun, Gyeongsangbuk-do |

| | |
|---|---|
| Prosecutor | Jung Hwan Noh, Bum Ki Kim (indictment), and Jong Won Chung (trial) |
| Counsel | Law firm (LLC) Barun (for Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang) |
| | Attorneys Dong Hoon Lee and Hae In Kim |
| | Law firm Sungshil Law Firm (for Defendant Chul Wook Park) |
| | Attorney Kae Duk Park |
| | Law firm Choueum (for Defendant Hyun Oh Cho) |

K000495



www.scourt.go.kr
Barcode for voice output

Attorneys Dong Myung Lee and Yong Duk Kim

Pronouncement of        October 16, 2015
Judgment

**Holdings**

Defendant Hong Seuk Park is sentenced to 23 years of penal servitude and a fine of 100 million KRW;
Defendant Chul Ok Shin is sentenced to 7 years of penal servitude and a fine of 60 million KRW;
Defendant Kyung Shik Kang is sentenced to 6 years of penal servitude and a fine of 60 million KRW, and
Defendant Hyun Oh Cho is sentenced to 3 years of penal servitude.
If Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang do not pay their respective fines, they will be imprisoned in a workhouse and their time served will be converted to 200,000 KRW per day.
Defendant Hong Seuk Park is assessed an additional amount of 36,181,100,419 KRW.

**Cause**

**Facts of Offense**
**[Capacities of the Defendants]**

Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang are all domiciled in the Republic of Korea.
In or about August 2007, Defendant Hong Seuk Park acquired Dign Lab, Inc. that manufactures and sells robot vacuum and other home electronics (the company name was changed to 'Moneual, Inc.' on November 27, 2007; Hereinafter "Moneaul") and has since operated the company.
Defendant Chul Wook Shin has been Moneual's executive vice president since about 2007.
Defendant Kyung Shik Kang has been Moneual's finance director since about 2011. Since around March 2014, he has concurrently been the finance director of Zalman Tech Co. (Moneual's subsidiary; Hereinafter "Zalman Tech").

K000496





Defendant Hyun Oh Cho was Moneual's finance director from about November 2008 to about September 2010. Around October 2010, he established HB Line, Inc. (hereinafter "HB Line"), a freight forwarder, and still operates the company as its CEO.

**[Overview of Fraudulent Circular Transactions and Turnover of Funds]**

Moneual, using Moneual and other names, entered into fraudulent export agreements with ASI, CNBM[1] and other foreign business customers in which Moneual would export/sell Home Theater Personal Computer(s) (hereinafter "HTPC") for 2-3 million won (KRW) per unit despite that it did not have any market transactions in the offshore market let alone in the domestic market. The business dealings were false pretenses feigned by fictitiously creating foreign business customers' purchase orders (hereinafter "PO") and other related documents, and then shipping the HTPCs for the sake of formality. Funds were obtained through ways such as selling export notes receivable to financial institutions based on the fake business dealings, and these funds were then used for Moneual and other companies' operating costs or for Defendant Hong Seuk Park's personal use. Likewise, when the repayment due date for the export notes receivable sold to financial institutions was imminent, funds were procured in the same way, and using the method described below, repayment for the export notes receivable due was made by the foreign business customers from funds remitted to them through the accounts of foreign paper companies controlled by Defendant Hong Seuk Park. To wit, although the HTPCs exported to foreign business customers by using the export method above were actually supposed to be disassembled through entities such as paper companies controlled by Defendant Hong Seuk Park and then imported, the transaction relationship was disguised using methods such as falsely creating pro forma invoices (Profoma Invoice, hereinafter "PI") and other related documents under the name of foreign paper companies like PK PARADIGMS CORP. to buy some other products in order to make it appear like an import in semblance,  and  under the pretext of remittance of import proceeds, funds procured in such ways as described above were remitted into foreign paper company accounts, and afterwards, ultimately remitted into foreign customer accounts.

-----------------------------------

1) ASI is the abbreviation for 'ASI Computer Technology Inc.' It is an American computer component distribution company. CNBM is the abbreviation for 'China National Building Materials and Equipment Import and Export Corporation.' It is a major Chinese corporation in construction and IT related fields.

K000497





www.scourt.go.kr

**Barcode for voice output**

In or about 2007, Defendant Hong Seuk Park took advantage of Moneual as explained above by initiating the act of turning over HTPC ownership on the surface (on paper) and then turning over funds reversely in the direction opposite to the flow of HTPC ownership (hereinafter "fraudulent circular transaction and turnover of funds"). Defendants Chul Wook Shin, Kyung Shik Kang, and Hyun Oh Cho (in or about January 2008, January 2011, and November 2001, respectively) each became aware of the fact that the fraudulent circular transaction and turnover of funds were taking place. Defendants Chul Wook Shin, Kyung Shik Kang, and Hyun Oh Cho each made up their mind to mutually collude with other defendants to repeat such acts together after each found out the fraudulent circular transaction and turnover of funds. Over the course of this process, Defendant Hong Seuk Park in particular decided to also wire funds for personal use by adding it to said funds that were to be brought back into the country after laundering the money from his offshore paper companies.

**[2014 Gohap 1348]**

1. **Defendant Hong Seuk Park's Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Crime of Unlawful Expatriation of Assets to Foreign Country)**

   If a [Korean] resident wants to engage in a foreign currency deposit transaction offshore with a nonresident, he must declare it to the [Korean] Minister of Strategy and Finance.
   Defendant opened an account under the name of his paper company PK PARADIGMS HOLDINGS LTD that he controls, with HSBC Bank in Hong Kong, a nonresident. He did not make such a declaration, and on March 24, 2011, under the pretext of import proceeds, wired US$890,000 (about 1,000,093,000 KRW) to the above-mentioned account. On March 30, 2011, he withdrew US$500,000 (about 557,300,000 KRW) out of the deposit and purchased an apartment in the United States - in Irvine, California - for use by him and his family, thereby unlawfully expatriating US$500,000 out of the country using this method.



www.scourt.go.kr
**Barcode for voice output**

Including the instance above, from October 15, 2009 to April 18, 2014, the defendant unlawfully expatriated a total of 36,181,100,419 KRW out of the country on a total of 140 occasions as set forth in the attached List of Crimes 1 by disguising funds he was going to personally use offshore as payment for imports through wiring money into offshore paper companies he controlled.

2. **Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang's Violation of Customs Laws in relation to Moneual**

   A.   Fabrication of Export Price

   The defendants falsely created POs, commercial invoices, and other related documents under their offshore customers' names for the export of HTPCs (computer cases; semi-finished goods) for a high price in fictitious export transactions, and planned to use methods such as selling export notes receivable to financial institutions to unjustly obtain funds. On or about September 9, 2013, the defendants made an export declaration (declaration number 130-10-13-01173508) to Customs in Moneual's name as if they were exporting 420 units of HTPCs to CNBM for US$2,326 (about 2,535,908 KRW) each for a total of US$977,130 (about 1,065,081,471 KRW). However, in actuality, Moneual was exporting the HTPCs to CNBM as part of a fraudulent circular transaction like the one above, and the actual transaction price of the HTPCs was nonexistent. Even the domestic transaction price was merely 8,000 KRW.

   The defendants colluded as described above and from then until about July 31, 2014, for the purpose of unjustly obtaining financial profit, the defendants fabricated the price by declaring inflated export price of the HTPC on a total of 85 occasions as set forth in the attached List of Crimes 2.

   B.   False Declaration of Exports

   Around January 4, 2010, the Defendants, under the name of Moneual, declared to Customs (declaration number 130-10-10-00001531) an export to CNBM for 420 HTPCs (computer case; semi-finished goods) at US$2,256 (about 2,615,358 KRW) each for a total of US$947,520 (about 1,098,450,460 KRW) as if Moneual were actually exporting the goods to CNBM.

K000499




www.scourt.go.kr
Barcode for voice output

However, in actuality, Moneual was exporting the HTPCs as part of a fraudulent circular transaction as described in the above-referenced example. The actual transaction price of the HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

The defendants colluded as described above and from then until about July 29, 2013, the defendants declared the inflated HTPC export price 664 times to customs, as set forth in the attached List of Crimes 3.

C. False Declaration of Imports

Around December 31, 2009, the Defendants, under the name of Moneual, declared to customs (declaration number 21506-09-120511U) an import from WEBTOUCH INC. for 610 HTPCs (computer case, disassembled semi-finished goods that had been exported) at US$1,650 (about 1,967,658 KRW) each for a total of US$1,006,500 (about 1,200,271,380 KRW) as if Moneual was importing the goods from WEBTOUCH INC. However, in actuality, Moneual was importing the HTPCs as part of a fraudulent circular transaction as described in the above-referenced example. The actual transaction price of the HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

The defendants colluded as described above and from then until about August 13, 2014, the defendants declared the inflated HTPC import price 490 times to Customs, as set forth in the attached List of Crimes 4.

**3. Defendants Chul Wook Shin and Kyung Shik Kang's Violation of Foreign Exchange Transaction Act**

If a [Korean] resident wants to engage in a foreign currency deposit transaction offshore with a non-resident, then he must declare it to the [Korean] Minister of Strategy and Finance.

While in the process of performing fraudulent circular transactions and turnover of capital under Hong Seuk Park's direction, the defendants did not make such a declaration as described above, and engaged in deposit transactions as described below.

A. On or about October 15, 2009, through Moneual employee Shi Young Park and others,





www.scourt.go.kr

**Barcode for voice output**

US$801,000 (about 935,327,700 KRW) was deposited under the name of Moneual to Hong Shik Park's secret bank account under LTI SOLUTION CO. LTD's name at HSBC Bank in Hong Kong, a nonresident, as import proceeds for the HTPCs. From then until about July 17, 2014, as set forth in the List of Crimes 5, a total of US$2,467,738,001 (about 2,705,880,503,468 KRW) was deposited on a total of 886 occasions under the pretext of import proceeds.

B.   On or about April 6, 2012, through Moneual employee Shi Young Park and others, US$125,000 (about 141,187,500 KRW) was deposited under the name of Zalman Tech to Hong Seuk Park's secret bank account under MULTIWAY ELECTRONICS LIMITED's name at HANG SENG BANK in Hong Kong, a nonresident, as import proceeds for the HTPCs. From then until about July 1, 2014, as set forth in the List of Crimes 6, a total of US$71,267,235 (about 76,248,470,146 KRW) was deposited on a total of 20 occasions under the pretext of import proceeds.

**4.   Defendant Hong Seuk Park's Violation of Customs Law regarding Dign Lab Co., Ltd.**

The Defendant and Deok Yeon Won agreed to use Dign Lab Co., Ltd. (has the same company name as Moneual's prior business name before Moneual's name change, but they are separate companies. Hereinafter "Dign Lab"), a company operated by Deok Yeon Won, for fraudulent circular transactions. On or about June 18, 2010, a declaration was made to customs under Dign Lab's name (declaration number 21506-10-060244U) for an import from PK PARADIGMS CORP. for 370 HTPCs (case for computer, disassembled semi-finished goods that had been exported) at US$1,780 (about 2,221,351 KRW) each for a total of US$658,600 (about 1,200,271,380 KRW) as if Moneual was actually importing the goods from PK PARADIGMS CORP. However, in actuality, Moneual was importing the HTPCs as part of a fraudulent circular transaction as described in the above-referenced example. The actual transaction price of the HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

The Defendant colluded with Deok Yeon Won as described above and from then until about April 24, 2014, the defendant declared the inflated HTPC import price 28 times to customs, as set forth in the attached List of Crimes 7.

K000501

 

www.scourt.go.kr

Barcode for voice output

### 5.   Defendant Hong Seuk Park's Violation of Customs Law in relation to Dynazen

The Defendant and Jae Shin Moon agreed to use Dynazen Co., Ltd. (hereinafter "Dynazen"), a company operated by Jae Shin Moon, for fraudulent circular transactions as described in the above-referenced examples. On or about January 27, 2010, a declaration was made to customs under Dynazen's name (declaration number 014-10-10-00091265) for an export to ASI for 63 HTPCs (case for computer; semi-finished goods) at US$2,350 (about 2,631,553 KRW) each for a total of US$148,050 (about 165,787,871 KRW) as if Dynazen were actually exporting the goods to ASI. However, in actuality, Dynazen was exporting the HTPCs as part of a fraudulent circular transaction as described in the above-referenced example.  The actual transaction price of the HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

The Defendant colluded with Jae Shin Moon as described above and from then until about May 23, 2014, the defendant declared the inflated HTPC export price 100 times to Customs, as set forth in the attached List of Crimes 8.

### 6.   Defendant Hong Seuk Park's Violation of Customs Law in relation to KT Networks

The Defendant engaged in intermediary international trade with KT Networks (on August 1, 2013, the company changed its name to KT ENS. Hereinafter "KT Networks") in which Moneual provided HTPCs (computer case; semi-finished goods) to KT Networks for export to ASI, and KT Networks exported the HTPCs to ASI with an added fixed distribution margin under an agreement through which Moneual was to assume all costs and risks involved, such as customs clearance, overall charges and expenses, and warranty. With the agreement with such terms, the defendant decided to use KT Networks' name in fraudulent circular transactions as described above.

On or about February 11, 2010, through KT Networks' employee Byongha Chun, the defendant made a declaration to customs under KT Networks' name (declaration number 130-10-10-00223436) for an export of 250 HTPCs to ASI at US$1,955 each (about 2,244,418 KRW) for a total of US$488,750 (about 561,104,550 KRW) as if KT Networks were actually exporting the goods to ASI. However, in actuality, Moneual was using KT Networks' name to export the HTPCs to ASI as part of a fraudulent circular transaction as described in the above-referenced example.

K000502



www.scourt.go.kr



Barcode for voice output

The actual transaction price of the HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

As described above, from then until about May 17, 2011, the defendant declared the inflated HTPC export price on a total of 59 occasions to customs, as set forth in the attached List of Crimes 9.

**7.  Defendant Hong Seuk Park's Violation of Customs Law in relation to Forasia Co. and Others**

In or about December 2012, the defendant brought in US$ 4 million (about 4 billion KRW) through foreign paper company Multiway's bank account in order to pay taxes. The Defendant borrowed the bank accounts of Forasia Co., Ltd. and Atesangasa Co., Ltd., (hereinafter "Forasia" and "Atesangsa," respectively) which were operated by Chul Ju Lee at that time.

As described above, in regards to the financial transactions between Multiway and Forasia, and Atesanaga, the defendant decided to disguise it as export transactions under Forasia and Atesangsa's names. On or about January 24, 2014, the defendant made a declaration to customs under Forasia's name (declaration number 014-10-14-00108648) for an export of 2,020 HTPCs (computer case; semi-finished goods) to Multiway at US$944 each (about 992,367 KRW) for a total of US$1,908,000 (about 2,004,582,960 KRW) as if such export was really taking place. The Defendant made a declaration to customs under Atesangsa's name (declaration number 014-10-14-00108497) for an export of 1,315 HTPCs to Multiway at US$1,455 each (about 1,529,191 KRW) for a total of US$1,914,000 (about 2,010,866,680 KRW) as if such export was really taking place. However, in actuality, the defendant was exporting HTPCs to CNBM under the names of Forasia and Atesangsa in order to make the cause of bringing funds into the country as described above appear legitimate, and the actual transaction price of HTPCs was nonexistent, and even the domestic transaction price was merely 8,000 KRW.

In this way, the defendant declared the inflated export prices of the HTPCs twice.

**[2015 Gohap 55]**

K000503





www.scourt.go.kr

Barcode for voice output

**1.   Defendants' Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)**

As shown in the beginning, Moneual's export/import transactions were not normal export/import transactions. Rather, they were a way to obtain funds through selling export notes receivable to financial institutions or receiving loans based on feigned business transactions. Thus, had the financial institutions known about these circumstances, it is certain that they would not have provided loans to Moneual.

The defendants colluded to receive loans from financial institutions by deceit by purporting to be engaged in legitimate export/import transactions. Defendant Hong Seuk Park mangaged export bond discounts and the overall operation tasks related to receiving export/import related bank loans. Defendant Chul Wook Shin managed the task of preparing documents submitted to the banks during the loan application process, such as POs and export agreements, by either creating the documents himself or receiving them from offshore customers. As directors of finance, Defendant Hyun Oh Cho, from about November 2008 to September 2010, and Defendant Kyung Shik Kang, from about January 2011 to about September 2014, were to be responsible for engaging in direct contact with the banks for tasks such as submitting loan applications and increasing credit limits.

A.   Crimes All Defendants Committed upon the Injured Parties

1)   Injured Party Industrial Bank of Korea

On March 28, 2014, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, deceived injured party Industrial Bank of Korea (IBK) by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Guro-dong branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 420 HTPCs to CNBM at US$2,326.50 each for a total of US$977,130,' a commercial invoice, a packing list, a multimodal transport bill of lading (NEGOTIABLE FIATA MULTIMODAL TRANSPORT BILL OF LADING), a statement of acceptance of export declaration and others.

K000504





www.scourt.go.kr

**Barcode for voice output**

As a matter of fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and CNBM was fictitious, and the above HTPCs were not loaded up for shipment contrary to what is indicated in the multimodal transport bill of lading. And the PO, the commercial invoice, the multimodal transport bill of lading and other documents were also falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$977,130 from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about October 2, 2007 to about September 29, 2014, Defendant Hong Seuk Park defrauded the injured party a total of US$652,156,377 as well as 57,307,000,000 KRW as set forth in Attachment 2 of the List of Crimes 1. From about January 24, 2008 to about September 29, 2014, Defendant Chul Wook Shin defrauded a total of US$648,189,077 as well as 57,307,000,000 KRW as set forth in Attachment 2 of the List of Crimes 1, Numbers 8-822. From about January 10, 2011 to about September 29, 2014, Defendant Kyung Shik Kang defrauded a total of US$595,755,069 as well as 54,433,100,000 KRW as set forth in Attachment 2 of the List of Crimes 1, Numbers 104-822. And from about November 14, 2008 to about September 28, 2010, Defendant Hyun Oh Cho defrauded a total of US$40,673,480 as well as 2,873,900,000 KRW as set forth in Attachment 2 of the List of Crimes 1, Numbers 33-101.

2) Injured Party Korea Development Bank

On April 15, 2014, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, deceived injured party Korea Development Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Nowon branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 420 HTPCs to CNBM at US$2,059.20 each for a total of US$864,864,' an air waybill, a commercial invoice, a packing list, Korea Trade Insurance Corporation's Notice of Export Registration documents, a warehouse release request form, and others.

K000505





www.scourt.go.kr

**Barcode for voice output**

As a matter fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and CNBM was fictitious, and the PO, the commercial invoice and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account 890,303,921 KRW from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about September 24, 2009 to about September 15, 2014, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of 637,450,301,078 KRW as set forth in Attachment 2 of the List of Crimes 2. From about January 10, 2011 to about September 15, 2014, Defendant Kyung Shik Kang defrauded a total of 511,116,279,195 KRW as set forth in Attachment 2 of the List of Crimes 2, Numbers 140-667. And from about September 24, 2009 to about September 8, 2010, Defendant Hyun Oh Cho defrauded 94,893,552,222 KRW as set forth in Attachment 2 of the List of Crimes 2, Numbers 1-104.

3)   Injured Party Woori Bank

On August 19, 2008, Defendants Hong Seuk Park, Chul Wook Shin, and Hyun Oh Cho, according to their roles as described above, deceived injured party Woori Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (D/A) to the injured party's employee at the injured party's Gasan Digital Central branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 200 HTPCs to ASI at about US$2,500 each for a total of US$493,500,' a commercial invoice, a packing list, a bill of lading (B/L), a transaction statement, and others. As a matter of fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the PO, the commercial invoice and other documents were falsely created.

K000506

 

www.scourt.go.kr
Barcode for voice output

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$486,667 from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about August 19, 2008 to about August 7, 2013, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of US$446,000,382 as well as 48,180,800,000 KRW as set forth in Attachment 2 of the List of Crimes 3. From about January 12, 2011 to about August 7, 2013, Defendant Kyung Shik Kang defrauded a total of US$329,956,010 as well as 38,646,000,000 KRW as set forth in Attachment 2 of the List of Crimes 3, Numbers 224-791. And from about November 10, 2008 to about September 30, 2010, Defendant Hyun Oh Cho defrauded a total of US$78,151,835 as well as 9,085,400,000 KRW as set forth in Attachment 2 of the List of Crimes 3, Numbers 10-165.

4)   Injured Party Korea Exchange Bank

On March 14, 2014, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, injured party Korea Exchange Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Gasan Digital Branch[2]. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 480 HTPCs to ASI at US$2,980 each for a total of US$1,430,000,' an air waybill, a commercial invoice, a packing list and others. As a matter fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the PO, commercial invoice, and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account 1,508,976,047 KRW from the deceived injured party as supposed payment for sale of export notes receivable.

--------------------------------
2) 'Guro-dong branch of Korea Industrial Bank' as set forth in the arraignment notice is a misentry.

K000507





www.scourt.go.kr

**Barcode for voice output**

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about July 2, 2008 to about September 18, 2014, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of 448,833,161,881 KRW as set forth in Attachment 2 of the List of Crimes 4. From about March 13, 2012 to about September 18, 2014, Defendant Kyung Shik Kang defrauded a total of 409,553,107,357 KRW as set forth in Attachment 2 of the List of Crimes 4, Numbers 61-398. And from about November 4, 2008 to about August 20, 2009, Defendant Hyun Oh Cho defrauded a total of 25,863,136,500 KRW as set forth in Attachment 2 of the List of Crimes 4, Numbers 23-60.

5)   Injured Party KB Kookmin Bank

On June 5, 2012, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, deceived injured party KB Kookmin Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at Yongdeungpo High-tech Comprehensive Financial Center. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 250 HTPCs to ASI at US$2,350 each for a total of US$587,500,' a commercial invoice, a packing list, a multimodal transport bill of lading and others. As a matter fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the above HTPCs were not loaded for shipment contrary to what is indicated in the multimodal transport bill of lading. And the PO, the commercial invoice, the multimodal transport bill of lading and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account 694,307,500 KRW from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about June 8, 2010 to about July 21, 2014, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of 330,736,346,439 KRW as set forth in Attachment 2 of the List of Crimes 5.

K000508





www.scourt.go.kr

Barcode for voice output

From about January 12, 2011 to about July 21, 2014, Defendant Kyung Shik Kang defrauded a total of 320,193,365,189 KRW as set forth in Attachment 2 of the List of Crimes 5, Numbers 16-326. And from about June 8, 2010 to about August 6, 2010, Defendant Hyun Oh Cho defrauded a total of 7,197,932,500 KRW as set forth in Attachment 2 of the List of Crimes 5, Numbers 1-10.

6)   Injured Party Export-Import Bank of Korea

On August 14, 2014, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, deceived injured party Export-Import Bank of Korea by acts such as submitting documents related to exports in the process of applying for export factoring (obligor terms) to the injured party's employee at the main branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting and selling 420 HTPCs to CNBM at US$2,059.20 each for a total of US$864,864,' a commercial invoice, a packing list, a multimodal transport bill of lading and others. As a matter fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and CNBM was fictitious, and the above HTPCs were not loaded for shipment contrary to what is indicated in the multimodal transport bill of lading. And the PO, the commercial invoice, the multimodal transport bill of lading and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$857,886 from the injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about November 8, 2007 to about September 24, 2014, Defendants Hong Seuk Park defrauded the injured party a total of US$239,178,650 as well as 59,698,000,000 KRW as set forth in Attachment 2 of the List of Crimes 6. From about February 25, 2008 to about September 24, 2014, Defendant Chul Wook Shin defrauded a total of US$239,178,650 as well as 58,748,000,000 KRW as set forth in Attachment 2 of the List of Crimes 6, Numbers 3-42. From about March 17, 2011 to about September 24, 2014, Defendant Kyung Shik Kang defrauded a total of US$239,178,650 as well as 45,100,000,000 KRW as set forth in Attachment 2 of the List of Crimes 6, Numbers 17-42.

K000509




www.scourt.go.kr

Barcode for voice output

And from about November 5, 2008 to about June 4, 2010, Defendant Hyun Oh Cho defrauded a total of 9,998,000,000 KRW as set forth in Attachment 2 of the List of Crimes 6, Numbers 7-16.

7)   Injured Party Standard Charted Bank Korea

On June 18, 2012, Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang, according to their roles as described above, injured party Standard Charted Bank Korea by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Guro Digital corporate branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 250 HTPCs to ASI at US$2,350 each for a total of US$587,500,' a commercial invoice, a packing list, a multimodal transport bill of lading and others. As a matter fact, the HTPC that Moneual declared as the goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the above HTPCs were not loaded for shipment contrary to what is indicated in the multimodal transport bill of lading. And the PO, the commercial invoice, the multimodal transport bill of lading and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$587,500 from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about June 22, 2010 to about March 10, 2014, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of US$168,032,182 as set forth in Attachment 2 of the List of Crimes 7. From about January 21, 2011 to about March 10, 2014, Defendant Kyung Shik Kang defrauded a total of US$148,285,257 as set forth in Attachment 2 of the List of Crimes 7, Numbers 24-212. And from about June 22, 2010 to about September 17, 2010, Defendant Hyun Oh Cho defrauded a total of US$11,752,375 as set forth in Attachment 2 of the List of Crimes 7, Numbers 1-16.

B.   Crimes Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang committed upon the Injured Parties

K000510




www.scourt.go.kr

Barcode for voice output

1)   Injured Party Nonghyup Bank

On March 6, 2013, the Defendants, according to their roles as described above, injured party Nonghyup Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Guro Digital branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 420 HTPCs to CNBM at US$2,326.50 each for a total of US$977,130,' a commercial invoice, a packing list, a multimodal transport bill of lading, a statement of acceptance of export declaration and others. As a matter fact, the HTPC that Moneual declared as goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the above HTPCs were not loaded for shipment contrary to what is indicated in the multimodal transport bill of lading. And the PO, the commercial invoice, the multimodal transport bill of lading and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$977,130 from the deceived injured party as supposed payment for sale of export notes receivable. Furthermore, from about March 28, 2012 to about July 25, 2014, the defendants defrauded the injured party a total of US$135,051,319 as set forth in Attachment 2 of the List of Crimes 8.

2)   Injured Party Suhyup Bank

On December 13, 2013, the Defendants, according to their roles as described above, deceived injured party Suhyup Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at the injured party's Apgujeong Station branch. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 500 HTPCs to NEWEGG[3] at US$2,530 each for a total of US$1,265,000,' a commercial invoice, a packing list, and an air waybill.

----------------------------------

3) NEWEGG (Newegg Trading Limited) is the Hong Kong subsidiary of Newegg Inc, a US-based internet shopping mall operator that specializes in computers. Hereinafter, the Hong Kong subsidiary of Newegg that Moneual engaged in transactions with will be referred to as NEWEGG.

K000511





www.scourt.go.kr

Barcode for voice output

As a matter fact, the HTPC that Moneual declared as goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and NEWEGG was fictitious, and the commercial invoice and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account US$1,247,880 from the deceived injured party as supposed payment for sale of export notes receivable. Furthermore, from about December 13, 2013 to about August 1, 2014, the defendants defrauded the injured party a total of US$29,571,027 as set forth in Attachment 2 of the List of Crimes 9.

3)   Injured Party Shinhan Bank

On December 29, 2010, Defendants Hong Seuk Park, and Chul Wook Shin, according to their roles as described above, injured party Shinhan Bank by acts such as submitting documents related to exports in the process of requesting export factoring payments (O/A) to the injured party's employee at Guro Digital Financial Center. The submitted documents include a PO that supposedly proves the content that 'Moneual is exporting/selling 250 HTPCs to ASI at US$2,350 each for a total of US$587,500,' a commercial invoice, a packing list, a bill of lading (B/L), a statement of acceptance of export declaration and others. As a matter fact, the HTPC that Moneual declared as goods for export is an item that is not transacted in the foreign market let alone in the domestic market, and its price is merely about 8,000 KRW. The export relationship between Moneual and ASI was fictitious, and the PO, commercial invoice, and other documents were falsely created.

Thus, the aforementioned defendants colluded and received under Moneual's bank account 667,040,603 KRW from the deceived injured party as supposed payment for sale of export notes receivable.

Besides the above, the defendants colluded by carrying out the roles as previously described and defrauded the injured party. From about December 29, 2010 to about June 25, 2012, Defendants Hong Seuk Park and Chul Wook Shin defrauded the injured party a total of 18,052,935,355 KRW as set forth in Attachment 2 of the List of Crimes 10. And from about June 25, 2012, Defendant Kyung Shik Kang defrauded a total of 11,382,529,330 KRW as set forth in Attachment 2 of the List of Crimes 10, Numbers 11-27.

K000512




www.scourt.go.kr

Barcode for voice output

**2.   Defendants Hong Seuk Park, and Hyun Oh Cho's Creation of False Negotiable Instruments, and Usage of Falsely Created Negotiable Instruments**

Because of repeated fraudulent circular transactions, there was a need to increase the number of fake export transactions, but there was not enough inventory to ship for pro forma export transactions. Thus, starting from on or about August of 2011, the defendants took advantage of Defendant Hyun Oh Cho's HB Line business and created false multimodal transport bills of lading stating that goods were shipped even though in actuality, the goods were not shipped. The defendants colluded to create and then submit the fake transport documents to financial institutions in order to sell export notes receivable.

On March 27, 2014, at HB Line's office at 248 Simin-daero, Dongan-gu, Anyang-si Gyeonggi Knowledge Industry Anyang Center Suite 504, Defendant Hyun Oh Cho issued a falsified multimodal transport bill of lading stating that 'On March 27, 2014, Moneual loaded onto KMTC ULSAN 1405S 420 units of HTPCs worth about US$977,130 of goods' even though in actuality, Moneual did not load the HTPCs for shipment to be exported to CNBM. Moreover, under Hong Seuk Park's direction, on March 28, 2014, a Moneual employee attached the above multimodal transport bill of lading to an export bill purchase application at Industrial Bank of Korea's Guro-dong branch, and submitted it to an Industrial Bank of Korea employee who did not know that the multimodal transport bill of lading was falsely created.

Thus, the defendants colluded and created false negotiable instruments with the purpose of using them, and exercised said instruments. From August 1, 2011 to July 31, 2014, as set forth in Attachment 2 of the List of Crimes 11, the defendants each created false multimodal transport bills of lading and false negotiable instruments, and respectively exercised it 289 times in total.

[Defendant Hyun Oh Cho and his attorney argue that since the judged multimodal transport bill of lading was issued to a registered name, they were non-negotiable, and thus do not fall under negotiable instruments. However, ① the title of the judged multimodal transport bill of lading includes the expression 'bill of lading,' and also lists the name of the ship (Ocean vessel/Voy. No.),





www.scourt.go.kr

**Barcode for voice output**

port of loading, port of discharge, and others, and thus has the format of a bill of lading. Furthermore, in the content of the multimodal transport bill of lading judged in this decision, words that suggest non-negotiability (e.g., Non-Negotiable Unless Consigned To Order) are nowhere to be found (2015 Gohap 55 Records of Evidence pages 5832-6121).  Therefore, regardless of whether the judged multimodal transport bill of lading was issued with a registered name, in accordance with Business Law Articles 861 and 130, it can be transferred by endorsement. ② Furthermore, even if the judged multimodal transport bill of lading cannot be transferred by endorsement, the judged multimodal transport bill of lading is a marketable security that includes a transferable right of claim to the consignee's cargo. So in order to exercise or dispose of that right, it can be interpreted that the instrument has to be produced or issued. Ultimately, the judged multimodal transport bill of lading falls under negotiable instruments as described in Penal Code Article 214 (see Supreme Court Decision 2001 Do 2832 and others).

**3.  Defendant Hyun Oh Cho's Aiding and Abetting the Violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)**

The Defendant assisted Hong Seuk Park in committing fraud on March 28, 2014 when Hong Seuk Park received payment from injured party Industrial Bank of Korea for US$977,130 as set forth in Attachment 2 of the List of Crimes 1 Number 728, and by making the above fraud easier to commit by creating and acting upon the multimodal transport bill of lading as described in Section 2 above. Likewise, the defendant assisted Hong Seuk Park in committing fraud over the course of 289 times from about August 1, 2011 to about July 31, 2014, as set forth in Attachment 2 of the List of Crimes 11.

**4.  Defendants Hong Seuk Park, Kyung Shik Kang, and Hyun Oh Cho's Violation of the Act on External Audit of Stock Companies**

From about August 2007 to about December 2014, Defendant Hong Seuk Park worked as the CEO of Moneual. Defendant Hyun Oh Cho worked as Moneual's managing director from about November 2008 to about March 2009, and managed Moneual's finances as the vice president (VP) of finance from about March 2009 to about September 2010. From about January 2011 to December 2014, Defendant Kyung Shik Kang managed Moneual's financial accounting as the finance director.

K000514





www.scourt.go.kr

**Barcode for voice output**

A.   Defendants Hong Seuk Park and Hyun Oh Cho

Defendant Hong Seuk Park directed Defendant Hyun Oh Cho to proceed as is even after Park received Cho's report that even though Moneual's export/import transactions are fraudulent, he plans to put together financial closing as if the transactions were authentic. Following the above direction, Defendant Hyun Oh Cho decided to create financial statements that reflected the fraudulent export/import transactions as authentic transactions.

1)   Around February 2009 at Moneual's office in Guro-dong, Guro-gu, Seoul, even though Moneual's 2008 sales and net income before tax were only 2,958,000,000 KRW and (-)4,158,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 73,899,227,672 KRW, and 8,615,821,347 KRW, overstating about 70,941,227,672 KRW and 12,773,821,347 KRW. Then, on December 31, 2008, even though the current total shareholders' equity was only about (-)144,000,000 KRW, the defendants recorded the total shareholders' equity as 11,072,405,188 KRW and created Moneual's 2008 income statement and balance sheet with the overstated amount of about 11,216,405,188 KRW. Around June 2009, the defendants disclosed an audit report that attached the fraudulent income statement and balance sheet as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).

2)   Around February 2010 at Moneual's office as written above, even though Moneual's 2009 sales and net income before tax were only 9,861,000,000 KRW and (-)5,543,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 163,711,078,282 KRW and 11,003,049,023 KRW, overstating about 153,850,078,282 KRW and 16,546,049,023 KRW. Then, on December 31, 2009, even though the current total shareholders' equity was only about (-)4,687,000,000 KRW, the defendants recorded the total shareholders' equity as 21,424,361,739 KRW and created Moneual's 2009 income statement and statement of financial condition with the overstated amount of about 26,111,361,739 KRW. Around April 2010, the defendants disclosed an audit report that attached the fraudulent income statement and statement of financial condition as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).




www.scourt.go.kr

**Barcode for voice output**

Thus, the defendants colluded and violated accounting handling standards, and created and publicly disclosed false financial statements.

B.   Defendants Hong Seuk Park and Kyung Shik Kang

Defendant Hong Seuk Park directed Defendant Kyung Shik Kang to proceed as is even after Park received Kang's report that even though Moneual's export transactions are fraudulent, he plans to put together financial closing as if the transactions were authentic. Following the above direction, Defendant Kyung Shik Kang decided to create financial statements that reflected the fraudulent export transactions as authentic transactions.

1)   In or about February 2011 at Moneual's office mentioned above, even though Moneual's 2010 sales and net income before income tax were only 29,340,000,000 KRW, and (-)21,355,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 295,260,439,948 KRW and 17,699,010,768 KRW, overstating about 265,956,439,948 KRW, and 37,643,678,079 KRW. Then, on December 31, 2010, even though the current total shareholders' equity was only about (-)26,042,000,000 KRW, the defendants recorded the total shareholders' equity as 37,643,678,079 KRW and created Moneual's 2010 income statement and statement of financial condition with the overstated amount of about 63,685,678,079 KRW. Around March 2011, the defendants disclosed an audit report that attached the fraudulent income statement and statement of financial condition as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).

2)   Around February 2012 at Moneual's office as written above, even though Moneual's 2011 sales and net income before tax were only 50,120,000,000 KRW and (-)33,751,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 460,539,079,529 KRW and 27,523,156,186 KRW, overstating about 410,357,079,529 KRW and 61,274,156,186 KRW. Then, on December 31, 2011, even though the current total shareholders' equity was only about (-)59,793,000,000 KRW, the defendants recorded the total shareholders' equity as 63,725,005,497 KRW and created Moneual's 2011 income statement and statement of financial condition with the overstated amount of about 123,518,005,497 KRW.

K000516





www.scourt.go.kr

**Barcode for voice output**

Around April 2012, the defendants disclosed an audit report that attached the fraudulent income statement and statement of financial condition as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).

3)    Around February 2013 at Moneual's office as written above, even though Moneual's 2012 sales and net income before tax were only 80,391,000,00 KRW and (-)58,667,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 825,132,396,901 KRW and 66,944,182,707 KRW, overstating about 744,741,396,901 KRW and 125,611,182,707 KRW. Then, on December 31, 2012, even though the current total shareholders' equity was only about (-)118,460,000,000 KRW, the defendants recorded the total shareholders' equity as 90,044,823,025 KRW and created Moneual's 2012 income statement and statement of financial condition with the overstated amount of about 208,504,823,025 KRW. Around April 2013, the defendants disclosed an audit report that attached the fraudulent income statement and statement of financial condition as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).

4)    Around February 2014 at Moneual's office as written above, even though Moneual's 2013 sales and net income before tax were only 82,494,000,000 KRW and (-)65,920,000,000 KRW, the defendants included fraudulent export transaction amounts as described above in sales figures and recorded amounts of 1,140,984,800,757 KRW and 83,526,303,794 KRW, overstating about 1,058,490,800,757 KRW and 149,428,303,794 KRW. Then, on December 31, 2013, even though the current total shareholders' equity was only about (-)184,362,000,000 KRW, the defendants recorded the total shareholders' equity as 139,811,079,880 KRW and created Moneual's 2013 income statement and statement of financial condition with the overstated amount of about 324,173,079,880 KRW. Around April 2014, the defendants disclosed an audit report that attached the fraudulent income statement and statement of financial condition as prepared as described above through the Electronic disclosure system of the Financial Supervisory Service (FSS).

Thus, the defendants colluded and violated accounting handling standards, and created and disclosed false financial statements.

**5.  Defendant Hong Seuk Park's Bribery and Breach of Duty By Giving Bribery**





www.scourt.go.kr

**Barcode for voice output**

A.   Bribes Given to Korea Trade Insurance Corporation's Executives/Employees

In order for Moneual to survive by continuing fraudulent circular transactions and turnover of capital, Moneual needed to continue receiving new loans from financial institutions. Financial institutions regarded Korea Trade Insurance Corporation's insurance and guarantee [short-term export insurance (securitization of export notes receivable), export credit guarantee, etc.] related to Moneual as an important factor of consideration, and based on that consideration, have been purchasing export notes receivable and providing loans. The Defendant decided to lobby Korea Trade Insurance Corporation executives/employees in order to continuously and increasingly receive Korea Trade Insurance Corporation's insurance and guarantee.

1)   Hyun Joo Lee

Hyun Joo Lee managed the tasks of evaluating Moneual and Moneual's offshore customers, and pricing short-term export insurance and guarantee limit while working as head of the Trade Promotion Division at Korea Trade Insurance Corporation from about July 19, 2010 to about September 15, 2011.

On a day between April and May 2011, at Hyun Joo Lee's Korea Trade Insurance Corporation office at 14 Jong-ro, Jongno-gu, Seoul, the defendant gave Hyun Joo Lee 10 gift cards of 500,000 KRW each, totaling about 5 million KRW. The gift cards were given for the sake of thanks for favorable accommodations regarding Moneual's trade financing matters such as increasing Korea Trade Insurance Corporation's short-term export insurance and guaranteed total amount limit from USD 50 million to USD 68 million and others.

Thus, the defendant gave a bribe worth 5 million won in total, to Korea Trade Insurance Corporation executive Hyun Joo Lee, who is deemed a government employee, in connection with the job duty of the latter person.

2)   Hang Man Huh

Hang Man Huh worked on evaluation of Moneual and Moneual's offshore customers, and setting of short-term export insurance and guarantee total amount limit while working as the department manager of Korea Trade Insurance Corporation's Small, Medium, and Upper-Middle Sized Business Project Department 1 and Upper-Middle Sized Business Department from about October 2010 to about January 2014.

K000518

 

www.scourt.go.kr

**Barcode for voice output**

A) On a day between late November and late December 2012, at Hang Man Huh's Korea Trade Insurance Corporation office at 14 Jong-ro, Jongno-gu, Seoul, the defendant gave Hang Man Huh 30 million KRW in cash. The cash was given for the sake of thanks for favorable accommodations regarding Moneual's trade financing matters such as Korea Trade Insurance Corporation's good evaluation of Moneual and Moneual's offshore customers, and increasing Korea Trade Insurance Corporation's short-term export insurance and guaranteed total amount limit, and others.

B) On December 23, 2013, at the Lotte Hotel coffee shop on the first floor, the defendant gave Hang Man Huh 30 million KRW in cash for the sake of thanks described above.

Thus, the defendant gave a bribe worth 60 million KRW to Korea Trade Insurance Corporation employee Hang Man Huh, who is deemed a government employee, in connection with the job duty of the latter person.

3) Hyo Myung Chung

From about January 2009 to about January 2010, Hyo Myung Chung was the Team Manager of the Electronics, Machinery, and Chemistry Department within the Small Business Department at Korea Trade Insurance Corporation. While holding that position, he was responsible for export credit guarantee related to Moneual's offshore importers, and from around then until about October 2014, he provided various trade financing expediencies for Moneual.

On a day between January 30, 2013 and the 31st of the same month, at an entertainment bar called "Aladdin" at 709 Eonju-ro, Gangnam-gu, Seoul, the defendant gave Hyo Myung Chung 10 gift cards of 500,000 KRW each, worth 5 million KRW in total, for the sake of thanks related to Hyo Myung Chung and Korea Trade Insurance Corporation executives/employees' favorable accommodations related to trade financing. Furthermore, as set forth in Attachment 2 of the List of Crimes 12, US$85,133 in cash and gift cards worth 25 million KRW were handed over.

Thus, the defendant gave a bribe worth 118,049,511 won (US$85,133 and 25 million KRW) to Korea Trade Insurance Corporation employee Hyo Myung Chung, who is deemed a government employee, in connection with favors relating to his and/or other Korea Trade Insurance Corporation executives/employees' job duties.

K000519

 

www.scourt.go.kr

Barcode for voice output

4)   Kye Ryong Cho

From about June 2011 to about December 12, 2013, Kye Ryong Cho was president of Korea Trade Insurance Corporation and was responsible for the overall management of Korea Trade Insurance Corporation.

On about May 27, 2013, at a restaurant in the Mapo district in Seoul, the defendant gave Kye Ryong Cho a Woori Bank gift card worth 10 million KRW for favorable accommodations related to Moneual's trade financing matters such as Korea Trade Insurance Corporation's good evaluation of Moneual and Moneual's offshore customers, and increasing Korea Trade Insurance Corporation's short-term export insurance and guaranteed total amount limit, and others.

Thus, the defendant gave a bribe worth 10 million KRW to Korea Trade Insurance Corporation executive Kye Ryong Cho, who is deemed a government employee, in connection with the job duty of the latter person.

5)   In Kyu Hwang

From about January 2013 to about January 2014, In Kyu Hwang was the general manager of business operations at Korea Trade Insurance Corporation and was responsible for the work activities, among others, relating to: initiation and abolishment of the provisions related to trade insurance underwriting including short-term export insurance (securitization of export notes receivable); and the operation of the Global Growth Ladder (SF & Global) Program, which was focused on intensively fostering small and medium sized enterprises.

A)   From about June 13, 2013 at 20:30 until 01:00 the next day, at an entertainment bar called "Aladdin" at 709 Eonju-ro, Gangnam-gu, Seoul, the defendant, in soliciting In Kyu Hwang for favors such as selecting Moneual as a member of the Global Growth Ladder (SF & Global) Program, and otherwise favorably accommodating Moneual in trade financing matters going forward, provided entertainment worth 2.8 million KRW (about 930,000 won for In Kyu Hwang's portion); and delivered 10 gift cards of 500,000 KRW each, worth 5 million KRW in total, through Hyo Myung Chung, the head of Inchon branch of Korea Trade Insurance Corporation.

K000520



www.scourt.go.kr



Barcode for voice output

B)  On a day between September 4, 2013 to the 5th of the same month, at an unidentifiable restaurant in the Ilsanseo district in Goyang, the defendant, through Hyo Myung Chung, delivered 10 gift cards of 500,000 KRW each, worth 5 million KRW in total, to In Kyu Hwang with the same favors solicited as described above.

C)  From about 20:30 to 00:00 on November 14, 2013, at an entertainment bar called "Aladdin" at 709 Eonju-ro, Gangnam-gu, Seoul, the defendant provided entertainment worth 12,070,000 KRW (3,017,500 KRW for In Kyu Hwang's portion) in soliciting In Kyu Hwang for favors to the effect of extensively promoting and publicizing Moneual during K-Sure's Global Growth Ladder (SF&Global) welcome launching ceremony, and together with Hyo Myung Chung and Korea Trade Insurance Corporation's head of the legal department Woo Chan Hwang, altering the special riders of the short-term export insurance (securitization of export notes receivable) into a direction favorable to Moneual, and otherwise favorably accommodating Moneual in trade financing administrative matters going forward.

D)  On a day between December 18, 2013, and the 20th of the same month, at In Kyu Hwang's house located at 128 Injung-ro, 15 beon-gil, Ilsanseo-gu, Goyang-si, the defendant, through Hyo Myung Chung, delivered 10 gift cards of 500,000 KRW each, worth 5 million KRW in total, to In Kyu Hwang with the same favors to the effect as described above.

Thus, the defendant gave a bribe worth 18,947,500 KRW to Korea Trade Insurance Corporation employee In Kyu Hwang, who is deemed a government employee, in connection with the job duty of the latter person.

6)  Woo Chan Hwang

From about December 2011 to about September 2014, as the general manager of the legal department at Korea Trade Insurance Corporation. Woo Chan Hwang was responsible for work activities relating to: the terms of trade insurance including short-term export insurance (securitization of export notes receivable); agreements on the proposed establishment, amendment, and abolishment of bylaws; and the upkeep of bylaws.

A)  From about 20:30 to 00:00 on November 14, 2013, at an entertainment bar called "Aladdin" at 709 Eonju-ro, Gangnam-gu, Seoul, the defendant provided entertainment worth 12,070,000 KRW (3,017,500 KRW for Woo Chan Hwang's portion) in soliciting Woo Chan Hwang for favors to the effect of altering the special riders of the

K000521





www.scourt.go.kr

**Barcode for voice output**

short-term export insurance (securitization of export notes receivable) in a direction favorable to Moneual together with Korea Trade Insurance Corporation's Inchon Branch President Hyo Myung Chung and General Manager of Business Operations In Kyu Hwang, and otherwise favorably accommodating Moneual in trade financing matters going forward.

B) On a day between December 18, 2013, and the 28th of the same month, at Woo Chan Hwang's office at Korea Trade Insurance Corporation at 14 Jong-ro, Jongno-gu, Seoul, the defendant, through Hyo Myung Chung above, delivered 10 gift cards of 500,000 KRW each, worth 5 million KRW in total, to Woo Chan Hwang with the same favors to the effect as described above.

Thus, the defendant gave a bribe worth 8,017,500 KRW to Korea Trade Insurance Corporation employee Woo Chan Hwang, who is deemed a government employee, in connection with the job duty of the latter person.


B.  Bribes Given to Export-Import Bank of Korea Employees

1)  Woo Taek Seo

As the general manager of Korea Export-Import Bank's Small Business Financing Department, and Small, Medium, and Upper-Middle Sized Business Financing Department from about June 29, 2012 to about June 25, 2014, Woo Taek Seo was responsible for the approval, execution, and post-execution management tasks related to Moneual's loan.

A) On October 16, 2012, at 'Sandang,' a Korean restaurant in Cheongdam-dong in Gangnam-gu, Seoul, the defendant gave Woo Taek Seo 50 million KRW in cash with a request to increase Moneual's loan limit since Moneual was in need of a lot of funds.

B) On October 1, 2013, at the Marriott hotel buffet restaurant in Banpo-dong, Seoul, the defendant gave Woo Taek Seo 13 gift cards with a value of 500,000 KRW each, worth 6.5 million KRW in total, for the sake of thanks for helping Moneual to continue receiving loans from Korea Export-Import Bank, and as solicitation for assistance in helping Moneual to continue receiving loans.

K000522





www.scourt.go.kr

**Barcode for voice output**

C) On December 4, 2013, at the above Marriott hotel buffet restaurant, the defendant gave Woo Taek Seo one gift card worth 500,000 KRW by the same token as above in B).

D) On March 26, 2014, at the above Marriott hotel buffet restaurant, the defendant gave Woo Taek Seo 40 million KRW in cash with solicitation for aid in helping Moneual receive an additional loan from Export-Import Bank of Korea.

Thus, the defendant gave a bribe worth 97 million KRW to Export-Import Bank of Korea employee Woo Taek Seo, who is deemed a government employee, in connection with the job duty of the latter person.

2) Chang Jong Lee

As the team leader of Export-Import Bank of Korea's Small Business Finance Department from about January 2, 2012 to about January 1, 2013, Chang Jong Lee was responsible for the approval, execution, and post-execution management tasks related to Moneual's loan. And from about January 2, 2013 to about November 13, 2014, he worked as head of the Moscow branch of the above bank.

As described in the following, the defendant gave the Export-Import Bank of Korea employee Chang Jong Lee, who is deemed a government employee, bribes totaling 105 million KRW in connection with his job for the sake of thanks for increasing Moneual's credit limit at Export-Import Bank of Korea from 9 billion KRW to 30 billion KRW, providing loans to Moneual accordingly to the increased credit limit, and for helping Moneual receive loans from Export-Import Bank of Korea.

A) On or about December 28, 2012, at a coffee shop in Yeoeuido-dong, Yeongdeungpo-gu, Seoul, 10 gift cards of 500,000 KRW each, worth 5 million KRW, was delivered through Moneual's director of finance Kyung Shik Kang.

B) On or about January 2, 2013, at Woori Bank Gasan High-Tech Branch in Gasan-dong, Geumcheon-gu, Seoul, 100 million KRW was deposited into Kookmin Bank account (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-735) through Kyung Shik Kang.

K000523





www.scourt.go.kr

**Barcode for voice output**

C.   Bribery Related to National Tax Service Seoul Regional Office Government Employee Jung Yup Oh

From July 10, 2012 to October 7 of the same year, the defendant received a non-routine corporate income tax investigation regarding Moneual from Team 7 of the International Investigation Administration Bureau of the International Trade Investigation Department of the National Tax Service Seoul Regional Office, where Jung Yup Oh, a level 5 administrative official, was the team leader.

On or about the evening of October 18, 2012, at Samjeong Blowfish Restaurant, located in Cheongdam-dong in Gangnam-gu, Seoul, the defendant gave Jung Yup Oh 30 million KRW in cash for the favorable handling of the investigation over the course of said tax investigation such as ending the investigation as planned and not prolonging the duration, and not expanding the target and scope of the investigation.

Thus, the defendant gave a bribe worth 30 million KRW to government employee Jung Yup Oh in connection with the job duty of the latter person.

D.   Breach of Duty By Giving Bribe

From about April 2007, during the same time KT Networks engaged in intermediary trade capturing distribution margins from HTPCs it purchased from Moneual and exported/sold to ASI, the defendant raised funds by taking advantage of the fact that financial institutions trusted the excellent credit of KT Networks, a subsidiary of a large corporation, and provided generous loans, and used this fact to engage in fraudulent circular transactions and turnover of funds by selling KT Network's electronic promissory notes, and Moneual's trade notes receivable to the financial institutions.

On November 12, 2007, the defendant transferred 2.5 million KRW from the defendant's bank account to Byongha Chun's Woori Bank account (30608231952) for the sake of thanks after soliciting Byongha Chun, a KT Networks employee responsible for Moneaul matters, on the same day for illegitimate favors to the effect of 'in order for Moneual to receive loans from financial institutions and improve sales figures, Moneual needs to continue/expand foreign export transactions with KT Networks serving as the intermediary so please continuously engage in intermediary trade with Moneual; in return for exercising your influence to enable Moneual

K000524





www.scourt.go.kr

**Barcode for voice output**

to continue the transactions, we will provide you a certain amount of commission.' From then on until about November 4, 2013, the defendant transferred to Byongha Chun's Woori and HSBC Hong Kong (491-848214-833) accounts a total of US$223,850 and 105,600,000 KRW on a total of 19 occasions, as set forth in Attachment 2 of the List of Crimes 13.

Thus, the defendant made illegitimate solicitation to a person who handles another person's work in connection with his job duty and provided a total of 355,101,039 KRW (US$223,850 and 105,600,000 KRW).

 **The Recap of the Evidence**

 [2014 Gohap 1348]

Facts of the 1st Judgment

1.  Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial

1.  Police Records of Statement, respectively, of Shi Young Park

1.  Comprehensive Investigative Report

1.  Begin_5(ENG) document, Moneual Inc.'s outgoing foreign wire specifics, specifics of Moneual Inc.'s letter of credit settlements, cash flow of each of Hong Seuk Park's paper companies, withdrawal specifics of Hong Seuk Park's paper companies' deposit accounts, specifics of activity from TO: HENRY, LTI's account at CTBC Bank's Hong Kong branch to an account in the US, and report of funds deposited to Hong Seuk Park's account, specifics of foreign currency receipts, and a chart showing the connection between the funds and the source, contents of Integrated(2) Sheet (ERIC LEE, Loan to PK), specifics of Integrated(2) Sheet (JPA HSBC and JPA), contents of Integrated(2) Sheet [Harold, HAROLD], Integrated(2) Sheet [HAROLD(AHN)], Integrated(2) Sheet (Eric/Harold, HAROLD/ERIC), Integrated(2) Sheet (HAROLD/CJ, HAROLD/Bill), Integrated(2) Sheet (CAOJIN), Integrated(2) Sheet (PP HK),

K000525

K000525





www.scourt.go.kr

**Barcode for voice output**

Integrated(2) Sheet (East King, ZALMAN, BaronZalman), Integrated(2) Sheet (Jennifer, Jennifer/Scott), Integrated(2) Sheet (HP, HP/BILL, HP/CAO JIN, HP/CJ, HP/JPN), Integrated(2) Sheet (MULTIWAY), Integrated(2) Sheet (THC LTD), Integrated(2) Sheet (Berwick Resources Ltd), Integrated(2) Sheet (Berwick Resources Ltd), Integrated(2) Sheet (Chun, Byoung Ha, Chun BH), Integrated(2) Sheet (Park, Taehee), Integrated(2) Sheet (WIMFIELD LTD), Integrated(2) Sheet (Jong Seung Heo), Integrated(2) Sheet (HS PO), Integrated(2) Sheet (AOK), Integrated(2) Sheet (KIM HEE SOO, HP/KIM HEESOO), Integrated(2) Sheet (ETS Int'l H LTD), Integrated(2) Sheet [TONY SHU(HP)], Integrated(2) Sheet (WEL), Integrated(2) Sheet (CHOU), Integrated(2) Sheet (Harold), Integrated(2) Sheet (sorted specifics including source of funds)

Facts of the 2nd Judgment

1. Defendants Hong Seuk Park, Chul Wook Shin, and Kyung Shik Kang's testimonies from the 2nd Protocol of Public Trial
1. Investigative report (Hong Kong investigation matters, etc.), investigative report (HTPC price research), investigative report (evidence of the crime of price fabrication), comprehensive investigative report, bill of indictment (statement of opinion)
1. Moneual Inc. HTPC purchase specifics, Moneual Inc.'s export ledger, specifics of Moneual Inc.'s HTPC export declarations, specifics of Moneual Inc.'s HTPC import declarations, purchase quote for OK System, purchase quote for ACE SYSTEM
1. AMEREX FORPORATION LIMITED registration certificate, a true and correct copy of Moneual Inc.'s corporate register records, PK PARADIGM HOLDING LTD registration certificate

Facts of the 3rd Judgment

1. Defendants Chul Wook Shin, and Kyung Shik Kang's testimonies from the 2nd Protocol of Public Trial

K000526




www.scourt.go.kr
Barcode for voice output

1. Comprehensive investigative report
1. Moneual Inc.'s outgoing foreign wire specifics, specifics of Moneual Inc.'s letter of credit settlements, Begin_5(ENG) document, cash flow of each of Hong Seuk Park's paper companies, withdrawal specifics of Hong Seuk Park's paper companies' deposit accounts, transaction details between Zalman Tech and MULTI WAY ELECTRONICS LIMITED, details of Zalman Tech's falsified transactions

Facts of the 4th Judgment

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Prosecutor's interrogatory of suspect Deok Yeon Won
1. Investigative report (HTPC price research), comprehensive investigative report, bill of indictment (opinion)
1. Dign Lab Inc.'s customs clearance record of HTPC imports, purchase quote for OK System, purchase quote for ACE SYSTEM
1. Dign Lab Inc.'s business operator registration certificate, a true and correct copy of its corporate register records

Facts of the 5th Judgment

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Prosecutor's interrogatory of suspect Jae Shin Moon
1. Investigative report (HTPC price research), bill of indictment (opinion)
1. Current state of things related to Moneual, purchase quote for OK System, purchase quote for ACE SYSTEM

Facts of the 6th Judgment

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Testimony of Byongha Chun from a part of the prosecutor's interrogatory of suspect
1. Comprehensive investigative report, investigative report (HTPC price research), bill of indictment (opinion)
1. Records of KT Networks' exports, details of KT Networks' falsified export declarationss, purchase quote for OK System, purchase quote for ACE SYSTEM, attorney's opinion (KT ENS, Inc.),

K000527





www.scourt.go.kr

Barcode for voice output

business alliance agreement, Moneual's confirmation note and letter of joint and several guarantee (November 25, 2013), materials related to this case's export transactions, and all transaction details related to this case

Facts of the 7th Judgment

1.   Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1.   Prosecutor's interrogatory of Chul Joo Lee
1.   The police department's record of statement (3rd) of Chang Il Choi
1.   Investigative report (HTPC price research), comprehensive investigative report, bill of indictment (opinion)
1.   "Moneual and Atesangsa's customers ledger" and "Moneual and Forasia's customers ledger," Forasia and Atesangsa's export declarations, purchase quote for OK System, purchase quote for ACE SYSTEM, agreement by and between Moneual and Atesangsa for supply of goods and specifics of related export declarations, agreement by and between Forasia and Moneual for supply of goods and specifics of related export declarations
1.   Forasia and EntechCS' business operator registration certificates and corporate register records, and Multiway's business registration documents.



[2015 Gohap 55]

Facts of 4 of the 1st Judgment[4]

1.   Testimonies of each Defendant from the 2nd Protocol of Public Trial
1.   Prosecutor's interrogatories of statements made by Yoon Seok Kim, Kyung Oh Kim, Byuk Su Son, Sung Hoon Kang, Shi Young Park, Chang Il Choi, Ki Seung Lee, Jae Won Yoo, Kwang Shik Ahn, Seok Jun Moon, Jae Kwang Park, Young Hee Lee, Ki Hwan Kim, Jong Hyun Lee, Jae Hwan Ko, Jin Kyun Kim (including Yoo Jin Yim's statement as a part of the prosecutor's 2nd interrogatory of Shi Young Park, and Sang Hoon Kim's statement as a part of the prosecutor's interrogatory of Young Hee Lee)
1.   Respective statements of Wan Seok Lee, Jin Wook Kim, Ji Mo Son, Jae Yeun Song, Bom Yi Cho, Sung Hoon Kang, Chang Hee Choi, Shi Young Park, Ki Hwan Kim (number 434), Jae Young Choi

----------------------------------

4) For statements of evidence from the prosecution, only those that were not separately attached are specified/exemplified.

K000528





www.scourt.go.kr

Barcode for voice output

1. Investigative report (Moneual and etc.; relevant materials attached), investigative report (audit report regarding Moneual's financial statements attached), investigative report (Moneual Inc.'s organization chart, business cards of those involved in loans attached), investigative report (voluntary submission of Woori Bank's loan status materials regarding Moneual), investigative report (price verification of home theater casings), investigative report (loan status table regarding Moneual Inc. submitted by the loan management department of Industrial Bank of Korea attached), investigative report (Industrial Bank of Korea's loan status table regarding Moneual Inc.'s facilities fund loan attached), investigative report (Korea Development Bank's documentary evidence of damage from fraud attached),  investigative report (Woori Bank's loan status table regarding Moneual attached), investigative report (Korea Exchange Bank's documentary evidence of damage from fraud attached), investigative report (Kookmin Bank's documents regarding notes receivable related to Moneual attached), investigative report (materials related to Moneual's loan from Export-Import Bank of Korea attached), investigative report (materials related to Moneual's export factoring from Export-Import Bank of Korea attached), investigative report (Export-Import Bank of Korea's loan approval documents related to Moneual attached), investigative report (SC Bank's documents regarding notes receivable related to Moneual attached), investigative report (credit evaluation materials regarding Moneual attached), investigative report (Nonghyup Bank's loan status table regarding Moneual attached), investigative report (copies of Nonghyup Bank's loan documents regarding Moneual attached), investigative report (Shinhan Bank's documentary evidence of damage from fraud attached),  investigative report (each individual bank's loan status table regarding Moneual attached), investigative report (total amount of bank loans related to Moneual), investigative report (each individual bank's representative example of a loan application attached), investigative report (calculated amount of each accused person's participation of the misappropriation), investigative report (copy of fake bill of lading attached), investigative report (analysis of Moneual's falsified accounting of financial statements), investigative report (verification report of the time of Moneual's audit report disclosure), investigative report (additional report of an executive's confirmation letter dated February 6, 2010)

1. Each CRETOP material, each a true and correct copy of corporate register records, 2008 audit report, 2009 audit report, 2010 audit report, 2011 audit report, 2011 audit report regarding consolidated financial statements, 2012 audit report, 2012 audit report regarding consolidated financial statements, 2013 audit report, 2013 audit report regarding consolidated financial statements, each fixed limit

K000529





www.scourt.go.kr

Barcode for voice output

record, Woori Bank's materials regarding Moneual, Inc.'s 'loan/guarantee/surety summary,' HTPC (Home Theater Personal Computer Case) price list, loan status table part 1 regarding Moneual, Inc., facilities fund loan status table regarding Moneual, Inc., Industrial Bank of Korea's loan status table part 1 regarding Moneual, Inc., 6 sets of trade finance loan application, 98 sets of export bill purchase applications, status of Moneual, list of Moneual's management (including those decision makers with discretionary power), 1 sheet of Moneual's loan status, 14 sets of the details of loan approval applications, 11 sets of D/A, O/A, L/C letters of request for purchase and attached documents, copy of D/A, O/A, L/C foreign currency loan  application and foreign currency transaction agreement, copy of 3 sets of Korea Trade Insurance Corporation's export insurance securities (EFF), 1 set of import and export transaction flowchart for each importer (created by Korea Development Bank), loan status regarding Moneual, Inc. (number 512), list of the people-in-charge of different kinds of foreign currency , Woori Bank's loan status table regarding Moneual attached, Moneual's loan list, evaluation statement and list of evaluators (including those decision makers with discretionary power), loan evaluation report regarding Moneual, Moneual/Korea Exchange Bank's loan transaction letter of commitment, foundry agreement, comprehensive agreement, D/A and O/A letters of request for purchase and attached documents, Korea Trade Insurance Corporation's export insurance securities (EFF), 1 set of the details of foreign currency transaction specifics, 1 set of Moneual's loan status table (excel file), 1 set of import and export transaction flowchart for each importer (created by Korea Exchange Bank), status of Moneual, Inc.'s loans unrelated to export notes receivable, status of Moneual, Inc.'s loans unrelated to export notes receivable (based on agreements), status of OA negotiations regarding Moneual, Inc., execution details for each purchasing fund for 2010 (actually disbursed portions), execution details for each purchasing fund for 2011 (actually disbursed portions), execution details for each purchasing fund for 2012 (actually disbursed portions), execution details for each purchasing fund for 2013 (actually disbursed portions), execution details for each purchasing fund for 2014 (actually disbursed portions), O/A export notes receivable purchase application, D/A export notes receivable purchase application, 2 sets of short-term export insurance (EFF) securities, Moneual, Inc.'s handling of export funding loan status by each year,

K000530




www.scourt.go.kr

Barcode for voice output

each export factoring purchase and repayment date related to Moneual, December 2013 borrower submitted transaction status report related to Moneual, affiliated transaction status documents related to Moneual already submitted (table of liabilities), borrower submitted short term export fund approval application documents regarding Moneual with an approval date of July 15, 2014 for US$18.5 million, borrower submitted offshore market development fund approval application documents regarding Moneual with an approval date of December 2, 2013 for 500 million KRW, borrower submitted comprehensive export financing approval application documents regarding Moneual with an approval date of December 4, 2013 for 9 billion KRW, borrower submitted special credit loan approval application documents regarding Moneual with an approval date of June 4, 2010 for 1 billion KRW, copy of KEXIM's bylaws of loan authorization, report regarding the treatment of Moneual's export factoring, export factoring letter of commitment (for revolving credit line), 1 set of each export note receivable purchase limit set-up application and enclosure, 1 set of each export note receivable purchase application and enclosure, report regarding the treatment of  Moneual, Inc.'s loans, status of treatment of Moneual's loans (credit loan), 1 set of each current status regarding loan (export financing) limit set-up and related files regarding Moneual, Inc., status of loans regarding Moneual, Inc. (number 578), set of documents that shows the purchase on June 22, 2010, from SC Bank for US$587,500 for Moneual's export notes receivable for export to ASI (R/S method), set of documents that shows the purchase on June 18, 2010, from SC Bank for US$587,500 for Moneual's export notes receivable for export to ASI (O/A method), set of documents that shows that when Moneual imported raw materials, SC Bank set up letters of credit, and when the shipping documents arrived, SC Bank first made a settlement price of US$996,800 to Moneual's exporter on June 29, 2010 (L/C method), credit evaluations regarding ASI and Wanxing, loan status regarding Moneual, Inc. (R/C), transaction specifics of Moneual's B2B purchase loan (February 1, 2011 – November 20, 2014 current), loan status regarding Moneual, Inc. (L/C), loan status regarding Moneual, Inc. (O/A), copy of export bill of exchange purchase (O/A) method loan documents, copy of foreign company working capital loan documents, copy of integration limit (import letter of credit) loan documents, copy of credit sales collateral loan documents, copy of purchasing fund loan documents, document file of Moneual, Inc.'s bonds (Suhyup Bank, Apgujeong station branch),





www.scourt.go.kr

Barcode for voice output

document file of Moneual, Inc.'s payables (Suhyup bank Apgujeong station branch), status of the treatment of loans related to Moneual per year, loan approval application for operation and facilities fund, bills bought O/A loan transaction letter of commitment, O/A purchase applications (total 27 cases) and attached documents (total 27 cases), 1 set of Moneual's loan status (list of damages from fraud), 12 sets of loan status materials regarding Moneual, Moneual's loan status for each bank, Transaction flow, 9 different sets of export notes receivable purchase applications and attached documents for each bank, list of the amount of fraud per each accused person, Bill of Lading (ORIGINAL), details of trade finance fraud regarding Moneual, Inc.'s exploitation of fake bills of lading, loan status per each bank, 289 copies of bills of lading, search results of officially disclosed documents regarding Moneual, confirmation letter by a management officer, trade finance fraud, main usage of funds siphoned off to personal safes

Facts of A. 1) of the 5th Judgment[5]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. A part of statements made by Hyun Joo Lee from the prosecutor's 1st interrogatory of suspect
1. Investigative report (materials related to the relationship of duties of accused person Hyun Joo Lee), investigative report (details of personnel matter records of accused person Hyun Joo Lee attached)
1. Copy of the total limit of loan guarantee based on importing region, document regarding the total limit of loan guarantee based on importing region, export insurance acceptance department's approval documents (director's discretionary decision), export insurance acceptance department's matters for discussion, export insurance acceptance department's resolution

Facts of A. 1) of the 5th Judgment[6]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. The prosecutor's 1st, 3rd, and 4th interrogatories of statements made by Hang Man Huh (the 3rd and 4th are each a part of the statements)
1. Prosecutor's record of statement regarding Yoo Jin Yim, Shi Young Park, Kyung Shik Kang, Yoon Suk Kim, Ji Mo Son, Jin Wook Kim, Deung Wook Cho, Kwang Kwak, Wan Suk Lee, and Jin Woo Kim

---------------------------------

5) For statements of evidence from the prosecution, only those from the appended supplement volume 5 are specified/exemplified.
6) For statements of evidence from the prosecution, only those from the appended supplement volume 1 are specified/exemplified.

K000532




www.scourt.go.kr

Barcode for voice output

1. Affidavit of Yoo Jin Yim
1. Investigative report (Hang Man Huh's resume attached), investigative report (Moneual's tax investigation result), investigative report (photographs and video of the director's office attached), investigative report (reconfirmation of visit log)
1. Hang Man Huh's resume, Hong Seuk Park's Google calendar schedule, call specifics, imaging of the saved contents of Hong Seuk Park's cell phone, Google calendar schedule (Hong Seuk Park's account) material organized into an Excel file, Google calendar schedule (Yoo Jin Yim's account) material organized into an Excel file, text message specifics saved on Hong Seuk Park's cell phone (only the content related to Korea Trade Insurance Corporation extracted), email specifics saved on Hong Seuk Park's cell phone (only the content related to Hang Man Huh extracted), Hong Seuk Park's call specifics on December 23, 2013, Hong Seuk Park's call specifics on March 3, 3014, account transaction specifics, photograph that shows [Hong Seuk Park] putting money in a paper envelope, photograph that shows [Hong Seuk Park] putting money in a 10 pack Marlboro cigarette carton, Hang Man Huh's call specifics, and outgoing and incoming cell phone text messaging specifics, Hong Seuk Park's cash withdrawal specifics (December 2008 – September 2014), Hong Seuk Park's cash withdrawal specifics (years 2011-2012), Hong Seuk Park's cash withdrawal specifics (years 2011-2013), short-term export insurance limit set-up record related to Moneual, photograph, monthly attendance record materials, visit log, CD of videos and photographs, floor plan of Korea Trade Insurance Corporation's 3rd floor, photograph, photograph of partition, specifics of EFF insurance policy issuance related to Moneual, specifics of Moneual's limit set-up (Hang Man Huh's approval portion)


Facts of A. 3) of the 5th Judgment[7]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Investigative report (materials regarding accused person Hyo Myung Chung's  export insurance regarding Moneual, and related approvals within the duties of his job attached), investigative report (cash transaction specifics regarding Hong Seuk Park and Hyo Myung Chung's bribery charges), investigative report (Hyo Myung Chung's transaction details), investigative report (schedule related to Hyo Myung Chung within Hong Seuk Park's schedule details attached), investigative report (emails related to Moneual, Inc. from Hyo Myung Chung's email specifics attached),

K000533





www.scourt.go.kr

Barcode for voice output

investigative report (report of Korea Trade Insurance Corporation guarantee (insurance) issuance and other related Hyo Myung Chung matters), investigative report (documents related to the selection of members for the Global Growth Ladder program attached), investigative report (documents related to the selection of Korea Trade Insurance Corporation's Trade Champ Club attached), investigative report (emails related to Moneual's export insurance system improvement attached), investigative report (gift card transaction details of the gift cards Hyo Myung Chung received from Hong Seuk Park), investigative report (telephone specifics and materials related to proving that the gift cards were accepted without charge), investigative report (credit card transaction details related to Hong Seuk Park's 'Aladdin' hostess bar drink tab attached)

1. Internal materials regarding Hyo Myung Chung's approvals within the scope of his job related to Moneual's export insurance and application, Hyo Myung Chung's email materials attached, 1 copy of 'enactment of operating guidelines for the intensive fostering of small and medium export enterprises [Global Growth Ladder (SF&Global) program]' dated May 30, 2013, copy of 'Global Growth Ladder (SF&Global) program member recruitment' dated June 14, 2013, copy of 'k-sure Global Growth Ladder (SF&Global) welcome ceremony' dated September 16, 2013, copy of Trade Champ Club implementation plan official notification from around May 2010, copy of Trade Champ Club member selection result report from around July 2010,  gift card transaction details of the gift cards Hyo Myung Chung received from Hong Seuk Park, Hyo Myung Chung's AK Golf transaction related materials, Hyo Myung Chung's Deoksu Oriental Clinic transaction related materials

Facts of A. 4) of the 5th Judgment[8]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. The prosecutor's 4th interrogatories of statements made by Kye Ryong Cho
1. Investigative report (verification of the place of use and the user of gift card purchased by Hong Seuk Park on May 27, 2013), investigative report (presumption of 20 gift cards received by Kye Ryong Cho), investigative report (verification of additional users of gift card purchased by Hong Seuk Park)

--------------------------------

8) For statements of evidence from the prosecution, only those from the appended supplement volume 7 are specified/exemplified.

K000534





www.scourt.go.kr

Barcode for voice output

1. Enactment of operation manual for 'SF & Global Program' (May 2013), 'Global Growth Ladder program (SF & Global program)' member recruitment notice (June 2013), K-sure Global Growth Ladder opening ceremony (September 2013), 2nd Global Growth Ladder ('SF & Global program)' recruitment plan for prospective companies, details of 20 gift cards received by Kye Ryong Cho, 1 set of usage details of 20 gift cards with 500,000 KRW each purchased on May 27, 2013, 2 sets of official investigation cooperation request notice, 3 copies of Goun Skin's business notes for 2013, 1 copy of Korea Trade Insurance Corporation's task log, 1 copy of credit card transaction details at Dongdo DNC (Corp.), 1 set of reply email output from Ann Clinic, 1 copy of Jeong Ian Oriental Medical Clinic's daily payment ledger, 1 copy of each business log and account inquiry of Aesthetic Skin N Slim, investigation cooperation request (inquiry regarding National Health Insurance medical care benefits details), response to details of medical care benefits, details of medical care benefits

Facts of A. 5), and 6) of the 5th Judgment[9]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. The prosecutor's interrogatory of statement made by each Woo Chan Hwang, and In Kyu Kwang (In Kyu Kwang's is a part of a testimony)
1. Investigative report (documents related to Global Growth Ladder program member selection attached), investigative report (emails related to Moneual's export insurance system improvement attached), investigative report (gift card transaction details of the gift cards In Kyu Hwang received from Hong Seuk Park attached), investigative report (materials related to EFF system improvement request attached), investigative report (usage tracking result report of gift card received by In Kyu Hwang), investigative report (Moneual's corporate credit card used by Hong Seuk Park attached)
1. Draft and official notification of the 'enactment of operating guidelines for the intensive fostering of small and medium export enterprises [Global Growth Ladder (SF&Global) program]' dated May 30, 2013, official notification of 'Global Growth Ladder (SF&Global) program member recruitment' dated June 14, 2013, 'Global Growth Ladder ('SF & Global program)' prospective company selection result report' official notification dated July 25, 2013,

---------------------------------

9) For statements of evidence from the prosecution, only those from the appended supplement volume 8 are specified/exemplified.

K000535





www.scourt.go.kr

Barcode for voice output

8 proposals and official email notifications of 'K-sure Global Growth ladder welcome ceremony' dated September 16, 2013, emails related to changes in special circumstances, corporate credit card transaction details

Facts of B. 1) of the 5th Judgment[10]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. A part of the statements made by Woo Taek Seo from the prosecutor's interrogatory
1. Each interrogatory of statement made by Defendant Hong Seuk Park (each of Shi Young Park and Yoo Jin Yim's statements from the 3rd examination with both Hong Seuk Park and Kyung Shik Kang together is included in Kyung Shik Kang's testimony)
1. Investigative report (verification of Hong Seuk Park and Woo Taek Seo's dining location), investigative report (verification of circumstances of Woo Taek Seo and Hong Seuk Park's breakfast meeting), investigative report (photo of the reproduced scene in which money is put into a tissue box attached), investigative report (Hong Seuk Park's vehicle log attached), investigative report (verification of gift card transaction details)
1. Notes related to Woo Taek Seo and Young Hee Lee from Hong Seuk Park's Google schedule (excerpt), notes related to Woo Taek Seo and Young Hee Lee from Yoo Jin Yim's Google schedule (excerpt), 10 prints of photographs, copy of employee specifics table, 8 prints of continuous sequential photographs of the reproduced scene, 1 set of each vehicle log (October 2012 and March 2014), 1 set of each gift card transaction details, additional gift card transaction details (12 sheets)

Facts of B. 2) of the 5th Judgment [11]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. The prosecutor's interrogatory of statement made by Chang Jong Lee (numbers 905, and 912 are each a part of the statements)

---------------------------------
10) For statements of evidence from the prosecution, only those from the appended supplement volume 2 are specified/exemplified.
11) For statements of evidence from the prosecution, only those from the appended supplement volume 3 are specified/exemplified.

K000536



www.scourt.go.kr



Barcode for voice output

1. The prosecutor's interrogatories of statements made by defendants Hong Seuk Park, and Kyung Shik Kang
1. Statements of each Kyung Shik Kang, and Hong Seuk Park
1. Investigative report (KEXIM factoring and other information brochures attached), investigative report (materials related to the one hundred million KRW received by Chang Jong Lee), investigative report (Chang Jong Lee's promissory note attached), investigative report (Chang Jong Lee's personnel file attached), investigative report (materials related to 3 loan approvals by Chang Jong Lee as the person-in-charge attached), investigative report (accused person's account transaction details attached), investigative report (affidavit, testimony, gift card transaction details and others attached)
1. Export-Import Bank of Korea's easy to understand export factoring usage guide, Export-Import Bank of Korea's SME institution guide, transaction specifics of Kyung Shik Kang's account (Woori Bank), promissory note, wire transfer slip, 1 each of photographs of bank account book and others, 1 set of Chang Jong Lee's personnel file, 1. Status of the person-in-charge at Moneual related to export financing, 2. Hidden Champion credit line (limit 30 billion KRW), 3. Short-term export fund (each $1,750 USD), 4. Short-term comprehensive export financing (each 9 billion KRW)


Facts of C. of the 5th Judgment[12)]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Part of the statement from the prosecutor's interrogatory of statement made by Jung Yup Oh (Part 3 includes Defendant Hong Seuk Park's testimony)
1. The prosecutor's interrogatories of statements made by defendants Hong Seuk Park, and Kyung Shik Kang
1. Part of the statement from the prosecutor's interrogatory of statement made by Jong Hwee Yang
1. Investigative report (photograph that shows packaging 30 million KRW in cigarette cartons and Mon Cher Tonton box attached), investigative report (accused person Jung Yup Oh's personnel file and others attached)
1. 8 photographs, personnel file, 2 transaction statements

---------------------------------

12) For statements of evidence from the prosecution, only those from the appended supplement volume 4 are specified/exemplified.

K000537





www.scourt.go.kr

Barcode for voice output

Facts of D. of the 5th Judgment[13)]

1. Defendant Hong Seuk Park's testimony from the 2nd Protocol of Public Trial
1. Part of the statement from the prosecutor's 1st interrogatory of statement made by Byongha Chun
1. The prosecutor's interrogatory of statement made by Chul Wook Shin
1. The prosecutor's interrogatories of statements made by each Shi Young Park, Young Chul Kwak, Chul Wook Shin, and Jong Tae Kwak
1. Investigative report (KT Networks' margin depreciation rate materials), investigative report (Byongha Chun's HSBC account attached), investigative report (conversion of USD received by Byongha Chun)
1. Business partnership contract, each report (numbers 999, 1002), reply to information material request, KT Networks' export declarations specifics, account transaction specifics (number 1015), ASI's accounts receivable outstanding balance specifics, KT Networks' profit margin table regarding ASI, copy of KT Networks' internal approval documents, excerpt of Hong Seuk Park's IBK account transaction details, PK Holdings account transaction details, HSBC transaction detail specifics under Byongha Chun's name
1. Business operator registration certificate (KT ENS, Corp.)

**Application of Laws**

1. Legal Provisions Applicable to the Facts of Criminal Offense
   A. Defendant Hong Seuk Park

---------------------------------

13) For statements of evidence from the prosecution, only those from the appended supplement volume 6 are specified/exemplified.

14) In Article 4 Paragraph 2, The Act on the Aggravated Punishment, Etc. of Specific Economic Crimes, the elements of the crime of unlawful expatriation of assets to foreign country are divided into a front part and a back part. The judged action of unlawful expatriation of assets to foreign country violated the front part of the foregoing paragraph. To wit, the defendant's act is applicable to when one commits an act knowing that it violates the law by expatriating domestic property to a foreign country, and said act allows him to escape the rule and administration of the Republic of Korea's laws and institutions, and by one's own accord, moves domestic property to a foreign country with the cognizance that one can consume, accumulate, conceal, etc. and leave the property in such circumstances in which one can control/manage it, and bring about circumstances that can put the Republic of Korea or the Republic of Korea's citizens' property open to risk (flight) (See Supreme Court April 29,2005 Decision 2002 Final 7262, and others). Thus, the assessment that it is unclear that the elements of the crime in the back part of the foregoing paragraph (obligation to return back to the country the concealed/disposed Republic of Korea or the Republic of Korea's citizens' property by statute) does not apply can't be considered in a favorable light for the judged violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Property Moving to Foreign Country). The defendant and his counsel's assertion which stands on a different premise than the aforementioned will not be accepted [by this court].

K000538





www.scourt.go.kr

Barcode for voice output

Law on the Aggravated Punishment, Etc. of Specific Economic Crimes Article 4 Paragraph 2 Sub-Paragraph 1 front part[14] (Crime of Unlawful Expatriation of Assets to Foreign Country, collectively), old customs law (before amendment to law No. 12159 on January 1, 2014, is the same as the following) Part 2 of Article 270, Article 271 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about September 9, 2013 to about December 26, 2013), each customs law Part 2 of Article 270 Paragraph 3, Article 241 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about January 27, 2014 to about July 31, 2014), each customs law Article 276 Paragraph 2 Sub-Paragraph 4, Article 241 Paragraph 1, Penal Code Article 30 (fraudulent export declarations and fraudulent import declarations), each The Act on Aggravated Punishment, Etc. of Specific Economic Crimes Article 3 Paragraph 1 Sub-Paragraph 1, Penal Code Article 347 Paragraph 1, Article 30 (fraud, comprehensively for each injured party), each Penal Code Article 216, Article 30 (creating fraudulent negotiable instrument), each Penal Code Article 217, Article 216, Article 30 (putting the fraudulent negotiable instruments to use), each law regarding external audit of corporations (before amendment to law No. 12148 on December 30, 2013, is the same as the following) Article 20 Paragraph 1, Article 13, Penal Code Article 30 (creation and disclosure of false financial statements), each Penal Code Article 133 Paragraph 1, Article 129 Paragraph 1 (bribery, Penal Code Article 132 and trade insurance law Article 52 for Hyo Myung Chung, trade insurance law Article 52 for Hyun Joo Lee, Hang Man Huh, Kye Ryoong Cho, In Kyu Hwang, and Woo Chan Hwang, additional Aggravated Punishment, Etc. of Specific Economic Crimes Article 4 Paragraph 1 for Woo Taek Seo and Chang Jong Lee, bribery included for Hang Man Huh, Hyo Myung Chung, In Kyu Hwang, Woo Chan Hwang, Woo Take Seo, and Chang Jong Lee), Penal Code Article 357 Paragraph 2, Paragraph 1 (breach of duty by giving bribe, collectively)

B.  Defendant Chul Wook Shin

Old customs law Article 270.2, Article 241 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about September 9, 2013 to about December 26, 2013), each customs law Part 2 of Article 270 Paragraph 3, Article 241 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about January 27, 2014 to about July 31, 2014), each customs law Article 276 Paragraph 2 Sub-Paragraph 4, Article 241 Paragraph 1, Penal Code Article 30 (fraudulent export declarations and fraudulent import declarations), Foreign Exchange Transactions Act Article 29 Paragraph 1 Sub-Paragraph 6, Article 18 Paragraph 1, Penal Code Article 30 (undeclared capital transaction,

K000539





www.scourt.go.kr

Barcode for voice output

collectively), The Act on Aggravated Punishment, Etc. of Specific Economic Crimes Article 3 Paragraph 1 Sub-Paragraph 1, Penal Code Article 347 Paragraph 1, Article 30 (fraud, comprehensively each injured party)

C.   Defendant Kyung Shik Kang

Old customs law Article 270 Part 2, Article 241 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about September 9, 2013 to about December 26, 2013), each customs law Article 270 Part 2 Paragraph 3, Article 241 Paragraph 1, Penal Code Article 30 (regarding fabricating export prices from about January 27, 2014 to about July 31, 2014), each customs law Article 276 Paragraph 2 Sub-Paragraph 4, Article 241 Paragraph 1, Penal Code Article 30 (fraudulent export declarations and fraudulent import declarations), Foreign Exchange Transactions Act Article 29 Paragraph 1 Sub-Paragraph 6, Article 18 Paragraph 1, Penal Code Article 30 (undeclared capital transaction, collectively), The Act on Aggravated Punishment, Etc. of Specific Economic Crimes Article 3 Paragraph 1 Sub-Paragraph 1, Penal Code Article 347 Paragraph 1, Article 30 (fraud, comprehensively each injured party), each law regarding external audit of corporations Article 20 Paragraph 1, Article 13, Penal Code Article 30 (creation and disclosure of false financial statements)

D.   Defendant Hyun Oh Cho

Each law related to aggravated punishment for specific economic crime Article 3 Paragraph 1 Sub-Paragraph 1, Penal Code Article 347 Paragraph 1, Article 30 (fraud, comprehensively each injured party), each Penal Code Article 216, Article 30 (creating fraudulent negotiable instrument), each Penal Code Article 217, Article 216, Article 30 (exercising falsely created negotiable instrument), each law related to aggravated punishment for specific economic crime Article 3 Paragraph 1 Sub-Paragraph 1, Penal Code 347 Paragraph 1, Article 32 Paragraph 1 (aiding and abetting fraud regarding injured party Industrial Bank of Korea, Korea Development Bank, and Woori Bank, comprehensively each injured party), The Act on Aggravated Punishment, Etc. of Specific Economic Crimes Article 3 Paragraph 1 Sub-Paragraph 2, Penal Code Article 347 Paragraph 1, Article 32 Paragraph 1 (aiding and abetting fraud regarding injured party Korea Exchange Bank, collectively), each law regarding external audit of corporations Article 20 Paragraph 1, Article 13, Penal Code Article 30 (creation and disclosure of false financial statements)

K000540





www.scourt.go.kr

Barcode for voice output

1.  Selection of Punishment
    Imprisonment for a specified period for each crime of the violation of each The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Crime of Unlawful Expatriation of Assets to Foreign Country), each crime in violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud), each crime of aiding and abetting the violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud) (except for injured party Korea Exchange Bank). Imprisonment for each crime of violation of customs laws stemming from manipulation of export prices, each crime of violation of Foreign Exchange Transactions Act, each crime of creating fraudulent negotiable instruments, each crime of violation of laws regarding external audits of corporations, each crime of bribery, and crime of breach of duty by giving bribe.

1.  Mitigation of punishment for aiding and abetting
    Defendant Hyun Oh Cho: Penal Code Article 32 Paragraph 2, Article 55 Paragraph 1 Sub-Paragraph 3 [each crime of aiding and abetting the violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)]

1.  Aggravation for concurrent crimes

    A.  Defendant Hong Seuk Park
        Penal code Article 37 front part, Article 38 Paragraph 1 Sub-Paragraph 2 and Sub-Paragraph 3, Article 50, Customs law Article 278 [except for each crime resulting from the violation of customs law due to falsified report of exports and falsified report of imports, regarding the sentence for each remaining crime, the most severely punishable violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud) multiple offenses aggravated sentence, each fraudulent export declarations and fraudulent import declarations resulting from violation of customs law fined together]

    B.  Defendant Chul Wook Shin
        Penal code Article 37 all paragraphs, Article 38 Paragraph 1 Sub-Paragraph 2 and Sub-Paragraph 3, Article 50, Customs law Article 278 [except for each crime resulting from the violation of customs law due to falsified report of exports and fraudulent report of imports, regarding the sentence for each remaining crime, the most severely punishable circumstances of crime was on the injured party Industrial Bank of Korea in relation to the crime in violation of the Act on Aggravated

K000541



www.scourt.go.kr



Barcode for voice output

Punishment, Etc. of Specific Economic Crimes (Fraud) multiple offenses aggravated sentence each fraudulent export declarations and fraudulent import declarations resulting from violation of customs law fined together]

C. Defendant Kyung Shik Kang

Penal code Article 37 all paragraphs, Article 38 Paragraph 1 Sub-Paragraph 2 and Sub-Paragraph 3, Article 50, Customs law Article 278 [except for each crime resulting from the violation of customs law due to falsified report of exports and fraudulent report of imports, regarding the sentence for each remaining crime, the most severely punishable circumstances of crime was on the insured party Industrial Bank in relation to the crime in violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud) multiple offenses aggravated sentence each fraudulent export declarations and fraudulent import declarations resulting from violation of customs law fined together]

D. Defendant Hyun Oh Cho

Penal code Article 27 all paragraphs, Article 38 Paragraph 1 Sub-Paragraph 2, Article 50 [the most severely punishable circumstances of crime was on the injured party Korea Development Bank in relation to the crime in violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud) multiple offenses aggravated sentence]

1. Mitigation of Punishment in Extenuation of Circumstances

Defendant Hyun Oh Cho: Penal Code Article 53, Article 55 Paragraph 1 Sub-Paragraph 3 (favorable mitigating circumstances from the below grounds for sentencing)

1. Imprisonment in a workhouse

A. Defendant Hong Seuk Park: Penal Code Article 70 Paragraph 2, Article 69 Paragraph 2

B. Defendant Chul Wook Shin: Each Penal Code Article 70 Paragraph 1, Article 69 Paragraph 2

1. Additional Assessment of Monetary Imposition

Defendant Hong Seuk Park: The Act on Aggravated Punishment, Etc. of Specific Economic Crimes Article 10 Paragraph 3, and Paragraph 1

**Grounds for Sentencing**

1. Range of Punishment

K000542





www.scourt.go.kr

**Barcode for voice output**

A. Defendant Hong Seuk Park

Imprisonment of 10 years to 45 years, and a fine of 63.05 million KRW to 26.82 billion KRW [1,341 instances (number of times of falsified export declarations and falsified import declarations) x (50 thousand KRW to 20 million KRW)]

B. Defendants Chul Wook Shin and Kyung Shik Kang

Imprisonment 5 years to 45 years, and a fine of 57.7 million KRW to 23.08 billion KRW [1,154 instances x (50,000 KRW to 20 million KRW)]

C. Defendant Hyun Oh Cho

Imprisonment of 2 years 6 months to 22 years 6 months

2. Examination of Criteria for Determination of Punishment

A. Defendant Hong Seuk Park

1) Each crime of the violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (fraud)

o Determination of Category

- Crime of Fraud > Organized Fraud > more than 30 billion KRW (the 5th category)
- Due to concurrent crimes of the same kind, the amount of profit will be added up to determine the category

o Special Factors for Determination of Punishment

- Instances in which one plays a leading role in planning the criminal offense of fraud, or commands the execution (the act; an aggravating factor)
- Instances in which the target of the crime is a multitude of injured parties, or the crime is repeatedly committed over a considerable period of time (the act; an aggravating factor)
- When the injured party does not want punishment, or a substantial part of the damage has been recovered (the actor/other factors; a mitigating factor)
- Turning oneself in (the actor/other factors; a mitigating factor)

o Determination of Recommended Punishment

K000543





www.scourt.go.kr

**Barcode for voice output**

- Imprisonment of more than 11 years (aggravating scope; the act related factor of the same number will be considered more severely than the actor/other factors)

2) Each Crime of Bribery
   o Determination of Category
     - Crime of bribery > bribe-offering > more than 100 million KRW (the 4th category)
     - Due to concurrent crimes of the same kind, the amount of bribes given will be added up to determine the category
   o Special Factors for Determination of Punishment
     - Turning oneself in (mitigating factor)
   o Determination of Recommended Punishment: Imprisonment of 2 years to 3 years (an area of mitigation)

3) Crime of Breach of Duty by Giving Bribe
   o Determination of Category
     - Crime of second offense of dereliction of duty > dereliction of duty > greater than 100 million KRW (the 3rd category)
   o Special Factors for Determination of Punishment
     - Actively giving bribe (aggravating factor)
     - Turning oneself in (mitigating factor)
   o Determination of Recommended Punishment: Imprisonment of 10 months to 1 year 6 months (standard scope)

4) There does not exist criteria for determination of punishment in place for the crime in violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Crime of Unlawful Expatriation of Assets to Foreign Country), each crime of violation of customs law, each crime of creating fraudulent negotiable instruments, each crime of using falsely created negotiable instruments, and each crime of violation of laws regarding external audits of corporations. Including each crime above, all crimes committed by the defendant are multiple offenses in the front part of Article 37 of Penal Code. In regards to the defendant, compliance with at least (11 years) of recommended punishment is requested for the floor within criteria for determination of punishment for each crime of the violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud).

**K000544**



www.scourt.go.kr



Barcode for voice output

B.  Defendant Chul Wook Shin

   1)  Each crime of the violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)

      o  Determination of Category

         -  Crime of Fraud > Organized Fraud > more than 30 billion KRW (the 5th category)

         -  Due to concurrent crimes of the same kind, the amount of profit will be added up to determine the category

      o  Special Factors for Determination of Punishment

         -  Instances in which the target of the crime is a multitude of injured parties, or the crime is repeatedly committed over a considerable period of time (the act; an aggravating factor)

         -  Simple participation (the act; a mitigating factor)

         -  When the injured party does not want punishment, or a substantial part of the damage has been recovered (the actor/other factors; a mitigating factor)

         -  Turning oneself in (the actor/other factors; a mitigating factor)

      o  Determination of Recommended Punishment

         -  Imprisonment of 3 years to 10 years (an area of mitigation; the two act related factors of special aggravating factor and special mitigating factor offset each other, actor/other factors which include 2 special mitigating factors remain the floor of the punishment range can be mitigated up to one-half.

   2)  No criteria for determination of punishment is in place for each crime of violation of customs law, and each crime of violation of Foreign Exchange Transactions Act. Including each crime above, all crimes committed by the defendant are multiple offenses in all paragraphs of Article 37 of Penal Code. In regards to the defendant, compliance with the lowest minimum limit (3 years) of recommended punishment is requested for the floor within criteria for determination of punishment for each crime of the violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud).

C.  Defendant Kyung Shik Kang

K000545





www.scourt.go.kr

Barcode for voice output

1) Each crime of the violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)
   o Determination of Category
     - Crime of Fraud > Organized Fraud > more than 30 billion KRW (the 5th category)
     - Due to concurrent crimes of the same kind, the amount of profit will be added up to determine the category
   o Special Factors for Determination of Punishment
     - Instances in which the target of the crime is a multitude of injured parties, or the crime is repeatedly committed over a considerable period of time (the act; an aggravating factor)
     - Simple participation (the act; a mitigating factor)
     - When the injured party does not want punishment, or a substantial part of the damage has been recovered (the actor/other factors; a mitigating factor)
     - Turning oneself in (the actor/other factors; a mitigating factor)
   o Determination of Recommended Punishment
     - Imprisonment of 3 years to 10 years (an area of mitigation; the act factors of special aggravating factor and special mitigating factor offset each other out, actor/other factors which include 2 special mitigating factors remain the floor of the punishment range can be mitigated up to one-half.

2) There exists no criteria for determination of punishment in place for each crime of violation of customs law, each crime of violation of Foreign Exchange Transactions Act, and each crime of violation of laws regarding external audits of corporations. Including each crime above, all crimes committed by the Defendant are multiple offenses in all paragraphs of Article 37 of Penal Code. In regards to the defendant, compliance with the lowest minimum limit (3 years) of recommended punishment is requested for the floor within criteria for determination of punishment for each crime of the violation of The Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud).

D. Defendant Hyun Oh Cho
   1) Each crime of the violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud)

K000546





www.scourt.go.kr

Barcode for voice output

- o   Determination of Category
  - -   Crime of Fraud > Organized Fraud > more than 30 billion KRW (the 5th category)
  - -   Due to concurrent crimes of the same kind, the amount of profit will be added up to determine the category
- o   Special Factors for Determination of Punishment
  - -   Instances in which the target of the crime is a multitude of injured parties, or the crime is repeatedly committed over a considerable period of time (the act; an aggravating factor)
  - -   Simple participation (the act; a mitigating factor)
  - -   When the injured party does not want punishment, or a substantial part of the damage has been recovered (the actor/other factors; a mitigating factor)
  - -   Turning oneself in (the actor/other factors; a mitigating factor)
- o   Determination of Recommended Punishment
  - -   Imprisonment of 3 years to 10 years (an area of mitigation; the act factors of special aggravating factor and special mitigating factor offset each other; the actor/other factors of 2 special mitigating factors remain; and the floor of the punishment range can be mitigated up to one-half.

2) There exists no criteria for determination of punishment in place for each crime of creating fraudulent negotiable instruments, each crime of using falsely created negotiable instruments, each crime of aiding and abetting the violation of the Act on the Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud), and each crime of violation of laws regarding external audits of corporations. Including each crime above, all crimes committed by the Defendant are multiple offenses in all paragraphs of Article 37 of Penal Code. In regards to the defendant, compliance with the lowest minimum limit (3 years) of recommended punishment is requested for the floor within criteria for determination of punishment for each crime of the violation of the Act on Aggravated Punishment, Etc. of Specific Economic Crimes (Fraud).

**3.   Determination of Sentence**

A.   Reason for Consideration of Mitigating Circumstances in Examination of Offenses

1)   Consequences of the Crime

K000547




www.scourt.go.kr

Barcode for voice output

Under Moneual and other names, the companies received fraudulent loans totaling more than 3.4 trillion KRW. Ten flagship domestic financial institutions that provide export financing suffered injury. So far, the unpaid amount exceeds 540 billion KRW. Moneual has gone bankrupt, and it is uncertain whether Moneual's customers that turned into its fraudulent exporting counterparts like ASI and CNBM have the obligation to pay the debt for the disguised export payments. Furthermore, even if there is an obligation to pay, it is difficult to anticipate such a repayment. There is a possibility that significant damage will be passed onto Korea Trade Insurance Corporation, which provided export guarantee and insurance for Moneual.

Besides such damage to assets, this case severely harmed the public confidence in the financial system, which is the foundation of market economy of capitalism, and brought about realistic danger that would cause shrinkage to the trade insurance system and export financing system, which are provided on the basis of confidence from a policy standpoint in order to ultimately further the development of the national economy and encourage small and mid-sized enterprises' exports and promote exports.

In terms of the consequences of the crime, that guilt of the crime is massive without parallel.

2) Means of the Crime, Etc.

The ploy taken to obtain fraudulent loans such as committing various unlawful acts is very disreputable.

Fake export agreements and POs were created, and HTPCs that did not have any market transactions were exported for the sake of formality, and reported with an exaggerated price in violation of customs law. Then, that report was used to receive loans. After a certain point, fake multimodal transport bills of lading, which are negotiable instruments, were created and used. In order to repay export notes receivable sold to financial institutions, foreign paper companies and export customers were fabricated, and money was deposited in violation of the Foreign Exchange Transaction Act by transferring money from the foreign paper company accounts under the pretext of import payment. In order to evade discovery of the truth that HTPCs are being fraudulently rotated, many foreign paper companies were established and external ownership of the HTPCs were rotated on paper through multiple companies.

K000548



www.scourt.go.kr



Barcode for voice output

When a financial institution was conducting due diligence, workers were employed at a processing plant set up for the sake of formality, even sample products were prepared, and other methods of deception were used. Accounting fraud was committed by reflecting sales and purchases resulting from fraudulent import and export circular transactions in financial statements, and the fraudulent financial statements became important consideration factors in the financial institution's decision to provide loans.

Furthermore, in order to take advantage of the opportunity that Korea Trade Insurance Corporation's export insurance and guarantee provided from a policy standpoint by evaluating Moneual and its foreign customers' credit and other factors are important considerations in obtaining loans from financial institutions, Korea Trade Insurance Corporation's former and current executives were continuously lobbied through bribery and other methods. The truth was revealed that special rider clauses of short-term export insurance were amended favorably to Moneual, which led to loans.

Because part of Moneual's staff including the Defendants, brokers, and foreign customer personnel divided their roles in an organized and calculated way, loan fraud of an enormous scale along with exports and income for HTPC rotation for that process, creation of fraudulent documents, and large-scale foreign exchange trade were able to continuously and repeatedly occur.

In light of the elaborate means, drive, scheming, organization, etc. as described above, the nature of the crime in terms of the means of the crime has been recognized as extremely bad, and so it would be a stretch to say that the fraud offenses of this case were made possible through gross negligence on the part of the injured financial institutions.

3)   Motive and Details of the Crime, and the Places the Illegally Obtained Funds Were Used

This is a case of corporate crime that arose from the motive of raising operating capital for the pursuit of profit. However, it is difficult to admit that the direct and main objective of this crime was to personally embezzle the fraudulent loans. Usually, new fraudulent loans were obtained for the purpose of trying to repay existing loans, and under the circumstances Moneual was not in a position to repay the loans at that time so the crimes were repeatedly committed and the scale of the crimes grew astronomically.

K000549





www.scourt.go.kr

**Barcode for voice output**

On another note, through the efforts of the executives and employees, including the defendants, Moneual achieved desired outcome in the robot vacuum business and other related fields, and otherwise had also made an effort to conduct normal business.

However, loan fraud started immediately after Defendant Hong Seuk Park took over Moneual. Even after taking into consideration the above defendant's claim regarding the course of circumstances that led to circular transactions, it cannot be said that Moneual was in such a pressing circumstance that Park could not help but take advantage of Moneual and start engaging in loan fraud. Moneual grew through fraudulent loans, and the false sales figures were always close to 10 times more than the real sales figures. The funds procured through fraudulent loans were squandered. Let alone the expenses for fraudulent circular transactions (freight charge, customs costs, margin paid out to foreign customers, commission paid out to brokers, finance charges related to the sale of export notes receivable and others, corporate tax based on exaggerated sales figures, and others) reaching hundreds of billions of KRW, the defendant spent about 60 billion KRW by taking over Zalman Tech without properly conducting due diligence, and disbursed about 45 billion KRW in constructing the Jeju corporate office, which is unsuitable in light of Moneual's actual sales figures and net capital. As examined below, consequentially, a large amount was personally embezzled.

On the other hand, the defendants hoped that by succeeding in the robot vacuum and other related businesses, they would be able to sell the company and repay the loans. But after combing through all of the submitted evidence, that aspiration does not appear to have been reasonable.

Thus, even upon examination of the motive and details of the crime, and the places the illegally obtained funds were used, there is absolutely no way assessing the guilt of crime lightly.

4)   Disposition

Upon considering the above examined motive, details, means, and consequences of the crime, the places the illegally obtained funds were used, and to prevent recurrence of similar issues, which is an aspect of general prevention, severe punishment is unavoidable for the defendants who participated in the crimes of this case.

K000550




www.scourt.go.kr

Barcode for voice output

B. Defendant Hong Seuk Park

The Defendant is the ringleader of the offenses of this case and the person ultimately responsible. He negotiated fraudulent export transactions with foreign customers or brokers and made the important decisions, and through Eric Lee and Jeff Kim, he established and managed foreign paper companies for the purpose of conducting fraudulent foreign transactions and circulating foreign capital. He personally managed the fraudulent loans, and it is evaluated that a vast amount of the fraudulent loans was personally used. Besides being used as capital for a housing purchase in the United States and other expenses spent offshore, these funds were carried back into Korea through the accounts of the defendant's foreign paper companies. The amount of money that the defendant did not pay after borrowing from Moneual or was allocated from Moneual reaches tens of billions of Korean won. These funds were used as operating capital for a PC café, investment in entertainment and fertilizer businesses, payment for personal taxes imposed, living expenses, commissions, bribes, lobbying funds, and about 4 billion KRW went into casinos and disappeared. Even according to the defendant's testimony, it is acknowledged that out of the money gone into the casinos, about 1.5 billion KRW was used as the defendant's gambling monies.  He personally carried out the lobbying efforts regarding Korea Trade Insurance Corporation executives and employees.

However, the defendant is a first-time offender. In some aspects, he repeatedly committed the crimes because of an honest hope for repaying the existing fraudulent loans and a sense of responsibility to his employees.  Even though he was offshore when he found out that investigation on Moneual commenced, he voluntarily returned from abroad and has since sincerely cooperated in the investigation. He disclosed the truth about bribes regarding Korea Trade Insurance Corporation executives, which made investigation possible on those Korea Trade Insurance Corporation executives and employees who took bribes. He confessed to the committed crimes and is remorseful. It can be evaluated that he basically turned himself in. The executives and employees at Moneual along with many other people are pleading for leniency for him.





www.scourt.go.kr

Barcode for voice output

From examining the situations above and taking into account the defendant's age, character, circumstances, family relationship, and the various other factors that emerged from the trial process along with the equity of similar cases, the sentence[15] has been ordered as such.

C. Defendant Chul Wook Shin

Defendant participated in most of the fraud offenses of this case. He is held accountable for the amount of all loans that are unpaid. He was aware of the overall structure of the circular revolving transactions. He prepared the export agreements between Moneual and foreign customers, and for Moneual, he performed tasks such as of dealing with customers (ASI, NEWEGG, KT Networks, etc.) or respective brokers to issue POs. It can be evaluated that the defendant was the person responsible for concocting the semblance for the fraudulent export agreements, which is the core of the means of deception in this case.

However, the defendant merely acted under the direction of Hong Seuk Park. He did not secure new fraudulent accounts, and did not negotiate or make related decisions regarding the duration, size, margin, and other important specifics about the transaction with the contracting parties or brokers. He was not involved with the management or execution of the fraudulently obtained funds. The defendant has not gained any personal profits by the offenses of this case. Even though the defendant found out that an investigation on Moneual commenced, he voluntarily returned from abroad and has since sincerely cooperated in the investigation. He confessed to the committed crimes and is remorseful. It can be evaluated that he basically turned himself in. The defendant has no priors, and the executives and employees at Moneual along with many other people are pleading for leniency for him.

From examining the situations above and taking into account the defendant's age, character, circumstances, family relationship, and the various other factors that emerged from the trial process, the sentence[16] has been ordered as such.

---------------------------------

15) It has been determined that for the crime of violation of Customs Law for fraudulent export declarations and fraudulent import declarations, the fine regarding the attached List of Crimes 4 Number 172 is 74,860 KRW, and the fine for the remainder (1,340 instances) is each 74,571 KRW. * 100 million KRW = 74,860 KRW + (74,571 KRW x 1,340 instances)

16) It has been determined that for the crime of violation of Customs Law, the fine regarding the attached List of Crimes 4 Number 172 is 52,071 KRW, and the fine for the remainder (1,153 instances) is each 51,993 KRW. * 60 million KRW = 52,071 KRW + (51,993 KRW x 1,153 instances)

K000552





www.scourt.go.kr

**Barcode for voice output**

### D. Defendant Kyung Shik Kang

The Defendant participated in most of the fraud offenses (about 3 trillion KRW) of this case, and is held accountable for the amount of all loans that are unpaid. While negotiating with the relevant people at financial institutions and Korea Trade Insurance Corporation, the defendant oversaw the provision of loans, export guarantees, and other insurance related tasks. He was also responsible for HTPC import and export customs clearance, and tasks related to foreign exchange. As Moneual's director of finance, he has a direct responsibility regarding accounting fraud. With Hong Seuk Park, the defendant engaged in lobbying activities regarding the executives at Korea Trade Insurance Corporation and to Byongha Chun at KT Networks.

However, the defendant, as a working-level person, merely handled matters that were already decided by Hong Seuk Park. The defendant has not gained any personal profits for his offenses in this case. He voluntarily answered the summons, and since then, confessed to the committed crimes, was remorseful, and sincerely cooperated in the investigation. All of these can be evaluated as turning himself in. The defendant has no priors. The executives and employees at Moneual along with many other people are pleading for leniency for him.

From examining the situations above and taking into account the defendant's age, character, circumstances, family relationship, and the various other factors that emerged from the trial process, the sentence[17] has been ordered as such.

### E. Defendant Hyun Oh Cho

While working as Moneual's director of finance, the defendant engaged in receiving fraudulent loans totaling 292.3 billion KRW, and participated in creating and disclosing fraudulent financial statements. While operating HB Line, he created and used false transport documents a total of 289 times to aid and abet in receiving about 295.8 billion KRW in fraudulent loans. He received profits as the transportation brokerage in Moneual's fraudulent export transactions. The 300 million KRW he received as funds to establish HB Line was financially supported by Hong Seuk Park.

---------------------------------

17) It has been determined that for the crime of violation of Customs Law, the fine regarding the attached List of Crimes 4 Number 172 is 52,071 KRW, and the fine for the remainder (1,153 instances) is each 51,993 KRW. * 60 million KRW = 52,071 KRW + (51,993 KRW x 1,153 instances)

K000553

 

www.scourt.go.kr

**Barcode for voice output**

Yet, the amount of damage caused by the defendant's participation in the fraud has been entirely repaid. The outstanding amount of damage resulting from the defendant's aiding of the fraud is about 40 billion KRW. He did not have a big role in committing the fraud offense. He voluntarily answered the summons, and since then, confessed to the committed crimes, was remorseful, and sincerely cooperated in the investigation. All of these can be evaluated as turning himself in. The Defendant does not have any priors, and many people are pleading for leniency for him.

From examining the situations above and taking into account the defendant's age, character, circumstances, family relationship, and the various other factors that emerged in the course of the trial process, the sentence has been decided as set out in the holdings.

Presiding Judge          Judge Dong Ah Kim          _____

                        Judge Jae Min Park          _____

                        Judge Sung Hoon Kang     _____

K000554





# 서 울 중 앙 지 방 법 원



등본입니다.

2015. 10. 19.

법원주사보 신 재

## 제 2 5 형 사 부

# 판            결

| | | |
|---|---|---|
| 사        건 | 2014고합1348, 2015고합55(병합) | |

가. 특정경제범죄가중처벌등에관한법률위반(재산국외도피)

나. 관세법위반

다. 외국환거래법위반

라. 특정경제범죄가중처벌등에관한법률위반(사기)

마. 허위유가증권작성

바. 허위작성유가증권행사

사. 주식회사의외부감사에관한법률위반

아. 뇌물공여

자. 배임증재

차. 사기방조[인정된 죄명 특정경제범죄가중처벌등에관한법률위반

　　　(사기)방조]

피  고  인　　1. 가. 나. 라. 마. 바. 사. 아. 자.

　　　　　　박홍석 (620704-0000000), 주식회사 모뉴엘 대표이사

　　　　　　주거　 서울 서초구 우면동 참누리에코리치 105동 401호

　　　　　　등록기준지　 서울 서대문구 연희로27길 47

　　　　　　2. 나. 다. 라.

K000494




신철욱 (651230-0000000), 주식회사 모뉴엘 부사장

주거  서울 금천구 시흥대로 165, 209동 1201호 (시흥동, 남서

울힐스테이트아파트)

등록기준지  문경시 가은읍 하괴리 787

3. 나. 다. 라. 사.

강경식 (720624-0000000), 주식회사 모뉴엘 및 주식회사 잘만

테크 각 재무이사

주거  서울 송파구 백제고분로 187, 802호 (잠실동, 파크인수)

등록기준지  여수시 돌산읍 신복리 1222

4. 라. 마. 바. 사. 차.

조현오 (680106-0000000), 주식회사 에이치비엘 대표이사(전

주식회사 모뉴엘 재무상무)

주거  의왕시 내손로 70-14, 1503동 301호 (내손동, 의왕내손e

편한세상아파트)

등록기준지  경북 청송군 안덕면 감은리 200

검      사    노정환, 김범기(기소), 정종원(공판)

변  호  인    법무법인(유한) 바른(피고인 박흥석, 신철욱, 강경식을 위하여)

담당변호사 이동훈, 김혜인

법무법인 성실 법무법인(피고인 신철욱을 위하여)

담당변호사 박계덕

법무법인 처음(피고인 조현오를 위하여)



K000495




담당변호사 이동명, 김용덕

판 결 선 고       2015. 10. 16.

## 주          문

피고인 박홍석을 징역 23년 및 벌금 1억 원에, 피고인 신철욱을 징역 7년 및 벌금 6,000만 원에, 피고인 강경식을 징역 6년 및 벌금 6,000만 원에, 피고인 조현오를 징역 3년에 각 처한다.

피고인 박홍석, 신철욱, 강경식이 위 벌금을 납입하지 아니하는 경우 각 20만 원을 1일로 환산한 기간 위 피고인들을 노역장에 유치한다.

피고인 박홍석으로부터 36,181,100,419원을 추징한다.


## 이          유

**범 죄 사 실**

[피고인들의 지위]

피고인 박홍석, 신철욱, 강경식은 모두 대한민국 거주자이다.

피고인 박홍석은 2007. 8.경 로봇청소기 등 가전제품 제조·판매업을 영위하는 주식회사 다인랩(2007. 11. 27. 상호가 '주식회사 모뉴엘'로 변경되었다. 이하 '모뉴엘'이라 한다)을 인수하여 현재까지 운영하고 있다.

피고인 신철욱은 2007년경부터 현재까지 모뉴엘의 부사장이다.

피고인 강경식은 2011년경부터 현재까지 모뉴엘의 재무이사이다. 2014. 3.경부터는 잘만테크 주식회사(모뉴엘의 자회사이다. 이하 '잘만테크'라 한다)의 재무이사도 겸직하

K000496




고 있다.

피고인 조현오는 2008. 11.경부터 2010. 9.경까지 모뉴엘의 재무이사였다. 2010. 10. 경 화물운송주선업체인 주식회사 에이치비라인(이하 '에이치비라인'이라 한다)을 설립하여 현재까지 대표이사로서 운영하고 있다.

[허위 회전거래 및 자금회전의 개요]

모뉴엘은 모뉴엘 등 명의로 ASI, CNBM[1] 등 해외 거래처 관계자들과, 모뉴엘 등이 해외 거래처에 국내는 물론 해외에서도 시장거래가 없는 Home Theater Personal Computer(이하 'HTPC'라 한다)를 1대당 200~300만 원의 가격으로 수출·판매하는 내용의 허위 수출계약을 체결하였다. 해외 거래처 명의 구매요청서(Purchase Order, 이하 'PO'라 한다)를 비롯한 관련서류를 허위로 작성한 다음 HTPC를 선적하여 형식적으로 수출하는 등으로 거래관계를 가장하였다. 가장된 거래관계에 기초한 수출대금채권을 금융기관에 매각하는 등 방법으로 자금을 조달하였고, 이 자금은 모뉴엘 등 회사 운영경비 또는 피고인 박홍석의 개인적인 자금으로 사용되었다. 이처럼 금융기관에 매각한 수출대금채권의 변제기가 임박하면 같은 방법으로 자금을 조달한 후 다음과 같은 방법으로 피고인 박홍석이 지배하는 해외 페이퍼컴퍼니 계좌를 거쳐 해외 거래처에 송금하여 그들로 하여금 변제기가 도래한 수출대금채권을 변제하게 하였다. 즉, 사실은 위와 같이 수출의 형식으로 해외 거래처에 보냈던 HTPC를 피고인 박홍석이 지배하는 해외 페이퍼컴퍼니 등을 거쳐 HTPC를 분해한 후 수입하는 것임에도 불구하고, PK PARADIGMS CORP. 등 해외 페이퍼컴퍼니 명의 견적송장(Profoma Invoice, 이하 'PI'라 한다)을 비롯한 관련서류를 허위로 작성하는 등 방법으로 다른 제품을 매수하여 수

---

1) ASI는 'ASI Computer Technology Inc'의 약칭이다. 미국 컴퓨터 부품 유통회사이다. CNBM은 'China National Building Materials and Equipment Import and Export Corporation'의 약칭이다. 중국의 건설 · IT 관련 대기업이다.

K000497




일하는 외관을 갖추는 등으로 거래관계를 가장하고 수입대금 송금을 빙자하여 해외 페이퍼컴퍼니 명의 계좌에 위와 같이 조달한 자금을 송금한 후 종국적으로 해외 거래처 계좌로 송금하였다.

피고인 박홍석은 2007년경 모뉴엘을 이용하여 위와 같이 HTPC 소유권을 외관상(서류상) 회전시키고 HTPC 소유권 흐름과 반대로 자금을 회전시키는 행위(이하 '허위 회전거래 및 자금회전'이라 한다)를 개시하였고, 피고인 신철욱은 2008. 1.경, 피고인 강경식은 2011. 1.경, 피고인 조현오는 2008. 11.경 각각 허위 회전거래 및 자금회전이 이루어지고 있다는 사실을 알게 되었다. 피고인 신철욱, 강경식, 조현오는 각각 허위 회전거래 및 자금회전 사실을 알게 된 후부터 다른 피고인들과 상호 공모하여 이러한 행위를 반복하기로 마음먹었다. 특히 피고인 박홍석은 이 과정에서 다시 국내로 반입될 자금에 더하여 해외 페이퍼컴퍼니 계좌에서 자금세탁 후 개인적으로 사용할 돈도 함께 송금하기로 마음먹었다.

『2014고합1348』

1. 피고인 박홍석의 특정경제범죄가중처벌등에관한법률위반(재산국외도피)

거주자가 해외에서 비거주자와 외화예금거래를 하고자 하는 경우에는 기획재정부장관에게 신고하여야 한다.

피고인은 비거주자인 홍콩 HSBC은행에 자신이 지배하는 해외 페이퍼컴퍼니인 PK PARADIGMS HOLDINGS LTD 명의 계좌를 개설하였다. 위와 같은 신고를 하지 아니하고 2011. 3. 24. 수입대금 명목으로 미화 890,000달러(약 1,000,093,000원)를 위 계좌로 송금하고 2011. 3. 30. 그 중 미화 500,000달러(약 557,300,000원)를 인출하여 피고인과 그 가족이 사용할 미국 캘리포니아주 얼바인 소재 아파트를 구입하는 방법으로 미



K000498

 

화 500,000달러를 국외도피시켰다.

이를 비롯하여 피고인은 해외에서 개인적으로 사용할 자금을 수입대금으로 가장하여 피고인이 관리하는 해외 페이퍼컴퍼니 명의 계좌로 송금하는 방법으로 2009. 10. 15.부터 2014. 4. 18.까지 별지 범죄일람표1 기재와 같이 총 140회에 걸쳐 합계 금 36,181,100,419원을 국외도피시켰다.

2. 피고인 박홍석, 피고인 신철욱, 피고인 강경식의 모뉴엘 관련 관세법위반

가. 수출가격조작

피고인들은 해외 거래처 명의 PO, 상업송장(Commercial Invoice) 등 관련서류를 허위로 작성하여 HTPC(computer case, 반제품)를 고가로 수출하는 거래관계를 가장한 후 수출대금채권을 금융기관에 매각하는 등 방법으로 부당하게 자금을 조달하기로 계획하고, 2013. 9. 9.경 모뉴엘 명의로 CNBM에 HTPC 420개를 개당 미화 2,326달러(약 2,535,908원), 합계 미화 977,130달러(약 1,065,081,471원)의 가격으로 수출하는 것처럼 세관에 수출신고(신고번호 130-10-13-01173508호)하였다. 그러나 사실 모뉴엘은 위와 같은 허위 회전거래의 일환으로 CNBM에 HTPC를 수출하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인들은 공모하여 그때부터 2014. 7. 31.경까지 부당하게 재물이나 재산상 이득을 취득할 목적으로 별지 범죄일람표2 기재와 같이 총 85회에 걸쳐 HTPC의 수출가격을 고가로 부풀려 신고하는 방법으로 각각 가격을 조작하였다.

나. 허위 수출신고

피고인들은 2010. 1. 4.경 모뉴엘 명의로 CNBM에 HTPC(computer case, 반제품) 420개를 1개당 미화 2,256달러(약 2,615,358원), 합계 미화 947,520달러(약 1,098,450,460

K000499




원)에 수출하는 것처럼 세관에 수출신고(신고번호 130-10-10-00001531호)하였다. 그러나 사실 모뉴엘은 위와 같은 허위 회전거래의 일환으로 CNBM에 HTPC를 수출하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인들은 공모하여 그때부터 2013. 7. 29.경까지 별지 범죄일람표3 기재와 같이 총 664회에 걸쳐 HTPC의 수출가격을 고가로 부풀려 신고하였다.

다. 허위 수입신고

피고인들은 2009. 12. 31.경 모뉴엘 명의로 WEBTOUCH INC.로부터 HTPC(computer case, 수출한 반제품을 분해한 것) 610개를 1개당 미화 1,650달러(약 1,967,658원), 합계 미화 1,006,500달러(약 1,200,271,380원)에 수입하는 것처럼 세관에 수입신고(신고번호 21506-09-120511U호)하였다. 그러나 사실 모뉴엘은 위와 같은 허위 회전거래의 일환으로 WEBTOUCH INC.로부터 HTPC를 수입하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인들은 공모하여 그때부터 2014. 8. 13.경까지 별지 범죄일람표4 기재와 같이 총 490회에 걸쳐 HTPC의 수입가격을 고가로 부풀려 신고하였다.

3. 피고인 신철욱, 강경식의 외국환거래법위반

거주자가 해외에서 비거주자와 외화예금거래를 하고자 하는 경우에는 기획재정부장관에게 신고하여야 한다.

피고인들은 박홍석의 지시에 따라 허위 회전거래 및 자금회전을 하는 과정에서 위와 같은 신고를 하지 아니하고 다음과 같이 해외 예금거래를 하였다.

가. 2009. 10. 15.경 모뉴엘 직원 박시영 등을 통하여 모뉴엘 명의로 비거주자인 홍



K000500




콩 HSBC은행에 개설된 박홍석의 비밀계좌인 LTI SOLUTION CO. LTD 명의 계좌에 미화 801,000달러(약 935,327,700원)를 HTPC 수입대금 명목으로 송금한 외에, 그때부터 2014. 7. 17.경까지 별지 범죄일람표5 기재와 같이 총 886회에 걸쳐 합계 미화 2,467,738,001달러(약 2,705,880,503,468원)를 수입대금 송금을 빙자하여 예금하였다.

나. 2012. 4. 6.경 모뉴엘 직원 박시영 등을 통하여 잘만테크 명의로 비거주자인 홍콩 HANG SENG BANK에 개설된 박홍석의 비밀계좌인 MULTIWAY ELECTRONICS LIMITED 명의 계좌에 미화 125,000달러(약 141,187,500원)를 HTPC 수입대금 명목으로 송금한 외에, 그 때부터 2014. 7. 1.경까지 별지 범죄일람표6 기재와 같이 총 20회에 걸쳐 합계 미화 71,267,235달러(약 76,248,470,146원)를 수입대금 송금을 빙자하여 예금하였다.

4. 피고인 박홍석의 주식회사 다인랩 관련 관세법위반

피고인은 허위 회전거래에 원덕연이 운영하는 주식회사 다인랩(모뉴엘의 변경 전 상호와 동일하나 별개의 회사이다. 이하 '다인랩'이라 한다) 명의를 이용하기로 원덕연과 합의하였다. 2010. 6. 18.경 다인랩 명의로 PK PARADIGMS CORP.로부터 HTPC(case for computer, 수출한 반제품을 분해한 것) 370개를 1개당 미화 1,780달러(약 2,221,351원), 합계 미화 658,600달러(약 821,899,870원)에 수입하는 것처럼 세관에 수입신고(신고번호 21506-10-060244U호)하였다. 그러나 사실 다인랩은 위와 같은 허위 회전거래의 일환으로 PK PARADIGMS CORP.로부터 HTPC를 수입하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인은 원덕연과 공모하여 그 때부터 2014. 4. 24.경까지 별지 범죄일람표7 기재와 총 28회에 걸쳐 HTPC의 수입가격을 고가로 부풀려 신고하였다.

K000501




5. 피고인 박홍석의 주식회사 다이나젠 관련 관세법위반

피고인은 위와 같은 허위 회전거래에 문제신이 운영하는 주식회사 다이나젠(이하 '다이나젠'이라 한다) 명의를 이용하기로 문제신과 합의하였다. 2010. 1. 27.경 다이나젠 명의로 ASI에 HTPC(case for computer, 반제품) 63개를 1개당 미화 2,350달러(약 2,631,553원), 합계 미화 148,050달러(약 165,787,871원)에 수출하는 것처럼 세관에 수출신고(신고번호 014-10-10-00091265호)하였다. 그러나 사실 다이나젠은 위와 같은 허위 회전거래의 일환으로 ASI에 HTPC를 수출하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인은 문제신과 공모하여 그때부터 2014. 5. 23.경까지 별지 범죄일람표8 기재와 같이 총 100회에 걸쳐 HTPC의 수출가격을 고가로 부풀려 신고하였다.

6. 피고인 박홍석의 주식회사 케이티네트웍스 관련 관세법위반

피고인은 주식회사 케이티네트웍스(2013. 8. 1. 상호가 '케이티이엔에스'로 변경되었다. 이하 '케이티네트웍스'라 한다)와, 모뉴엘이 케이티네트웍스에 ASI에 수출할 HTPC(computer case, 반제품)를 공급하고 케이티네트웍스는 ASI에 일정한 유통마진을 더한 가격으로 그 HTPC를 수출하는 형식의 중개무역을 하되 통관절차, 제반비용, 하자보증 등 비용과 위험은 모두 모뉴엘이 부담하기로 하는 내용의 계약을 체결함으로써, 위와 같은 허위 회전거래에 케이티네트웍스 명의를 이용하기로 하였다.

피고인은 케이티네트웍스 직원 전병하를 통하여 2010. 2. 11.경 케이티네트웍스 명의로 ASI에 HTPC 250개를 1개당 미화 1,955달러(약 2,244,418원), 합계 미화 488,750달러(약 561,104,550원)에 수출하는 것처럼 세관에 수출신고(신고번호 130-10-10-00223436호)하였다. 그러나 사실 모뉴엘은 위와 같은 허위 회전거래의 일환으로 케이티네트웍스

K000502




명의를 빌려 ASI에 HTPC를 수출하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이와 같이 피고인은 그때부터 2011. 5. 17.경까지 별지 범죄일람표9 기재와 같이 총 59회에 걸쳐 HTPC의 수출가격을 고가로 부풀려 신고하였다.

## 7. 피고인 박홍석의 주식회사 포라시아 등 관련 관세법위반

피고인은 2012. 12.경 세금을 납부하기 위하여 해외 페이퍼컴퍼니 MULTIWAY 계좌를 거쳐 미화 400만 달러(약 40억 원)를 국내로 반입하였다. 당시 이철주가 운영하는 주식회사 포라시아, 주식회사 아태상사(이하 차례대로 '포라시아', '아태상사'라 한다) 명의 계좌를 빌렸다.

피고인은 이와 같은 MULTIWAY와 포라시아 및 아태상사 사이 자금거래와 관련하여, 포라시아 및 아태상사 명의로 수출거래를 가장하기로 하였다. 2014. 1. 24.경 MULTIWAY에, 포라시아 명의로 HTPC(computer case, 반제품) 2,020개를 1개당 미화 944달러(약 992,367원), 합계 미화 1,908,000달러(약 2,004,582,960원)에 수출하는 것처럼 수출신고(신고번호 014-10-14-00108648호)하고, 아태상사 명의로 HTPC 1,315개를 1개당 미화 1,455달러(약 1,529,191원), 합계 미화 1,914,000달러(약 2,010,886,680원)에 수출하는 것처럼 수출신고(신고번호 014-10-14-00108497호)하였다. 그러나 사실 피고인은 위와 같은 자금반입 원인관계 외관을 작출하기 위하여 포라시아 및 아태상사 명의로 CNBM에 HTPC를 수출하는 것이었으므로 위 HTPC의 실제 거래가격은 존재하지 아니하였고, 국내 거래가격도 약 8,000원에 불과하였다.

이로써 피고인은 2회에 걸쳐 HTPC의 수출가격을 고가로 부풀려 신고하였다.

『2015고합55』



2015-0057609100-FWTF

위변조 방지용 바코드 입니다.

10 / 61

 

1. 피고인들의 특정경제범죄가중처벌등에관한법률위반(사기)

첫머리에서 살펴본 것처럼 모뉴엘의 HTPC 수출입 거래는 정상적인 수출입 거래가 아니라 가장된 거래관계에 기초한 수출대금채권을 금융기관에 매각하거나 필요한 자금을 대출받는 등 방법으로 자금을 확보하기 위한 방편에 불과하였다. 따라서 금융기관이 이러한 사정을 알았다면 모뉴엘에 여신을 제공하지 아니할 것이 분명하였다.

피고인들은 마치 정상적인 수출입 거래가 있는 것처럼 기망하여 금융기관으로부터 여신을 제공받기로 공모하고, 피고인 박홍석은 수출채권 할인 및 수출입 관련 은행 대출 업무를 총괄하고, 피고인 신철욱은 대출신청 시 은행에 제출되는 PO, 수출계약서 등 관련서류를 직접 작성하거나 해외 거래처로부터 전달받는 등 서류 구비 업무를 담당하고, 피고인 조현오는 2008. 11.경부터 2010. 9.경까지, 피고인 강경식은 2011. 1.경부터 2014. 9.경까지 각각 모뉴엘의 재무담당 이사로서 근무하는 기간 동안 은행에 대출신청서류를 접수하고 대출한도를 증액시키는 등 은행과 직접적인 접촉을 하는 역할을 담당하기로 하였다.

가. 피고인들 모두가 관련된 피해자들에 대한 범행

1) 피해자 중소기업은행

피고인 박홍석, 신철욱, 강경식은 위와 같은 역할에 따라 2014. 3. 28. 피해자 중소기업은행 구로동지점에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 CNBM에 HTPC 420대를 1개당 미화 2,326.5달러, 합계 977,130달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 복합운송증권(NEGOTIABLE FIATA MULTIMODAL TRANSPORT BILL OF LADING), 수출신고수리 내역서 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다.



K000504




사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 CNBM 사이의 수출거래관계는 가장된 것으로, 위 HTPC가 복합운송증권의 내용과 달리 선적되어 있지 않는 등 PO, 상업송장, 복합운송증권 등 서류도 허위로 작성된 것이었다.

이로써 위 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 977,130달러를 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석은 2007. 10. 2.경부터 2014. 9. 29.경까지 별지2 범죄일람표1 기재와 같이 피해자로부터 합계 미화 652,156,377달러 및 57,307,000,000원을 편취하고, 피고인 신철욱은 2008. 1. 24.경부터 2014. 9. 29.경까지 별지2 범죄일람표1 8~822번 기재와 같이 합계 미화 648,189,077달러 및 57,307,000,000원을 편취하고, 피고인 강경식은 2011. 1. 10.경부터 2014. 9. 29.경까지 별지2 범죄일람표1 104~822번 기재와 같이 합계 미화 595,755,069달러 및 54,433,100,000원을 편취하고, 피고인 조현오는 2008. 11. 14.경부터 2010. 9. 28.경까지 별지2 범죄일람표1 33~101번 기재와 같이 합계 미화 40,673,480달러 및 2,873,900,000원을 편취하였다.

　2) 피해자 산업은행

피고인 박홍석, 신철욱, 강경식은 위와 같은 역할에 따라 2014. 4. 15. 피해자 산업은행 노원지점에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 CNBM에 HTPC 420대를 1개당 미화 2,059.2달러, 합계 864,864달러에 수출·판매한다'는 내용을 증명하는 PO, 운송장, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 한국무역보험공사 수출통지등록서류, 출고요청서 등 수출 관련서류를 피해자의 직원에게 제시하

K000505

 

는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 CNBM 사이의 수출거래관계는 가장된 것으로, PO, 상업송장 등 서류도 허위로 작성된 것이었다.

이로써 위 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 890,303,921원을 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석, 신철욱은 2009. 9. 24.경부터 2014. 9. 15.경까지 별지2 범죄일람표2 기재와 같이 합계 637,450,301,078원을 편취하고, 피고인 강경식은 2011. 1. 10.경부터 2014. 9. 15.경까지 별지2 범죄일람표2 140~667번 기재와 같이 합계 511,116,279,195원을 편취하고, 피고인 조현오는 2009. 9. 24.경부터 2010. 9. 8.경까지 별지2 범죄일람표2 1~104번 기재와 같이 합계 94,893,552,222원을 편취하였다.

3) 피해자 우리은행

피고인 박홍석, 신철욱, 조현오는 위와 같은 역할에 따라 2008. 8. 19. 피해자 우리은행 가산디지털중앙지점에서 수출대금채권 매입(D/A)을 신청하면서, '모뉴엘이 ASI에 HTPC 200대를 1개당 미화 약 2,500달러, 합계 493,500달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 선하증권(B/L), 거래명세서 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 ASI 사이의 수출거래관계는 가장된 것으로, PO, 상업송장 등 서류도 허위로 작성된 것이었다.



K000506




이로써 위 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 486,667달러를 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석, 신철욱은 2008. 8. 19.경부터 2013. 8. 7.경까지 별지2 범죄일람표3 기재와 같이 합계 미화 446,000,382달러 및 48,180,800,000원을 편취하고, 피고인 강경식은 2011. 1. 12.경부터 2013. 8. 7.경까지 별지2 범죄일람표3 224~791번 기재와 같이 미화 329,956,010달러 및 38,646,000,000원을 편취하고, 피고인 조현오는 2008. 11. 10. 경부터 2010. 9. 30.경까지 별지2 범죄일람표3 10~165번 기재와 같이 미화 78,151,835 달러 및 9,085,400,000원을 편취하였다.

　4) 피해자 외환은행

피고인 박홍석, 신철욱, 강경식은 공모하여 위와 같은 역할에 따라 2014. 3. 14. 피해자 외환은행 가산디지털지점2)에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 ASI에 HTPC 480대를 1개당 미화 2,980달러, 합계 1,430,000달러에 수출·판매한다'는 내용을 증명하는 PO, 운송장, 상업송장(Invoice), 포장 명세서(Packing List) 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 ASI 사이의 수출거래관계는 가장된 것으로, PO, 상업송장 등 서류는 허위로 작성된 것이었다.

이로써 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 1,508,976,047원을 모뉴엘 회사 명의의 계좌로 지급받았다.

---

2) 공소장 기재 '기업은행 구로동지점'은 오기이다.



K000507




이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석, 신철욱은 2008. 7. 2.경부터 2014. 9. 18.경까지 별지2 범죄일람표4 기재와 같이 합계 448,833,161,881원을 편취하고, 피고인 강경식은 2012. 3. 13.경부터 2014. 9. 18.경까지 별지2 범죄일람표4 61~398번 기재와 같이 409,553,107,357원을 편취하고, 피고인 조현오는 2008. 11. 4.경부터 2009. 8. 20.경까지 별지2 범죄일람표4 23~60번 기재와 같이 25,863,136,500원을 편취하였다.

5) 피해자 국민은행

피고인 박홍석, 신철욱, 강경식은 위와 같은 역할에 따라 2012. 6. 5. 피해자 국민은행 영등포하이테크종합금융센터에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 ASI에 HTPC 250대를 1개당 미화 2,350달러, 합계 587,500달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 복합운송증권 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 ASI 사이의 수출거래 관계는 가장된 것으로, 위 HTPC가 복합운송증권의 내용과 달리 선적되어 있지 않는 등 PO, 상업송장, 복합운송증권 등 서류도 허위로 작성된 것이었다.

이로써 위 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 694,307,500원을 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석, 신철욱은 2010. 6. 8.경부터 2014. 7. 21.경까지 별지2 범죄일람표5 기재와 같이 합계 330,736,346,439원을 편취하고, 피고인 강경식은 2011. 1. 12.경부터



K000508




2014. 7. 21.경까지 별지2 범죄일람표5 16~326번 기재와 같이 320,193,365,189원을 편취하고, 피고인 조현오는 2010. 6. 8.경부터 2010. 8. 6.경까지 별지2 범죄일람표5 1~10번 기재와 같이 7,197,932,500원을 편취하였다.

  6) 피해자 한국수출입은행

피고인 박홍석, 신철욱, 강경식은 위와 같은 역할에 따라 2014. 8. 14. 피해자 한국수출입은행 본점에서 수출팩토링(소구조건)을 신청하면서, '모뉴엘이 CNBM에 HTPC 420대를 1개당 미화 2,059.20달러, 합계 864,864달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 복합운송증권 등 수출관련 서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 CNBM 사이의 수출거래관계는 가장된 것으로, 위 HTPC가 복합운송증권의 내용과 달리 선적되어 있지 않는 등 PO, 상업송장, 복합운송증권 등 서류도 허위로 작성된 것이었다.

이로써 위 피고인들은 공모하여 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 857,886달러를 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석은 2007. 11. 8.경부터 2014. 9. 24.경까지 별지2 범죄일람표6 기재와 같이 합계 미화 239,178,650달러 및 59,698,000,000원을 편취하고, 피고인 신철욱은 2008. 2. 25.경부터 2014. 9. 24.경까지 별지2 범죄일람표6 3~42번 기재와 같이 미화 239,178,650달러 및 58,748,000,000원을 편취하고, 피고인 강경식은 2011. 3. 17.경부터 2014. 9. 24.경까지 별지2 범죄일람표6 17~42번 기재와 같이 미화 239,178,650달러 및

K000509




45,100,000,000원을 편취하고, 피고인 조현오는 2008. 11. 5.경부터 2010. 6. 4.경까지 별지2 범죄일람표6 7~16번 기재와 같이 9,998,000,000원을 편취하였다.

　　7) 피해자 SC제일은행

　　피고인 박홍석, 신철욱, 강경식은 위와 같은 역할에 따라 2012. 6. 18. 피해자 SC제일은행 구로디지털기업지점에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 ASI에 HTPC 250대를 1개당 미화 2,350달러, 합계 587,500달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 복합운송증권 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 ASI 사이의 수출거래관계는 가장된 것으로, 위 HTPC가 복합운송증권의 내용과 달리 선적되어 있지 않는 등 PO, 상업송장, 복합운송증권 등 서류도 허위로 작성된 것이었다.

　　이로써 위 피고인들은 공모하여 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 587,500달러를 모뉴엘 회사 명의의 계좌로 지급받았다.

　　이를 비롯하여 피고인들은 공모하여 위와 같은 역할을 수행함으로써 피해자로부터, 피고인 박홍석, 신철욱은 2010. 6. 22.경부터 2014. 3. 10.경까지 별지2 범죄일람표7 기재와 같이 합계 미화 168,032,182달러를 편취하고, 피고인 강경식은 2011. 1. 21.경부터 2014. 3. 10.경까지 별지2 범죄일람표7 24~212번 기재와 같이 미화 148,285,257달러를 편취하고, 피고인 조현오는 2010. 6. 22.경부터 2010. 9. 17.경까지 별지2 범죄일람표7 1~16번 기재와 같이 미화 11,752,375달러를 편취하였다.

　　나. 피고인 박홍석, 신철욱, 강경식이 관련된 피해자들에 대한 범행

K000510




1) 피해자 농협은행

피고인들은 위와 같은 역할에 따라 2013. 3. 6. 피해자 농협은행 구로디지털지점에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 CNBM에 HTPC 420대를 1개당 미화 2,326.5달러, 합계 977,130달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 복합운송증권, 수출신고수리내역서 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 CNBM 사이의 수출거래관계는 가장된 것으로, 위 HTPC가 복합운송증권의 내용과 달리 선적되어 있지 않는 등 PO, 상업송장, 복합운송증권 등 서류도 허위로 작성된 것이었다.

이로써 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 977,130달러를 모뉴엘 회사 명의의 계좌로 지급받은 것을 비롯하여, 2012. 3. 28.경부터 2014. 7. 25.경까지 별지2 범죄일람표8 기재와 같이 피해자로부터 합계 미화 135,051,319달러를 편취하였다.

2) 피해자 수협은행

피고인들은 위와 같은 역할에 따라 2013. 12. 13. 피해자 수협은행 압구정역지점에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 NEWEGG[3]에 HTPC 500대를 1개당 미화 2,530달러, 합계 1,265,000달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 운송장 수출관련 서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한

---

[3] NEWEGG(Newegg Trading Limited)는 미국의 컴퓨터 전문 인터넷 쇼핑몰 운영회사인 Newegg Inc의 홍콩 자회사이다. 이하에서는 모뉴엘이 거래한 홍콩 소재 Newegg를 NEWEGG로 약칭한다.

K000511




HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 NEWEGG 사이의 수출거래관계는 가장된 것으로, PO, 상업송장 등 서류도 허위로 작성된 것이었다.

이로써 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 미화 1,247,880달러를 모뉴엘 회사 명의의 계좌로 지급받은 것을 비롯하여, 2013. 12. 13.경부터 2014. 8. 1.경까지 별지2 범죄일람표9 기재와 같이 피해자로부터 합계 미화 29,571,027달러를 편취하였다.

3) 피해자 신한은행

피고인 박홍석, 신철욱은 위와 같은 역할에 따라 2010. 12. 29. 피해자 신한은행 구로디지털금융센터에서 수출대금채권 매입(O/A)을 신청하면서, '모뉴엘이 ASI에 HTPC 250대를 1개당 미화 2,350달러, 합계 587,500달러에 수출·판매한다'는 내용을 증명하는 PO, 상업송장(Commercial Invoice), 포장 명세서(Packing List), 선하증권(B/L), 수출신고수리내역서 등 수출 관련서류를 피해자의 직원에게 제시하는 등의 방법으로 기망하였다. 사실, 모뉴엘이 수출한다고 신고한 HTPC는 국내는 물론 해외에서도 시장거래가 없는 물건으로 그 가격이 약 8,000원 가량에 불과하고, 모뉴엘과 ASI 사이의 수출거래관계는 가장된 것으로, PO, 상업송장 등 서류도 허위로 작성된 것이었다.

이로써 위 피고인들은 공모하여 이에 속은 피해자로부터 수출대금채권에 대한 매각대금 명목으로 667,040,603원을 모뉴엘 회사 명의의 계좌로 지급받았다.

이를 비롯하여 피고인들은 공모하여 위와 같은 역할에 따라 피해자로부터, 피고인 박홍석, 신철욱은 2010. 12. 29.경부터 2012. 6. 25.경까지 별지2 범죄일람표10 기재와 같이 합계 18,052,935,355원을 편취하고, 피고인 강경식은 2012. 6. 25.경 별지2 범

K000512




죄일람표10 11~27번 기재와 같이 합계 11,382,529,330원을 편취하였다.

## 2. 피고인 박흥석, 조현오의 허위유가증권작성, 허위작성유가증권행사

허위 회전거래를 반복함에 따라 가장하여야 할 수출거래의 규모가 증가하게 되었고, 형식적인 수출을 위해 선적할 재고물량이 부족하게 되었다. 이에 피고인들은 2011. 8.경부터 피고인 조현오가 에이치비라인을 운영하고 있는 기회를 이용하여 실제로 물건을 선적하지 않은 상태에서 물건을 선적하였다는 내용으로 허위 복합운송증권을 작성한 후 금융기관에 제출하여 수출대금채권 매각에 사용하기로 공모하였다.

피고인 조현오는 2014. 3. 27. 안양시 동안구 시민대로 248 경기지식산업안양센터 504호에 있는 에이치비라인 사무실에서, 사실은 모뉴엘이 CNBM에 수출할 HTPC를 선적한 사실이 없음에도 '모뉴엘이 2014. 3. 27. KMTC ULSAN 1405S호에 HTPC 420대 미화 977,130달러 상당의 화물을 선적하였다'는 내용의 허위 복합운송증권을 발급하였다. 계속하여 피고인 박흥석의 지시에 따라 모뉴엘의 직원이 2014. 3. 28. 중소기업은행 구로동 지점에서 위 선하증권을 수출환어음매입신청서에 첨부하여 위 복합운송증권이 허위로 작성되었다는 사실을 모르는 중소기업은행 직원에게 제출하였다.

이와 같이 피고인들은 공모하여 행사할 목적으로 허위유가증권을 작성하고 행사한 외에, 2011. 8. 1.경부터 2014. 7. 31.경까지 별지2 범죄일람표11 기재와 같이 총 289회에 걸쳐 허위 복합운송증권을 발급하여 허위유가증권을 각각 작성하고, 각각 행사하였다.

[피고인 조현오와 그 변호인은 판시 복합운송증권이 기명식으로 발행되어 유통성이 없으므로 유가증권에 해당하지 않는다는 취지로 다툰다. 그러나 ① 판시 복합운송증권은 표제가 '선하증권(BILL OF LADING)'이라는 표현을 포함하고 있고, 선박의 명칭

K000513




(Ocean vessel/Voy.No.), 선적항(Port of loading), 양륙항(Port of discharge) 등이 기재
되어 있는 등 선하증권의 형식을 갖추고 있다. 또한 판시 복합운송증권 문면에서 배서
금지를 뜻하는 문구(예컨대, Non-Negotiable Unless Consigned To Order)를 찾아볼
수도 없다(2015고합55호 증거기록 5832~6121면) 따라서 판시 복합운송증권은 기명식
으로 발행되었는가와 관계없이 상법 제861조, 제130조에 따라 당연히 배서에 의하여
양도될 수 있다. ② 나아가 설령, 판시 복합운송증권을 배서에 의하여 양도할 수 없다
고 하더라도, 판시 복합운송증권은 수하인(Consignee)의 운송물 인도청구권을 화체하고
있는 증권으로서 위 권리를 행사하거나 처분하기 위해서는 증권을 제시하거나 교부하
여야 한다고 해석된다. 결국, 판시 복합운송증권은 형법 제214조에서 말하는 유가증권
에 해당한다(대법원 2001. 8. 24. 선고 2001도2832 판결 등 참조).]

3. 피고인 조현오의 특정경제범죄가중처벌등에관한법률위반(사기)방조

  피고인은, 박홍석이 2014. 3. 28. 별지2 범죄일람표1 728번 기재와 같이 피해자 중소
기업은행으로부터 미화 977,130달러를 지급받아 편취하는 데, 제2항과 같이 허위 복합
운송증권을 작성하고 행사하여 위 사기를 용이하게 한 것을 비롯하여, 2011. 8. 1.경부
터 2014. 7. 31.경까지 별지2 범죄일람표11 기재와 같이 총 289회에 걸쳐 박홍석의 사
기를 방조하였다.

4. 피고인 박홍석, 강경식, 조현오의 주식회사의외부감사에관한법률위반

  피고인 박홍석은 2007. 8.경부터 2014. 12.경까지 모뉴엘의 대표이사로 근무하였다.
피고인 조현오는 2008. 11.경부터 2009. 3.경까지 관리이사, 2009. 3.경부터 2010. 9.경
까지 재무상무로서 모뉴엘의 회계업무를 담당하였다. 피고인 강경식은 2011. 1.경부터
2014. 12.경까지 재무이사로서 모뉴엘의 회계업무를 담당하였다.



K000514




www.scourt.go.kr
음성출력용바코드

가. 피고인 박홍석, 조현오

피고인 박홍석은 피고인 조현오로부터 모뉴엘의 수출입거래가 허위 거래임에도 진정한 거래인 것처럼 결산을 하겠다는 보고를 받은 후 그대로 시행하도록 지시하고, 피고인 조현오는 위 지시에 따라 허위의 수출입거래를 진정한 수출입거래인 것처럼 재무제표를 작성하기로 하였다.

1) 피고인들은 2009. 2.경 서울 구로구 구로동에 있는 모뉴엘 사무실에서, 2008년도 매출액 및 법인세차감전순이익이 2,958,000,000원 및 (-)4,158,000,000원 상당에 불과함에도 위와 같은 허위 수출거래 금액을 매출액에 포함시켜 73,899,227,672원 및 8,615,821,347원이라고 기재하여 70,941,227,672원 및 12,773,821,347원 가량을 과대계상하고, 2008. 12. 31. 현재 자본총계가 (-)144,000,000원 상당에 불과함에도 11,072,405,188원이라고 기재하여 11,216,405,188원 상당을 과대계상한 2008년도 모뉴엘의 손익계산서와 대차대조표를 작성한 후, 2009. 6.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위 손익계산서 및 대차대조표를 첨부한 감사보고서를 공시하였다.

2) 피고인들은 2010. 2.경 위 모뉴엘 사무실에서, 2009년도 매출액 및 법인세차감전순이익이 9,861,000,000원 및 (-)5,543,000,000원 상당에 불과함에도 위와 같은 허위 수출입거래 금액을 매출액에 포함시켜 163,711,078,282원 및 11,003,049,023원이라고 기재하여 153,850,078,282원 및 16,546,049,023원 상당을 과대계상하고, 2009. 12. 31. 현재 자본총계가 (-)4,687,000,000원 상당에 불과함에도 21,424,361,739원이라고 기재하여 26,111,361,739원 상당을 과대계상한 2009년도 모뉴엘의 손익계산서와 재무상태표를 작성한 후, 2010. 4.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위 손익계산서 및 재무상태표를 첨부한 감사보고서를 공시하였다.

이로써 피고인들은 공모하여 회계처리기준에 위반하여 거짓의 재무제표를 작성, 공시하였다.

　나. 피고인 박홍석, 강경식

　피고인 박홍석은 피고인 강경식으로부터 모뉴엘의 수출입거래가 허위 거래임에도 진정한 거래인 것처럼 결산을 하겠다는 보고를 받은 후 그대로 시행하도록 지시하고, 피고인 강경식은 위 지시에 따라 허위의 수출입거래를 진정한 수출입거래인 것처럼 재무제표를 작성하기로 하였다.

　1) 피고인들은 2011. 2.경 위 모뉴엘 사무실에서, 2010년도 매출액 및 법인세차감전순이익이 29,340,000,000원 및 (-)21,355,000,000원 상당에 불과함에도 위와 같은 허위 수출거래 금액을 매출액에 포함시켜 295,260,439,948원 및 17,699,010,768원이라고 기재하여 265,956,439,948원 및 39,045,910,768원 상당을 과대계상하고, 2010. 12. 31. 현재 자본총계가 (-)26,042,000,000원 상당에 불과함에도 37,643,678,079원이라고 기재하여 63,685,678,079원 상당을 과대계상한 2010년도 모뉴엘의 손익계산서와 재무상태표를 작성한 후, 2011. 3.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위의 손익계산서 및 재무상태표를 첨부한 감사보고서를 공시하였다.

　2) 피고인들은 2012. 2.경 위 모뉴엘 사무실에서, 2011년도 매출액 및 법인세차감전순이익이 50,120,000,000원 및 (-)33,751,000,000원 상당에 불과함에도 위와 같은 허위 수출거래 금액을 매출액에 포함시켜 460,539,079,529원 및 27,523,156,186원이라고 기재하여 410,357,079,529원 및 61,274,156,186원 상당을 과대계상하고, 2011. 12. 31. 현재 자본총계가 (-)59,793,000,000원 상당에 불과함에도 63,725,005,497원이라고 기재하여 123,518,005,497원 상당을 과대계상한 2011년도 모뉴엘의 손익계산서와 재무상태

K000516




표를 작성한 후, 2012. 4.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위 손익계산서 및 재무상태표를 첨부한 감사보고서를 공시하였다.

　　3) 피고인들은 2013. 2.경 위 모뉴엘 사무실에서, 2012년도 매출액 및 법인세차감전순이익이 80,391,000,000원 및 (-)58,667,000,000원 상당에 불과함에도 위와 같은 허위 수출거래 금액을 매출액에 포함시켜 825,132,396,901원 및 66,944,182,707원이라고 기재하여 744,741,396,901원 및 125,611,182,707원 상당을 과대계상하고, 2012. 12. 31. 현재 자본총계가 (-)118,460,000,000원 상당에 불과함에도 90,044,823,025원이라고 기재하여 208,504,823,025원 상당을 과대계상한 2012년도 모뉴엘의 손익계산서와 재무상태표를 작성한 후, 2013. 4.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위 손익계산서 및 재무상태표를 첨부한 감사보고서를 공시하였다.

　　4) 피고인들은 2014. 2.경 위 모뉴엘 사무실에서, 2013년도 매출액 및 법인세차감전순이익이 82,494,000,000원 및 (-)65,920,000,000원 상당에 불과함에도 위와 같은 가장 수출입거래 금액을 매출액에 포함시켜 1,140,984,800,757원 및 83,526,303,794원이라고 기재하여 1,058,490,800,757원 및 149,428,303,794원 상당을 과대계상하고, 2013. 12. 31. 현재 자본총계가 (-)184,362,000,000원 상당에 불과함에도 139,811,079,880원이라고 기재하여 324,173,079,880원 상당을 과대계상한 2013년도 모뉴엘의 손익계산서와 재무상태표를 작성한 후, 2014. 4.경 금융감독원 전자공시시스템을 통하여 위와 같이 작성된 허위 손익계산서 및 재무상태표를 첨부한 감사보고서를 공시하였다.

　　이로써 피고인들은 공모하여 회계처리기준에 위반하여 거짓의 재무제표를 작성, 공시하였다.

5. 피고인 박홍석의 뇌물공여, 배임증재



K000517

 

가. 한국무역보험공사 임직원에 대한 뇌물공여

　　모뉴엘이 허위 회전거래 및 자금회전을 지속하여 존속하기 위해서는 금융기관으로부터 계속하여 새로운 여신을 제공받아야 했다. 금융기관은 한국무역보험공사의 모뉴엘에 대한 보험 및 보증 제공[단기수출보험(수출채권유동화), 수출신용보증 등]을 중요한 고려요소로 삼아 모뉴엘로부터 수출대금채권을 매입하는 등으로 여신을 제공하고 있었다. 피고인은 한국무역보험공사로부터 보험 및 보증을 계속하여 또 증액하여 제공받기 위한 목적으로 한국무역보험공사 임직원을 상대로 로비를 하기로 마음먹었다.

　　1) 이현주

　　이현주는 2010. 7. 19.경부터 2011. 9. 15.경까지 한국무역보험공사 무역진흥본부장으로 근무하면서 모뉴엘과 모뉴엘의 해외 거래처에 대한 평가, 단기수출보험 및 보증 총액한도 책정업무를 총괄하였다.

　　피고인은 2011. 4.경부터 5.경까지 사이의 어느 날 서울 종로구 종로 14에 있는 한국무역보험공사 내 이현주 사무실에서 이현주에게, 모뉴엘의 ASI에 대한 한국무역보험공사 단기수출보험 총액한도를 미화 5,000만 달러에서 미화 6,800만 달러로 증액하는 데 도움을 주는 등 모뉴엘의 무역금융 업무의 편의 도모와 관련된 사례금 명목으로 500만 원 상당의 50만 원권 기프트카드 10장을 교부하였다.

　　이로써 피고인은 공무원으로 의제되는 한국무역보험공사 임원 이현주에게 그 직무에 관하여 500만 원 상당의 뇌물을 공여하였다.

　　2) 허행만

　　허행만은 2011. 10.경부터 2014. 1.경까지 한국무역보험공사 중소중견기업사업1부 및 중견기업부의 부장으로 근무하면서 모뉴엘과 모뉴엘의 해외 수출입거래처에 대

K000518

 

한 평가, 단기수출보험 및 보증 총액한도의 책정 업무를 담당하였다.

　　가) 피고인은 2012. 11. 하순경부터 12. 하순경까지 사이의 어느 날 서울 종로구 종로 14에 있는 한국무역보험공사 내 허행만의 사무실에서 허행만에게, 모뉴엘과 모뉴엘의 해외 수출입거래처에 대한 한국무역보험공사의 좋은 평가, 단기수출보험 및 보증 총액한도의 상향 등 모뉴엘의 무역금융 업무의 편의 도모와 관련된 사례금 명목으로 현금 3,000만 원을 교부하였다.

　　나) 피고인은 2013. 12. 23. 서울 중구 을지로 30에 있는 롯데호텔 1층 커피숍에서 허행만에게 위와 같은 명목으로 현금 3,000만 원을 교부하였다.

　　이로써 피고인은 공무원으로 의제되는 한국무역보험공사의 직원 허행만에게 그 직무에 관하여 합계 6,000만 원 상당의 뇌물을 공여하였다.

　　3) 정효명

　　정효명은 2009. 1.경부터 2010. 1.경까지 한국무역보험공사 중소기업사업부 전자기계화학팀장으로 근무하면서 모뉴엘의 해외 수입자들에 대한 수출신용보증 업무를 담당하였고, 그 무렵부터 2014. 10.경까지 모뉴엘을 위하여 각종 무역금융 편의를 제공하였다.

　　피고인은 2013. 1. 30.부터 같은 달 31. 사이의 어느 날 서울 강남구 언주로 709에 있는 '알라딘' 유흥주점에서 정효명에게, 정효명 및 한국무역보험공사 임직원을 통한 무역금융 편의 제공에 대한 사례금 명목으로 500만 원 상당의 50만 원권 기프트카드 10장을 교부한 것을 비롯하여, 별지2 범죄일람표12 기재와 같이 미화 85,133달러 및 2,500만 원 상당의 기프트카드를 교부하였다.

　　이로써 피고인은 공무원으로 의제되는 한국무역보험공사의 직원 정효명에게 그

K000519

 

직무 또는 다른 임직원의 직무에 속한 사항의 알선에 관하여 합계 118,049,511원(미화 85,133달러 및 2,500만 원) 상당의 뇌물을 공여하였다.

4) 조계륭

조계륭은 2011. 6.경부터 2013. 12. 12.경까지 한국무역보험공사 사장으로 근무하면서 공사를 대표하고 공사의 업무를 총괄하는 업무를 담당하였다.

피고인은 2013. 5. 27.경 서울 마포구에 있는 식당에서, 모뉴엘과 모뉴엘의 해외 수출입거래처에 대한 한국무역보험공사의 좋은 평가, 단기수출보험 및 보증 총액한도의 상향 등 모뉴엘의 무역금융 업무의 편의 도모와 관련하여 조계륭에게 1,000만 원 상당의 우리은행 기프트카드를 교부하였다.

이로써 피고인은 공무원으로 의제되는 한국무역보험공사 임원 조계륭에게 그 직무에 관하여 1,000만 원 상당의 뇌물을 공여하였다.

5) 황인규

황인규는 2013. 1.경부터 2014. 1.경까지 한국무역보험공사 영업총괄부장으로 근무하면서 단기수출보험(수출채권유동화)을 포함한 무역보험 인수 관련 규정의 개폐 업무 및 중소·중견기업을 집중 육성하는 글로벌 성장사다리(SF & Global) 프로그램 운영 업무 등을 담당하였다.

가) 피고인은 2013. 6. 13. 20:30경부터 다음 날 01:00경까지 서울 강남구 언주로 709에 있는 '알라딘' 유흥주점에서 황인규에게, 모뉴엘을 글로벌 성장사다리(SF & Global) 프로그램 회원사로 선정해주는 등 향후 모뉴엘과 관련된 무역금융 업무 처리 시 잘 부탁한다는 취지의 청탁을 하면서, 280만 원(황인규 몫 약 93만 원) 상당의 향응을 제공하고, 한국무역보험공사 인천지사장 정효명을 통하여 500만 원 상당의 50만

원권 기프트카드 10장을 교부하였다.

나) 피고인은 2013. 9. 4.부터 같은 달 5. 사이에 고양시 일산서구에 있는 상호를 알 수 없는 식당에서 황인규에게, 정효명을 통하여 위와 같은 취지의 청탁과 함께 500만 원 상당의 50만 원권 기프트카드 10장을 교부하였다.

다) 피고인은 2013. 11. 14. 20:30경부터 00:00경까지 서울 강남구 언주로 709에 있는 '알라딘' 유흥주점에서 황인규에게, K-Sure 글로벌 성장사다리 발대식 개최 시 모뉴엘을 대대적으로 홍보해 주고 정효명, 한국무역보험공사 법무실장 황우찬과 함께 모뉴엘에 유리한 방향으로 단기수출보험(수출채권유동화) 특약사항을 변경하는 등 향후 모뉴엘과 관련된 무역금융 업무 처리 시 잘 부탁한다는 취지의 청탁과 함께 12,070,000 원(황인규 몫 : 3,017,500원) 상당의 향응을 제공하였다.

라) 피고인은 2013. 12. 18.부터 같은 달 20. 사이의 어느 날 고양시 일산서구 일중로15번길 128에 있는 황인규의 집에서, 정효명을 통하여 황인규에게 위와 같은 취지의 청탁과 함께 500만 원 상당의 50만 원권 기프트카드 10장을 교부하였다.

이로써 피고인은 공무원으로 의제되는 한국무역보험공사의 직원 황인규에게 직무에 관하여 합계 18,947,500원 상당의 뇌물을 공여하였다.

6) 황우찬

황우찬은 2011. 12.경부터 2014. 9.경까지 한국무역보험공사 법무실장으로 근무하면서 단기수출보험(수출채권유동화)을 포함한 무역보험 약관, 내규의 제정·개폐안에 대한 합의 및 내규 정비 업무를 담당하였다.

가) 피고인은 2013. 11. 14. 20:30경부터 00:00경까지 서울 강남구 언주로 709에 있는 '알라딘' 유흥주점에서 황우찬에게; 한국무역보험공사 인천지사장 정효명, 영업총

K000521




괄부장 황인규와 함께 모뉴엘에 유리한 방향으로 단기수출보험(수출채권유동화) 특약

사항을 변경하는 등 향후 모뉴엘과 관련된 무역금융 업무 처리 시 잘 부탁한다는 취지

의 청탁을 하면서 12,070,000원(황우찬 몫 3,017,500원) 상당의 향응을 제공하였다.

　　나) 피고인은 2013. 12. 18.부터 같은 달 28. 사이의 어느 날 서울 종로구 종로

14에 있는 한국무역보험공사 내 황우찬의 사무실에서, 위 정효명을 통하여 황우찬에게

위와 같은 취지의 청탁을 하면서 500만 원 상당의 50만 원권 기프트카드 10장을 교부

하였다.

　　이로써 피고인은 공무원으로 의제되는 한국무역보험공사의 직원 황우찬에게 직

무에 관하여 합계 8,017,500원 상당의 뇌물을 공여하였다.

　나. 한국수출입은행 직원에 대한 뇌물공여

　　1) 서우택

　　서우택은 2012. 6. 29.경부터 2014. 6. 25.경까지 한국수출입은행에서 중소기업

금융부 및 중소중견금융부 부장으로 근무하며 모뉴엘에 대한 여신의 승인, 실행 및 사

후관리 업무를 담당하였다.

　　가) 피고인은 2012. 10. 16. 서울 강남구 청담동에 있는 한식당 '산당'에서 서우

택에게, 모뉴엘에 자금이 많이 필요하니 대출 한도를 늘려달라는 청탁을 하면서 현금

5,000만 원을 교부하였다.

　　나) 피고인은 2013. 10. 1. 서울 반포동에 있는 매리어트 호텔 뷔페 식당에서 서

우택에게, 모뉴엘이 한국수출입은행으로부터 계속 대출받을 수 있도록 도와준 것에 대

한 사례 및 앞으로도 대출을 받을 수 있도록 도와달라는 청탁 명목으로 650만 원 상당

의 50만 원권 기프트카드 13장을 교부하였다.



K000522

 

다) 피고인은 2013. 12. 4. 위 매리어트 호텔 뷔페 식당에서 서우택에게 위 나)항과 같은 명목으로 50만 원권 기프트카드 1장을 교부하였다.

라) 피고인은 2014. 3. 26. 위 매리어트 호텔 뷔페 식당에서 서우택에게, 모뉴엘이 한국수출입은행으로부터 추가로 대출받을 수 있도록 도와달라는 청탁을 하면서 현금 4,000만 원을 교부하였다.

이로써 피고인은 공무원으로 의제되는 한국수출입은행의 직원 서우택에게 그 직무에 관하여 합계 9,700만 원 상당의 뇌물을 공여하였다.

2) 이창종

이창종은 2012. 1. 2.경부터 2013. 1. 1.경까지 한국수출입은행에서 중소기업금융부 팀장으로 근무하며 모뉴엘에 대한 여신의 승인, 실행 및 사후관리 업무를 담당하였고, 2013. 1. 2.경부터 2014. 11. 13.경까지 위 은행 모스크바 사무소 소장으로 근무하였다.

피고인은, 이창종이 2012. 11.부터 2012. 12.경까지 한국수출입은행의 모뉴엘에 대한 여신 한도를 90억 원에서 300억 원으로 증액하여 주고 증액된 여신한도에 따라 모뉴엘에 여신을 제공하는 등 모뉴엘이 한국수출입은행으로부터 대출받을 수 있도록 도와준 것에 대한 사례 명목으로, 공무원으로 의제되는 한국수출입은행의 직원 이창종에게 다음과 같이 그 직무에 관하여 합계 1억 500만 원 상당의 뇌물을 공여하였다.

가) 2012. 12. 28.경 서울 영등포구 여의도동에 있는 커피숍에서 모뉴엘 재무이사 강경식을 통하여 500만 원 상당의 50만 원권 기프트카드 10장을 교부하였다.

나) 2013. 1. 2.경 서울 금천구 가산동에 있는 우리은행 가산하이테크 지점에서 강경식을 통하여 국민은행 계좌(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-735)로 1억 원을 송금하였다.

K000523




다. 서울지방국세청 공무원 오정엽에 대한 뇌물공여

피고인은 2012. 7. 10.부터 같은 해 10. 7.까지 5급 행정사무관 오정엽이 팀장으로 있는 서울지방국세청 국제거래조사국 국제조사관리과 7팀으로부터 모뉴엘에 대한 법인세 비정기조사를 받았다.

피고인은 2012. 10. 18. 저녁 무렵 서울 강남구 청담동 소재 삼정복집에서 오정엽에게, 위 세무조사 과정에서 조사 기간을 연장하지 않고 예정대로 종료하였으며 조사 대상과 범위를 확대하지 않는 등 선처해 준 것에 대한 대가 명목으로 현금 3,000만 원을 교부하였다.

이로써 피고인은 공무원인 오정엽에게 그 직무에 관하여 합계 3,000만 원의 뇌물을 공여하였다.

라. 배임증재

피고인은, 케이티네트웍스가 2007. 4.경부터 모뉴엘로부터 HTPC를 구매하여 ASI에 수출·판매하여 유통마진을 취하는 중개무역거래를 하는 가운데, 금융기관이 대기업 자회사인 케이티네트웍스의 우수한 신용에 신뢰하여 풍부한 여신을 제공하는 것을 이용하여 허위 회전거래 및 자금회전의 일환으로 금융기관에 케이티네트웍스로부터 받은 케이티네트웍스 발행 전자어음이나 모뉴엘의 케이티네트웍스에 대한 매출채권을 매각하는 등 방법으로 자금을 조달하였다.

피고인은 2007. 11. 12. 케이티네트웍스 소속으로 모뉴엘과의 거래관련 실무를 전담하던 전병하에게 '모뉴엘이 금융기관으로부터 여신을 제공받고 모뉴엘의 매출실적을 향상시키려면 신용이 좋은 케이티네트웍스를 매개로 한 해외수출거래를 지속·확대하여야 하니 케이티네트웍스가 모뉴엘과 지속적으로 중개무역 거래를 해 달라. 모뉴엘과

K000524




계속 거래하도록 힘써 준 대가로 일정한 커미션을 지급하겠다'는 취지의 부정한 청탁

을 하면서, 사례금 명목으로 같은 날 피고인의 계좌에서 전병하의 우리은행 계좌

(30608231952)로 250만 원을 송금하였다. 그때부터 2013. 11. 4.경까지 별지2 범죄일

람표13 기재와 같이 전병하의 위 우리은행 계좌 및 홍콩 HSBC 은행 계좌

(491-848214-833)로 총 19회에 걸쳐 미화 223,850달러 및 105,600,000원을 송금하였다.

　이로써 피고인은 타인의 사무를 처리하는 자에게 그 임무에 관하여 부정한 청탁을

하고 합계 355,101,039원(미화 223,850달러 및 105,600,000원) 상당을 공여하였다.

증거의 요지

『2014고합1348』

판지 제1의 사실

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 박시영에 대한 각 경찰진술조서

1. 종합수사보고

1. 시작_5(ENG) 문서, (주)모뉴엘 당발내역, (주)모뉴엘 수입개설결제 내역, 박홍석 소

유 페이퍼 컴퍼니별 자금 흐름, 박홍석 페이퍼컴퍼니 예금계좌 인출내역, 중국신탁

상업은행홍콩지점, TO : HENRY, LTI 계좌에서 미국계좌로 간 내역과 박홍석 계좌

로 입금된 금액 정리, 수취 외화내역 및 자금 원천 연결표, Integrated(2) Sheet 내

역(ERIC LEE, Loan to PK), Integrated(2) Sheet 내역(JPA HSBC 및 JPA),

Integrated(2) Sheet 내역(Harold, HAROLD), Integrated(2) Sheet[HAROLD(AHN)],

Integrated(2) Sheet(Eric/Harold, HAROLD/ERIC), Integrated(2) Sheet(HAROLD/CJ,

HAROLD/Bill), Integrated(2) Sheet(CAOJIN), Integrated(2) Sheet(PP HK),

K000525




Integrated(2)   Sheet(East   King,   ZALMAN,   BaronZalman),   Integrated(2) Sheet(Jennifer, Jennifer/Scott), Integrated(2) Sheet(HP, HP/BILL, HP/CAO JIN, HP/CJ, HP/JPN), Integrated(2) Sheet(MULTIWAY), Integrated(2) Sheet(THC LTD), Integrated(2)   Sheet(Berwick   Resources   Ltd),   Integrated(2)   Sheet(Berwick Resources Ltd), Integrated(2) Sheet(Chun, Byoung Ha, Chun BH), Integrated(2) Sheet(Park,   Taehee),   Integrated(2)   Sheet(WIMFIELD   LTD),   Integrated(2) Sheet(Jong Seung Heo), Integrated(2) Sheet(HS PO), Integrated(2) Sheet(AOK), Integrated(2) Sheet(KIM HEE SOO, HP/KIM HEESOO), Integrated(2) Sheet(ETS Int'l H LTD), Integrated(2) Sheet[TONY SHU(HP)], Integrated(2) Sheet(WEL), Integrated(2) Sheet(CHOU), Integrated(2) Sheet(Harold), Integrated(2) Sheet(자금 원 포함 소트내역)

판시 제2의 사실

1. 제2회 공판조서 중 피고인 박홍석, 신철욱, 강경식의 각 진술기재

1. 수사보고(홍콩 소재수사 등), 수사보고(HTPC 가격조사), 수사보고(가격조작죄 증거), 종합수사보고, 고발서(의견서)

1. (주)모뉴엘 HTPC 매입내역, 모뉴엘 수출대장(주), (주)모뉴엘 HTPC 수출신고내역, (주)모뉴엘 HTPC 수입신고내역, OK시스템 매입견적서, ACE SYSTEM 매입견적서

1. AMEREX CORPORATION LIMITED 등록증, (주)모뉴엘 법인등기부 등본, PK PARADIGM HOLDING LTD 등록증

판시 제3의 사실

1. 제2회 공판조서 중 피고인 신철욱, 강경식의 각 진술기재



K000526




1. 종합수사보고

1. (주)모뉴엘 당발내역, (주)모뉴엘 수입개설결제 내역, 시작_5(ENG) 문서, 박홍석 소
   유 페이퍼 컴퍼니별 자금 흐름, 박홍석 페이퍼컴퍼니 예금계좌 인출내역, 잘만테크
   와 MULTI WAY ELECTRONICS LIMITED의 거래내역, 잘만테크 허위거래 내역

판시 제4의 사실

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 원덕연에 대한 검찰피의자신문조서

1. 수사보고(HTPC 가격조사), 종합수사보고, 고발서(의견서)

1. (주)다인랩 HTPC 수입통관실적, OK시스템 매입견적서, ACE SYSTEM 매입견적서

1. (주)다인랩 사업자등록증, 법인등기부 등본

판시 제5의 사실

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 문제신에 대한 검찰피의자신문조서

1. 수사보고(HTPC 가격조사), 고발서(의견서)

1. 모뉴엘 관련현황, OK시스템 매입견적서, ACE SYSTEM 매입견적서

판시 제6의 사실

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 전병하에 대한 검찰피의자신문조서 중 일부 진술기재

1. 종합수사보고, 수사보고(HTPC 가격조사), 고발서(의견서)

1. 케이티네트웍스 수출내역, 케이티네트웍스 허위수출신고내역, OK시스템 매입견적서,
   ACE SYSTEM 매입견적서, 변호인 의견서(주식회사 케이티이엔에스), 업무제휴 협약

K000527



서, 모뉴엘 확인서 및 연대보증서(2013. 11. 25.), 이 사건 수출거래 관련 자료, 이 사건 전체 거래 내역

판시 제7의 사실

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 이철주에 대한 검찰피의자신문조서

1. 최창일에 대한 경찰진술조서(제3회)

1. 수사보고(HTPC 가격조사), 종합수사보고, 고발서(의견서)

1. "모뉴엘 아태상사 거래처 원장" 및 "모뉴엘 포라시아 거래처 원장", 포라시아, 아태상사 수출신고서, OK시스템 매입견적서, ACE SYSTEM 매입견적서, 아태상사와 모뉴엘 물품공급계약 및 수출신고내역, 포라시아와 모뉴엘 물품공급계약 및 수출신고내역

1. 포라시아, 엔텍씨에스 사업자등록 및 법인등기부 등록증, MULTIWAY 기업등기 서류

『2015고합55』

판시 제1, 내지 4의 사실[4]

1. 제2회 공판조서 중 피고인들의 각 진술기재

1. 김윤석, 김경오, 손벽수, 강성훈, 박시영, 최창일. 이기승, 유재원, 안광식, 문석준, 박재광, 이영희, 김기환, 이종현, 고재환, 김진균에 대한 각 검찰진술조서(박시영에 대한 제2회 검찰진술조서 중 임유진 진술부분, 이영희에 대한 검찰진술조서 중 김상훈 진술부분 각 포함)

1. 이완석, 김진욱, 손지모, 송재연, 조봄이, 강성훈, 최창희, 박시영, 김기환(순번 434

---

[4] 검찰 진술증거는 별책에 첨부되지 않은 증거에 한하여 특정·거시하였다.



K000528




번), 최재영의 각 진술서

1. 수사보고(모뉴엘 등 관련자료 첨부), 수사보고(모뉴엘 재무제표에 대한 감사보고서
   첨부), 수사보고(주식회사 모뉴엘 조직도, 대출 관련자 명함 첨부), 수사보고(우리은
   행의 모뉴엘 대출현황 자료 임의제출), 수사보고(홈씨어터 케이스 가격 확인), 수사
   보고(기업은행 여신관리부에서 제출한 모뉴엘에 대한 여신 현황표 첨부), 수사보고
   (기업은행의 ㈜모뉴엘 시설자금 대출현황 첨부), 수사보고(산업은행 사기 피해 증빙
   자료 첨부), 수사보고(우리은행의 모뉴엘에 대한 여신현황표 첨부), 수사보고(외환은
   행 사기 피해 증빙자료 첨부), 수사보고(모뉴엘 관련 국민은행의 채권서류 첨부), 수
   사보고(모뉴엘의 수출입은행 대출 관련 자료), 수사보고(모뉴엘 관련 수출입은행 수
   출팩토링 자료 첨부), 수사보고(모뉴엘 관련 수출입은행 대출 승인 서류 첨부), 수사
   보고(모뉴엘 관련 SC은행의 채권서류 첨부), 수사보고(모뉴엘 신용평가 자료 첨부),
   수사보고(농협은행의 모뉴엘에 대한 여신현황표 첨부), 수사보고(농협은행의 모뉴엘
   대출서류 사본 첨부), 수사보고(신한은행 사기 피해 증빙자료 첨부), 수사보고(모뉴
   엘에 대한 은행별 대출 현황자료 제출), 수사보고(모뉴엘에 대한 은행 여신 총액),
   수사보고(각 은행별 대표적 사례 대출신청서 첨부), 수사보고(각 피의자별 편취 행
   위 가담 금액 산정), 수사보고(허위의 선하증권 사본 첨부), 수사보고(모뉴엘의 매출
   매입액 분식회계 관련), 수사보고(모뉴엘의 재무제표 분식회계 분석), 수사보고(모뉴
   엘 감사보고서 공시 시기 확인 보고), 수사보고(2010. 2. 6.자 경영자 확인서 첨부
   보고)

1. 각 크레탑 자료, 각 법인등기부등본, 2008년도 감사보고서, 2009년도 감사보고서,
   2010년도 감사보고서, 2011년도 감사보고서, 2011년도 연결재무제표에 대한 감사보

K000529




고서, 2012년도 감사보고서, 2012년도 연결재무제표에 대한 감사보고서, 2013년도

감사보고서, 2013년도 연결재무제표에 대한 감사보고서, 각 한도책정 이력, 우리은

행의 ㈜모뉴엘에 대한 '여신/담보/보증인 요약표' 자료, HTPC(Home Theater

Personal Computer Case) 가격표, ㈜모뉴엘에 대한 여신 현황표 1부, ㈜모뉴엘 시

설자금 대출 현황, 기업은행의 ㈜모뉴엘에 대한 여신현황표 1부, 무역금융대출신청

6부, 수출환어음매입신청서 98부, 모뉴엘 현황, 모뉴엘 담당자(전결권자 포함) 명단,

모뉴엘 여신 현황표 1매, 여신 승인신청서 내역 14부, D/A, O/A, L/C 매입 의뢰서

및 부속 서류 11부, D/A, O/A, L/C 외환 차입신청서 및 외국환거래약정서 사본, 한

국무역보험공사 수출보험(EFF)증권 사본 3부, 수입업자별 수출입 거래 흐름도(산업

은행 작성) 1부, ㈜모뉴엘에 대한 여신 현황(순번 512번), 외환 상품별 취급자 명세,

우리은행의 모뉴엘에 대한 여신현황표 첨부, 모뉴엘 여신목록, 심사 취급명세서 및

취급자(전결권자 포함) 명단, 모뉴엘 여신심사보고서, 모뉴엘/외환은행 여신거래 약

정서, 임가공 계약서, 포괄계약서, D/A 및 O/A 매입 의뢰서 및 부속 서류, 한국무역

보험공사 수출보험(EFF)증권 사본, 외화예금 거래내역 명세 1부, 모뉴엘 여신현황표

(엑셀 파일) 1부, 수입업자별 수출입 거래 흐름도(외환은행 작성) 1부, ㈜모뉴엘 수

출채권과 관련없는 일반여신 현황, ㈜모뉴엘 수출채권과 관련없는 일반여신 현황(약

정 기준), ㈜모뉴엘에 대한 OA네고 현황, 2010년 구매자금 건별실행내역(창구실행

분), 2011년 구매자금 건별실행내역(창구실행분), 2012년 구매자금 건별실행내역(창

구실행분), 2013년 구매자금 건별실행내역(창구실행분), 2014년 구매자금 건별실행

내역(창구실행분), O/A 수출채권 매입신청서, D/A 수출채권 매입신청서, 단기수출보

험(EFF) 증권 2부, ㈜모뉴엘 앞 연도별 수출자금대출 취급 현황, 모뉴엘 관련 수출






팩토링 개별매입 및 상환일자, 모뉴엘 관련 2013.12월 차주제출 상사현황표, 모뉴엘 관련 기제출 상사현황표 부속 서류(부채현황표), 모뉴엘 관련 2014.7.15.자 승인 단기수출자금 U$18.5백만 차주 제출 승인신청서류, 모뉴엘 관련 2013.12.2.자 승인 해외시장개척자금 5억원차주제출 승인신청서류, 모뉴엘 관련 2013.12.4.자 승인 포괄수출금융 90억원 차주제출 승인신청서류, 모뉴엘 관련 2010.6.4.자 승인 특례신용대출 10억원 차주제출 승인신청서류, 수출입은행 여신위임전결세칙 사본, 모뉴엘 앞 수출팩토링 취급 경위서, 수출팩토링 거래약정서(한도거래용), 수출채권 매입한도설정 신청서 및 첨부서류 각각 1부, 수출채권 매입신청서 및 첨부서류 각각 1부, ㈜모뉴엘 앞 여신 취급 경위서, 모뉴엘 여신 취급 현황(대출), ㈜모뉴엘 관련 여신(수출금융) 한도 책정 현황 및 관련 자료철 각각 1부, ㈜모뉴엘에 대한 여신 현황(순번 578번), 2010. 6. 22. 모뉴엘이 ASI에 수출하여 발생한 수출채권을 SC은행에서 USD 587,500.00에 매입한 채권서류 일체(R/S방식), 2012. 6. 18. 모뉴엘이 ASI에 수출하고 발생한 수출채권을 SC은행에서 USD 587,500.00에 매입한 채권서류 일체(O/A방식), 2010. 6. 29. 모뉴엘이 원자재를 수입할때 SC은행이 수입신용장(L/C)을 개설해주고, 선적서류가 해외에서 국내로 도착하면 SC은행이 먼저 모뉴엘 수출업자에게 USD 996,800.00을 대금 결재해 준 서류 일체(L/C방식), ASI, WANXING에 대한 신용평가서, ㈜모뉴엘에 대한 여신 현황(R/C), 모뉴엘 B2B구매자금대출 거래 내역(2011.2.1.~2014.11.20일 현재), ㈜모뉴엘에 대한 여신 현황(L/C), ㈜모뉴엘에 대한 여신 현황(O/A), 수출환어음매입(O/A) 방식 대출서류 사본, 외화기업운전자금 대출서류 사본, 통합한도(수입신용장) 대출서류 사본, 외상매출담보 대출서류 사본, 구매자금 대출서류 사본, ㈜모뉴엘 채권서류철(수협은행 압구정역지점), ㈜모뉴엘 매입채

K000531




권서류철(수협은행 압구정역지점), 모뉴엘 관련 연도별 여신 취급현황, 운영 및 시설자금 여신승인신청서, 매입외환 O/A 여신거래 약정서, O/A 매입 신청서(총 27건) 및 부속 서류(총 27건), 모뉴엘 여신현황표(사기피해 일람표) 1매, 모뉴엘에 대한 여신 현황 자료 12부, 모뉴엘 은행별 여신 현황, Transaction flow, 각 은행별 수출채권 매입신청서 및 부속서류 각 9부, 피의자별 편취 금액표, Bill of Lading(ORIGINAL), ㈜모뉴엘 허위선하증권을 이용한 무역금융 편취내역, 은행별 여신현황, 선하증권 사본 289장, 모뉴엘에 대한 공시서류 검색 결과, 경영자 확인서, 무역금융 편취, 개인 금고로 빼돌린 자금 주요 사용처

판시 제5의 가. 1) 사실5)

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 이현주에 대한 제1회 검찰피의자신문조서 중 일부 진술기재

1. 수사보고(피의자 이현주의 직무관계 관련 자료 첨부), 수사보고(피의자 이현주 상세 인사 기록 첨부)

1. 수입자총액한도등록 출력물, 수입자총액한도등록 표지, 인수위 부의 결재문서(본부장전결), 인수위 부의안 본문, 인수위 의결서

판시 제5의 가. 2) 사실6)

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 허행만에 대한 제1, 3, 4회 검찰피의자신문조서(제3, 4회는 각 일부 진술기재)

1. 임유진, 박시영, 강경식, 김윤석, 손지모, 김진옥, 조승욱, 곽광, 이완석, 김친우에 대한 각 검찰진술조서

---

5) 검찰 진술증거는 별책 5권에 첨부된 증거에 한하여 특정·거시하였다.
6) 검찰 진술증거는 별책 1권에 첨부된 증거에 한하여 특정·거시하였다.



K000532




1. 임유진의 각 진술서

1. 수사보고(허행만 이력서 첨부), 수사보고(모뉴엘 세무조사 결과), 수사보고(부창실 사
   진 및 동영상 첨부), 수사보고(방문일지 재확인)

1. 허행만 이력서, 박홍석 구글캘린더 일정표, 통화내역, 박홍석 휴대폰 저장 내용 이미
   징, 구글 캘린더 일정표(박홍석 계정)를 엑셀파일로 정리한 자료, 구글 캘린더 일정
   표(임유진 계정)를 엑셀파일로 정리한 자료, 박홍석 휴대폰에 저장된 문자메시지 내
   역(무보 관련 내용만 발췌), 박홍석 휴대폰에 저장된 이메일 내역(허행만 관련 내용
   만 발췌), 박홍석의 2013. 12. 23.자 휴대폰 통화내역, 박홍석의 2014. 3. 3.자 휴대
   폰 통화내역, 계좌거래내역, 종이 봉투에 돈을 넣는 사진, 말보로 담배 10갑들이 상
   자에 돈을 넣는 사진, 허행만 통화내역 및 핸드폰 문자 수발신 내역, 박홍석 현금출
   금 내역(2008. 12. ~ 2014. 9.), 박홍석 현금출금 내역(2011 ~ 2012년), 박홍석 현금
   출금 내역(2011 ~ 2013년), 모뉴엘 관련 단기수출보험 한도책정이력, 사진, 월근태
   관리자료, 방문일지, 동영상 및 사진 CD, 무역보험공사 3층 도면, 사진, 파티션 사
   진, 모뉴엘 관련 EFF 보험증권 발급 내역, 모뉴엘 한도 책정 내역(허행만 결재 부
   분)

판시 제5의 가. 3) 사실[7]

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 수사보고(피의자 정효명 모뉴엘 수출보험 등 관련 직무결재 자료 첨부), 수사보고(박
   홍석과 정효명의 뇌물혐의 금전거래내역 첨부), 수사보고(정효명의 거래내역 정리),
   수사보고(박홍석의 일정표 내역 중 정효명 관련 일정 첨부), 수사보고(㈜모뉴엘 관련

---

7) 검찰 진술증거는 별책 9권에 첨부된 증거에 한하여 특정·거시하였다.

K000533




정효명 이메일 내역 첨부), 수사보고(무보보증서(보험) 발급과 정효명 연관 사항 보고), 수사보고(글로벌성장사다리 프로그램 회원사 선정 관련 문서 첨부), 수사보고(한국무역보험공사 트레이드 챔프 클럽 선정 관련 문서 첨부), 수사보고(모뉴엘의 수출보험 제도개선 관련 이메일 첨부), 수사보고(정효명이 박홍석으로부터 받은 기프트카드 사용내역 첨부), 수사보고(기프트카드 수수관련 정황 입증 통화내역 등 자료 첨부), 수사보고(박홍석의 '알라딘' 룸살롱 술값 관련 신용카드 결제내역첨부)

1. 정효명의 ㈜모뉴엘 수출보험 등 신청건 관련 직무결재 내부자료, 정효명 이메일 자료 첨부, 2013. 5. 30.자 '수출 중소· 중견기업 집중 육성을 위한 『 글로벌성장사다리(SF&Global) 프로그램 』 운영 지침 제정(안)' 사본 1부, 2013. 6. 14.자 '글로벌성장사다리(SF&Global) 프로그램 회원사 모집(안)' 사본, 2013. 9. 16.자 'k-sure 글로벌성장사다리 발대식 개최(안)' 사본, 2010. 5.경 Trade Champ Club 시행방안 공문 사본, 2010. 7.경 Trade Champ Club 회원사 선정결과 보고 사본, 정효명이 박홍석으로부터 받은 기프트카드 사용 내역, 정효명의 AK골프 결제관련 자료, 정효명의 덕수한의원 결제관련 자료

판시 제5의 가. 4) 사실[8]

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 조계륭에 대한 제4회 검찰피의자신문조서

1. 수사보고(2013. 5. 27. 박홍석 구입 기프트카드 사용처 및 사용자 확인), 수사보고(조계륭 수수 기프트카드 20매 추정), 수사보고(2013. 5. 27. 박홍석 구입 기프트카드 사용자 추가 확인)

8) 검찰 진술증거는 별책 7권에 첨부된 증거에 한하여 특정·거시하였다.

K000534

1. 'SF & Global 프로그램' 운영지침 제정안(2013. 5.), '글로벌 성장사다리 프로그램 (SF & Global 프로그램)' 회원사 모집안(2013. 6.), K-Sure 글로벌 성장사다리 발대식 개최안(2013. 9.), 제2차 글로벌 성장사다리('SF & Global 프로그램' 대상기업 모집계획안, 2013. 5. 27. 구입 50만 원권 기프트카드 20장 사용내역 1부, 수사협조 의뢰 공문 2부, 2013년도 고운피부 업무노트 사본 3부, 한국무역보험공사 업무일지 표지 사본 1부, 등도디엔씨(주) 카드결제목록 사본 1부, 앤의원 답변 메일 출력물 1부, 정이안한의원 일일수납대장 사본 1부, 에스테틱스킨앤슬림 업무일지 및 계좌조회서 사본 각 1부, 조계름 수수 기프트카드 20매 내역, 수사협조의뢰(국민건강보험 급여내역 조회), 요양급여내역 회신, 요양급여내역

판시 제5의 가. 5), 6) 사실[9]

1. 제2회 공판조서 중 피고인 박흥석의 진술기재

1. 황우찬, 황인규에 대한 각 검찰피의자신문조서(황인규는 각 일부 진술기재)

1. 수사보고(글로벌성장사다리 프로그램 회원사 선정 관련 문서 첨부), 수사보고(모뉴엘의 수출보험 제도개선 관련 이메일 첨부), 수사보고(황인규가 박흥석으로부터 받은 기프트카드 사용내역 첨부), 수사보고(EFF 제도개선 요청 관련 자료 첨부), 수사보고(황인규 수수 기프트카드 사용처 추적결과 보고) 및 첨부 서류, 수사보고(박흥석 사용 모뉴엘 법인카드 첨부)

1. 2013. 5. 30.자 '수출 중소·중견기업 집중 육성을 위한 『 글로벌성장사다리 (SF&Global) 프로그램 』 운영 지침 제정(안)' 기안용지 및 공문, 2013. 6. 14.자 '글로벌성장사다리(SF&Global) 프로그램 회원사 모집(안)' 공문, 2013. 7. 25.자 '글로

---

[9] 검찰 진술증거는 별책 8권에 첨부된 증거에 한하여 특정·거시하였다.



K000535




벌성장사다리 대상기업 선정결과 보고' 공문, 2013. 9. 16.자 'K-Sure 글로벌성장사다리 발대식 개최(안)' 기안용지 및 공문이메일 8개, 특약사항 변경 관련 이메일, 법인카드 사용내역

판시 제5의 나. 1) 사실[10]

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 서우택에 대한 각 검찰피의자신문조서 중 일부 진술기재

1. 피고인 박홍석에 대한 각 검찰진술조서(제3회는 박시영, 임유진 각 진술부분, 대질은 강경식 각 진술부분 각 포함)

1. 피고인 강경식 및 이종현, 김연희에 대한 각 검찰진술조서

1. 추진호, 이영희의 각 진술서

1. 수사보고(박홍석과 서우택 식사장소 확인), 수사보고(서우택과 박홍석 조찬모임 정황 확인), 수사보고(크리넥스 티슈곽에 돈 넣는 장면 재현 사진 첨부), 수사보고(박홍석 차량 운행일지 첨부), 수사보고(기프트카드 사용 내역 확인)

1. 박홍식의 구글 스케줄 중 서우택, 이영희 관련 메모(발췌), 임유진의 구글 스케줄 중 서우택, 이영희 관련 메모(발췌), 사진 10매, 직원이력표 사본, 재현과정 연속사진 8매, 운행일지(2012. 10. 및 2014. 3.) 각각 1부, 기프트카드 사용 내역, 기프트카드 사용 내역(12매) 각각 1부

판시 제5의 나. 2) 사실[11]

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 이창종에 대한 각 검찰피의자신문조서(순번 905, 912번은 각 일부 진술기재)

---

10) 검찰 진술증거는 별책 2권에 첨부된 증거에 한하여 특정·거시하였다.
11) 검찰 진술증거는 별책 3권에 첨부된 증거에 한하여 특정·거시하였다.



K000536




1. 피고인 박홍석, 강경식에 대한 각 검찰진술조서

1. 강경식, 박시영의 각 진술서

1. 수사보고(한국수출입은행 팩토링 등 안내서 첨부), 수사보고(이창종 1억원 수수 관련 자료), 수사보고(이창종 차용증 첨부), 수사보고(이창종 인사기록카드 첨부), 수사보고(이창종 담당 대출 승인 3건 자료 첨부), 수사보고(피의자 계좌거래내역 첨부), 수사보고(진술서, 진술조서, 기프트카드 사용내역 등 첨부)

1. 한국수출입은행 알기 쉬운 수출팩토링 이용안내, 한국수출입은행중소·중견기업지원 제도안내, 강경식 명의 계좌(우리은행) 거래내역서, 차용증, 송금 전표, 통장 사진 등 각 1매, 이창종 인사기록카드 1매, 1. 수출금융 관련 모뉴엘 담당자 현황, 2. 히든챔피언크레딧라인(한도 300억 원), 3. 단기수출자금(건별 U$ 1,700만불), 4. 단기포괄수출금융(건별 90억 원)

**판시 제5의 다 사실[12)**

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 오정엽에 대한 각 검찰피의자신문조서 중 일부 진술기재(제3회는 피고인 박홍석 진술부분 포함)

1. 피고인 박홍석, 강경식에 대한 각 검찰진술조서

1. 양종희에 대한 검찰진술조서 중 일부 진술기재

1. 수사보고(3,000만원을 담배보루 및 몽쉘통통 상자에 포장하는 사진 첨부), 수사보고(피의자 오정엽 인사기록카드 등 첨부)

1. 사진 8매, 인사기록카드, 입출금전표 2장

---

12) 검찰 진술증거는 별책 4권에 첨부된 증거에 한하여 특정·거시하였다.



K000537




판시 제5의 라 사실[13]

1. 제2회 공판조서 중 피고인 박홍석의 진술기재

1. 전병하에 대한 제1회 검찰피의자신문조서 중 일부 진술기재

1. 신철옥에 대한 각 검찰진술조서

1. 박시영, 곽영철, 신철옥, 곽종태에 대한 각 경찰진술조서

1. 수사보고(케이티넥트웍스 마진율 하락 자료), 수사보고(전병하 HSBC 계좌 첨부), 수사보고(전병하가 수수한 USD 환산)

1. 업무제휴계약서, 각 보고서(순번 999, 1002번), 자료요청회신, ㈜케이티네트웍스 수출신고내역, 계좌거래내역 정리(순번 1015번), ASI 매출채권 미수금 내역, 케이티네트웍스 ASI 관련 이익률표, 케이티네트웍스 내부 결제문서 사본, 박홍석의 기업은행 계좌거래내역 발췌, PK Holdings 계좌거래 내역, 전병하 명의 HSBC 계좌거래내역

1. 사업자등록증[㈜케이티이엔에스]

법령의 적용

1. 범죄사실에 대한 해당법조

    가. 피고인 박홍석

       특정경제범죄 가중처벌 등에 관한 법률 제4조 제2항 제1호, 제1항 전단[14](재산국

---

13) 검찰 진술증거는 별책 6권에 첨부된 증거에 한하여 특정·거시하였다.

14) 특정경제범죄 가중처벌 등에 관한 법률 제4조 제1항은 재산국외도피죄의 구성요건을 전단과 후단으로 나누어 달리 규정하고 있고, 판시 재산국외도피행위는 위 조항 전단에 위반한 것이다. 즉, 피고인의 행위는, 자신의 행위가 법령에 위반하여 국내재산을 해외로 이동한다는 인식과 그 행위가 재산을 대한민국의 법률과 제도에 의한 규율과 판리를 받지 않고 자신이 해외에서 임의로 소비, 축적, 은닉 등 지배·관리할 수 있는 상태에 두는 행위라는 인식을 가지고 국내재산을 해외로 이동하여 대한민국 또는 대한민국 국민의 재산이 유출될 위험이 있는 상태를 발생(도피)시킨 때에 해당한다(대법원 2005. 4. 29. 선고 2002도7262 판결 등 참조). 따라서 위 조항 후단의 구성요건(법령에 의하여 국내에 반입하여야 할 의무를 부담하는 대한민국 또는 대한민국 국민의 재산을 은닉·처분)에 해당하는지 불분명하다는 사정을 판시 특정경제범죄가중처벌등에관한법률위반(재산국외도피)죄의 유리한 정상으로 참작할 수 없다. 이와 다른 전제에 선 피고인과 그 변호인의 주장은 받아들이지 아니한다.

K000538




외도피의 점, 포괄하여), 각 구 관세법(2014. 1. 1. 법률 제12159호로 개정되기 전의

것, 이하 같다) 제270조의2, 제241조 제1항, 형법 제30조(2013. 9. 9.경부터 2013. 12.

26.경까지 수출가격조작의 점), 각 관세법 제270조의2 제3호, 제241조 제1항, 형법 제

30조(2014. 1. 27.경부터 2014. 7. 31.경까지 수출가격조작의 점), 각 관세법 제276조

제2항 제4호, 제241조 제1항, 형법 제30조(허위 수출신고의 점 및 허위 수입신고의

점), 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제347조 제1

항, 제30조(사기의 점, 피해자별로 포괄하여), 각 형법 제216조, 제30조(허위유가증권

작성의 점), 각 형법 제217조, 제216조, 제30조(허위 작성 유가증권 행사의 점), 각 구

주식회사의 외부감사에 관한 법률(2013. 12. 30. 법률 제12148호로 개정되기 전의 것,

이하 같다) 제20조 제1항, 제13조, 형법 제30조(거짓 재무제표 작성·공시의 점), 각 형

법 제133조 제1항, 제129조 제1항(뇌물공여의 점, 정효명 부분은 형법 제132조, 무역보

험법 제52조, 이현주, 허행만, 조계룡, 황인규, 황우찬 부분은 무역보험법 제52조, 서우

택, 이창종 부분은 특정범죄 가중처벌 등에 관한 법률 제4조 제1항을 각 추가, 허행만,

정효명, 황인규, 황우찬, 서우택, 이창종 부분은 수수자별로 포괄하여), 형법 제357조

제2항, 제1항(배임증재의 점, 포괄하여)

　나. 피고인 신철욱

　　각 구 관세법 제270조의2, 제241조 제1항, 형법 제30조(2013. 9. 9.경부터 2013.

12. 26.경까지 수출가격조작의 점), 각 관세법 제270조의2 제3호, 제241조 제1항, 형법

제30조(2014. 1. 27.경부터 2014. 7. 31.경까지 수출가격조작의 점), 각 관세법 제276조

제2항 제4호, 제241조 제1항, 형법 제30조(허위 수출신고의 점 및 허위 수입신고의

점), 외국환거래법 제29조 제1항 제6호, 제18조 제1항, 형법 제30조(미신고 자본거래의

K000539




점, 포괄하여), 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제

347조 제1항, 제30조(사기의 점, 피해자별로 포괄하여)

다. 피고인 강경식

각 구 관세법 제270조의2, 제241조 제1항, 형법 제30조(2013. 9. 9.경부터 2013.

12. 26.경까지 수출가격조작의 점), 각 관세법 제270조의2 제3호, 제241조 제1항, 형법

제30조(2014. 1. 27.경부터 2014. 7. 31.경까지 수출가격조작의 점), 각 관세법 제276조

제2항 제4호, 제241조 제1항, 형법 제30조(허위 수출신고의 점 및 허위 수입신고의

점), 외국환거래법 제29조 제1항 제6호, 제18조 제1항, 형법 제30조(미신고 자본거래의

점, 포괄하여), 각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제

347조 제1항, 제30조(사기의 점, 피해자별로 포괄하여), 각 구 주식회사의 외부감사에

관한 법률 제20조 제1항, 제13조, 형법 제30조(거짓 재무제표 작성·공시의 점)

라. 피고인 조현오

각 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제347조 제1

항, 제30조(사기의 점, 피해자별로 포괄하여), 각 형법 제216조, 제30조(허위유가증권

작성의 점), 각 형법 제217조, 제216조, 제30조(허위 작성 유가증권행사의 점), 각 특정

경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제1호, 형법 제347조 제1항, 제32조

제1항(피해자 중소기업은행, 산업은행, 우리은행에 대한 사기방조의 점, 피해자별로 포

괄하여), 특정경제범죄 가중처벌 등에 관한 법률 제3조 제1항 제2호, 형법 제347조 제

1항, 제32조 제1항(피해자 외환은행에 대한 사기방조의 점, 포괄하여), 각 구 주식회사

의 외부감사에 관한 법률 제20조 제1항, 제13조, 형법 제30조(거짓 재무제표 작성·공시

의 점)



K000540




1. 형의 선택

각 특정경제범죄가중처벌등에관한법률위반(재산국외도피)죄, 각 특정경제범죄가중처벌등에관한법률위반(사기)죄, 각 특정경제범죄가중처벌등에관한법률위반(사기)방조죄(피해자 외환은행에 대한 부분 제외)에 대하여 각 유기징역형, 각 수출가격조작으로 인한 관세법위반죄, 각 외국환거래법위반죄, 각 허위유가증권작성죄, 각 주식회사의외부감사에관한법률위반죄, 각 뇌물공여죄, 배임증재죄에 대하여 각 징역형을 각 선택

1. 방조감경

피고인 조현오 : 형법 제32조 제2항, 제55조 제1항 제3호[각 특정경제범죄가중처벌등에관한법률위반(사기)방조죄에 대하여]

1. 경합범가중

가. 피고인 박흥석

형법 제37조 전단, 제38조 제1항 제2호, 제3호, 제50조, 관세법 제278조[각 허위 수출신고 및 허위 수입신고로 인한 관세법위반죄를 제외한 나머지 각 죄에 대하여 형이 가장 무거운 특정경제범죄가중처벌등에관한법률위반(재산국외도피)죄에 정한 형에 경합범 가중한 징역형과 각 허위 수출신고 및 허위 수입신고로 인한 관세법위반죄에 정한 각 벌금형을 병과]

나. 피고인 신철욱

형법 제37조 전단, 제38조 제1항 제2호, 제3호, 제50조, 관세법 제278조[각 허위 수출신고 및 허위 수입신고로 인한 관세법위반죄를 제외한 나머지 각 죄에 대하여 형과 범정이 가장 무거운 피해자 중소기업은행에 대한 특정경제범죄가중처벌등에관한법률위반(사기)죄에 정한 형에 경합범 가중한 징역형과 각 허위 수출신고 및 허위 수입

K000541




신고로 인한 관세법위반죄에 정한 각 벌금형을 병과]

다. 피고인 강경식

형법 제37조 전단, 제38조 제1항 제2호, 제3호, 제50조, 관세법 제278조[각 허위 수출신고 및 허위 수입신고로 인한 관세법위반죄를 제외한 나머지 각 죄에 대하여 형과 범정이 가장 무거운 피해자 중소기업은행에 대한 특정경제범죄가중처벌등에관한법률위반(사기)죄에 정한 형에 경합범 가중한 징역형과 각 허위 수출신고 및 허위 수입신고로 인한 관세법위반죄에 정한 각 벌금형을 병과]

라. 피고인 조현오

형법 제37조 전단, 제38조 제1항 제2호, 제50조[형과 범정이 가장 무거운 피해자 산업은행에 대한 특정경제범죄가중처벌등에관한법률위반(사기)죄에 정한 형에 경합범 가중]

1. 작량감경

피고인 조현오 : 형법 제53조, 제55조 제1항 제3호(아래 양형의 이유 중 유리한 정상 참작)

1. 노역장유치

가. 피고인 박홍석 : 형법 제70조 제2항, 제69조 제2항

나. 피고인 신철욱, 강경식 : 각 형법 제70조 제1항, 제69조 제2항

1. 추징

피고인 박홍석 : 특정경제범죄 가중처벌 등에 관한 법률 제10조 제3항, 제1항

**양형의 이유**

1. 처단형의 범위



K000542




가. 피고인 박홍석

징역 10년 ~ 45년 및 벌금 6,305만 원 ~ 268억 2,000만 원[1,341회(허위 수출신고 및 허위 수입신고의 횟수) × (5만 원 ~ 2,000만 원)]

나. 피고인 신철욱, 강경식

징역 5년 ~ 45년 및 벌금 5,770만 원 ~ 230억 8,000만 원[1,154회 × (5만 원 ~ 2,000만 원)

다. 피고인 조현오

징역 2년 6월 ~ 22년 6월

2. 양형기준 검토

가. 피고인 박홍석

1) 각 특정경제범죄가중처벌등에관한법률위반(사기)죄

○ 유형의 결정

- 사기범죄군 > 조직적 사기 > 300억 원 이상(제5유형)

- 동종경합범이므로 이득액을 합산하여 유형을 결정

○ 특별양형인자

- 사기범행을 주도적으로 계획하거나 그 실행을 지휘한 경우(행위, 가중요소)

- 다수의 피해자를 대상으로 하거나 상당한 기간에 걸쳐 반복적으로 범행한 경우(행위, 가중요소)

- 처벌불원 또는 상당부분 피해 회복된 경우(행위자/기타, 감경요소)

- 자수(행위자/기타, 감경요소)

○ 권고형의 결정



K000543





- 징역 11년 이상(가중영역, 같은 숫자의 행위인자는 행위자/기타인자보다 중하게 고려하므로)

2) 각 뇌물공여죄

○ 유형의 결정

- 뇌물범죄군 > 뇌물공여 > 1억 원 이상(제4유형)

- 동종경합범이므로 공여한 뇌물액을 합산하여 유형을 결정

○ 특별양형인자

- 자수(감경요소)

○ 권고형의 결정 : 징역 2년 ~ 3년(감경영역)

3) 배임증재죄

○ 유형의 결정

- 배임수증재범죄군 > 배임증재 > 1억 원 이상(제3유형)

○ 특별양형인자

- 적극적 증재(가중요소)

- 자수(감경요소)

○ 권고형의 결정 : 징역 10월 ~ 1년 6월(기본영역)

4) 특정경제범죄가중처벌등에관한법률위반(재산국외도피)죄, 각 관세법위반죄, 각 허위유가증권작성죄, 각 허위작성유가증권행사죄, 각 주식회사의외부감사에관한법률위반죄에 대하여는 양형기준이 설정되어 있지 않다. 위 각 죄를 포함하여 피고인이 범한 모든 죄는 형법 제37조 전단 경합범이므로, 피고인에 대하여는 양형기준상 하한이 제일 높은 각 특정경제범죄가중처벌등에관한법률위반(사기)죄 권고형의 하한(11년) 준수

K000544




가 요청된다.

나. 피고인 신철욱

1) 각 특정경제범죄가중처벌등에관한법률위반(사기)죄

○ 유형의 결정

- 사기범죄군 > 조직적 사기 > 300억 원 이상(제5유형)

- 동종경합범이므로 이득액을 합산하여 유형을 결정

○ 특별양형인자

- 다수의 피해자를 대상으로 하거나 상당한 기간에 걸쳐 반복적으로 범행한 경우(행위, 가중요소)

- 단순 가담(행위, 감경요소)

- 처벌불원 또는 상당부분 피해 회복된 경우(행위자/기타, 감경요소)

- 자수(행위자/기타, 감경요소)

○ 권고형의 결정

- 징역 3년 ~ 10년(감경영역, 행위인자인 특별가중인자와 특별감경인자 상호간 상쇄, 행위자/기타인자인 특별감경인자만 2개 존재하므로, 형량범위 하한을 1/2까지 감경)

2) 각 관세법위반죄, 각 외국환거래법위반죄에 대하여는 양형기준이 설정되어 있지 않다. 위 각 죄를 포함하여 피고인이 범한 모든 죄는 형법 제37조 전단 경합범이므로, 피고인에 대하여는 양형기준상 하한이 제일 높은 각 특정경제범죄가중처벌등에관한법률위반(사기)죄 권고형의 하한(3년) 준수가 요청된다.

다. 피고인 강경식

1) 각 특정경제범죄가중처벌등에관한법률위반(사기)죄

○ 유형의 결정

- 사기범죄군 > 조직적 사기 > 300억 원 이상(제5유형)

- 동종경합범이므로 이득액을 합산하여 유형을 결정

○ 특별양형인자

- 다수의 피해자를 대상으로 하거나 상당한 기간에 걸쳐 반복적으로 범행한

   경우(행위, 가중요소)

- 단순 가담(행위, 감경요소)

- 처벌불원 또는 상당부분 피해 회복된 경우(행위자/기타, 감경요소)

- 자수(행위자/기타, 감경요소)

○ 권고형의 결정

- 징역 3년 ~ 10년(감경영역, 행위인자인 특별가중인자와 특별감경인자 상호

   간 상쇄, 행위자/기타인자인 특별감경인자만 2개 존재하므로, 형량범위 하한

   을 1/2까지 감경)

2) 각 관세법위반죄, 각 외국환거래법위반죄, 각 주식회사의외부감사에관한법률위
반죄에 대하여는 양형기준이 설정되어 있지 않다. 위 각 죄를 포함하여 피고인이 범한
모든 죄는 형법 제37조 전단 경합범이므로, 피고인에 대하여는 양형기준상 하한이 제
일 높은 각 특정경제범죄가중처벌등에관한법률위반(사기)죄 권고형의 하한(3년) 준수가
요청된다.

라. 피고인 조현오

1) 각 특정경제범죄가중처벌등에관한법률위반(사기)죄



K000546

 

○ 유형의 결정

 - 사기범죄군 > 조직적 사기 > 300억 원 이상(제5유형)

 - 동종경합범이므로 이득액을 합산하여 유형을 결정

○ 특별양형인자

 - 다수의 피해자를 대상으로 하거나 상당한 기간에 걸쳐 반복적으로 범행한
   경우(행위, 가중요소)

 - 단순 가담(행위, 감경요소)

 - 처벌불원 또는 상당부분 피해 회복된 경우(행위자/기타, 감경요소)

 - 자수(행위자/기타, 감경요소)

○ 권고형의 결정

 - 징역 3년 ~ 10년(감경영역, 행위인자인 특별가중인자와 특별감경인자 상호
   간 상쇄, 행위자/기타인자인 특별감경인자만 2개 존재하므로, 형량범위 하한
   을 1/2까지 감경)

  2) 각 허위유가증권작성죄, 각 허위작성유가증권행사죄, 각 특정경제범죄가중처벌
등에관한법률위반(사기)방조죄, 각 주식회사의외부감사에관한법률위반죄에 대하여는 양
형기준이 설정되어 있지 않다. 위 각 죄를 포함하여 피고인이 범한 모든 죄는 형법 제
37조 전단 경합범이므로, 피고인에 대하여는 양형기준상 하한이 제일 높은 특정경제범
죄가중처벌등에관한법률위반(사기)죄 권고형의 하한(3년) 준수가 요청된다.

3. 선고형의 결정

 가. 공통된 양형참작사유

 1) 범행 결과



K000547

 

www.scourt.go.kr
용성출력용바코드

모뉴엘 등 명의로 합계 3조 4,000억 원이 넘는 사기 대출을 받았다. 수출금융을 제공하는 대표적 국내 금융기관 10곳이 피해를 입었다. 현재까지 상환되지 않은 금액이 5,400억 원을 넘는다. 모뉴엘은 파산하였고, ASI, CNBM 등 모뉴엘의 허위 수출 상대방이 된 거래처가 가장된 수출대금채무를 상환할 의무가 있는지 여부가 불확실하며, 있다고 하더라도 임의상환을 기대하기 어려운 상황이다. 모뉴엘을 위하여 수출보증 및 보험을 제공한 한국무역보험공사에 상당한 피해가 전가될 가능성이 있다.

이러한 재산상 피해 외에도, 이 사건은 자본주의 시장경제의 근간을 이루는 금융시스템에 대한 사회일반의 신뢰를 심각하게 훼손하였고, 중소·중견기업의 수출을 장려하여 수출을 진흥하고 궁극적으로 국가경제의 발전을 도모하기 위해 정책적인 관점에서 신뢰를 바탕으로 제공되는 무역보험제도와 수출금융제도의 위축을 야기할 실제적 위험을 초래하였다.

범행 결과 면에서 그 죄책이 유래 없이 크다.

2) 범행 수단 등

사기 대출을 위하여 각종 위법행위를 하는 등 그 수법이 매우 불량하다.

허위 수출계약서, PO 등 서류를 작성하고, 시장에서 거래가 없는 HTPC를 형식적으로 수출하면서 관세법을 위반하여 가격을 부풀려 신고함으로써 그 신고서류를 대출에 이용하였다. 일정 시점 이후부터는 유가증권인 허위 복합운송증권을 작성하여 행사하였다. 금융기관에 매각한 수출대금채권을 상환하기 위하여, 해외 페이퍼컴퍼니와 수입거래를 가장하고 해외 페이퍼컴퍼니 계좌에 수입대금 지급을 빙자하여 외국환거래법을 위반하여 송금함으로써 예금하였다. HTPC를 허위로 회전시킨다는 사실이 발각되지 않기 위하여, 다수의 해외 페이퍼컴퍼니를 설립하고 서류상 복수의 회사를 거쳐

www.scourt.go.kr
음성출력용바코드

HTPC의 외관상 소유권을 회전시켰다. 금융기관의 실사 시 형식적 임가공공장에 직원을 고용하고 견본 제품을 준비하는 등 속임수도 썼다. 허위 수출입회전거래로 인한 매출, 매입 등을 재무제표에 반영하여 분식회계를 하였고, 분식된 재무제표는 금융기관이 여신 제공을 결정함에 있어 중요한 고려요소가 되었다.

더욱이, 무역보험공사가 모뉴엘 및 그 해외 거래처에 대한 신용 등을 심사하여 정책적 관점에서 제공하는 수출보험 및 보증이 대출에 중요하게 고려하는 것을 기회로 이용하기 위해, 무역보험공사 전·현직 임직원에 대하여 뇌물공여 등 방법으로 지속적 로비를 하였다. 단기수출보험 특약사항이 모뉴엘에 유리하게 변경되어 대출로 이어지기도 하였다는 사실이 밝혀졌다.

피고인들을 비롯한 모뉴엘 일부 직원, 브로커 등 해외 거래처 관계자 등이 조직적이고 계획적으로 역할을 분담하였기 때문에, 막대한 규모의 대출사기, 그 과정의 HTPC 회전을 위한 수출과 수입, 허위 서류의 작성, 대규모 외환거래가 계속·반복될 수 있었다.

이와 같은 수단의 치밀함, 적극성, 계획성, 조직성 등에 비추어 보면, 범행 수단 면에서도 죄질이 극히 나쁘다고 인정되고, 피해 금융기관의 중대한 과실로 말미암아 이 사건 사기 범행이 가능하였다고 평가하기도 어렵다.

3) 범행 동기, 경위 그리고 편취한 자금의 용처 등

이 사건은 모뉴엘 운영자금을 마련하여 이윤을 추구하고자 한 동기에서 비롯된 기업범죄이다. 다만, 범행의 직접적이고 주된 목적이 사기 대출금을 개인적으로 착복하는 데 있었다고 인정하기는 어렵다. 새로운 사기 대출은 주로 기존 대출을 상환하기 위한 목적에서 이루어졌고, 모뉴엘의 형편상 새로운 사기가 아니고서는 기존 대출을

상환할 수 없는 처지에 있었기에 범행이 반복되어 그 규모가 천문학적으로 발전한 측면이 있다. 피고인들을 비롯한 임직원들의 노력으로 로봇청소기 등 분야에서 소기의 성과를 거두는 등 다른 한편으로 정상적인 기업활동을 위하여 노력하기도 하였다.

그러나 피고인 박홍석이 모뉴엘을 인수한 직후부터 대출사기가 개시되었다. 위 피고인이 주장하는 회전거래 개시경위를 고려하더라도, 모뉴엘을 이용하여 대출사기를 시작할 수밖에 없는 급박한 사정이 있었다고 할 수 없다. 모뉴엘은 사기 대출로 성장하였고, 항상 진성매출보다 가성매출이 10배 가까이 많았다. 사기 대출로 조달한 자금은 방만하게 소비되었다. 수천억 원에 달하는 허위 회전거래비용(운임, 통관비용, 해외거래처에 지급한 마진, 브로커에 지급한 커미션, 수출대금채권 매각 등에 따른 금융비용, 과대계상된 매출에 근거한 법인세 등)은 차치하더라도, 제대로 된 실사 없이 잘만테크를 인수하여 600억 원 가량을 썼고, 모뉴엘의 실제 매출액이나 순자본에 비추어 걸맞지 않는 제주사옥 건설에 450억 원 가량을 지출하였다. 아래에서 살펴보는 것처럼 결과적으로 개인적으로 착복된 금액도 매우 크다.

한편, 피고인들은 모뉴엘의 로봇사업 등을 성공시켜 회사를 매각하는 방법으로 대출금을 변제할 수 있으리라 기대하였다고 하나, 제출된 자료를 모두 살펴보아도 그 기대가 합리적이었다고 보이지 아니한다.

이와 같이 범행 동기, 경위 그리고 편취한 자금의 용처 측면의 사정을 살펴보더라도, 그 죄책을 절대 가볍게 평가할 수 없다.

4) 소결

이상에서 살펴본 범행의 동기, 경위, 수단, 결과, 편취한 자금의 용처 그리고 유사사안의 재발방지라는 일방예방적 측면을 고려할 때, 이 사건 범행에 가담한 피고인

K000550



www.ecourt.go.kr
음성출력용바코드

들에 대한 엄벌은 불가피하다.

나. 피고인 박홍석

피고인은 이 사건 범행의 주모자이고 최종 책임자이다. 해외 거래처 또는 브로커와 허위 수출거래를 교섭하고 중요한 내용을 결정하였고, 에릭 리, 제프 김 등을 통하여 허위 수입거래 및 외환자금 회전에 사용할 해외 페이퍼컴퍼니를 설립하고 관리하였다. 사기 대출금을 직접 관리하였고, 사기 대출금 중 막대한 금액을 개인적으로 사용하였다고 평가된다. 미국 주택구입자금으로 사용하는 등 해외에서 소비한 금액 외에 피고인이 해외 페이퍼컴퍼니 계좌를 거쳐 국내로 반입하거나 모뉴엘로부터 차용한 후 변제하지 못한 돈 그리고 모뉴엘로부터 배당받은 금액이 수백억 원에 이른다. 이 돈들은 PC카페 운영자금, 엔터테인먼트사업, 거름회사 등에 대한 투자, 개인에게 부과된 세금 납부, 생활비 외에 커미션, 뇌물, 로비자금 등으로 사용되었고, 40억 원 가량이 카지노로 들어가 사라졌다. 피고인의 진술에 의하더라도 카지노에 들어간 돈 중 약 15억 원 가량은 피고인이 도박자금으로 썼다고 인정된다. 한국무역보험공사 임직원 등에 대한 로비도 직접 수행하였다.

다만, 피고인은 초범이다. 모뉴엘 임직원에 대한 책임감, 기존 사기 대출금을 변제할 수 있으리라는 소박한 기대 때문에 범행을 반복한 측면이 있다. 해외에 체류하던 중 모뉴엘에 대한 수사가 개시되었다는 사정을 알게 되었음에도 자진 귀국한 이래 성실히 수사에 협조하였다. 한국무역보험공사 임직원 등에 대한 뇌물공여 사실을 털어놓아 수뢰자들에 대한 수사가 가능하였다. 소환된 이래 범죄사실 전부를 자백하고 반성하고 있다. 자수하였다고 평가할 수 있다. 모뉴엘의 임·직원들을 비롯한 다수의 사람들이 피고인에 대한 선처를 탄원하고 있다.

이상에서 살펴본 사정들과 함께, 피고인의 연령, 성행, 환경, 가족관계 등 이 사건 공판과정에 나타난 제반사정과 함께 유사사건과의 형평을 고려하여 주문과 같이 형15)을 정하였다.

다. 피고인 신철욱

피고인은 이 사건 사기 범행 대부분에 가담하였다. 상환되지 않은 대출금 전부에 대하여 책임이 있다. 회전거래의 전체적 구조를 알고 있었다. 모뉴엘과 해외 거래처 사이의 수출계약서를 작성하고, 모뉴엘을 위하여 거래처(ASI, NEWEGG, 케이티네트웍스 등) 또는 담당 브로커를 상대하며 PO 발급 업무 등을 수행하였다. 기망수단의 핵심이 되는 허위 수출거래 외관을 작출하는 역할을 담당하였다고 평가된다.

다만, 피고인은 박홍석의 지시에 따라 실무를 처리하였을 뿐, 허위 거래처를 새롭게 확보한 바 없고 거래처 관계자나 브로커와 거래의 시기, 규모, 마진 등 중요내용을 협의하거나 관련된 의사를 결정하지도 않았다. 사기로 마련된 자금의 관리나 집행에 관여하지도 않았다. 이 사건 범행 자체로 얻은 개인적 이익이 없다. 피고인은 모뉴엘에 대한 수사가 개시되었다는 사정을 알게 되었음에도 자진 귀국한 이래 성실히 수사에 협조하였다. 모든 범죄사실을 자백하고 반성하고 있다. 자수하였다고 평가할 수 있다. 피고인은 아무런 범죄전력이 없고, 모뉴엘의 임·직원들을 비롯한 다수의 사람들이 피고인에 대한 선처를 탄원하고 있다.

이상에서 살펴본 사정들과 함께, 피고인의 연령, 성행, 환경, 가족관계 등 이 사건 공판과정에 나타난 제반사정을 참작하여 주문과 같이 형16)을 정하였다.

---

15) 허위 수출신고 및 허위 수입신고로 인한 각 관세법위반죄 중 별지 범죄일람표4 172번 기재 부분에 대한 벌금은 74,860원, 나머지 부분(1,340회)에 대한 벌금은 각 74,571원으로 각 정한다. ※ 1억 원 = 74,860원 + (74,571원 × 1,340회)
16) 각 관세법위반죄 중 별지 범죄일람표4 172번 기재 부분에 대한 벌금은 52,071원, 나머지 부분(1,153회)에 대한 벌금은 각 51,993원으로 각 정한다. ※ 6,000만 원 = 52,071원 + (51,993원 × 1,153회)



K000552




라. 피고인 강경식

　피고인은 이 사건 사기 범행 대부분(약 3조 원)에 가담하였고, 상환되지 않은 대출금 전부에 대하여 책임이 있다. 금융기관, 한국무역보험공사 담당자들과 교섭하면서 여신제공, 수출보증 및 보험 관련된 실무를 총괄하였다. HTPC 수출입 통관과 외국환 관련 실무도 담당하였다. 모뉴엘 재무이사로서 분식회계에 대하여 직접 책임이 있다. 박홍석과 함께 한국무역보험공사 임직원, 케이티네트웍스 전병하 등에 대한 로비활동을 하였다.

　다만, 피고인은 박홍석에 의하여 결정된 사항을 실무자로서 처리하였을 뿐이다. 이 사건 범행 자체로 얻은 개인적 이익이 없다. 자진하여 소환에 응한 이래 모든 범죄사실을 자백하고 반성하면서 수사에 적극 협조한 점은 자수로 평가할 수 있다. 피고인은 아무런 범죄전력이 없다. 모뉴엘의 임·직원들을 비롯한 다수의 사람들이 피고인에 대한 선처를 탄원하고 있다.

　이상에서 살펴본 사정들과 함께, 피고인의 연령, 성행, 환경, 가족관계 등 이 사건 공판과정에 나타난 제반사정을 참작하여 주문과 같이 형[17]을 정하였다.

마. 피고인 조현오

　피고인은 모뉴엘 재무이사로 재직하면서 약 2,923억 원의 사기 대출에 가담하고, 분식된 재무제표 작성·공시에 관여하였다. 에이치비라인을 운영하면서 총 289회에 걸쳐 허위 복합운송증권을 작성·행사함으로써 약 2,958억 원의 사기 대출을 방조하였다. 모뉴엘의 허위 수출거래와 관련하여 운송주선을 함으로써 이익을 얻었다. 에이치비라인의 설립자금 3억 원은 박홍석에게서 지원받은 돈이다.

---

17) 각 관세법위반죄 중 별지 범죄일람표4 172번 기재 부분에 대한 벌금은 52,071원, 나머지 부분(1,153회)에 대한 벌금은 각 51,993원으로 각 정한다. ※ 6,000만 원 = 52,071원 + (51,993원 × 1,153회)

K000553



다만, 피고인이 가담한 사기로 인한 피해액은 모두 상환되었다. 사기방조로 인한 피해액 중 미상환 금액은 400억 원 가량이다. 사기범행과 관련하여 한 역할이 많지 않다. 자진하여 소환에 응한 이래 모든 범죄사실을 자백하고 반성하면서 수사에 적극 협조한 점은 자수로 평가할 수 있다. 피고인은 아무런 범죄전력이 없고, 다수의 사람들이 피고인에 대한 선처를 탄원하고 있다.

이상에서 살펴본 사정들과 함께, 피고인의 연령, 성행, 환경, 가족관계 등 이 사건 공판과정에 나타난 제반사정을 참작하여 주문과 같이 형을 정하였다.

재판장    판사    김동아    _____

판사    박재민    _____

판사    강성훈    _____



K000554

## CERTIFICATION OF TRANSLATION

I certify that the provided Korean to English translation of the source document listed below is an accurate and complete rendering of the contents of the source document to the best of my knowledge and ability:

### Seoul Central Disgtrict Court Criminal Department 25 – Decision
### Case No: 2014 Gohap 1348 and 2015 Gohap 55 (joined)

I further certify that I am a qualified professional translator familiar with both languages with more than fifteen years of experience in Korean to English translation of various legal, technical and business documents.

December 27, 2016

Nicole Lee
Certified Court Interpreter (Korean ◇ English)
State of California
Certification No. 300859

PLEASE SEE ATTACHED
CURRENT CALIFORNIA
NOTARY FORM

# California Acknowledgment Form

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of __LOS ANGELES__ } ss.

On __12/27/2016__ before me, __Christian Gutierrez, Notary Public__,
(here insert name and title of the officer)
personally appeared __NICOLE LEE__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Seal

WITNESS my hand and official seal.

Signature of Notary

CHRISTIAN GUTIERREZ
COMM. # 2093925
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. DEC. 18, 2018

———————— Optional Information ————————

To help prevent fraud, it is recommended that you provide information about the attached document below.
***This is not required under California State notary public law.***

Document Title:_____ # of Pages:_____

## Notes

# EXHIBIT "F"

### 3. Credit Loan Extended to Moneual, Inc. by Financial Institutions
(As of June 16, 2014)

(KRW 1 million)

| Financial Institutions | Loans | Footnotes, etc. | Total |
|---|---|---|---|
| Bank Subtotal | 580,532 | 331 | 580,863 |
|    Korea Development Bank | 122,406 | 179 | 122,585 |
|    Nonghyup Bank | 53,314 | 6 | 53,320 |
|    Industrial Bank of Korea | 135,010 | 140 | 135,150 |
|    Korea Exchange Bank | 108,109 | 0 | 108,109 |
|    KB Kukmin Bank | 65,104 | 0 | 65,104 |
|    Suhyup Bank | 14,548 | 0 | 14,548 |
|    Export-Import Bank of Korea | 68,324 | 0 | 68,324 |
|    Woori Bank | 163 | 0 | 169 |
|    Standard Charted Bank Korea | 1,564 | 0 | 1,564 |
|    Regional Bank Total [Note] | 11,990 | 0 | 11,990 |
| Insurance Company Total | 0 | 9,324 | 9,324 |
| Special Financial Institution Total | 0 | 12,888 | 12,888 |
| Specialized Credit Financing Total | 1,105 | 7 | 1,112 |
| Grand Total | 581,637 | 22,550 | 604,187 |

Note) Daegu Bank and Gwangju Bank
Source: Corporate Information Daily Newsletter, The Korea Federation of Banks (KFB)

K00218

## 3. ㈜모뉴엘 앞 금융회사 신용공여현황

('14. 6. 16자 기준)

(백만원)

| 금융기관명 | | 대출채권 | 주석 및 기타 | 합계 |
|---|---|---|---|---|
| 은 행 소 계 | | 580,532 | 331 | 580,863 |
| | 산 업 | 122,406 | 179 | 122,585 |
| | 농 협 | 53,314 | 6 | 53,320 |
| | 기 업 | 135,010 | 140 | 135,150 |
| | 외 환 | 108,109 | 0 | 108,109 |
| | 국 민 | 65,104 | 0 | 65,104 |
| | 수 협 중 앙 회 | 14,548 | 0 | 14,548 |
| | 수 출 입 은 행 | 68,324 | 0 | 68,324 |
| | 우 리 | 163 | 6 | 169 |
| | S C 제 일 | 1,564 | 0 | 1,564 |
| | 지방은행계[주] | 11,990 | 0 | 11,990 |
| 보 험 회 사 계 | | 0 | 9,324 | 9,324 |
| 특 수 금 융 기 관 계 | | 0 | 12,888 | 12,888 |
| 여 신 전 문 계 | | 1,105 | 7 | 1,112 |
| 총 계 | | 581,637 | 22,550 | 604,187 |

주) 대구은행, 광주은행
자료 : 은행연합회 기업정보일보

K00218

## CERTIFICATION OF TRANSLATION

I certify that the provided Korean to English translation of the source document(s) listed below is an accurate and complete rendering of the contents of the source document to the best of my knowledge and ability:

**Credit Loan Extended to Moneual, Inc. by Financial Institutions**
**Bates Number K00218**
**Bates Number K00247**
**Bates Number K00315**

I further certify that I am a qualified professional translator familiar with both languages with more than fifteen years of experience in Korean to English translation of various legal, technical and business documents.

December 27, 2016

Nicole Lee
Certified Court Interpreter (Korean ⬦ English)
State of California
Certification No. 300859

PLEASE SEE ATTACHED
CURRENT CALIFORNIA
NOTARY FORM

# California Acknowledgment Form

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES } ss.

On 12/27/2016 before me, Christian Gutierrez, Notary Public,
(here insert name and title of the officer)

personally appeared NICOLE LEE

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Seal

WITNESS my hand and official seal.

Signature of Notary

CHRISTIAN GUTIERREZ
COMM. # 2093925
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. DEC. 18, 2018

———— Optional Information ————

To help prevent fraud, it is recommended that you provide information about the attached document below.
***This is not required under California State notary public law.***

Document Title:_____ # of Pages:_____

## Notes

# EXHIBIT "G"

### 3. Credit Loan Extended to Moneual, Inc. by Financial Institutions
(As of December 19, 2013)

(KRW 1 million)

| Financial Institutions | Loans | Footnotes, etc. | Total |
|---|---|---|---|
| Bank subtotal | 594,902 | 5,360 | 600,262 |
|     Korea Development Bank | 88,297 | 2,254 | 90,551 |
|     Nonghyup Bank | 42,295 | 1,003 | 43,298 |
|     Industrial Bank of Korea | 117,539 | 10 | 117,549 |
|     Korea Exchange Bank | 139,580 | 0 | 139,580 |
|     KB Kukmin Bank | 77,660 | 0 | 77,660 |
|     Suhyup Bank | 15,514 | 0 | 15,514 |
|     Export-Import Bank of Korea | 70,294 | 0 | 70,294 |
|     Woori Bank | 1,682 | 92 | 1,774 |
|     Standard Charted Bank Korea | 18,206 | 1,988 | 20,194 |
|     Citibank Korea | 8,989 | 0 | 8,989 |
|     Regional Bank Total [Note] | 14,846 | 13 | 14,859 |
| Insurance Company Total | 0 | 10,064 | 10,064 |
| Special Financial Institution Total | 0 | 12,932 | 12,932 |
| Specialized Credit Financing Total | 1,018 | 5 | 1,023 |
| Grand Total | 595,920 | 28,361 | 624,281 |

Note) Daegu Bank and Gwangju Bank
Source: Corporate Information Daily Newsletter, The Korea Federation of Banks (KFB)

K00247

## 3. ㈜모뉴엘 앞 금융회사 신용공여현황

(′13. 12. 19자 기준)

(백만원)

| 금융기관명 | | 대출채권 | 주석 및 기타 | 합계 |
|---|---|---|---|---|
| 은 행 소 계 | | 594,902 | 5,360 | 600,262 |
| | 산     업 | 88,297 | 2,254 | 90,551 |
| | 농     협 | 42,295 | 1,003 | 43,298 |
| | 기     업 | 117,539 | 10 | 117,549 |
| | 외     환 | 139,580 | 0 | 139,580 |
| | 국     민 | 77,660 | 0 | 77,660 |
| | 수 협 중 앙 회 | 15,514 | 0 | 15,514 |
| | 수 출 입 은 행 | 70,294 | 0 | 70,294 |
| | 우     리 | 1,682 | 92 | 1,774 |
| | S C 제 일 | 18,206 | 1,988 | 20,194 |
| | 한 국 씨 티 | 8,989 | 0 | 8,989 |
| | 지방은행계[주)] | 14,846 | 13 | 14,859 |
| 보 험 회 사 계 | | 0 | 10,064 | 10,064 |
| 특 수 금 융 기 관 계 | | 0 | 12,932 | 12,932 |
| 여 신 전 문 계 | | 1,018 | 5 | 1,023 |
| 총     계 | | 595,920 | 28,361 | 624,281 |

주) 대구은행, 광주은행
자료 : 은행연합회 기업정보일보

K00247

## CERTIFICATION OF TRANSLATION

I certify that the provided Korean to English translation of the source document(s) listed below is
an accurate and complete rendering of the contents of the source document to the best of my
knowledge and ability:

**Credit Loan Extended to Moneual, Inc. by Financial Institutions**
**Bates Number K00218**
**Bates Number K00247**
**Bates Number K00315**

I further certify that I am a qualified professional translator familiar with both languages with
more than fifteen years of experience in Korean to English translation of various legal, technical
and business documents.

December 27, 2016

Nicole Lee
Certified Court Interpreter (Korean ◇ English)
State of California
Certification No. 300859

PLEASE SEE ATTACHED
CURRENT CALIFORNIA
NOTARY FORM

# California Acknowledgment Form

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of LOS ANGELES     } ss.

On   12/27/2016    before me,   __Christian Gutierrez, Notary Public__ ,
                                                         (here insert name and title of the officer)

personally appeared    NICOLE LEE

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Seal

WITNESS my hand and official seal.

CHRISTIAN GUTIERREZ
COMM. # 2093925
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
MY COMM. EXP. DEC. 18, 2018

Signature of Notary

——————————— Optional Information ———————————

To help prevent fraud, it is recommended that you provide information about the attached document below.
***This is not required under California State notary public law.***

Document Title:_____ # of Pages:_____

## Notes