BRYAN A. MERRYMAN (SBN: 134357)
bmerryman@whitecase.com
JAMES K. LEE (SBN: 162350)
jklee@whitecase.com
EARLE MILLER (SBN: 116864)
emiller@whitecase.com
WHITE & CASE LLP
555 South Flower Street, Suite 2700
Los Angeles, California  90071
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

Attorneys for Plaintiff
THE EXPORT-IMPORT BANK OF KOREA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF KOREA, an agency or instrumentality of the Republic of Korea,<br><br>                    Plaintiff,<br><br>          v.<br><br>ASI CORPORATION, a Delaware corporation; ASI COMPUTER TECHNOLOGIES, INC., a California corporation; BILL CHEN, an individual; HENRY CHEN a/k/a HUNG CHEN, an individual; FRANCES CHOU a/k/a MEI LING CHOU a/k/a FRANCES MEILING CHOU, an individual; CHRISTINE LIANG a/k/a CHRISTINE LI-YIN LIANG a/k/a LI YIN CHU, an individual,<br><br>                    Defendants. | Case No.  2:16-cv-2056-MWF-JPR<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>  **(1)  FRAUD;**<br><br>  **(2)  NEGLIGENT MISREPRESENTATION;**<br><br>       **AND**<br><br>  **(3)  NEGLIGENT SUPERVISION**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff The Export-Import Bank of Korea ("**KEXIM**") complains of defendants and alleges as follows:

1.      In October 2014, a company called Moneual, Inc., a manufacturer of computers and home appliances, shocked the nation of South Korea when it was exposed for perpetrating one of the biggest cases of fraud in Korea's history.  A Korean court described the scandal as a crime that "gravely undermined the trust of the society in general toward the financial system" and "caused a real risk that may put a damper on the trade insurance system and export finance system."  Through fraudulent means, Moneual received loans exceeding $3 billion and victimized ten major Korean banks, including KEXIM.

2.      Moneual orchestrated an elaborate scheme of circular transactions through which it sold fraudulent receivables based on purchase orders issued by foreign importers, such as the defendants, ASI Corporation and its affiliate ASI Computer Technologies, Inc., who participated in the fraud scheme.  Moneual then sold additional receivables to pay for the previously sold receivables, when in fact little to nothing was exported.  Moneual management personnel involved in the fraud – including its Chief Executive Officer, Hong-seok Park, the ringleader and CEO of Moneual – have been imprisoned and fined.

3.      Moneual secured the connivance of its foreign importers in its fraudulent scheme by paying kickbacks to executives and employees of those companies, including executives and employees of the defendants.

4.      Here, KEXIM sues one of the participants in Moneual's fraudulent scheme, a California-based importer of goods from Moneual, against whose invoices from Moneual KEXIM paid Moneual approximately $52 million, of which approximately $40 million has never been repaid.  KEXIM also sues four executives of that importer, each of whom actively participated in the scheme to defraud KEXIM and each of whom accepted hundreds of thousands, or millions, of dollars in kickbacks to do so.

**THE PARTIES**

5.     KEXIM is a bank incorporated under the laws of the Republic of Korea within the Ministry of Finance of Korea.  KEXIM is an agency or instrumentality of the Republic of Korea as defined by 28 U.S.C. § 1603(b), with its principal place of business in Seoul, Korea.

6.     KEXIM is the official export credit agency of the Republic of Korea. It provides comprehensive export loan and guarantee programs to support Korean enterprises conducting business overseas.  Its primary services include export financing, trade financing, and guarantee programs to strengthen its clients' competitiveness in global markets.

7.     KEXIM provides numerous types of financing, including export promotion loans, export growth loans, export project loans, export facilitation loans, overseas investment and project loans.  KEXIM structures and funds major infrastructure projects around the world, from Mexico to Morocco to Indonesia, including such projects as the ENEC nuclear power project in Abu Dhabi and the Bosporus tunnel project in Istanbul, Turkey, linking Europe and Asia.  Project Finance International, the leading reporter on the international project finance industry, named KEXIM the 2012 Global Multilateral of the Year.  In 2014 and 2015, loans by KEXIM supported total foreign investment of approximately $27 billion each year.

8.     Defendant ASI Corporation ("**ASI Corp.**") is or was a Delaware corporation.  Defendant ASI Computer Technologies, Inc. ("**ASI Computer**") is a California corporation.  KEXIM is informed and believes and on that basis alleges that ASI Corp. is or was an affiliate of ASI Computer; that ASI Corp. purports to have been merged into ASI Computer; but that at all relevant times, and continuing through the date of filing this Complaint, the defendants continued to use the ASI Corp. name and entity for some purposes.  Each of ASI Corp. and ASI Computer maintains a place of business at its regional office located at 19850 E. Business

- 3 -

Parkway in Walnut, California.  In communications with third persons, ASI Corp. and ASI Computer frequently do not distinguish between themselves, and treat their officers, directors, employees, and agents as affiliated interchangeably with either or both entities.  ASI Corp. and ASI Computer share an email domain, @asipartner.com.  Unless otherwise specified, ASI Corp. and ASI Computer are collectively referred to in this Complaint as "**ASI**."  ASI is a wholesale distributor of computer software, hardware, and accessories.

9.     KEXIM is informed and believes and on that basis alleges that at all relevant times defendant **Bill Chen** was an officer, to wit, Vice President of Finance, of ASI Corp. and/or ASI Computer, and a citizen and resident of California.

10.    KEXIM is informed and believes and on that basis alleges that at all relevant times defendant **Henry Chen** a/k/a Hung Chen is or was an officer, to wit, Vice President of Business Development and/or Vice President of Sales, of ASI Corp. and/or ASI Computer, and a citizen and resident of California.

11.    KEXIM is informed and believes and on that basis alleges that at all relevant times defendant **Frances Chou** a/k/a Mei Ling Chou a/k/a Frances Meiling Chou was a director and agent of ASI Corp. and/or ASI Computer, authorized to act on behalf of ASI Corp. and/or ASI Computer, including entering into contracts and transactions on their behalf, and a citizen and resident of California.

12.    KEXIM is informed and believes and on that basis alleges that at all relevant times defendant **Christine Liang** a/k/a Christine Li-Yin Liang a/k/a Li Yin Chu was an officer, to wit, President, of ASI Corp. and/or ASI Computer, and a citizen and resident of California.

## OTHER PERSONS RELEVANT TO THE COMPLAINT

13.    Moneual Inc. ("**Moneual**") was a prominent Korean manufacturer of computers and home appliances, including robot vacuum cleaners and various types

Americas 92695038 (2K)

FIRST AMENDED COMPLAINT

of personal computers.  ASI Corp. purchased, or purported to purchase, products from Moneual for import into the United States, Canada, and Latin America.

14.     Hong-seok (Harold) Park ("**HS Park**") was the Chief Executive Officer of Moneual until his arrest and conviction for masterminding the massive fraud that is the subject of this lawsuit.  HS Park is currently serving a 23-year prison sentence in Korea for that conviction.

## JURISDICTION AND VENUE

15.     KEXIM invokes this Court's jurisdiction under 28 U.S.C. § 1332(a)(4).  Plaintiff is an agency or instrumentality of the Republic of Korea, a foreign state, and defendants are citizens of Delaware and California.  Complete diversity of citizenship therefore exists between the parties.  The amount in controversy in this action exceeds $75,000 exclusive of interest and costs.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1441(b)(1).  Each defendant is a resident of California and the corporate defendants maintain a place of business in Walnut, California, within this District and subject to the personal jurisdiction of this Court.

## FACTUAL ALLEGATIONS

17.     In or about August 2007, HS Park acquired Dign Lab Co., Ltd. ("**Dign**"), a privately-held company that manufactured and sold robotic vacuum cleaners and other home appliances.  HS Park had been involved in Dign's management since approximately 2005.  After acquiring Dign, HS Park assumed the role of Chief Executive Officer, and on November 27, 2007, he changed the name of the company to Moneual.  Moneual sold TVs, PCs, netbook computers, and robotic vacuum cleaners.

18.     Until its demise, Moneual was publicly perceived in Korea as a successful company on a rapid growth trajectory.  For example, Moneual participated in a highly successful national sales campaign by Lotte Mart, one of Korea's leading retailers, called "Tong Keun" ("magnanimous").  Moneual entered

into an agreement to supply Lotte Mart with netbook computers – small, relatively less powerful laptops that are used mainly for web surfing – for Lotte Mart's "Tong Keun Netbook" campaign in 2010.

19.   The "Tong Keun TV" campaign in 2011 proved even more popular. Moneual's strategy was to incorporate average to high quality LED screens inside basic frames made of plastic.  This made its production costs significantly lower than those of other, better known TV brands that used modern designs and more expensive materials.  People waited in line for hours outside Lotte Mart to purchase the TVs and the promotion generated widespread media attention.

20.   Moneual also won the Microsoft Innovation Award at the prestigious Consumer Electronics Show in Las Vegas for three consecutive years from 2007 to 2009.  Such achievements, the success of the "Tong Keun" campaigns, and widespread media exposure through prime time TV commercials and the news, quickly earned Moneual major name recognition in Korea.  As a result, third persons believed that Moneual was a legitimate and successful business enterprise.

21.   KEXIM's Small and Medium-Sized Entrepreneur Finance Department ("SME") makes commercial loans to small and medium-sized businesses in accordance with the Korean government's policy to support such enterprises.  Since the 2000s, Moneual was a major customer of KEXIM's SME.

22.   KEXIM's Structured Trade Finance Department ("STF") is responsible for KEXIM's factoring business.  Factoring is a form of lending under which a lender purchases a business's trade receivables at a discount to their face value, advancing money to the business and collecting the receivable from the business's customer at its maturity.  Factoring is a recognized method of enhancing a business's cash flow by enabling the business to receive payment for customer orders immediately or shortly after shipment of goods, before the customer would be required to pay for the goods under its agreed trade terms with the seller.  The

- 6 -

1   customer pays the factor directly when the invoice comes due.  Factoring is widely

2   used by businesses for both domestic and international sales.

3        23.     In June 2013, Moneual requested that KEXIM factor Moneual's export

4   receivables due from its customer China National Building Materials & Equipment

5   Import & Export Corporation ("**CBMIE**").  CBMIE is a subsidiary of China

6   National Building Materials Group Corporation, a Chinese state-owned enterprise

7   which is the largest comprehensive building materials industry group in China, with

8   100,000 employees and over $16 billion in total assets.  Moneual claimed that it

9   needed financing because all of its sales were credit transactions and, as a result, it

10  did not have enough liquidity to sustain its rapidly increasing production demands.

11       24.     KEXIM assessed the business opportunity.  KEXIM reviewed audit

12  reports issued on Moneual, and Jong-Hyun (John) Lee ("**JH Lee**"), KEXIM's

13  Director of STF's International Factoring Team, visited Moneual's headquarters in

14  Seoul in or about August 2013.  During the visit, Moneual's management

15  convinced KEXIM that Moneual had a number of successful products, and was

16  busily developing new and innovative products.  Moneual had prototypes on

17  display and impressive brochures.  Based in part on Moneual's representations

18  during this visit, KEXIM ultimately decided to expand its business with Moneual to

19  include a factoring relationship.

20       25.     In August 2013, KEXIM and Moneual entered into an Export

21  Factoring Agreement for Moneual's exports to CBMIE, to be renewed annually.

22       26.     On or about August 19, 2013, KEXIM made its first purchase of

23  Moneual's export receivables due from CBMIE.  KEXIM initially purchased a total

24  amount of receivables of $20 million, payable on February 14, 2014.  KEXIM

25  received timely payment for that initial purchase from Moneual rather than from the

26  customer CBMIE.

27       27.     The successful consummation of this first factoring transaction gave

28  KEXIM comfort as to Moneual's bona fides and creditworthiness, and induced

Americas 92695038 (2K)

FIRST AMENDED COMPLAINT

KEXIM to enter into additional factoring transactions with Moneual as described below, including maintaining and renewing an Export Factoring Agreement for Moneual's exports to ASI.  In reality, the successful initial transaction with CBMIE (and later the successful initial transaction with ASI) was merely a ruse by Moneual to provide KEXIM with the illusion that Moneual operated a genuine export business with legitimate customers and transactions and thereby to induce KEXIM to continue to finance Moneual's receivables transactions.

28.     On or about October 15, 2013, Moneual entered into an "OEM Suppy [sic] Agreement" (the "**Supply Agreement**") with ASI Corp.  Under the Supply Agreement, ASI Corp. was to be the exclusive importer and distributor of Moneual products within the United States, Canada and Latin America.  Payment for orders was due on a net 180 days basis.  The Supply Agreement is governed by California law.

29.     In the Supply Agreement, ASI Corp. guaranteed to purchase $200 million of Moneual products within the first year and $400 million within the second – in hindsight, a phenomenally large commitment, representing nearly 30% of ASI Corp.'s total revenue, which KEXIM is informed and believes and on that basis alleges would have been impossible, or, at a minimum, onerous, for ASI Corp. to meet.  That was especially true given Moneual's minimal market exposure and limited brand recognition in the North and Central American territories where ASI Corp. was to distribute its products, such that ASI Corp. would have been confronted with great difficulty reselling the Moneual products.

30.     The Supply Agreement was executed on behalf of Moneual by HS Park and on behalf of ASI Corp. by defendant Frances Chou as Director of ASI Corp.

31.     After entering into the Supply Agreement, Moneual requested KEXIM to factor its export receivables due from ASI Computer.  KEXIM carried out an evaluation of ASI's creditworthiness as part of its due diligence process.  In

connection with that evaluation, Moneual's agent Kyeong-Shik Kang sent KEXIM a certification of ASI Computer's business history prepared by the Korea Trade Insurance Corporation ("**KSURE**"), Korea's official export credit agency.  KSURE is a corporation under the Korean Ministry of Trade, Industry and Energy, whose functions include the operation of trade insurance programs relating to the export and import of goods, and the provision of credit-related services including credit research and credit information management for Korean enterprises.

32.     The KSURE certification that Moneual delivered to KEXIM in support of ASI's creditworthiness, dated November 20, 2013, purported to contain Moneual's export performance data for each of its customers, including ASI Computer, for the years 2006-2013.  This document showed substantial export figures and full collection of those amounts, and was therefore material in persuading KEXIM to approve the factoring of Moneual's export receivables due from ASI Computer.  The document also showed a dramatic rise in Moneual's exports to ASI Computer between 2006 and 2012, from less than $1 million in 2006, to approximately $81 million in 2009, and over $180 million in 2012, which amounts were purportedly insured by KSURE and subsequently collected in full.

33.     Those figures later proved to be false.  KEXIM is informed and believes and on that basis alleges that, in fact, those figures were highly inflated, and reflected fictitious and/or fraudulent transactions between Moneual and ASI Computer.  Moneual supplied those figures to KEXIM with the intent to deceive KEXIM into entering into a factoring agreement for Moneual's receivables from ASI Computer and making available to Moneual a credit facility in the tens of millions of dollars.

34.     When KEXIM requested additional documents from Moneual to support ASI's creditworthiness, Moneual requested that KEXIM communicate directly with ASI's Vice President of Finance, defendant Bill Chen, and gave KEXIM his email address.  On November 18, 2013, KEXIM sent an email to Bill

FIRST AMENDED COMPLAINT

Chen and requested ASI Computer's financial statements.  On November 19, 2013, Bill Chen replied from his ASI email account and attached ASI's 2010-2012 balance sheets and income statements to his email, although they were missing the auditor's signature.  On November 22, 2013, following KEXIM's request for the statements with the auditor's signature in place, Bill Chen sent the auditor's cover letter and opinion.

35.     In or about December 2013, in reliance on the information provided by Moneual and by ASI, KEXIM entered into an Export Factoring Agreement with Moneual to factor Moneual's exports to ASI Computer, without recourse against Moneual.  KEXIM and Moneual subsequently entered into new Export Factoring Agreements on or about June 25, 2014,and on or about September 19, 2014, each on substantially the same terms, and the three Export Factoring Agreements are collectively referred to as the "**EFA**."  Under the EFA, Moneual agreed to sell and KEXIM agreed to purchase Moneual's rights and benefits to receive payments from ASI Computer for the commercial invoices Moneual sent to ASI Computer for its shipments of goods.

36.     Moneual's initial credit limit under the EFA was $12 million.  The June 2014 agreement increased Moneual's credit limit to $29 million and the September 2014 agreement increased Moneual's credit limit to $40 million.  KEXIM granted each increase in Moneual's credit limit at Moneual's request, based on Moneual's representations to KEXIM that Moneual had outstanding invoices to ASI Computer in those amounts which it asked KEXIM to factor.

37.     After KEXIM and Moneual entered into the EFA in December 2013, Moneual sent ASI Computer a notification informing ASI Computer that it should make payments on Moneual's invoices directly to KEXIM.  The notification was signed by Moneual's CEO, HS Park, and acknowledged by defendant Frances Chou, as "Director."  Moneual sent an essentially identical notification to ASI Computer in 2014, signed and acknowledged by the same persons.

Americas 92695038 (2K)    FIRST AMENDED COMPLAINT

38.     After Moneual and ASI Corp. entered into their Supply Agreement in October 2013, KEXIM is informed and believes and on that basis alleges that in furtherance of the fraud ASI Computer began placing bogus purchase orders with Moneual for the purported purchase of home theater personal computers ("**HTPCs**") manufactured by Moneual.  In all, KEXIM is informed and believes and on that basis alleges that ASI placed 36 such purchase orders in four sets, as more fully described below.

39.     The First Set of Purchase Orders.  On or about November 21, 2013, ASI Computer issued eight purported purchase orders, numbered 897680-000 OP, 897681-000 OP, 897682-000 OP, 897683-000 OP, 897684-000 OP, 897685-000 OP, 897686-000 OP and 897687-000 OP.  Each purported purchase order was for 500 units of HTPCs at the price of $2,980 per unit, totaling $1,490,000.  In total, the eight purported purchase orders in this set (the "**First Set of Purchase Orders**") amounted to an aggregate order of $11,920,000.

40.     On or about December 18, 2013, Moneual purportedly shipped the goods called for in the First Set of Purchase Orders to the location specified by the purchaser.  The buyer and consignee for the goods was specified as ASI Computer in Fremont, California.  Moneual sent an invoice to ASI Computer for $11,920,000.

41.     On or about January 7, 2014, pursuant to the EFA, KEXIM purchased Moneual's purported account receivable from ASI Computer for the invoices pertaining to the First Set of Purchase Orders.

42.     Payment for the goods represented by the First Set of Purchase Orders was due on June 16, 2014, and on or about that date KEXIM received the sum of $11,919,960 by wire transfer from an account in the name of ASI Computer Technologies (HK) Limited ("**ASI (HK)**").  KEXIM is informed and believes and on that basis alleges that ASI (HK) is an affiliate of ASI.

43.     The Second Set of Purchase Orders.  On or about April 21, 2014, ASI Computer issued eight purported purchase orders, numbered 926948-000 OP,

FIRST AMENDED COMPLAINT

926949-000 OP, 926950-000 OP, 926951-000 OP, 926952-000 OP, 926953-000 OP, 926954-000 OP and 926955-000 OP.  Each purported purchase order was for 500 units of HTPCs at the price of $2,980 per unit, totaling $1,490,000.  In total, the eight purported purchase orders in this set (the "**Second Set of Purchase Orders**") amounted to an aggregate order of $11,920,000.

44.     On or about June 12, 2014, Moneual purportedly shipped the goods called for in the Second Set of Purchase Orders to the location specified by the purchaser.  The buyer and consignee for the goods was specified as ASI Computer in Fremont, California.  Moneual sent an invoice to ASI Computer for $11,920,000.

45.     On or about June 19, 2014 (approximately three days after receiving payment for the money it advanced on the First Set of Purchase Orders), pursuant to the EFA, KEXIM purchased Moneual's purported account receivable from ASI Computer for the invoices pertaining to the Second Set of Purchase Orders.

46.     Payment for the goods represented by the Second Set of Purchase Orders was due on December 9, 2014.  ASI Computer defaulted on that payment and KEXIM has never received payment for the money it advanced on the Second Set of Purchase Orders.

47.     The Third Set of Purchase Orders.  On or about May 8, 2014, ASI Computer issued ten purported purchase orders, numbered 931068-000 OP, 931069-000 OP, 931070-000 OP, 931071-000 OP, 931072-000 OP, 931073-000 OP, 931074-000 OP, 931075-000 OP, 931076-000 OP and 931077-000 OP.  Nine of the ten purported purchase orders were for 500 units of HTPCs at the price of $2,980 per unit, totaling $1,490,000; the tenth was for 200 units of HTPCs at $2,980 each, totaling $596,000.  ASI Computer had also issued two additional purported purchase orders on April 21, 2014 (in addition to the eight issued on that day which formed the Second Set of Purchase Orders), numbered 926956-000 OP and 926957-000 OP, each for 500 units of HTPCs at the price of $2,980 per unit, totaling $1,490,000.  The goods under those two purported purchase orders were

FIRST AMENDED COMPLAINT

shipped and invoiced together with those under the ten purported purchase orders issued on May 8, 2014.  In total, the twelve purported purchase orders in this set (the "**Third Set of Purchase Orders**") amounted to an aggregate order of $16,986,000.

48.     On or about June 17, 2014, Moneual purportedly shipped the goods called for in the Third Set of Purchase Orders to the location specified by the purchaser.  The buyer for the goods was specified as ASI Computer in Fremont, California, but the consignee was identified as ASI Computer with an address in Hong Kong.  Moneual sent an invoice to ASI Computer for $16,986,000.

49.     On or about June 26, 2014 (a week after purchasing the purported account receivable from ASI Computer for the invoices pertaining to the Second Set of Purchase Orders, and after acceding to Moneual's request to increase Moneual's credit limit to accommodate this new purchase), pursuant to the EFA, KEXIM purchased Moneual's purported account receivable from ASI Computer for the invoices pertaining to the Third Set of Purchase Orders.

50.     Payment for the goods represented by the Third Set of Purchase Orders was due on or about December 14, 2014.  ASI Computer defaulted on that payment and KEXIM has never received payment for the money it advanced on the Third Set of Purchase Orders.

51.     The Fourth Set of Purchase Orders.  On or about August 20, 2014, ASI Computer issued eight purported purchase orders, numbered 953143-000 OP, 953144-000 OP, 953145-000 OP, 953146-000 OP, 956894-000 OP, 956895-000 OP, 956896-000 OP and 956897-000 OP.  Seven of the eight purported purchase orders were for 500 units of HTPCs at the price of $2,980 per unit, totaling $1,490,000; the eighth was for 220 units of HTPCs at $2,980 per unit, totaling $655,600.  In total, the eight purported purchase orders in this set (the "**Fourth Set of Purchase Orders**") amounted to an aggregate order of $11,085,600.

- 13 -

52.     On or about August 22, 2014, Moneual purportedly shipped the goods called for in the Fourth Set of Purchase Orders to the location specified by the purchaser.  The buyer for the goods was specified as ASI Computer in Fremont, California, but the consignee was identified as ASI Computer Technologies (HK) Limited, at the same Hong Kong address as the consignee on the Third Set of Purchase Orders.  Moneual sent an invoice to ASI Computer for $11,085,600.

53.     On or about September 24, 2014, pursuant to the EFA, KEXIM purchased Moneual's purported account receivable from ASI Computer for the invoices pertaining to the Fourth Set of Purchase Orders.

54.     Payment for the goods represented by the Fourth Set of Purchase Orders was due on February 18, 2015.  ASI Computer defaulted on that payment and KEXIM has never received payment for the money it advanced on the Fourth Set of Purchase Orders.

55.     Each purported purchase order in the First through Fourth Sets of Purchase Orders was signed by defendant Frances Chou as Director of ASI Computer.  ASI has never contested that it issued any of the 36 purchase orders.

56.     The Hong Kong address given for the consignees in the Third and Fourth Sets of Purchase Orders was bogus.  A company unrelated to ASI was located at that address.  At the time that it advanced funds to Moneual on the Third and Fourth Sets of Purchase Orders, KEXIM did not know that neither ASI Computer, nor ASI Corp., nor any affiliate of either defendant maintained a business at that Hong Kong address.

57.     The price of the HTPCs that ASI Computer purportedly bought from Moneual was vastly inflated.  Moneual purported to charge ASI $2,980 per unit, and that amount was stated in the invoices on which KEXIM advanced the funds to Moneual.  However, KEXIM is informed and believes and on that basis alleges that in fact the HTPCs were junk:  old, defective items of obsolescent technology worth, according to the Korean authorities, less than $8 per unit – a fraction of a percent of

the amount that Moneual billed to ASI Computer and that KEXIM advanced to Moneual.

58.    By July 2014, KEXIM had been repaid for its advance against the First Set of Purchase Orders, but the Second and Third Sets of Purchase Orders remained open.  KEXIM had approximately $29 million in outstanding advances to Moneual against its invoices to ASI Computer for those orders.  KEXIM then inquired of ASI Computer via KEXIM's contact at Moneual whether ASI Computer was in fact in a business relationship with Moneual and whether ASI Computer had issued purchase orders for Moneual products.

59.    On or about July 13, 2014, defendant Bill Chen, ASI Computer's Vice President of Finance, responded to KEXIM's inquiry.  Bill Chen sent a letter to KEXIM from his ASI email address affirming that Moneual was "one of [ASI Computer's] most significant supplier[s]" and confirming that ASI Computer had a number of pending purchase orders with Moneual.  In that same letter, ASI Computer expressly affirmed the authority of Frances Chou to enter into the transactions with Moneual.  Bill Chen, an officer of ASI Computer, wrote:  "In regards to the business with Moneual Inc., if signed and confirmed by Frances Chou(mail : franceschou@asipartner.com.hk) who is our director, all necessary documentation and other follow-up actions are totally valid."

60.    Bill Chen's July 13, 2014 letter was intended to, and did, perpetuate the false implication, and deceive KEXIM into believing, that ASI and Moneual were engaged in a legitimate business relationship.  In reliance on Bill Chen's representations in his July 13, 2014 letter, KEXIM purchased Moneual's purported account receivable from ASI Computer for the invoices pertaining to the Fourth Set of Purchase Orders.

61.    In or about October 2014, Moneual filed for receivership in Korea, owing in excess of $500 million to its lenders, including KEXIM.  Thereafter, on or about October 23, 2014, KEXIM wrote to ASI to remind ASI Computer of its

- 15 -

obligation to pay for the receivables that KEXIM had purchased from Moneual. KEXIM's letter listed 28 open invoices, due on various dates from December 9, 2014 through February 18, 2015, corresponding to the 28 purported purchase orders in the Second through Fourth Sets of Purchase Orders.  ASI Computer's total outstanding obligation was $39,991,600.  ASI did not respond to KEXIM's letter.

62.     Because of ASI's failure to respond to KEXIM's October 23, 2014 letter, JH Lee, a KEXIM employee, travelled from Korea to California.  On or about October 27, 2014, he visited ASI's offices in Fremont, California to evaluate the export transactions between Moneual and ASI Computer and to reconfirm the validity of the purported purchase orders.  On that date, JH Lee attempted to reach both Bill Chen and Frances Chou, but was unable to meet or even locate them.

63.     Mr. Lee then met with defendant Henry Chen, ASI's Vice President of Business Development and/or Sales, in ASI's offices in Fremont.  In that meeting, on or about October 27, 2014, Henry Chen confirmed that Bill Chen was a Director of ASI and that Frances Chou was ASI's "procurement officer" in Asia.  In a later telephone conversation with Mr. Lee on the same day, Henry Chen confirmed that the purported purchase orders signed by Frances Chou had been issued by ASI Computer and were "open," meaning not yet filled.  Henry Chen again confirmed, in an email sent to JH Lee on October 29, 2014, that the purported purchase orders were authentic and open.

64.     KEXIM made two further requests to ASI for payment on the receivables, on or about November 25, 2014 and December 12, 2014, again listing the 28 open invoices totaling $39,991,600.  On or about December 15, 2014, JH Lee had a telephone conversation with defendant Henry Chen regarding the status of ASI Computer's orders and payment.  In that conversation, Henry Chen again confirmed that defendant Frances Chou was ASI Computer's authorized agent with respect to the Moneual transactions, this time characterizing her as ASI Computer's "special contractor."

FIRST AMENDED COMPLAINT

65.     On or about December 16, 2014, Henry Chen followed up on the telephone conversation and wrote to JH Lee, stating that ASI Computer had not received the goods specified in the purported purchase orders.  Henry Chen did not deny the validity of the purported purchase orders.

66.     Defendant Henry Chen's December 16, 2014 correspondence to KEXIM claimed (as ASI Computer's justification for refusing to pay the pending invoices) that ASI Computer had never received a shipment of goods under the Second, Third, or Fourth Set of Purchase Orders and that there was not even a delivery schedule set for those purported purchase orders.  However, ASI Computer had issued the Fourth Set of Purchase Orders, for over $11 million, in August 2014, after paying in full for the First Set of Purchase Orders and at a time when the Second and Third Sets of Purchase Orders had been outstanding for nearly four months.  No business in ASI Computer's position would have issued new purchase orders for over $11 million to a supplier that was months behind in the delivery of previous orders unless it intended to deceive KEXIM into providing financing to Moneual for transactions that did not exist.

67.     Either Henry Chen falsely stated to KEXIM that ASI Computer had not received the goods from the Second, Third, and Fourth Set of Purchase Orders, in which case ASI Computer's failure to pay for the invoices pertaining to those orders evidences its participation in the scheme to defraud KEXIM; or the statement was true, in which case ASI Computer's issuance of the Fourth Set of Purchase Orders evidences its participation in the scheme to defraud KEXIM.

68.     ASI Computer has never paid any of the invoices pertaining to the Second, Third, or Fourth Sets of Purchase Orders.  KEXIM has not received payment for the purported receivables that it factored for Moneual pertaining to those invoices, in the total principal sum in default of $39,991,600.

69.     In late 2014, the Korean Customs Service conducted an investigation of Moneual's activities and prepared an internal investigation report.  On or about

January 23, 2015, the Seoul district prosecutor's office indicted HS Park and other Moneual employees.  The indictment charged that those individuals had caused Moneual to execute large-scale fraud schemes using circular transactions.  The indictment further charged that the price of Moneual's HTPCs was greatly exaggerated, at $2,980 per unit when in fact they were only worth, according to the Korean authorities, approximately $8 per unit.  The indictment also detailed how Moneual executives generated false and fraudulent purchase orders, using purchase order numbers provided by Moneual's foreign importers, which Moneual then used to obtain financing from at least ten banks, including KEXIM, in exchange for purported export receivables.

70.     Specifically referring to ASI, the Korean authorities' investigation revealed the following:  that Moneual shipped the HTPCs to ASI Computer, which then sold the HTPCs to a company called Polaris Media Research Inc. ("**Polaris**"), a paper company that HS Park established in Hong Kong.  Polaris then sold the HTPCs to PK Paradigms Holdings Ltd. ("**Paradigms**"), another paper company set up by HS Park.  When the payment dates for the export receivables approached, HS Park transferred money to Paradigms disguised as payment for other goods that Moneual was importing into Korea, when in fact Moneual was bringing back the very HTPCs it had exported.  The money was then transferred in reverse to the supposed flow of the HTPCs (*i.e.*, Moneual → Paradigms → Polaris → ASI), to allow ASI Computer to make payments to financial institutions for the export receivables.  In fact, the HTPCs may not even have physically moved; the transfer of their ownership may only have taken place on paper.  Making these circular payments enabled the participants to continue to deceive the banks, including KEXIM, and to prolong the fraudulent scheme.

71.     KEXIM is informed and believes and on that basis alleges that as part of Moneual's scheme to defraud its lenders by obtaining money from them based on bogus export receivables from foreign importers, Moneual bribed executives and

employees of those foreign importers, including ASI, by paying kickbacks to those persons, which HS Park called "commissions."

72.     Specifically with respect to ASI, KEXIM is informed and believes and on that basis alleges that Moneual paid kickbacks, directly (or, through intermediaries or family members or to offshore accounts) to officers and employees of ASI including, among others, the individual defendants Christine Liang, Frances Chou, Bill Chen, and Henry Chen.  KEXIM is informed and believes and on that basis alleges that Moneual paid each of those individuals, and each of those individuals accepted, in excess of $1 million in kickbacks between 2012 and 2014.  KEXIM is informed and believes and on that basis alleges that some or all of the kickbacks that Moneual paid to defendant Christine Liang, the President of ASI, were paid by means of wire transfer to an account in the name of an offshore company called Berwick Resources Ltd., which was controlled by Christine Liang, and some or all of the kickbacks that Moneual paid to defendant Henry Chen were paid by means of wire transfer to an account in the name of THC Ltd.

73.     ASI's participation in the fraudulent scheme to defraud KEXIM was systemic and institutional, involving multiple officers, employees, and agents of the company who participated in laundering money and creating and concealing fraudulent transactions with Moneual.  The scheme was condoned at the highest levels of the company by virtue of the involvement of ASI's most senior officers including its President, Christine Liang, and its Vice Presidents Bill Chen and Henry Chen.

74.     HS Park was convicted in the Seoul Central District Court of defrauding ten Korean banks, including KEXIM, of over $3 billion between 2007 and 2014 based on loans that Moneual received for fraudulent export contracts.  On October 16, 2015, HS Park was sentenced to 23 years in prison, and fines and forfeitures of approximately $35 million.  He is currently serving his sentence.

Americas 92695038 (2K)

FIRST AMENDED COMPLAINT

75.     KEXIM is informed and believes and on that basis alleges that other employees or executives of Moneual have also been convicted of fraud based on their participation in the fraudulent schemes of Moneual and HS Park to defraud Moneual's lenders.

## FIRST CLAIM FOR RELIEF

### (Fraud)

### (Against All Defendants)

76.     KEXIM realleges the allegations of paragraphs 1 through 75 and incorporates those allegations here as if fully set forth.

77.     While engaging in and carrying out the course of conduct alleged above, Moneual, ASI Corp., and ASI Computer made numerous misrepresentations of material fact to KEXIM, and/or concealed from or failed to disclose to KEXIM facts that would have been material to KEXIM's decision to engage in its factoring relationship with Moneual, and/or that were necessary to make the statements of Moneual and ASI not misleading.  Those misrepresentations, concealments, and failures to disclose included, among others, the following:

      a.  The Supply Agreement required ASI Corp. to purchase an unrealistically high quantity of goods from Moneual – $200 million in the first year of the Supply Agreement and $400 million in the second – that was either impossible for ASI Corp. to meet or would have been onerous given the size and condition of ASI Corp.'s business;

      b.  The HTPCs that ASI Computer was purportedly buying from Moneual were priced at an amount nearly 400 times their actual market value.  No business of the size, breadth, history, and experience of ASI could legitimately have judged that the products were worth the nearly $3,000 per unit that ASI Computer was supposedly paying for them, and no such business would have

1    bought the products at that inflated price, unless it intended to

2    create the illusion of extensive, profitable, high-value commerce

3    between it and its supplier for the purpose of defrauding lenders

4    into supporting the transactions;

5    c.  Moneual provided KEXIM with the November 20, 2013 KSURE

6        certification document which purported to show a business

7        relationship between Moneual and ASI Computer involving

8        payment in full of tens of millions of dollars per year, figures which

9        were false and known to Moneual to be false when provided to

10       KEXIM;

11   d.  ASI Computer issued the Second and Third Sets of Purchase

12       Orders in April and May 2014, well after it had received the goods

13       from its First Set of Purchase Orders (in or about December 2013)

14       and at a time when it knew or should have known that the HTPCs

15       were wildly overpriced relative to their actual worth.  ASI

16       Computer would not have issued those purchase orders, in the

17       amount of nearly $30 million, unless it intended to deceive KEXIM

18       into providing financing to Moneual for nonexistent transactions;

19   e.  In June 2014, ASI sent to KEXIM by wire transfer, from an

20       account of its Hong Kong affiliate, approximately $12 million in

21       payment for the invoices pertaining to the First Set of Purchase

22       Orders.  Due to the nature of Moneual's fraudulent scheme, based

23       on circular transactions, Moneual may never have actually

24       physically shipped the HTPCs to ASI Computer.  ASI made its

25       June 2014 payment for the purpose of creating for KEXIM the

26       illusion that the First Set of Purchase Orders represented a genuine

27       transaction, in order to deceive KEXIM into continuing to finance

28

- 21 -

FIRST AMENDED COMPLAINT

Moneual's exports to ASI Computer, thereby prolonging the fraudulent scheme;

   f.  On or about July 13, 2014, Bill Chen, an officer of ASI Computer, stated in writing to KEXIM that Moneual was "one of [ASI's] most significant supplier[s]" and represented that ASI Computer had numerous pending purchase orders with Moneual;

   g.  In that same letter, Bill Chen, an officer of ASI Computer, expressly confirmed that Frances Chou was a director of ASI Computer, affirmed her authority to enter into the transactions with Moneual represented by the purported purchase orders, and assured KEXIM that documentation and follow-up actions in which she was involved were "totally valid";

   h.  Henry Chen, an officer of ASI Computer, represented to KEXIM on at least three occasions, in October and in December 2014, that both Bill Chen and Frances Chou were directors, officers, or authorized agents of ASI Computer, and did not disclose any limits on the authority of either one with regard to the Moneual transactions.

78.   Moneual, ASI Corp., and ASI Computer made each of the misrepresentations set forth in paragraphs 77(a)-(h) with knowledge of its falsity, and with the intent to deceive KEXIM, by inducing KEXIM to advance millions of dollars to Moneual against fraudulent receivables that ASI Computer had neither the intent, nor the ability, to pay.

79.   The misrepresentations and deceit directed at KEXIM were known or condoned at the highest levels of ASI's institutional structure. ASI's most senior officers and agents, including its President, Christine Liang; its Vice Presidents Bill Chen and Henry Chen; and its agent and director, Frances Chou, participated in the

fraudulent scheme to defraud KEXIM, and conspired with and aided and abetted Moneual to carry out the fraudulent scheme by, among other things, the following:

    a. Christine Liang, the President of ASI, received kickbacks from Moneual in amounts that KEXIM is informed and believes exceeded $1 million, paid to the account of Berwick Resources Ltd. which she controlled;

    b. Bill Chen, ASI's Vice President of Finance, participated in numerous communications and transactions with Moneual and its agents regarding transferring funds among ASI, Moneual, and multiple sham corporations set up by Moneual as part of the circular transactions that were the essence of the fraudulent scheme; colluded with Moneual and its agents to set up sham entities as customers or vendors of ASI as part of the circular transactions, to convey false information to KEXIM, and to conceal negative information from becoming publicly known; and received kickbacks from Moneual in amounts that KEXIM is informed and believes exceeded $1 million;

    c. Henry Chen, ASI's Vice President of Business Development and/or Vice President of Sales, communicated directly with agents of Moneual regarding submitting fraudulent purchase orders to Moneual and other entities regarding structuring the circular transactions that were the essence of the fraudulent scheme, and received kickbacks from Moneual in amounts that KEXIM is informed and believes exceeded $1 million;

    d. Frances Chou, ASI's director and its employee or agent, provided material assistance to Moneual by creating sham entities to participate in the circular transactions, developing web pages for those sham entities to give them the appearance of genuine

- 23 -

FIRST AMENDED COMPLAINT

companies, and participating in or orchestrating the submission of fraudulent purchase orders and the transfer of funds among ASI, Moneual, and multiple sham corporations set up by Moneual as part of the circular transactions that were the essence of the fraudulent scheme; and received kickbacks from Moneual in amounts that KEXIM is informed and believes exceeded $1 million.

80.     KEXIM relied on the representations of Moneual, ASI Corp., and ASI Computer set forth above in determining, first, to enter into the EFA with Moneual for the ASI Computer receivables, and, second, to advance a total of approximately $52 million to Moneual against purported receivables which Moneual and ASI Computer knew to be fraudulent.  KEXIM would not have entered into the EFA, or advanced money thereunder to Moneual, if KEXIM had known that the purchase orders that ASI Computer issued for Moneual HTPCs were fraudulent or that Moneual was engaged in a massive scheme to defraud KEXIM and numerous other banks by conspiring with foreign importers such as ASI Computer to create the illusion that Moneual was exporting millions of dollars of goods in legitimate business transactions.

81.     KEXIM justifiably relied on the representations of Moneual, ASI Corp., and ASI Computer, in that KEXIM conducted a commercially reasonable investigation into the business of its customer Moneual and the creditworthiness of Moneual's customer ASI and reasonably determined, based on information which turned out to be false, that Moneual's business was legitimate and would support the factoring agreement for Moneual's receivables.

82.     In addition to defrauding KEXIM directly by making the misrepresentations alleged above, the defendants rendered substantial assistance to HS Park and Moneual to enable them to carry out the scheme to defraud Moneual's lenders, including KEXIM.

83. ASI Corp. and ASI Computer rendered such assistance by, among other actions:

      a. entering into the Supply Agreement with Moneual on unmeetable or onerous terms calling for the minimum purchase of hundreds of millions of dollars of Moneual products;

      b. furnishing KEXIM with ASI's financial statements;

      c. issuing purchase orders for nearly 18,000 units of HTPCs at enormously inflated prices relative to their true value, enabling Moneual to use those purported purchase orders to induce KEXIM to enter into the EFA, progressively raise Moneual's credit limit to $40 million, and ultimately advance that sum to Moneual against fraudulent receivables;

      d. paying KEXIM in respect of Moneual's purported receivable on the First Set of Purchase Orders, thereby enabling Moneual to construct and prolong its deceptive scheme;

      e. suffering or permitting their executives, officers, and employees to receive millions of dollars in bribes in the form of kickbacks from Moneual; and

      f. assuring KEXIM on multiple occasions that ASI Computer had a genuine business relationship with Moneual, that the purported purchase orders that ASI Computer issued for Moneual products were authentic and authorized, and that actions taken by Frances Chou were "totally valid," all as set forth more particularly above.

84. The individual defendants rendered such assistance by, among other actions:

      a. Colluding with Moneual to set up sham entities to act as customers or vendors of ASI for the purpose of facilitating the circular transactions;

   b. Submitting false and fraudulent purchase orders to Moneual and other entities to create the appearance of legitimate transactions that Moneual would use to obtain financing from KEXIM;

   c. Directing or orchestrating the transfer of funds among ASI, Moneual, and multiple sham corporations that constituted the circular transactions that were the essence of the fraudulent scheme; and

   d. Accepting bribes and kickbacks from Moneual amounting to millions of dollars in exchange for concealing the nature and extent of the massive fraudulent scheme.

85. KEXIM is informed and believes and on that basis alleges that ASI Corp. and ASI Computer, through their directors, officers, employees, and agents, including without limitation defendants Christine Liang, Frances Chou, Bill Chen, and Henry Chen, and the individual defendants personally, had actual knowledge of the fraudulent scheme perpetrated against Moneual's lenders, including KEXIM, at the time that ASI Corp., ASI Computer, and the individual defendants rendered each act substantially assisting Moneual and its executives, including HS Park, to carry out their fraudulent scheme. Each of the defendants therefore aided and abetted Moneual and HS Park in the scheme to defraud KEXIM.

86. KEXIM is informed and believes and on that basis alleges that ASI Corp., ASI Computer, and the individual defendants shared with Moneual and its executives, including HS Park, a common plan or design to defraud Moneual's lenders, including KEXIM. In furtherance of that common plan or design, ASI Corp., ASI Computer, and the individual defendants conspired with Moneual and HS Park to defraud KEXIM by engaging in the acts and making the representations alleged above. Each of the defendants is therefore liable to the same extent as Moneual and HS Park for the damages KEXIM sustained as a result of the scheme to defraud it.

87.     As a result of the foregoing misrepresentations, concealments, and nondisclosures made to KEXIM, and KEXIM's reliance thereon, KEXIM has been damaged in a minimum amount of $39,991,600, plus interest according to proof.

88.     KEXIM is informed and believes and on that basis alleges that ASI Corp. and ASI Computer, through their officers, directors, or managing agents, each had advance knowledge of the unfitness of its employees and agents, and employed them with an intent to deceive and/or with a conscious disregard of the rights of others, including KEXIM, and that each authorized and ratified the fraudulent conduct of its employees and agents as alleged herein.  KEXIM is therefore entitled to exemplary damages against ASI Corp. and ASI Computer, in an amount sufficient to punish the defendants and deter similar conduct in the future.

89.     By virtue of their actions as alleged herein, each of the individual defendants Christine Liang, Frances Chou, Bill Chen, and Henry Chen has engaged in acts of malice and fraud directed at KEXIM.  KEXIM is therefore entitled to exemplary damages against each individual defendant, in an amount sufficient to punish the defendants and deter similar conduct in the future.

## SECOND CLAIM FOR RELIEF

### (Negligent Misrepresentation)

### (Against Defendants ASI Corp. and ASI Computer)

90.     KEXIM realleges the allegations of paragraphs 1 through 89 and incorporates those allegations here as if fully set forth.

91.     The statements and representations of Moneual, ASI Corp., and ASI Computer as set forth above were untrue.  Moneual, ASI Corp., and ASI Computer made those statements and representations with no reasonable ground for believing them to be true, and with the intent to induce KEXIM to rely upon them.  KEXIM was unaware of the falsity of those statements and representations, and justifiably relied on those statements and representations in determining, first, to enter into the

- 27 -

1   EFA with Moneual for the ASI Computer receivables, and, second, to advance a

2   total of approximately $52 million to Moneual against purported receivables which

3   Moneual, ASI Corp., and ASI Computer either knew to be fraudulent or had no

4   reasonable grounds to believe were genuine.

5        92.    As a proximate result of KEXIM's reliance on the truth of the

6   statements and representations of ASI Corp. and ASI Computer, and their other acts

7   and omissions as alleged above, KEXIM has been damaged in a minimum amount

8   of $39,991,600, plus interest according to proof.

9                        **THIRD CLAIM FOR RELIEF**

10                         **(Negligent Supervision)**

11            **(Against Defendants ASI Corp. and ASI Computer)**

12       93.    KEXIM realleges the allegations of paragraphs 1 through 92 and

13  incorporates those allegations here as if fully set forth.

14       94.    KEXIM is informed and believes and on that basis alleges that ASI

15  Corp. and ASI Computer negligently trained, managed, supervised, and retained

16  their officers, employees and agents, including without limitation Christine Liang,

17  Frances Chou, Bill Chen, and Henry Chen, as to the performance of their job duties,

18  including the formation of agreements with suppliers, the issuance of purchase

19  orders, and communications with creditors including KEXIM.  KEXIM is informed

20  and believes and on that basis alleges that ASI Corp. and ASI Computer knew or

21  should have known that their officers, employees and agents were or may have

22  been unfit or incompetent to properly carry out their job duties, including those

23  duties specified herein, and failed to adequately supervise their actions.

24       95.    As a result of the negligent supervision by ASI Corp. and ASI

25  Computer of their officers, employees and agents, ASI was enabled to take the

26  actions described above including, among other actions:

27

28

FIRST AMENDED COMPLAINT

a. entering into the Supply Agreement with Moneual on unmeetable or onerous terms calling for the minimum purchase of hundreds of millions of dollars of Moneual products;

b. furnishing KEXIM with ASI's financial statements;

c. issuing purchase orders for nearly 18,000 units of HTPCs at enormously inflated prices relative to their true value, enabling Moneual to use those purported purchase orders to induce KEXIM to enter into the EFA, progressively raise Moneual's credit limit to $40 million, and ultimately advance that sum to Moneual against fraudulent receivables;

d. paying KEXIM in respect of Moneual's purported receivable on the First Set of Purchase Orders, thereby enabling Moneual to construct and prolong its deceptive scheme;

e. suffering or permitting their executives, officers, and employees to receive millions of dollars in bribes in the form of kickbacks from Moneual; and

f. assuring KEXIM on multiple occasions that ASI Computer had a genuine business relationship with Moneual, that the purported purchase orders that ASI Computer issued for Moneual products were authentic and authorized, and that actions taken by Frances Chou were "totally valid," all as set forth more particularly above.

96.    The negligence of ASI Corp. and ASI Computer, as alleged above, proximately caused damage to KEXIM in a minimum amount of $39,991,600, plus interest according to proof.

/ / /

1

## **PRAYER FOR RELIEF**

2        WHEREFORE, KEXIM seeks judgment against defendants as follows:

3    1.  For compensatory damages according to proof, in the approximate

4            amount of $40,000,000;

5    2.  For interest thereon at the legal rate;

6    3.  On the First Claim for Relief, for exemplary damages according to proof;

7    4.  For its reasonable attorneys' fees;

8    5.  For its costs of suit; and

9    6.  For such other and further relief as the Court deems fit.

10   Dated:  May 30, 2017                          WHITE & CASE LLP

11

12                                                        By:   */s/ Bryan A. Merryman*

13                                                              Bryan A. Merryman

14                                                              Attorneys for Plaintiff
                                                              THE EXPORT-IMPORT BANK
15                                                            OF KOREA

16

17                       **DEMAND FOR JURY TRIAL**

18        Pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38-1, KEXIM

19   demands a trial by jury of all issues so triable.

20

21   Dated:  May 30, 2017                          WHITE & CASE LLP

22

23                                                        By:   */s/ Bryan A. Merryman*

24                                                              Bryan A. Merryman

25                                                              Attorneys for Plaintiff
                                                              THE EXPORT-IMPORT BANK
26                                                            OF KOREA

27

28

- 30 -