UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 16-2056-MWF (JPRx)                Date:  August 3, 2018
Title:      The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):**         ORDER RE: THE EXPORT-IMPORT BANK OF KOREA'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' AFFIRMATIVE DEFENSES [449]

Before the Court is Plaintiff the Export-Import Bank of Korea's ("KEXIM") Motion for Summary Judgment as to Defendants' Affirmative Defenses (the "Motion"), filed on July 2, 2018.  Defendants ASI Computer Technologies, Inc. ("ASI") and Christine Liang (together, "ASI Defendants") filed an Opposition on July 9, 2018.  (Docket No. 458).  Defendant Henry Chen partially joined in that Opposition. (Docket No. 462).  KEXIM filed a Reply on July 16, 2018.  The Court has read and considered the papers filed on the Motion, and held a hearing on **July 30, 2018**.

For the reasons discussed below, the Motion is **GRANTED** *in part* and **DENIED** *in part* as follows:

- **DENIED** as to the First, Fifth, Eighth, Eleventh, Fourteenth, and Twenty-First Affirmative Defenses.

- **GRANTED** as to the Second, Fourth, Sixth, Seventh, Ninth, Thirteenth, Fifteenth through Twentieth, and Twenty-Third through Thirty-First Affirmative Defenses.

- **GRANTED** *in part* as to the Twelfth Affirmative Defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-2056-MWF (JPRx)**                    **Date:  August 3, 2018**
Title:        The Export-Import Bank of Korea *-v.-* ASI Corporation, et al.

As the Court indicated at the hearing, the denial of the Motion as to several Affirmative Defenses does not mean that the jury will be instructed on each of those Affirmative Defenses.  The Court expects that the Rule 16 process will likely weed out additional Affirmative Defenses as inapplicable, unsupported by the evidence, or duplicative.

## I.    **EVIDENTIARY OBJECTIONS**

In connection with their Opposition, the ASI Defendants submitted Objections to the evidence on which KEXIM relies in its Motion.  (Docket No. 458-2).  Likewise, in its Reply, KEXIM filed Objections to some of the evidence on which Defendants rely in their Opposition to the Motion.  (Docket No. 468-1).  In ruling on the Motion, the Court relies only upon admissible evidence.  To the extent the Court relies upon evidence to which the parties object, the Objections are **OVERRULED**. To the extent the Court does not, the Objections are **DENIED as moot**.

The Court notes that Defendants dispute some of KEXIM's statements of uncontroverted facts on the basis that the supporting evidence ostensibly consisted of exhibits to a Request for Judicial Notice ("RJN"), which KEXIM had failed to file in conjunction with its Motion.  On July 9, 2018, KEXIM filed a Notice of Errata indicating that it had inadvertently failed to file its RJN with the Motion.  (Docket No. 455).  KEXIM promptly filed the RJN.  (Docket No. 456).  KEXIM explained that there was no prejudice to Defendants, as on July 8, 2018, KEXIM notified Defendants of the error and pointed them to the docket numbers of the documents that were the subject of the RJN, all of which were documents filed in conjunction with Defendants' prior motion for summary judgment in this action.  (Docket No. 455).  The Court agrees that there is no prejudice to Defendants, and **GRANTS** the RJN.

## II.    **BACKGROUND**

Plaintiff commenced this action for fraud, negligent misrepresentation, and negligent supervision on March 25, 2016.  (*See* Complaint (Docket No. 1); Second Amended Complaint ("SAC") (Docket No. 278)).  The action arises from an alleged $3 billion conspiracy between Defendants and Moneual, a company that Korean courts found has perpetrated a fraudulent scheme of circular transactions through which

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

Moneual paid kickbacks to companies – allegedly including Defendant ASI – to create
fraudulent purchase orders that Moneual then sold to obtain loans.  (SAC ¶¶ 1-3).

In their Joint Answer to the SAC, Defendants ASI, Christine Liang, and Henry
Chen asserted 32 affirmative defenses.  (*See* Answer ¶¶ 134-65 (Docket No. 293)).
The Court refers to ASI, Christine Liang, and Henry Chen together as "Defendants."
By this Motion, KEXIM seeks summary judgment as to Affirmative Defenses 2, 4-9,
11-21, and 23-32.  (Mot. at 1).  Defendants have apparently withdrawn Affirmative
Defenses 1, 10, and 22.  (Mot. at 15 n.2).

The following facts are based on the evidence, as viewed in the light most
favorable to Defendants, the non-moving parties.  *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 255 (1986) (On a motion for summary judgment, "[t]he evidence of the non-
movant is to be believed, and all justifiable inferences are to be drawn in his [or her]
favor.").

### A. Issuance of the Export Factoring Loans

On January 1, 2007, ASI and Moneual entered into a Distribution Agreement by
which ASI agreed to purchase and distribute Moneual's products.  (Statement of
Genuine Disputes of Material Facts ("SGD") No. 1 (Docket No. 458-1)).  The
Distribution Agreement, authorized and executed by ASI's President and majority
shareholder, Christine Liang, did not specify which products ASI would purchase.  (*Id.*
Nos. 2-3).

Under a supply agreement dated October 2013 ("OEM Supply Agreement"),
ASI was purportedly to become the exclusive importer and distributor of Moneual
products in certain territories, but the parties dispute whether the agreement was
executed by ASI's director, Frances Chou, or was forged.  (*Id.* Nos. 4-5; Defendants'
Statement of Undisputed Facts ("DSUF") No 6 (Docket No. 458-1).  KEXIM
apparently received two versions of this agreement, one in October 2013 and one in
July 2014.  The two agreements included different purchase guarantees and the
signatures of Frances Chou on each agreement did not match.  (DSUF Nos. 65-67).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

---

In 2013, Moneual applied to have KEXIM factor Moneual's receivables due from ASI.  (SGD No. 7).  As part of its due diligence process, KEXIM evaluated ASI's creditworthiness, which involved reviewing ASI's audited financial statements, provided by ASI's then-Vice President of Finance, Bill Chen.  (*Id.* Nos. 8-9).  In December 2013, KEXIM entered into an export factoring agreement ("EFA") with Moneual to factor Moneual's exports to ASI.  (*Id.* No. 10).  Renewal agreements increasing Moneual's credit limit were entered into in June 2014 and September 2014.  (*Id.* No. 13).  KEXIM waived no regulations or policies in evaluating Moneual's applications for loans or loan increases.  (*Id.* No. 129).

On November 21, 2013, ASI issued eight purported purchase orders (the "First Set"), for a total price of $11,920,000.  (*Id.* Nos. 14-16).  On January 7, 2014, KEXIM purchased Moneual's accounts receivable from ASI for the First Set.  (*Id.* No. 17).

On April 21, 2014, ASI issued another eight purported purchase orders (the "Second Set"), for a total price of $11,920,000.  (*Id.* Nos. 18-20).  On June 19, 2014, KEXIM purchased Moneual's accounts receivable for the Second Set.  (*Id.* No. 21).

On April 21, 2014, ASI issued two purported purchase orders, and on May 8, 2014, ASI issued ten purported purchase orders (together, the "Third Set").  The total price for the Third Set was $16,986,000.  (*Id.* Nos. 22-25).  On June 26, 2014, KEXIM purchased Moneual's accounts receivable for the Third Set.  (*Id.* No. 26).

On August 20, 2014, ASI issued another eight purported purchase orders (the "Fourth Set"), for a total price of $11,085,600.  (*Id.* Nos. 27-29).  On September 24, 2014, KEXIM purchased Moneual's accounts receivable for the Fourth Set.  (*Id.* No. 30).

KEXIM inquired whether ASI was in fact still in a business relationship with Moneual, and whether ASI had issued purchase orders for Moneual products.  (*Id.* No. 33).  In response, on July 13, 2014, Bill Chen sent a letter to KEXIM from his ASI email address confirming Moneual was one of ASI's most significant suppliers, that ASI had a number of pending purchase orders with it, and that Frances Chou had authority to enter into transactions with Moneual.  (*Id.* No. 34).  Bill Chen apparently

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 16-2056-MWF (JPRx)**                      **Date:  August 3, 2018**
Title:        The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

did not have the authority to vouch for Frances Chou.  (DSUF No. 38).   In November 2014, Bill Chen abruptly resigned from ASI after working there for 15 years.  (*Id.* No. 40).

In October 2014, Moneual filed for receivership in Korea.  (SGD No. 36). KEXIM inquired with ASI regarding payment.  Henry Chen told KEXIM that ASI did not usually make payment until delivery details were confirmed and ASI received payment from its customers.  (*Id.* No. 37).  However, none of the purchase orders in the First, Second, Third, and Fourth Sets provide that ASI is only required to make payment if ASI received payment for the goods from its customers first.  (*Id.* No. 38). ASI admits it has not paid the invoices pertaining to the Second, Third, and Fourth Sets of purchase orders, which amount to approximately $40 million.  (*Id.* No. 39). In 2013 and 2014, Moneual was among ASI's top four suppliers in terms of cost of goods sold. (*Id.* No. 57).

Woo Taek Seo was the Chief of KEXIM's Small Medium Enterprise Department ("SME") beginning in June 2012.  Chang Jong Lee was a "team leader" in the SME from January 2, 2012 to January 1, 2013, at which point he was transferred to Russia to head KEXIM's Moscow office.  (*Id.* No. 132).  Both Lee and Seo accepted substantial financial gifts from Moneual.  (*Id.* No. 133).

Seo testified that he did not conduct any specific act, fail to conduct any required act, or ask any other KEXIM employee to do anything in particular for Moneual's benefit in exchange for the monetary gifts he received from Moneual.  (*Id.* Nos. 134-35).  He also testified that he did not believe Moneual expected favorable treatment in return for the gifts.  (*Id.* No. 136).  Lee was not involved in review, approval, or execution of factoring loans to Moneual.  (*Id.* No. 137).  Neither Seo nor Lee were executives of KEXIM.  (*Id.* No. 139).  Harold Park of Moneual testified that he did not discuss Moneual and ASI's fraudulent transactions with either Seo or Lee.  (*Id.* No. 140).  However, KEXIM's corporate designee testified that Seo's approval was necessary for the transactions with Moneual to proceed.  (DSUF No. 46).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

Seo was convicted in Korea of accepting bribes as compensation for helping Moneual continue to receive loans from KEXIM.  (DSUF No. 41).  He was terminated from KEXIM for accepting money in connection with his work.  (*Id.* No. 42).

**B.  Frances Chou's Involvement with ASI and Moneual**

Moneual was a client of Frances Chou's company, Webtouch.  (DSUF No. 23).  Harold Park testified that he viewed Frances Chou as working for Moneual.  (*Id.* No. 25).  Frances Chou received health benefits from Moneual USA, a wholly owned subsidiary of Moneual located in California.  (*Id.* No. 26-27).  The president of Moneual USA considered Frances Chou to be the "personal secretary" of Harold Park.  (*Id.* No. 28).

Frances Chou has testified that she was authorized to send letters to vendors and customers on ASI's behalf, and sign documents on behalf of ASI in dealing with Moneual.  (SGD No. 35).  Frances Chou handled all of ASI's business with Moneual products.  (*Id.* No. 41-42).  The parties dispute whether Frances Chou was hired as "Director of Business Development" at ASI before being promoted to "Global Business Director."  (*Id.* Nos. 43-44; DSUF No. 35).  When Frances Chou first joined ASI in 2005, Christine Liang was her supervisor.  Henry Chen then became her supervisor, and remained so until September 2014, when Frances Chou's employment with ASI ended.  (SGD Nos. 45-56).

Henry Chen and Shu Hsueh, who himself reported to Christine Liang and Henry Chen, had the authority to approve and release certain product orders issued by Frances Chou.  (*Id.* Nos. 55-56).  Christine Liang also authorized Frances Chou to issue purchase orders to Moneual.  (*Id.* No. 79).  Moneual would request that ASI issue purchase orders by giving Frances Chou information like the model number, quantity, and dollar amount of the purchase order, and Frances Chou would then forward the information for the purchase order to be prepared by another ASI department.  (*Id.* No. 75).  ASI did not actually know who the customers were until the customers paid for the purchases.  (*Id.* No. 83).  Although Frances Chou ostensibly had a maximum dollar

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

amount on the purchase orders she could issue, in reality, she had no monetary limit. (*Id.* Nos. 76-77).

In 2012, at Moneual's request, ASI moved management of the Moneual account to ASI Hong Kong.  (*Id.* Nos. 47-48).  ASI Hong Kong did not have any business operations, employees, or office space.  (*Id.* No. 50).  After the relocation, Bill Chen became more involved in ASI's transactions with Moneual, and in supervision of Frances Chou.  (*Id.* Nos. 52, 53).

### C. ASI's Customers

ASI claims the purchase orders it placed with Moneual were "drop ship" orders, meaning Moneual shipped the products directly to ASI's customers, and ASI bore no responsibility in executing the transaction, and had no obligation to pay Moneual until the customers paid ASI.  (*Id.* No. 58).  Frances Chou helped set up some of the paper company customers who purchased Moneual products from ASI.  (*Id.* Nos. 59-60).

ASI had a policy requiring customers to submit applications for approval before they could establish customer accounts.  Bill Chen was responsible for establishing new accounts at ASI.  (*Id.* Nos. 61-62).  Frances Chou prepared some of those applications using information provided by Moneual, rather than by the customers themselves.  The applications for certain customers contained some discrepancies, such as listing the same contact information for distinct companies.  (*Id.* Nos. 63-64).  These companies were in fact controlled by Moneual.  (*Id.* No. 70).

ASI took no steps to verify whether the Moneual products it purportedly sold were actually delivered to its customers, to inspect the products themselves, or to verify the valuation of the products purchased.  (*Id.* Nos. 84-89).

No one at ASI other than Frances Chou ever received orders from or otherwise communicated with customers who purportedly purchased Moneual products from ASI.  (*Id.* No. 99).  ASI's customer communications involving Moneual transactions were facilitated by Moneual employees, and Moneual also advised ASI which order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

number corresponded to payments once ASI received those payments (a process known as "invoice matching").  (*Id.* Nos. 100-03, 106).

Under ASI and Moneual's agreement, none of ASI's officers, employees, or agents, were entitled to receive a commission from Moneual.  (*Id.* No. 109).  Instead, ASI itself would receive an agreed-upon percentage of ASI's purchase amounts from Moneual, known as a "distribution margin."  (*Id.* No. 110).  At some point, ASI accepted a lower distribution margin from Moneual, in exchange for Moneual redirecting some of the payments to entities known as Berwick Resources Limited ("Berwick") and THC Ltd.  (*Id.* No. 111).

Berwick was a company controlled by Christine Liang's sister.  Christine Liang instructed Bill Chen to request Moneual make payments to Berwick, which she says constituted a $9 million personal loan to her sister.  (*Id.* Nos. 119-21).  That loan was never memorialized in writing.  (*Id.* No. 122).  Because Christine Liang and her husband were the sole shareholders of ASI, Christine Liang had authority to redirect a portion of ASI's revenue to Berwick.  (DSUF No. 15).

Bill Chen and Henry Chen established THC, of which they are each 50% shareholders.  (SGD Nos. 113-14).  ASI speculates that Bill Chen changed Christine Liang's instructions and told Harold Park to redirect a portion of the payments to THC as well as Berwick.  (DSUF No. 17).  Defendants apparently never heard of THC, and never transacted business with it.  (*Id.* No. 18).  In March 2018, Henry Chen was forced to resign from ASI when it was revealed that, as a shareholder of THC, he received money from Moneual through THC.  (SGD No. 118).

Frances Chou also received payments from Moneual and Harold Park at Moneual.  (SGD No. 125).

### D. **Moneual's Fraud Revealed**

After the fraud was revealed, KEXIM submitted a task report to Korean's National Assembly.  (*Id.* No. 143).  KEXIM's former president testified before the National Assembly, where he admitted that if KEXIM had conducted site

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -*v*.- ASI Corporation, et al.

investigations of Moneual and its subcontracts, the incident would not have occurred. (*Id*. No. 145; DSUF No. 47).  The Financial Supervisory Service (FSS) also examined KEXIM's due diligence practices and issued remedial measures to KEXIM.  (*Id*. No. 146-49).  In response, KEXIM terminated, suspended, or docked the pay of several employees who worked on the Moneual loans.  (DSUF No. 54).

Harold Park testified that he did not believe Christine Liang and ASI consented to participate in Moneual's scheme, but he did believe Frances Chou knew of the scheme.  (DSUF Nos. 1-3, 34).  This testimony apparently contradicted testimony he had previously given to Korean authorities, when he was told that his testimony at the time could make the lives of Moneual's employees "very difficult."  (*Id*. No. 4).

In February of 2015, KEXIM filed a claim against the Moneual bankruptcy estate, in which KEXIM seeks to recover the same unpaid loans it seeks to recover in this action.  (DSUF No. 68).

## III.  LEGAL STANDARD

In deciding a motion for summary judgment under Federal Rule of Civil Procedure 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny. *Anderson*, 477 U.S. at 242; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The Ninth Circuit has defined the shifting burden of proof governing motions for summary judgment where the non-moving party bears the burden of proof at trial:

> The moving party initially bears the burden of proving the absence of a genuine issue of material fact.  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case.  Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

> demonstrating the existence of genuine issues for trial.  This burden
> is not a light one.  The non-moving party must show more than the
> mere existence of a scintilla of evidence.  The non-moving party
> must do more than show there is some "metaphysical doubt" as to
> the material facts at issue.  In fact, the non-moving party must come
> forth with evidence from which a jury could reasonably render a
> verdict in the non-moving party's favor.

*Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016)
(quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)).

       "A motion for summary judgment may not be defeated, however, by evidence
that is 'merely colorable' or 'is not significantly probative.'"  *Anderson*, 477 U.S. at
249–50.

## IV.   <u>DISCUSSION</u>

       KEXIM seeks summary judgment on Defendants' Affirmative Defenses 2, 4-9,
11-21, and 23-32, which KEXIM argues all fail as a matter of law.  KEXIM's Motion
addresses the Affirmative Defenses in groups.  The Court does the same.

### A. <u>First Affirmative Defense:  Failure to State Facts Sufficient</u>

       Defendants' First Affirmative Defense contends that the Second Amended
Complaint fails to state facts sufficient to state a claim for relief.  (Joint Answer ¶ 134).
KEXIM represents that, during the meet and confer of counsel prior to the filing of this
Motion, counsel for Defendants agreed to withdraw this Affirmative Defense, as well
as two others.  (Declaration of James K. Lee ¶ 3 (Docket No. 499-2)).  Nonetheless,
KEXIM also argues that the defense fails as moot because Defendants never filed a
Rule 12 motion in response to the Second Amended Complaint, and are therefore
barred from asserting this affirmative defense.  (Mot. at 25).  In the Opposition,
Defendants argue that they are entitled to maintain this defense.  (Opp. at 23-24).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

_____

To the extent KEXIM appears to suggest this defense is waived because it was not raised in a Rule 12 Motion, it is incorrect.  Rule 12 specifically provides that the defense of failure to state a claim upon which relief can be granted may be raised in any pleading allowed under Rule 7(a) (such as the Joint Answer) or at trial.  Fed. R. Civ. P. 12(h)(2).  Such a defense is not waived for failure to raise it in a Rule 12 motion.  *See* Fed. R. Civ. P. 12(h)(1).

Because Defendants attempt to support this defense in the Opposition, it is not clear whether they in fact chose to withdraw it during the meet and confer.  In any case, this defense has not been waived and the Federal Rules permit Defendants to raise it up until trial.

As a practical matter, this defense is meaningless, despite always being included. KEXIM has to prove each of the elements of its claims regardless whether this "defense" is included or not.

### B.  Second Affirmative Defense: Superseding/Intervening Cause

Defendants contends that KEXIM's alleged injuries were proximately caused by or contributed to by other persons and entities, which constitute intervening and superseding causes of those injuries.  (Joint Answer ¶ 135).  In the Motion, KEXIM argues that there is no evidence that, absent Defendants' misrepresentations, KEXIM would have issued the EFAs.  In particular, KEXIM argues, there is no evidence that Seo or Lee improperly influenced KEXIM's decisions regarding the EFAs, or that KEXIM failed to follow its own rules and regulations in issuing the EFAs.  (Mot. at 23).  In their Opposition, Defendants do not contest KEXIM's argument that this Affirmative Defense fails as matter of law and fact.

Accordingly, the Motion is **GRANTED** as to this defense.

### C.  Fourth Affirmative Defense: Laches

In their Joint Answer, Defendants contend that KEXIM's claims are barred by laches because KEXIM unduly delayed filing and prosecuting this action.  Specifically,

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

Defendants contend that KEXIM purposefully waited until its creditor's claims in Moneual's bankruptcy proceedings in the Republic of Korea closed before filing this action, such that Defendants are unable to file cross claims for indemnification and contribution against Moneual.  (Joint Answer ¶ 137).

KEXIM argues this defense fails as a matter of law because the doctrine of laches is inapplicable "in a case at law where there is no statute of limitations issue." (Mot. at 24 (citing cases)).  Defendants do not contest KEXIM's arguments in their Opposition, and they provide no evidentiary support for laches.

Accordingly, the Motion is **GRANTED** as to the Fourth Affirmative Defense.

## D. <u>Fifth and Eighth Affirmative Defenses</u>

KEXIM argues that the following affirmative defenses fail as a matter of law:

- Fifth Affirmative Defense:  *In Pari Delicto*
- Eighth Affirmative Defense:  Violation of Law

As set forth below, the Motion fails as to both the Fifth and Eighth Affirmative Defense.

### 1.  Fifth Affirmative Defense - *In Pari Delicto*

Defendants contend in their Joint Answer that KEXIM's claims are barred because the alleged conduct of KEXIM employees Woo Taek Seo and Chang Jong Lee, KEXIM's alleged withholding of information from the Korean National Assembly, KEXIM's alleged discovery misconduct in this action render KEXIM *in pari delicto*.  (Joint Answer ¶ 138).

"The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them."  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App.

---

**CIVIL MINUTES—GENERAL**                                                          **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -v.- ASI Corporation, et al.

4th 1138, 1143 n.1, 26 Cal. Rptr. 3d 401 (2005).  "The general rule, in its full Latin
glory, is '*in pari delicto potior est conditio defendentis*,' or '[i]n case of equal fault the
condition of the party defending is the better one.'"  *Kardoh v. United States*, 572 F.3d
697, 700 (9th Cir. 2009) (quoting *United States v. Farrell*, 606 F.2d 1341, 1348 & n.21
(D.C. Cir 1979)).  "[F]or the doctrine to apply, agents of the plaintiff corporation must
have participated in the wrongdoing for which the corporation seeks to recover."  *In re
Crown Vantage, Inc.*, No. CV 02-3836-MMC, 2003 WL 25257821, at *6, (N.D. Cal.
Sept. 25, 2003).

     Previously, this Court denied Defendants' Motion for Summary Judgment
pursuant to the doctrine of unclean hands.  ("April 26 Order" (Docket No. 358)).  In the
briefing on that motion and on this Motion, the parties have treated Defendants'
affirmative defenses of *in pari delicto* and unclean hands interchangeably.  (*See* Docket
No. 314 at 9 n.4; Opp. at 12).  KEXIM appears to suggest that because the Court
previously held that it could not grant summary judgment to Defendants on those
defenses on the basis of the potential misconduct of Seo and Lee, the Court should now
**grant** summary judgment to KEXIM on the *in pari delicto* affirmative defense.
KEXIM misunderstands the Court's prior ruling.

     The Court previously held that it could not grant summary judgment to
Defendants because there were disputes of material fact as to whether Seo's and Lee's
conduct could be imputed to KEXIM as a whole, or that their conduct was so wrongful
that it would be inequitable for KEXIM to obtain relief in this action.  (April 26 Order
at 11-14).  Those disputes remain:  The parties have presented conflicting evidence
regarding whether Seo and Lee actually took any actions to facilitate Moneual's fraud,
even if they did accept gifts from Harold Park; whether they were aware of the
fraudulent scheme; whether they had sufficient authority at KEXIM for their actions to
be imputed to KEXIM; and whether their conduct was "equally culpable" to
Defendants' alleged conduct.  The Court previously concluded that a jury should
decide what inference to draw from the underlying facts on this issue, and the parties
have not demonstrated that the Court's conclusion should change now.  (*Id.* at 13).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

In light of these existing factual disputes, the Court still cannot conclude that Seo and/or Lee participated in the very wrongdoing for which KEXIM seeks to recover, such that KEXIM is equally at fault in the alleged misconduct.

At the hearing, in support of its argument that the adverse interest exception would apply such that Lee's and Seo's conduct could not be imputed to KEXIM, KEXIM pointed to the Court's statement in the April 26 Order that, "to the extent Defendants argue that Seo and Lee accepted money in exchange for facilitating Moneual's scheme to defraud Plaintiff, Defendants' own argument does imply that Seo and Lee's conduct was adverse to Plaintiff."  (April 26 Order at 11).  It remains true that there is somewhat of an inherent contradiction in arguing both that Seo and Lee participated in a scheme to defraud KEXIM, and that their conduct could be imputed to KEXIM.  However, as the Court held previously, it is for the jury to determine what inference should be drawn from the fact that Seo and Lee accepted payments from Moneual.

The Court also previously addressed whether summary judgment for Defendants was warranted based on KEXIM's alleged withholding of information from the Korean National Assembly or alleged discovery misconduct in this action, and concluded that it did not.  (*Id.* at 15-16).  The parties' briefing on this Motion does not substantively address these bases for a defense of *in pari delicto*.

The Motion is therefore **DENIED** as to Defendants' Fifth Affirmative Defense.

## 2.  Eighth Affirmative Defense - Violation of Law

In their Joint Answer, Defendants contend that KEXIM is barred from any relief based on KEXIM's violation of federal law, California law, and the banking laws of the Republic of Korea as identified in the report of the Korea Financial Supervisory Service ("FSS") and the Memorandum of the Minister of Strategy and Finance.  (Joint Answer ¶ 141).

Defendants contend that this defense is "part and parcel" of the *in pari delicto* and unclean hands defenses.  (Opp. at 14).  They therefore point to no independent

---

CIVIL MINUTES—GENERAL                                                    14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

legal doctrine of "violation of law."  Indeed, the cases to which Defendants cite in support of this defense do not address a defense of "violation of law" as such; rather, they address a plaintiff's apparent violation of law in the course of analyzing the affirmative defense of unclean hands.  *See Adler v. Fed. Republic of Nigeria*, 219 F.3d 869, 873, 877-78 (9th Cir. 2000) (affirming application of unclean hands to bar plaintiff's claim where plaintiff attempted to aid and abet scheme to steal from Nigerian government and paid bribes); *POM Wonderful LLC v. Coca Cola Co.*, 166 F. Supp. 3d 1085, 1099 (C.D. Cal. 2016) (discussion authority holding that statutory violations give rise to defense of unclean hands).  The Court therefore addresses this defense as another aspect of the defenses of *in pari delicto* and unclean hands.

Defendants argue that there is substantial evidence that KEXIM never should have issued the factoring loans to begin with, and that doing so violated Korean law.  Considering the "violation of law" defense as one aspect of the unclean hands defense, the Court concludes that there is a dispute of material fact as to whether KEXIM violated Korean law in issuing the factoring loans to Moneual.  The parties both point to the FSS report as evidence in support of their positions.  The FSS report prescribed remedial recommendations to KEXIM, and cited to certain banking regulations in making those recommendations.  KEXIM argues that because the report does not specifically say that KEXIM violated those regulations, there is no evidence that it ***did*** violate any regulations or laws.  (Reply at 8).  For their part, Defendants contend that this report constitutes evidence that KEXIM did violate the cited regulations.

The Memorandum issued by the Minister of Strategy and Finance instructed KEXIM to "take appropriate actions such as a disciplinary action against the employees involved in the unlawful or wrongful acts in accordance with your bank's internal regulations, and inform us of the result."  (DSUF No. 53).  Defendants contend that a reasonable trier of fact could conclude from this statement that KEXIM employees violated the law, and KEXIM is therefore barred from relief by the doctrine of unclean hands.  (Opp. at 16).  The Court agrees.  It is for the jury to determine what inference to draw from the Memorandum and the Report.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                  Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v*.- ASI Corporation, et al.

The Motion is therefore **GRANTED** as to Defendants' Eighth Affirmative
Defense, as "violation of law" is not recognized a separate affirmative defense as such.
However, to the extent the allegations of this defense form the basis for Defendants'
defenses of *in pari delicto* and unclean hands, the defense survives.  The Court queries
how such a defense would be presented to a jury – for example, would an expert on
Korean law be necessary? – but reserves such issues for resolution during the Rule 16
proceedings.

### E.  Affirmative Defenses to Contract-Based Claims

In their Joint Answer, Defendants assert a number of defenses that KEXIM
argues are irrelevant to the present action because they are defenses to contract-based
claims, which are not at issue in this action.  (Mot. at 15).  Those defenses are:

- Sixth Affirmative Defense:  Conditions Precedent
- Seventh Affirmative Defense:  Excuse of Performance
- Twenty-Third Affirmative Defense:  Estoppel
- Twenty-Fourth Affirmative Defense:  Rescission
- Twenty-Sixth Affirmative Defense:  Failure of Consideration
- Twenty-Seventh Affirmative Defense:  Void

(Joint Answer ¶¶ 139-40, 156-57, 159-60).  KEXIM provides no authority establishing
that these Affirmative Defenses are, by law, only applicable to contract-based claims
(though it is facially apparent that at least some of these defenses are of such limited
applicability), but neither do Defendants make any attempt in their Opposition to
provide evidentiary or legal support for the defenses.

Accordingly, the Motion is **GRANTED** as to the above-listed Affirmative
Defenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v*.- ASI Corporation, et al.

### F.  Affirmative Defenses Based on KEXIM's Comparative Fault

In their Joint Answer, Defendants assert several defenses premised on KEXIM's alleged comparative fault:

- Ninth Affirmative Defense:  Consent
- Eleventh Affirmative Defense:  Apportionment
- Twelfth Affirmative Defense:  Comparative Fault/Contributory Negligence
- Thirteenth Affirmative Defense:  Equitable Indemnification/Contribution
- Twenty-First Affirmative Defense:  Failure to Mitigate
- Twenty-Ninth Affirmative Defense:  Assumption of the Risk

Each of these Affirmative Defenses are pled in boilerplate terms, with no specific details alleged.  (*See* Joint Answer ¶¶ 142, 144-46, 154, 162).  KEXIM contends that all of these Affirmative Defenses fail as a matter of law.

As discussed below, the Motion is **GRANTED** as to the Ninth, Thirteenth, and Twenty-Ninth Affirmative Defenses, and **GRANTED** *in part* as to the Twelfth Affirmative Defense.  It is **DENIED** as to the Eleventh and Twenty-First Affirmative Defenses.

#### 1.  Ninth Affirmative Defense: Consent; Twenty-Ninth Affirmative Defense: Assumption of Risk

Defendants contend that KEXIM's claims are barred by KEXIM's consent (Joint Answer ¶ 142) and by the doctrine of assumption of risk.  (*Id.* ¶ 162).  KEXIM argues that it could not have consented to or assumed the risk of being defrauded in the conduction of its business transactions, or of ASI's negligent supervision of its employees and agents.  (Mot. at 21).

In Opposition, Defendants argue that KEXIM engaged in the exact conduct it alleges Defendants engaged in because KEXIM earned profits from its business with Moneual and its employees accepted bribes from Moneual.  (Opp. at 19).  KEXIM

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

cannot, Defendants continue, claim to be the victim of a scheme in which it
participated just because it eventually lost money in the scheme.  (*Id.*).

        KEXIM is correct that the doctrine of assumption of risk has no applicability in
this case.  The doctrine of assumption of risk "completely bars a plaintiff's recovery
where a court finds as a matter of public policy that the defendant lacked a duty to
protect the plaintiff from a particular risk of harm. The doctrine turns on 'the nature of
the activity or sport in which the defendant is engaged' and 'the relationship of the
defendant and the plaintiff to that activity or sport.'"  *Taylor v. United States*, 350 Fed.
Appx. 129, 131 (9th Cir. 2009) (quoting *Knight v. Jewett*, 3 Cal. 4th 296, 309, 11 Cal.
Rptr. 2d 2 (1992)).  However, courts have stricken the affirmative defense of
assumption of risk in the context of regular business activities and transactions.  *See,
e.g.*, *J & J Sports Prods., Inc. v. Catano*, 2012 WL 5424677, at *7 (E.D. Cal. Nov. 6,
2012) (striking affirmative defense of assumption of risk as "immaterial" where
plaintiff alleged defendant unlawfully intercepted plaintiff's broadcast).

        This is not an action involving occupational assumption of risk, which might
apply to plaintiffs with inherently risky occupations (such as firefighting), or
recreational assumption of risk, which might apply to plaintiffs participating in
inherently risky sports or activities (such as skiing).  *See Gregory v. Cott*, 59 Cal. 4th
996, 1001, 176 Cal. Rptr. 3d 1 (2014) ("[A]ssumption of risk cases often involve
recreational activity, but the doctrine also governs claims arising from inherent
occupational hazards.").  Rather, this is a case in which KEXIM issued loans – a
normal business activity for a bank.  KEXIM may have earned some profit on those
loans initially – also normal for a bank – before beginning to lose money on its loans to
Moneual when ASI failed to make payments.  Defendants point to no cases applying
this doctrine to bar claims of the type at issue in this action, and the Court has found
none.

        The doctrine of consent, to some extent, goes hand-in-hand with the doctrine of
assumption of risk.  *See* 6 B.E. Witkin, *Summary of California Law - Torts*, § 1438
(11th ed. 2018) (assumption of risk "is more like the defense of consent to an act"); 5
B.E. Witkin, *supra*, § 50 (consent may take the form of assumption of risk).  Indeed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

Defendants' Opposition addresses both defenses together.  (*See* Opp. at 18-20).  The evidence Defendants proffer in support of their defenses of consent and assumption of risk is the same evidence proffered in support of their defenses of unclean hands, *in pari delicto*, comparative fault, and violation of law.  Those doctrines are better applied to the facts of this case.

   The Motion is therefore **GRANTED** as to Defendants' Ninth Affirmative Defense of consent and Twenty-Ninth Affirmative Defense of Assumption of Risk.

### 2.  Eleventh Affirmative Defense: Apportionment

   Although KEXIM briefly mentions Defendants' Eleventh Affirmative Defense of Apportionment in the heading of Section IV.B. of the Motion, the Motion and Reply contain no substantive argument regarding *why* the defense fails.  The Motion is therefore **DENIED** as to the Eleventh Affirmative Defense.

### 3.  Twelfth Affirmative Defense: Comparative Fault/Contributory Negligence; Thirteenth Affirmative Defense: Equitable Indemnification/Contribution

   KEXIM also contends that contributory negligence is not a recognized doctrine in California and therefore fails.  (Mot. at 19).  Indeed, the "'all-or-nothing' rule of contributory negligence" has been superseded in this state by "a system of 'pure' comparative negligence."  *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 828-29, 119 Cal. Rptr. 858 (1975).  Defendants do not contest this argument in their Opposition.  Accordingly, to the extent Defendants' Twelfth Affirmative Defense is based on the doctrine of contributory negligence, it fails.

   KEXIM further argues that the doctrines of comparative fault/comparative negligence and equitable indemnification/contribution are not legally recognized defenses to intentional torts, such as fraud, or to negligent misrepresentation.  (Mot. at 19-20 (citing cases)).  In Opposition, Defendants do not contest this argument.  Their Thirteenth Affirmative Defense of equitable indemnification/contribution is therefore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

waived, as is their Twelfth Affirmative Defense to the extent it was intended to bar
KEXIM's claims for fraud and negligent misrepresentation.

However, KEXIM's Motion does not address whether Defendants' Twelfth
Affirmative Defense of comparative fault may apply to bar or reduce KEXIM's
recovery on its claim for negligent supervision, and Defendants argue that it may.
(Opp. at 16).

The Motion is therefore **GRANTED** as to Defendants' Thirteenth Affirmative
Defense of equitable indemnification/contribution, and as to Defendants' Twelfth
Affirmative Defense of contributory negligence/comparative fault, except to the extent
the Twelfth Affirmative Defense asserts a defense of comparative fault to KEXIM's
claim for negligent supervision.

### 4.        Twenty-First Affirmative Defense: Failure to Mitigate

Defendants contend that any damages potentially owed to KEXIM should be
reduced because KEXIM failed to take reasonable steps to minimize or mitigate
damages.  (Joint Answer ¶ 154).

As KEXIM notes, "[t]he rule of [mitigation of damages] comes into play *after a
legal wrong has occurred*, but while some damages may still be averted." *J & J Sports
Prods, Inc. v. Bouton*, No. CV 12-5762-RS, 2015 WL 12979116, at *3 (N.D. Cal. May
13, 2015) (emphasis in original) (quoting *Pool v. City of Oakland*, 42 Cal. 3d 1051,
1066, 232 Cal. Rptr. 528 (1986)); *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th
1686, 1691, 32 Cal. Rptr. 2d 329 (1994) ("the rule of mitigation of damages comes into
play when the event producing injury or damage has already occurred and it then has
become the obligation of the injured or damaged party to avoid continuing or enhanced
damages through reasonable efforts"); *see also* 6 B.E. Witkin, *supra*, § 1798 (11th ed.
2018) ("Where damage to person or property is threatened or inflicted by either breach
of contract or tort, the injured party has the active duty to use reasonable care and
diligence to protect himself or herself and minimize the loss. And if, by the injured
party's own neglect, the damages are unnecessarily enhanced, the injured party cannot
recover the excess.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

As KEXIM further notes, "the doctrine is used sparingly in the contract or commercial context."  *Valle de Oro Bank*, 26 Cal. App. 4th at 1694 (holding it was error to allow jury to consider and apply doctrine of mitigation of damages to defeat a bank's right to recover unpaid balances); *see also Vitagraph, Inc. v. Liberty Theatres Co.*, 197 Cal. 694, 698-99, 242 P. 709 (1925) ("No case has been called to our attention wherein this rule as to the duty to minimize the damages has been applied to a situation in which the defendant's breach of duty consisted solely of the failure to refusal to pay a liquidated sum of money when due, and it may perhaps be doubted that the rule is applicable to such a case.").

KEXIM argues that this defense fails as a matter of law because there is no evidence KEXIM had any notice of the alleged fraudulent scheme until ASI failed to make payments to KEXIM when they came due, and that there was therefore no duty to mitigate.  (Mot. at 23).  In Opposition, Defendants contend that there *is* evidence KEXIM was aware of the fraud, in time to have mitigated damages, because receipt of the second OEM Supply Agreement should have put KEXIM on notice of a misrepresentation, at which point KEXIM should have immediately defaulted Moneual and accelerated its loans, rather than waiting for it to file for receivership.  (Opp. at 21).

At the hearing, KEXIM emphasized that, at the time it received the second OEM Supply Agreement, the payments on the Second, Third, and Fourth Sets of Purchase Orders had not yet come due, and there were therefore not yet any damages for KEXIM to mitigate.  KEXIM argued that, as of that time, ASI might still have paid the money owed on those sets, as it had done for the First Set.  Defendants responded by contending that KEXIM had documents within its possession with which it could have prevented damages to itself, but failed to take action to prevent those damages.

The Court agrees with KEXIM that Defendants are essentially arguing that KEXIM could not have relied on the alleged misrepresentations contained in the OEM Supply Agreement.  (*See* Reply at 11).  This argument goes less to whether KEXIM could have mitigated damages it suffered at that time than to whether KEXIM could have prevented damages entirely.  However, KEXIM appears to acknowledge in its papers that there is a factual dispute about whether it knew of the misrepresentations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

through the OEM Supply Agreements.  Accordingly, a factual dispute appears to
remain as to whether, ***after*** the legal wrong occurred via the misrepresentations in the
OEM Supply Agreements, KEXIM could have acted to prevent some of the damages it
eventually sustained.  Surely, a jury could determine that damages to KEXIM were
threatened by the presence of such misrepresentations, and KEXIM could have taken
action to prevent them from occurring.

This action is distinguishable from *Vitagraph* and *Valle de Oro Bank*, described
above.  It is not simply alleged that Defendants failed to make good on money owed
pursuant to a contract; it is alleged that they negligently supervised their employees and
agents and made negligent misrepresentations to KEXIM, causing KEXIM to lose
millions of dollars.  Based on the existing evidence, "it is plausible . . . that [KEXIM]
could have mitigated its damages after" Defendants made misrepresentations via the
OEM Supply Agreements "but before the [fraud was] complete."  *J & J Sports Prods,
Inc.*, 2015 WL 12979116, at *3.

The Motion is therefore **DENIED** as to Defendants' Twenty-First Affirmative
Defense.

### G. Inapplicable Affirmative Defenses

In the Joint Answer, Defendants assert a number of boilerplate Affirmative
Defenses that KEXIM contends are, on their face, completely inapplicable in this
action.  (Mot. at 15; Reply at 5).  Those defenses are:

- Fifteenth Affirmative Defense:  Business Judgment Rule
- Twentieth Affirmative Defense:  Superior Equities
- Twenty-Fifth Affirmative Defense:  Equal Dignities Rule
- Twenty-Eighth Affirmative Defense:  Waiver

(Joint Answer ¶¶ 148, 153, 158, 161).  These defenses are pled in boilerplate terms
with no specific factual allegations.  Although KEXIM does argue in its Reply that the
business judgment rule in particular is inapplicable because the doctrine is related to

---

CIVIL MINUTES—GENERAL                                                22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:       The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

the liability of directors to their shareholders, a relationship not at issue in this action, KEXIM does not otherwise provide any argument regarding why the above-listed defenses are inapplicable.  (*See* Reply at 5).  That said, Defendants provide nothing in the way of support of these defenses in their Opposition.

The Motion is therefore **GRANTED** as to the above-listed Affirmative Defenses.

## H. Affirmative Defenses Based on Alleged Jurisdictional Defects

In their Joint Answer, Defendants raise a number of defenses based on jurisdictional defects:

- Sixteenth Affirmative Defense:  Abstention
- Seventeenth Affirmative Defense: International Abstention Doctrine
- Eighteenth Affirmative Defense:  Lack of Standing
- Nineteenth Affirmative Defense:  Ripeness

(Joint Answer ¶¶ 149-52).  KEXIM contends that there are no appropriate grounds for any of these defenses, as this case has already been pending before this Court for two years.  (Mot. at 25).

In their Opposition, Defendants fail to address their Eighteenth Affirmative Defense for lack of standing.  Nor do Defendants provide any evidence or legal analysis in support of their Nineteenth Affirmative Defense for Ripeness, beyond merely stating the terms of the ripeness inquiry.  Accordingly, the Motion is **GRANTED** as to those defenses.

With respect to their abstention and ripeness defenses, Defendants contend that that these defenses are based on the fact that KEXIM filed a claim for the same losses against the Moneual bankruptcy estate before filing this lawsuit, and there has not yet been any resolution of that claim.  (Opp. at 3).  Defendants argue that KEXIM has failed to mention that claim in this action, or to disclose how much it received from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

bankruptcy estate or whether that recovery factors into the damages sought in this action.  (*Id.* at 23).

"The international abstention doctrine allows a court to stay or dismiss an action where parallel proceedings are pending in the court of a foreign nation." *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1157 (C.D. Cal. 2005) (citation omitted).  When determining whether to stay or dismiss an action pending the outcome of parallel judicial proceedings in a foreign nation, the Ninth Circuit requires application of the framework established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  *Id.* (citing *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194 (9th Cir. 1991)).

*Colorado River* requires consideration of six factors:

(1) whether either court has assumed jurisdiction over a res; (2) the relative convenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; and (6) whether the state proceeding is adequate to protect the parties' rights.

*Id.* (citing *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989)).  Neither party here makes any attempt to apply the *Colorado River* factors to the facts of this action. Neither do Defendants provide enough evidentiary support for the Court to engage in its own analyses of the factors.  No evidence going to the relative convenience of the forums, the potential for piecemeal litigation, or the adequacy of the bankruptcy proceedings to protect the parties' rights has been proffered.  No evidence is even offered as to whether the bankruptcy proceedings are ongoing, or whether KEXIM has already recovered any money from the bankruptcy estate.

Absent any evidence in support of application of the abstention defenses raised in the Joint Answer, the Court concludes it must **GRANT** summary judgment to KEXIM on its Sixteenth and Seventeenth Affirmative Defenses.  However, the Court reserves the option to later consider evidence of KEXIM's potential recovery from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                  Date:  August 3, 2018
Title:      The Export-Import Bank of Korea -*v*.- ASI Corporation, et al.

bankruptcy estate in the determination of damages in this action in order to prevent a double recovery.

## I.  Fourteenth and Thirtieth Affirmative Defenses

In the Joint Answer, Defendants raise the following defenses:

- Fourteenth Affirmative Defense: Adverse Interest Exception
- Thirtieth Affirmative Defense:  Fraud

(Joint Answer ¶¶ 147, 163).  Essentially, the Defendants contend that KEXIM's claims are barred because Defendants themselves were defrauded by their employees or agents.  (*Id.*).  In the Motion, KEXIM argue that there is no evidence Defendants were defrauded by their own agents because at all times, all of the Defendants' interests were aligned together.  (Mot. at 24).  KEXIM further argues that the adverse interest exception cannot apply where, as here, a third party relied to its detriment on the agent's apparent authority.  (*Id.*).

As set forth below, the Motion is **DENIED** as to the Fourteenth Affirmative Defense, and **GRANTED** as to the Thirtieth Affirmative Defense.

### 1.  Fourteenth Affirmative Defense: Adverse Interest Exception

In their Opposition, ASI Defendants contend that there is evidence that Bill Chen and Frances Chou were acting adversely to ASI and at the behest of Moneual, and that Henry Chen was also acting adversely to ASI Defendants.  (Opp. at 11).  Indeed, as set forth above, there is evidence that Frances Chou was in fact acting as an agent for Moneual; that Bill Chen diverted distribution margin payments from Moneual to his own company, THC, and vouched for Frances Chou without the authority to do so; and that Henry Chen, as a shareholder in THC, benefitted from the diversion of payments to THC.

As the Court set forth in the April 26 Order, and as Defendants reiterate here, California courts applying the adverse interest exception do not require an agent to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

"totally abandon" the principal's interest, and do not require "complete" adversity of
interests.  *In re Cal. Invs. LLC*, 489 B.R. 124, 130 (C.D. Cal. 2013) (citing *F.D.I.C. v.
O'Melveny & Myers*, 969 F.2d 744, 750 (9th Cir. 1992) *rev'd on other grounds*,
*O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79 (1994), *reaff'd on remand*, *F.D.I.C. v.
O'Melveny & Myers*, 61 F.2d 17 (9th Cir.1995) ("there can be no attribution, and
therefore no estoppel, when the insiders, rather than the corporation, benefit from the
wrongdoing").  Applying this standard, the Court concludes that ASI Defendants have
proffered sufficient evidence to establish a dispute of material fact as to whether their
agents – Bill Chen, Frances Chou, and Henry Chen – engaged in conduct adverse to
ASI Defendants' interests such that their alleged participation in the fraudulent scheme
cannot be imputed to ASI Defendants.

       KEXIM's citation to authority establishing that the adverse interest exception
does not apply when a third party relies to its detriment on the agent's apparent
authority does not alter the Court's conclusion.  (Mot. at 24; Reply at 12).  Under the
apparent authority theory, "[A] principal is liable for an agent's fraud though the agent
acts solely to benefit himself, if the agent acts with apparent authority."  *In re
ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 477-78 (9th Cir. 2015) (quoting *Am.
Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982)).
"Similarly, a principal is liable for an agent's misrepresentations that cause pecuniary
loss to a third party when the agent acts within the scope of his apparent authority."
*Am. Soc'y of Mech. Eng'rs*, 456 U.S. at 565-66.  KEXIM alleges that it relied to its
detriment on the representations of ASI's agents.  (Mot. at 24).  At the hearing, KEXIM
pointed to correspondence from and representations made to KEXIM by Bill Chen and
Frances Chou.  Absent is evidence that KEXIM ***relied*** on those communications.  Such
allegations of such reliance may be proven at trial, and therefore the Court cannot yet
conclude that, as a matter of law, the adverse interest exception does not apply to
prevent imputation of ASI's agents' conduct to ASI Defendants themselves.

       The Motion is therefore **DENIED** as to Defendants' Fourteenth Affirmative
Defense.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                    Date:  August 3, 2018
Title:      The Export-Import Bank of Korea -*v.*- ASI Corporation, et al.

### 1.  Thirtieth Affirmative Defense: Fraud

As KEXIM notes in its Reply, Defendants' basis for this Affirmative Defense appears to have shifted significantly.  (Reply at 8-9).  In the Joint Answer, Defendants contend that KEXIM's claims are barred "because such claims are the product of fraud by ***former agent(s) of the ASI Defendants against the ASI Defendants***."  (Joint Answer ¶ 163 (emphasis added)).  Accordingly, KEXIM's Motion addressed both this Affirmative Defense of fraud and the Affirmative Defense of the adverse interest exception together.  However, in their Opposition, Defendants now contend that the defense of fraud is based on "the fact that ***KEXIM, as a government agency***, actively assisted in Moneual's fraudulent scheme."  (Opp. at 3 (emphasis added)).  Defendants now align their fraud defense with their defenses of consent and assumption of risk, and proffer the same evidence in support of those three defenses.  For the same reasons the consent and assumption of risk defenses fail, Defendants' shifting defense of fraud also fails.

The Motion is **GRANTED** as to the Thirtieth Affirmative Defense.

### J.  Thirty-First Affirmative Defense: Ratification

In their Joint Answer, Defendants contend as follows:

[KEXIM's] claims are barred by the fact that [KEXIM's] employees and authorized agents engaged in equitable, unfair, unconscionable, fraudulent, and illegal conduct with regard to the subject of [KEXIM's] action and [KEXIM] ratified such conduct by virtue of suing to collect the profits KEXIM would have earned had the illegal factoring loans been repaid and Moneual's scheme continued unabated.

(Joint Answer ¶ 164).  KEXIM argues that this defense is "nonsensical," because it suggests that "any attempt to recover damages from a fraud would be deemed as ratification of that fraud."  (Mot. at 23).  KEXIM further argues that there is no evidence it adopted or treated Seo's and Lee's alleged wrongful conduct as its own.  (*Id.*).  In Opposition, Defendants reiterate the contention that, because KEXIM

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 16-2056-MWF (JPRx)                     Date:  August 3, 2018
Title:        The Export-Import Bank of Korea -v.- ASI Corporation, et al.

accepted some profit from its loans to Moneual, failed to disgorge the profits or turn them over to authorities, and is now suing to recover the profits KEXIM would have recovered from the Second, Third, and Fourth Sets of purchase orders, it has engaged in ratification.  (Opp. at 21-22)

Ratification of an employee's actions occurs when the employer voluntarily adopts the employee's conduct, therefore treating the conduct as his own.  *Rakestraw v. Rodrigues*, 8 Cal. 3d 67, 73, 104 Cal. Rptr. 57 (1972).  The usual conduct that establishes ratification is voluntary acceptance of the benefits of the transaction.  However, "acceptance of the benefits must be with full knowledge of the material facts, and at the time the principle learns of the unauthorized act he or she must be in a position to reject it and restore the things received."  3 B.E. Witkin, *Summary of California Law - Agency*, § 151.  "If at that time the principal is unable, through no fault of his or her own, to make that restoration, the involuntary retention of benefits will not constitute a ratification."  *Id.*  "If a principal ratifies part of a transaction, he is deemed to ratify the whole of it."  *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 81, 100 Cal. Rptr. 2d 683 (2000).

Neither the Joint Answer nor the Opposition clearly states what conduct KEXIM has supposedly ratified.  Defendants appear to suggest that KEXIM ratified the entire fraudulent scheme by seeking relief in this action.  Absent specific evidence that a principal ratified particular conduct of an agent, with knowledge of the particular material facts, this defense fails.

The Motion is therefore **GRANTED** as to the Thirty-First Affirmative Defense.

## V.    CONCLUSION

Accordingly, the Motion is **GRANTED** *in part* and **DENIED** *in part* as set forth above.

IT IS SO ORDERED.