BRYAN A. MERRYMAN (SBN 134357)
bmerryman@whitecase.com
EARLE MILLER (SBN 116864)
emiller@whitecase.com
RUSSELL J. GOULD III (SBN 313352)
russell.gould@whitecase.com
WHITE & CASE LLP
555 S. Flower Street, Suite 2700
Los Angeles, CA  90071-2433
Telephone:  (213) 620-7700
Facsimile:  (213) 452-2329

Attorneys for Plaintiff
THE EXPORT-IMPORT BANK OF KOREA

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE EXPORT-IMPORT BANK OF KOREA, an agency or instrumentality of the Republic of Korea,<br><br>              Plaintiff,<br><br>     v.<br><br>ASI CORPORATION, a Delaware corporation; ASI COMPUTER TECHNOLOGIES, INC., a California corporation; BILL CHEN a/k/a TA WEI CHEN, an individual; HENRY CHEN a/k/a HUNG CHEN, an individual; FRANCES CHOU a/k/a MEI LING CHOU a/k/a FRANCES MEILING CHOU, an individual; CHRISTINE LIANG a/k/a CHRISTINE LI-YIN LIANG a/k/a LI YIN CHU, an individual,<br><br>              Defendants. | Case No. 2:16-cv-02056-MWF-JPR<br><br>**PLAINTIFF THE EXPORT-IMPORT BANK OF KOREA'S NOTICE OF MOTION AND MOTION TO DISQUALIFY PAUL HASTINGS LLP AND FOR AN ORDER TO SHOW CAUSE WHY GORDON REES SCULLY MANSUKHANI, LLP SHOULD NOT BE DISQUALIFIED**<br><br>Date:  January 7, 2019*<br>Time:  10:00 a.m.<br>Courtroom:  5A<br>Judge:  Hon. Michael W. Fitzgerald<br><br>*_Ex parte_ application filed concurrently requesting an earlier hearing date in view of the urgency of the matter |

1   TO THE COURT AND ALL PARTIES AND ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that on January 7, 2019, at 10:00 a.m., or as soon

3   as counsel may be heard before the Honorable Michael W. Fitzgerald, in the United

4   States District Court for the Central District of California, located at 350 West First

5   Street, Los Angeles, California, Courtroom 5A, plaintiff The Export-Import Bank

6   of Korea ("KEXIM") will, and hereby does, move the Court to disqualify Paul

7   Hastings LLP ("Paul Hastings") from representing defendants ASI Computer

8   Technologies, Inc. ("ASI") and Christine Liang in this case.

9       KEXIM also requests the Court issue an order to show cause why Gordon

10   Rees Scully Mansukhani, LLP ("Gordon Rees") should not be disqualified.

11   KEXIM requests the order to show cause require the lawyers at Gordon Rees

12   working on this case to confirm, in writing and under oath, that they did not receive

13   KEXIM's confidential information from Paul Hastings, and will destroy all

14   documents and communications exchanged with Paul Hastings.

15   **KEXIM sets the motion for hearing on January 7, 2019, but**

16   **concurrently files an *ex parte* application requesting the Court instead hear the**

17   **motion earlier. There is an urgent need to resolve this matter well before the**

18   **trial date of January 15, 2019, and before KEXIM's confidential information**

19   **is irredeemably compromised by Paul Hastings' continued participation in this**

20   **matter adversely to KEXIM.**

21       The motion is made on the grounds that before attempting to represent ASI

22   and Ms. Liang, Paul Hastings met with KEXIM regarding this litigation and

23   received material confidential information. California Rule of Professional

24   Conduct 1.18 therefore prevents Paul Hastings from now switching sides and

25   representing ASI and Ms. Liang in this litigation. The request for an Order to Show

26   Cause is made on the ground that lawyers at Gordon Rees may have been exposed

27   to KEXIM's confidential information by working with Paul Hastings on this matter.

28       The motion is and will be based on this notice, the accompanying

- 1 -

KEXIM'S NOTICE OF MOTION TO DISQUALIFY PAUL HASTINGS AND
FOR AN ORDER TO SHOW CAUSE REGARDING GORDON REES

1  memorandum of points and authorities, the concurrently filed declarations of Bryan

2  A. Merryman, Jin-oh Park, and Cholkyu Lee, all matters with respect to which this

3  Court may take judicial notice, all pleadings, papers, and records on file in this

4  action, and such other and further evidence and argument of counsel as may be

5  heard.

6          This motion is made following the conference of counsel under Local Rule 7-

7  3, which started on December 3, 2018, and continued through December 7, 2018.

8

9  Dated:  December 10, 2018                    WHITE & CASE LLP

10

11                                             By:  /s/ Bryan A. Merryman
                                                    Bryan A. Merryman

12

13                                             Attorneys for Plaintiff
                                               The Export-Import Bank of Korea

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# **TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND .....................................2

   A.   Paul Hastings Seeks to Represent KEXIM in This Case ....................2

   B.   KEXIM Files Its Complaint, and ASI and Ms. Liang Retain the
        Same Lawyer Throughout the Case .........................................4

   C.   The Alameda County Superior Court Disqualifies Paul Hastings
        From Representing ASI in a Related Case .............................4

   D.   ASI and Ms. Liang Associate Paul Hastings in This Case ...................6

   E.   KEXIM Informs Paul Hastings of the Conflict and Demands
        the Firm Withdraw, but Paul Hastings Refuses and Continues to
        Represent ASI and Ms. Liang ................................................6

III.  THE COURT SHOULD DISQUALIFY PAUL HASTINGS AND
      ISSUE AN ORDER TO SHOW CAUSE REGARDING
      DISQUALIFICATION OF GORDON REES .................................7

   A.   California Law Prevents a Law Firm From Representing a
        Client Adverse to the Firm's Former Client in the Same
        Litigation ..............................................................................7

   B.   Paul Hastings Has Not Complied With Rule 1.18 and Must Be
        Disqualified From Representing ASI and Ms. Liang in This
        Case ......................................................................................9

        1.   Paul Hastings Received Material Confidential
             Information From KEXIM, Its Prospective Client ..................9

        2.   Paul Hastings Cannot Represent ASI and Ms. Liang
             Because Neither Exception to California Rule of
             Professional Conduct 1.18 Applies ...........................12

             a.   Paul Hastings Received More Information Than
                  Was Necessary to Determine Whether to
                  Represent KEXIM and Took No Steps to Avoid
                  Receiving That Information ...........................12

\- i -

    b. Paul Hastings Failed to Establish a Timely Ethical Screen .......................................................................... 14

    c. Paul Hastings Failed to Promptly or Adequately Notify KEXIM ................................................................ 16

  3. Public Policy Supports Disqualifying Paul Hastings ............... 18

  4. The Alameda County Superior Court Disqualified Paul Hastings for Less Severe Reasons Than Exist Here ................. 19

 C. The Court Should Issue an Order to Show Cause Why Gordon Rees Should Not Be Disqualified ........................................................ 21

IV. CONCLUSION ............................................................................................ 21

- ii -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beltran v. Avon Prods., Inc.*,
  867 F. Supp. 2d 1068 (C.D. Cal. 2012) ..................................................... 8, 10, 15

*In re Complex Asbestos Litig.*,
  232 Cal. App. 3d 572 (1991) ............................................................ 12

*Edwards Wildman Palmer LLP v. Super. Ct.*,
  231 Cal. App. 4th 1214 (2014) ........................................................... 9

*Flatt v. Super. Ct.*,
  9 Cal. 4th 275 (1994) ................................................................. 10

*Henriksen v. Great Am. Sav. & Loan*,
  11 Cal. App. 4th 109 (1992) ............................................................ 17

*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*,
  20 Cal. 4th 1135 (1999) ........................................................ 11, 18, 19

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................. 7

*Skybell Techs., Inc. v. Ring, Inc.*,
  No. 8:18-cv-00014-JVS-JDE (C.D. Cal. Sept. 18, 2018) .................................... 9

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) ....................................................... 10, 16

## FEDERAL RULES

C.D. Cal. L.R. 16-2 .................................................................. 7, 15

C.D. Cal. L.R. 83-3.1.2 .................................................................. 8

## STATE STATUTES

Business and Professions Code § 6068(e) ............................................... 8, 10

## STATE RULES

Cal. R. Prof'l Conduct 1.0.1, Cmt. 6 ..................................................... 14

- iii -

Cal. R. Prof'l Conduct 1.6 ................................................................... 8, 10

Cal. R. Prof'l Conduct 1.9, Cmt. 5 ............................................................ 10

Cal. R. Prof'l Conduct 1.18 ..........................................................*passim*

Cal. R. Prof'l Conduct 1.18(a) ............................................................. 8, 9

Cal. R. Prof'l Conduct 1.18(c) ............................................................ 8, 9

Cal. R. Prof'l Conduct 1.18, Cmt. 3 ........................................................ 13

Cal. R. Prof'l Conduct 1.18, Cmt. 5 ........................................................ 17

Cal. R. Prof'l Conduct 1.18(d) .......................................................... 11, 17

Cal. R. Prof'l Conduct 1.18(d)(1) ....................................................... 8, 12

Cal. R. Prof'l Conduct 1.18(d)(2) .................................................*passim*

Cal. R. Prof'l Conduct 1.18(d)(2)(i) ....................................................... 14

Cal. R. Prof'l Conduct 1.18(d)(2)(ii) .............................................. 7, 16, 17

AMERICAS 97250734

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion requests that the Court disqualify a law firm that obtained confidential information from a prospective client and then switched sides to represent adverse parties in the same matter.  Paul Hastings LLP attempted to represent plaintiff The Export-Import Bank of Korea ("KEXIM") in asserting its claims against defendant ASI Computer Technologies, Inc. ("ASI") and others.  On November 26, 2018, defendants ASI and Christine Liang filed a Notice of Association of Counsel notifying KEXIM for the first time that Paul Hastings now represents them in this case.  This representation violates California law.

California Rule of Professional Conduct 1.18 ("Rule 1.18") prevents a lawyer and the lawyer's firm from representing a client with interests materially adverse to those of a prospective client, in the same or a substantially related matter, if the lawyer received from the prospective client material confidential information. KEXIM sent Paul Hastings a request for proposal ("RFP") to represent KEXIM with respect to its claims against ASI.  In that RFP, and in further documents KEXIM sent, communications, and an in-person meeting to discuss KEXIM's potential claims against ASI – at the request of Paul Hastings – KEXIM disclosed confidential information and strategic considerations.

Paul Hastings failed to meet any of the requirements in the two exceptions to Rule 1.18.  KEXIM has never consented to Paul Hastings' representation of ASI and Ms. Liang.  Paul Hastings took no steps to avoid receiving more information from KEXIM than was necessary to determine whether to represent it.  The firm also failed to establish a timely ethical screen or provide prompt notice to KEXIM. The firm waited to do both until KEXIM demanded its withdrawal – one week after Paul Hastings associated in as counsel and well after it had started substantive work.  Rule 1.18 therefore prevents Paul Hastings from representing ASI and Ms. Liang in this case.

- 1 -

1   The California Supreme Court has called a lawyer switching sides the "most
2   egregious conflict of interest." The Ninth Circuit has stressed that lawyers must
3   avoid the mere "appearance of a breach of confidence." Paul Hastings'
4   representation is particularly astonishing given that less than one week before it
5   filed its Association of Counsel in this case, the Alameda County Superior Court
6   disqualified the firm in its attempt to represent ASI in the related *Kang* litigation
7   because it had also sought to represent the plaintiff there, as it did KEXIM here.

8   The Court should disqualify Paul Hastings from representing ASI and Ms.
9   Liang in this case because that representation violates Rule 1.18. In addition, Paul
10  Hastings' delayed screen exposed KEXIM's confidential information to ASI's
11  existing counsel, Gordon Rees. While KEXIM does not move at this time to
12  disqualify Gordon Rees, the Court should ensure that Gordon Rees has not received
13  KEXIM's confidential information from Paul Hastings by also issuing an order to
14  show cause why Gordon Rees should not be disqualified. The order should require
15  lawyers at Gordon Rees to confirm, in writing and under oath, that they did not
16  receive KEXIM's confidential information.

17  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

18      **A.    Paul Hastings Seeks to Represent KEXIM in This Case**

19  KEXIM considered retaining Paul Hastings to represent it in this action. On
20  August 31, 2015, KEXIM sent to Paul Hastings an RFP regarding KEXIM's
21  potential claims against ASI. *See* Declaration of Jin-oh Park ("Park Decl.") ¶ 3, Ex.
22  A[1]. The RFP is five pages, excluding attachments, and requests that Paul Hastings
23  submit a proposal "to act as U.S. legal counsel in a potential action in the United
24  States against [ASI]." *Id.* at 4. The RFP discloses, among other information,
25  certain facts KEXIM learned from its internal investigation of the fraud committed
26  by Moneual, as well as the scope of the work KEXIM requests from Paul Hastings.

27  _____

28  [1] The RFP attached to Mr. Park's declaration is redacted to preserve the attorney-client privilege and attorney work product, which KEXIM does not waive.

- 2 -

1   *See id.* at 4-8; *id.* ¶ 4.  It also reveals the role KEXIM believed ASI played in the

2   fraud.  *Id.* ¶ 4.  KEXIM states in the RFP that "[a]ll information provided and

3   materials submitted herein or in relation hereto are, and must be treated as, strictly

4   confidential by you and your Firm, and you must not reproduce or forward the

5   same to any third party for any purpose whatsoever without the express written

6   consent of KEXIM."  *Id.* ¶ 3, Ex. A at 4.  The RFP lists KEXIM's in-house lawyers

7   as persons to contact:  Jin-oh Park, the director of KEXIM's legal department; and

8   Cholkyu Lee, a senior legal officer of KEXIM.  *Id.* at 8.

9       Before Paul Hastings submitted its proposal for representation, Jong Han

10  Kim, a partner at Paul Hastings and the chair of the firm's office in Seoul, requested

11  additional documents and information from Mr. Park and Mr. Lee.  *See* Park Decl.

12  ¶ 6; Declaration of Cholkyu Lee ("Lee Decl.") ¶ 3.  In response to the request, Mr.

13  Lee provided documents to, and communicated with, Mr. Kim regarding the RFP

14  and Paul Hastings' representation of KEXIM.  Lee Decl. ¶ 3.  Mr. Park and Mr.

15  Kim also met in person for over an hour, where they further discussed the subject

16  matter of the RFP.  Park Decl. ¶ 6.  Neither Mr. Kim nor any other person at Paul

17  Hastings told Mr. Park or Mr. Lee to limit the information it disclosed to Paul

18  Hastings.  Park Decl. ¶ 7; Lee Decl. ¶ 4.  In fact, Paul Hastings asked for more

19  information.  *See* Park Decl. ¶ 6; Lee Decl. ¶ 3.

20      On September 15, 2015, Mr. Kim submitted Paul Hastings' proposal for

21  representation to KEXIM.  Park Decl. ¶ 8, Ex. B[2].  In the proposal, Paul Hastings

22  analyzes KEXIM's "potential action against ASI."  *Id.* at 9.  The firm notes "[w]e

23  have carefully reviewed the RFP and subsequent documents."  *Id.*  Paul Hastings

24  advises KEXIM on potential claims and the legal issues that arise from them.  *Id.* at

25  12-13.  The proposal also lists the Paul Hastings lawyers that would work on the

26  case.  *Id.* at 11.  John Phillips, a partner and the chair of Paul Hastings' San

27  ──────────────

28  [2] Like the RFP, Paul Hastings' proposal for representation is redacted to preserve the attorney-client privilege, which KEXIM does not waive.

- 3 -

KEXIM'S MOTION TO DISQUALIFY PAUL HASTINGS AND FOR
AN ORDER TO SHOW CAUSE REGARDING GORDON REES

Francisco office, would lead the team.  *Id.*  Two other partners from Northern California – Edward Han (a partner and the Vice Chair of Paul Hastings' Palo Alto office) and Sean Unger (a partner in Paul Hastings' San Francisco office) – would provide support, along with Mr. Kim.  *Id.*  Associates in all three offices would assist the partners.  *Id.* at 11 n.1.  The proposal emphasizes Paul Hastings' common practice of cross staffing between offices.  *Id.* at 10.  Paul Hastings states that it does not have a conflict of interest with KEXIM and is ready and willing to begin work.  *Id.* at 13.  Mr. Kim concludes by telling KEXIM to "contact [him] with any questions about this response, or if KEXIM needs additional information."  *Id.*

**B.    KEXIM Files Its Complaint, and ASI and Ms. Liang Retain the Same Lawyer Throughout the Case**

KEXIM ultimately chose White & Case LLP to represent it in this litigation. KEXIM filed its initial complaint on March 25, 2016.  Dkt. No. 1.  The same lead counsel, Christopher Queally, has represented ASI since at least May 18, 2016.  *See* Dkt. No. 16.  He and his firm have also represented Christine Liang, ASI's president and majority shareholder, since May 30, 2017, when KEXIM added her as a defendant.  *See* Dkt. No. 118.

The current trial date is January 15, 2019, which the Court ordered on August 14, 2018.  Dkt. No. 486.  The pretrial filing deadlines are December 14 and 21, 2018, and the final pretrial conference is scheduled for January 4, 2019.  Dkt. No. 513.

**C.    The Alameda County Superior Court Disqualifies Paul Hastings From Representing ASI in a Related Case**

As the Court knows from ASI and Ms. Liang's requests for trial continuances, ASI is a defendant in another case:  *Seok Kang, as Trustee on behalf of KT Engcore Corp. v. ASI Corp., et al.*, Superior Court of California, County of Alameda, Case No. RG16818221 (filed June 3, 2016) ("*Kang*").  On November 2, 2018, on the eve of trial in that case, Paul Hastings and ASI signed an engagement

- 4 -

1    letter for Paul Hastings to represent ASI in *Kang*, along with Gordon Rees. *See*

2    Declaration of Earle Miller ("Miller Decl.") ¶ 4, Ex. E (ASI Opp. to Pl.'s Mot.

3    Disqualify), at 35.  On November 13, 2018, ASI filed a notice of association of

4    counsel for Paul Hastings to "assist" in the *Kang* trial. *Id.* ¶ 3, Ex. D at 27-28.  The

5    same day, the plaintiff, KT Engcore Corp. ("KT"), requested that Paul Hastings

6    withdraw because the firm had sought to represent KT in the same action. *Id.* ¶ 4,

7    Ex. E at 35.  The pitch included Mr. Kim and two other lawyers in Paul Hastings'

8    Seoul office meeting with KT's representatives, at KT's request, near the end of

9    2015. *Id.* at 34.  During the meeting, Mr. Kim explained that Paul Hastings would

10    have to approve any retention of a new client such as KT. *Id.* at 35.  Mr. Kim

11    apparently does not remember with whom he met at KT. *Id.* at 34.  Paul Hastings

12    apparently did not receive documents from KT. *Id.* at 35.  Nor did the firm submit

13    a written proposal to KT. *See id.*  KT ultimately retained Greenberg Traurig LLP.

14    *Id.* at 34.

15          After KT reminded Paul Hastings about the pitch, the firm established an

16    ethical screen that prohibited only Mr. Kim from working on or accessing materials

17    relating to the ASI representation, or communicating with Paul Hastings' lawyers

18    and staff working on the litigation. *Id.* at 35.

19          On November 14, 2018, KT orally moved to disqualify Paul Hastings. *Id.*

20    The court granted KT's motion, but allowed Paul Hastings to file an opposition. *Id.*

21    ASI filed its opposition on November 19, 2018. *Id.*  The court heard the issue again

22    on November 20 and reaffirmed its November 14 order disqualifying Paul Hastings

23    under Rule 1.18.  Miller Decl. ¶ 6, Ex. F (Nov. 20, 2018 Hr'g Tr.) at 281:10-16,

24    283:16-20.  The court noted the strong public policy considerations protecting

25    prospective clients. *Id.* at 273:20-25; 276:5-11.  Although defendants have a right

26    to choose their counsel, disqualifying Paul Hastings did not impose a hardship on

27    ASI because it already had counsel – Gordon Rees – and Paul Hastings entered the

28    case shortly before trial. *Id.* at 279:14-20.  The court questioned why a firm such as

- 5 -

1   Paul Hastings did not know earlier about the conflict of interest.  *Id.* at 280:22-

2   281:9.  Since the November 14 order, Paul Hastings ceased representing ASI in

3   *Kang*.  *See* Miller Decl. 4, Ex. E at 35.  The *Kang* trial concluded, and, on

4   December 7, 2018, the jury returned a verdict against ASI.

5           **D.      ASI and Ms. Liang Associate Paul Hastings in This Case**

6           KEXIM's counsel asked ASI and Ms. Liang's counsel, Philip Lo of Gordon

7   Rees, on November 14, 2018, whether ASI would seek to associate Paul Hastings

8   as counsel in this case, as it had in *Kang*.  Miller Decl. ¶ 5.  Mr. Lo did not answer

9   the question.  *Id.*  On November 26, without any further notice to KEXIM or

10  correspondence on the subject, ASI and Ms. Liang filed a notice associating Paul

11  Hastings as counsel of record in this litigation.  Dkt. No. 511; Miller Decl. ¶ 5; Park

12  Decl. ¶ 9.

13          **E.      KEXIM Informs Paul Hastings of the Conflict and Demands the**

14                  **Firm Withdraw, but Paul Hastings Refuses and Continues to**

15                  **Represent ASI and Ms. Liang**

16          On December 3, 2018, KEXIM notified Thomas Zaccaro of Paul Hastings by

17  letter that the firm's representation of ASI and Ms. Liang violates the California

18  Rules of Professional Conduct.  Miller Decl. ¶ 7, Ex. G at 46-48.  KEXIM

19  demanded Paul Hastings withdraw immediately and confirm to KEXIM in writing

20  the firm has not shared KEXIM's confidential information with lawyers at Gordon

21  Rees.  *Id.*  On December 4, 2018, Paul Hastings' General Counsel, Eve Coddon,

22  responded by letter to KEXIM.  Miller Decl. ¶ 8, Ex. H.  Ms. Coddon stated the

23  firm was "investigating" the issue, did not believe withdrawal was required, and

24  would inform KEXIM of its decision.  *Id.* at 49.  Paul Hastings' General Counsel

25  further stated Paul Hastings had implemented an ethical screen; the letter did not

26  state whether it implemented the screen before or after receiving KEXIM's

27  December 3 letter, but later correspondence makes it clear Paul Hastings

28  implemented the screen only after it had received the December 3 letter.  *Id.*; Miller

- 6 -

1   Decl. ¶ 11, Ex. L at 61.  In a footnote, Ms. Coddon's December 4 letter states the

2   letter "constitutes notice to KEXIM of the Firm's ethical screening procedures as

3   required under Rule 1.18(d)(2)(ii)."  Miller Decl. ¶ 8, Ex. H at 61 n.1.

4        Mr. Zaccaro then stated by email on December 6 that Paul Hastings intends

5   to represent ASI and Ms. Liang until the firm withdraws or the Court disqualifies it.

6   Miller Decl. ¶ 9, Ex. I at 51.  This includes attending the Local Rule 16-2 meeting,

7   preparing pretrial filings, and preparing for trial.  *See id.*  Mr. Queally confirmed

8   this was also ASI, Ms. Liang, and Gordon Rees' position.  *See id.* at 52.  When Mr.

9   Queally could not attend the planned December 7 Local Rule 16-2 meeting, he said

10  Paul Hastings would attend instead, while he participated on the phone.  *Id.* at 53.

11  KEXIM objected to Paul Hastings' attendance because of the conflict.  *Id.* at 52.

12  The parties rescheduled the meeting to December 11.  Miller Decl. ¶ 9, Ex. J at 55.

13       KEXIM sent another letter to Ms. Coddon on December 6, 2018.  Miller

14  Decl. ¶ 10, Ex. K.  KEXIM reiterated that Paul Hastings' representation violates the

15  California Rules of Professional Conduct, and the firm's refusal to withdraw forces

16  KEXIM to file a motion to disqualify.  *Id.* at 60.  On December 7, Ms. Coddon

17  confirmed Paul Hastings would not withdraw.  Miller Decl. ¶ 11, Ex. L at 61-62.

18  **III.   THE COURT SHOULD DISQUALIFY PAUL HASTINGS AND ISSUE**

19  **AN ORDER TO SHOW CAUSE REGARDING DISQUALIFICATION**

20  **OF GORDON REES**

21       California law prevents Paul Hastings from representing ASI and Ms. Liang

22  in this litigation.  Paul Hastings must be disqualified.  The Court should also issue

23  an order to show cause why Gordon Rees, who may have obtained KEXIM's

24  confidential information from Paul Hastings, should not also be disqualified.

25  **A.     California Law Prevents a Law Firm From Representing a Client**

26  **Adverse to the Firm's Former Client in the Same Litigation**

27       In the Ninth Circuit, state law governs motions to disqualify.  *Rodriguez v.*

28  *W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  The Central District applies

- 7 -

1   the California Rules of Professional Conduct and related judicial decisions.  C.D.

2   Cal. L.R. 83-3.1.2.  A conflict of interest is a ground for disqualification.  *Beltran v.*

3   *Avon Prods., Inc.*, 867 F. Supp. 2d 1068, 1077 (C.D. Cal. 2012).

4        California Rule of Professional Conduct 1.18, which became effective on

5   November 1, 2018, sets forth lawyers' duties to prospective clients.  Rule 1.18(a)

6   provides that a person who consults a lawyer for the purpose of retaining the lawyer

7   or securing legal service or advice is a prospective client.  Even when no lawyer-

8   client relationship ensues, that lawyer shall not represent a client with interests

9   materially adverse to those of a prospective client in the same or a substantially

10  related matter if the lawyer received from the prospective client material

11  information protected by the confidentiality provisions in Business and Professions

12  Code section 6068(e) and California Rule of Professional Conduct 1.6.  Cal. R.

13  Prof'l Conduct 1.18(c).  No lawyer in a firm with which that lawyer is associated

14  may represent the materially adverse client.  Cal. R. Prof'l Conduct 1.18(c).

15       Rule 1.18 sets forth two exceptions which, if met, allow the lawyer or law

16  firm to represent the adverse client.  The first exception requires the affected and

17  prospective client to give informed written consent to the representation.  Cal. R.

18  Prof'l Conduct 1.18(d)(1).  KEXIM has not given, and Paul Hastings has never

19  requested, such consent.

20       The second exception has three requirements:  the lawyer who received the

21  information must have taken **reasonable measures to avoid exposure** to more

22  information than was reasonably necessary to determine whether to represent the

23  prospective client; the law firm must **timely screen** the prohibited lawyer and

24  apportion that lawyer no part of the fee from the representation; and the law firm

25  must **promptly notify the prospective client** in writing in order to enable the

26  prospective client to ascertain the law firm's compliance with the provisions of the

27  rule.  Cal. R. Prof'l Conduct 1.18(d)(2).

28       A court in the Central District recently disqualified a law firm under Rule

- 8 -

1.18.  *Skybell Techs., Inc. v. Ring, Inc.*, No. 8:18-cv-00014-JVS-JDE (C.D. Cal. Sept. 18, 2018); Miller Decl. ¶ 2, Ex. C ("*Skybell*").  In that case, the lawyer for the defendant, Ring, Inc. ("Ring"), joined a new law firm, Orrick, Herrington & Sutcliffe ("Orrick"), during the litigation.  *Id.* at 7.  Like Paul Hastings, Orrick had pitched the plaintiff, SkyBell Technologies, Inc. ("SkyBell"), to work on the same case, met with representatives of SkyBell, and provided SkyBell a written proposal analyzing potential claims.  *See id.* at 4-7.  The court disqualified Orrick from representing Ring because, under Rule 1.18, SkyBell was a prospective client and Orrick received confidential information from SkyBell.  *Id.* at 13-21.  Orrick did not meet the exception under Rule 1.18(d)(2) because it did not take reasonable measures in the pitch process to avoid exposure to more information than was reasonably necessary for determining whether to represent SkyBell.  *Id.* at 20-21.

**B.**     **Paul Hastings Has Not Complied With Rule 1.18 and Must Be Disqualified From Representing ASI and Ms. Liang in This Case**

Paul Hastings obtained material confidential information from KEXIM, its prospective client, and now seeks to represent adverse parties ASI and Ms. Liang in the same litigation in which Paul Hastings sought to represent KEXIM.  Paul Hastings has the burden to prove it complied with Rule 1.18.  Because neither exception to Rule 1.18 applies here, the firm must be disqualified.  Public policy, *Skybell*, and *Kang* support disqualification here.

**1.**     **Paul Hastings Received Material Confidential Information From KEXIM, Its Prospective Client**

KEXIM is Paul Hastings's former prospective client under Rule 1.18(a).  KEXIM sent the RFP to Paul Hastings for the purpose of retaining or securing legal advice.  *See Edwards Wildman Palmer LLP v. Super. Ct.*, 231 Cal. App. 4th 1214, 1226 (2014) (holding an attorney-client relationship exists when a person consults a lawyer to obtain legal service or advice, even if the person does not retain the lawyer).  Rule 1.18(c) therefore requires Paul Hastings to maintain KEXIM's

- 9 -

1   confidences as it would for a former client.

2        This litigation involves the same matter on which Paul Hastings advised

3   KEXIM – its claims against ASI stemming from Moneual's fraud.  As parties

4   opposing those claims, the interests of ASI and Ms. Liang are materially adverse to

5   KEXIM.

6        Paul Hastings received from KEXIM confidential information protected by

7   Business and Professions Code section 6068(e) and California Rule of Professional

8   Conduct 1.6.  Under Rule 1.6, confidential information includes that which a

9   "lawyer acquires by virtue of the representation, whatever its source, and

10  encompasses matters communicated in confidence by the client . . . ."  Material

11  confidential information can include information publicly available or discoverable

12  in litigation.  *See Skybell,* Miller Decl. ¶ 2, Ex. C at 14 (citing Cal. R. Prof'l

13  Conduct 1.9, Cmt. 5).  KEXIM only communicated information to Paul Hastings

14  because, and by virtue of, the prospective representation.  KEXIM went even

15  further, stating in the RFP the information and materials KEXIM submitted with or

16  related to the RFP "are, and must be treated as, strictly confidential by you and your

17  Firm . . . ."  Park Decl. 3, Ex. A at 4.  KEXIM could not have been be more

18  explicit.  It considered the information confidential, wanted it kept confidential, and

19  only provided information to Paul Hastings for purposes of legal advice and

20  representation.  Paul Hastings received confidential information from KEXIM

21  under Rules 1.6 and 1.18.

22       Courts presume the lawyer acquired confidential information in the first

23  representation if the second representation is substantially related or the same.  *See*

24  *Beltran*, 867 F. Supp. 2d at 1078; *Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994).

25  The client does not have to show it disclosed actual confidences.  That "inquiry

26  would be improper as requiring the very disclosure the rule is intended to protect."

27  *Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980).  KEXIM's RFP requests Paul

28  Hastings submit a proposal "to act as U.S. legal counsel in a potential action in the

- 10 -

1    United States against [ASI]."  Park Decl. ¶ 3, Ex. A at 4.  The firm's proposal

2    analyzes KEXIM's "potential action against ASI."  Park Decl. ¶ 8, Ex. B at 9.  The

3    RFP and proposal comprise the same issues as this case, and the Court must

4    presume Paul Hastings received confidential information.

5         Paul Hastings cannot rebut the presumption.  "Even the briefest conversation

6    between a lawyer and a client can result in the disclosure of confidences."  *People*

7    *ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1148

8    (1999) (citation omitted).  In *SpeeDee Oil*, the California Supreme Court held a

9    lawyer received material confidential information because he discussed substantive

10   allegations, the case's procedural status, and the client's theories of the case and

11   discovery strategies.  *Id.* at 1151.

12        The RFP and documents KEXIM sent to Paul Hastings confirm KEXIM

13   provided material confidential information to the firm.  The RFP discloses a case

14   background section about facts and documents KEXIM considered important and

15   the role ASI played in Moneual's fraud.  Park Decl. ¶ 3, Ex. A at 3; *id.* ¶ 4. The

16   RFP also details the scope of the work and the content of the proposal, for purposes

17   of formulating KEXIM's potential claims against ASI.  *Id.* ¶ 3, Ex. A at 3.  KEXIM

18   sent additional documents to Paul Hastings after the RFP, at Paul Hastings' request.

19   *Id.* ¶ 6; Lee Decl. ¶ 3.  KEXIM and Paul Hastings discussed the RFP, documents,

20   and KEXIM's potential strategy when Mr. Park and Mr. Kim met in person for over

21   one hour.  Park Decl. ¶ 6.  After a "careful[] review" of the RFP and documents,

22   Paul Hastings submitted its written proposal.  *Id.* ¶ 8, Ex. B. at 9.  Because Paul

23   Hastings received material confidential information from its prospective client,

24   KEXIM, about this same litigation, Rule 1.18 prevents the firm from representing

25   adverse parties ASI and Ms. Liang, unless one of the exceptions in Rule 1.18(d)

26   applies.

27

28

- 11 -

2.      **Paul Hastings Cannot Represent ASI and Ms. Liang**
**Because Neither Exception to California Rule of Professional**
**Conduct 1.18 Applies**

Paul Hastings did not obtain from KEXIM informed written consent to represent ASI or Ms. Liang, so the first of the two exceptions to Rule 1.18 does not apply. *See* Cal. R. Prof'l Conduct 1.18(d)(1). Paul Hastings similarly failed to meet any of the three requirements for the second exception. The firm (a) received more information from KEXIM than was reasonably necessary to determine whether to represent it and did not avoid receiving that information; (b) did not establish a timely screen; and (c) did not promptly or adequately notify KEXIM.

Paul Hastings has the burden to prove it complied with an exception under Rule 1.18. *See In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 596 (1991) (finding once the party moving to disqualify establishes the lawyer received confidential information, the challenged lawyer then has the burden of showing adequate procedures to protect the information); Miller Decl. ¶ 6, Ex. F at 276:16-20 (the "burden is on the lawyer that has seen the prospective client . . . Any other view of that doesn't make sense.") Paul Hastings cannot meet that burden.

a.      **Paul Hastings Received More Information Than Was**
**Necessary to Determine Whether to Represent**
**KEXIM and Took No Steps to Avoid Receiving That**
**Information**

Rule 1.18(d)(2) requires the lawyer only receive from the prospective client the information reasonably necessary to determine whether to represent it. Cal. R. Prof'l Conduct 1.18(d)(2); *Skybell*, Miller Decl. ¶ 2, Ex. C at 16-17. The rule also separately requires the lawyer take reasonable measures to avoid exposure to more information than was reasonably necessary. Cal. R. Prof'l Conduct 1.18(d)(2); *Skybell*, Miller Decl. ¶ 2, Ex. C at 16-17 ("Rule 1.18(d)(2) not only requires that the information received by the attorney be reasonably necessary to determine whether

- 12 -

1   to represent the prospective client, but it also states that the attorney must take

2   'reasonable measures' to avoid or limit exposure to this information.").  Neither

3   happened here.

4        Paul Hastings received from KEXIM more information than was reasonably

5   necessary to determine whether to represent KEXIM.  Rule 1.18(d)(2) relates only

6   to the information necessary to determine representation – whether the information

7   was necessary to prepare a competitive pitch is a separate matter.  *See Skybell*,

8   Miller Decl. ¶ 2, Ex. C at 20.  The five-page RFP and multiple documents KEXIM

9   disclosed to Paul Hastings exceeded the information needed to determine

10  representation, such as the type of claims and location of the lawsuit (to ensure the

11  firm has the expertise to represent the client), the names of the parties (to determine

12  conflicts), and the fees for the work.  Instead, KEXIM provided Paul Hastings with

13  nonpublic, confidential factual information and legal strategies, and sent documents

14  to Paul Hastings at the law firm's request.  Park Decl. ¶¶ 4, 6; Lee Decl. ¶ 3.  Paul

15  Hastings and KEXIM then discussed the matter further at a one-plus-hour meeting

16  between Jong Han Kim of Paul Hastings and Jin-oh Park of KEXIM.  Park Decl. ¶

17  6.  This is more information than Paul Hastings reasonably needed to determine

18  whether to represent KEXIM.

19       Paul Hastings also did not take reasonable measures to avoid exposure to

20  additional information.  Paul Hastings must prove by "substantial evidence," at

21  "each stage of the discussions" with KEXIM, it took effective and reasonable

22  measures to avoid exposure to more information than was necessary.  *Skybell*,

23  Miller Decl. ¶ 2, Ex. C at 20; *see also* Cal. R. Prof'l Conduct 1.18, Cmt. 3 ("a

24  lawyer considering whether or not to undertake a new matter must limit the initial

25  interview to only such information as reasonably appears necessary for that

26  purpose.").

27       In *Skybell*, Orrick argued that if it only acquired reasonably necessary

28  information, it must have taken measures to ensure it only received necessary

- 13 -

1   information.  Miller Decl. ¶ 2, Ex. C at 17.  Orrick also argued that a warning to

2   SkyBell to avoid exposing information would have had no practical effect.  *Id.*  The

3   court rejected both arguments.  *Id.*  Rule 1.18(d)(2) "explicitly contemplates that the

4   attorney take some type of affirmative step or act to limit or avoid exposure to more

5   information than is necessary."  *Id.*  "There must be some type of preceding or

6   concurrent affirmative act that is carried out by the attorney to limit the disclosure."

7   *Id.*

8        Here, Jong Han Kim and Paul Hastings did not take any affirmative steps to

9   limit the information KEXIM provided.  No lawyer at Paul Hastings cautioned Mr.

10  Park or Mr. Lee about providing information, told them to provide only certain

11  information, or requested they limit their disclosures of information in any way.

12  *See* Park Decl. ¶ 7; Lee Decl. ¶ 4.

13       In fact, Paul Hastings did the opposite – it requested *more* documents and

14  information from KEXIM.  *See* Park Decl. ¶ 6; Lee Decl. ¶ 3.  It also was ready and

15  willing to begin work and told KEXIM to reach out for further information or

16  questions.  Park Decl. ¶ 8, Ex. B at 13.  Paul Hastings did not take measures to

17  avoid exposure to more information than was reasonably necessary to determine

18  whether to represent KEXIM.  Although either receiving more information or

19  failing to take these steps precludes Paul Hastings from representing ASI and Ms.

20  Liang under Rule 1.18, Paul Hastings fails to fulfill either requirement.

21              **b.**   **Paul Hastings Failed to Establish a Timely Ethical**

22                       **Screen**

23       Rule 1.18(d)(2)(i) requires the law firm to "timely" screen the lawyers that

24  received confidential information from the prospective client.  To be effective,

25  screening measures must be implemented as soon as practical after a lawyer or law

26  firm should know there is a need for screening.  *See* Cal. R. Prof'l Conduct 1.0.1,

27  Cmt. 6.

28       Paul Hastings began representing ASI on November 2, 2018, when it signed

- 14 -

KEXIM'S MOTION TO DISQUALIFY PAUL HASTINGS AND FOR
AN ORDER TO SHOW CAUSE REGARDING GORDON REES

1   the engagement letter.  Miller Decl. ¶ 4, Ex. E at 35.  Because Paul Hastings had

2   also pitched to represent KT, that court disqualified the firm on November 14 and

3   reaffirmed the order on November 20.  *See id.*; Miller Decl. ¶ 6, Ex. F at 281:22-24.

4   Paul Hastings then associated in as counsel in this case on November 26, six days

5   later.  Dkt. No. 511.  But the firm did not establish an ethical screen until December

6   4 – after KEXIM's letter.  Miller Decl. ¶ 11, Ex. L at 61.

7        Thomas Zaccaro of Paul Hastings and Christopher Queally, ASI's longtime

8   counsel at Gordon Rees, have taken the position that Paul Hastings is now co-

9   counsel in this case and intends to represent ASI and Ms. Liang until the firm

10  withdraws or is disqualified.  Miller Decl. ¶ 9, Ex. I at 51.  Mr. Queally showed the

11  depth of Paul Hastings' involvement when he said Paul Hastings would attend the

12  Local Rule 16-2 meeting in person in his place.  *Id.* at 53.  Paul Hastings was fully

13  prepared to attend the meeting – "particularly in Chris's absence" – and stay on

14  schedule to complete the pretrial filings.  *Id.* at 51.

15       This means Paul Hastings would necessarily have to discuss numerous

16  substantive issues:  proposed jury instructions and verdict forms, stipulated facts,

17  exhibit lists, witnesses, deposition transcripts, and evidentiary issues, among others.

18  *See* C.D. Cal. L.R. 16-2.  It also means Paul Hastings completed substantive work

19  on this case for over a week without imposing an ethical screen to protect KEXIM's

20  confidential information.  This delayed ethical screen is untimely.  *See Beltran*, 867

21  F. Supp. 2d at 1083 (finding the law firm's ethical wall untimely because the firm

22  established the wall after conducting substantive work on the case).

23       Not only has Paul Hastings violated the rule, but its delayed screen has

24  exposed KEXIM's confidential information to the lawyers representing ASI and

25  Ms. Liang at both Paul Hastings and Gordon Rees.  There are numerous scenarios

26  under which KEXIM's confidential information could have been accessed, whether

27  intentionally or inadvertently.  A lawyer or staff member at Paul Hastings could

28  have conducted preliminary research on the firm's electronic database and viewed

- 15 -

1     confidential documents, such as the RFP or other documents KEXIM provided.  Or

2     someone could have contacted a lawyer from the team that pitched KEXIM.  This

3     scenario is not unlikely:  KEXIM is a Korean bank and many of the relevant actions

4     happened in Korea.  It would make sense for a lawyer in the Los Angeles office to

5     contact the chair of the firm's Seoul office for any background he could provide.

6     Or the person could contact the chair of the firm's litigation department – located in

7     San Francisco, near ASI's headquarters and the *Kang* litigation.  Both the chairs

8     apparently worked on the pitch to KEXIM, as they intended to represent KEXIM.

9     Both of them, and all of the other lawyers on KEXIM's representation team, still

10     work at Paul Hastings.

11        But KEXIM does not have to hypothesize scenarios under which Paul

12     Hastings may have exploited its confidences.  Disqualification does not depend on

13     "proof of the abuse of confidential information." *Trone*, 621 F.2d at 1001.  The

14     more important consideration is the sensitivity of the client's confidence and the

15     need to avoid even the "appearance of a breach of confidence." *Id.* By its own

16     admission, Paul Hastings waited over <u>one month</u> after signing an engagement letter

17     with ASI, <u>a week</u> after it associated in as counsel, and <u>after</u> it already completed

18     substantive work on this case, to establish an ethical screen.  Rule 1.18 does not

19     allow the law firm to wait until it receives a letter from the spurned prospective

20     client to establish an ethical screen.  The rule requires a timely screen to avoid the

21     possibility of compromise.  If the tainted lawyer or confidential information infects

22     the lawyers representing the adverse client, then an ethical screen is worthless.  Paul

23     Hastings' screen was untimely.

24               **c.**      **Paul Hastings Failed to Promptly or Adequately**

25                     **Notify KEXIM**

26        Consistent with its untimely screen, Paul Hastings did not notify KEXIM of

27     its intent to represent ASI and Ms. Liang until <u>after</u> KEXIM sent its letter dated

28     December 3, 2018, demanding the firm withdraw.  Rule 1.18(d)(2)(ii) requires the

- 16 -

1  law firm to "promptly" give written notice to the prospective client to enable the

2  client to ascertain whether the law firm complied with Rule 1.18.  The written

3  notice must include a general description of the subject matter about which Paul

4  Hastings was consulted, and the screening procedures employed.  *See* Cal. R. Prof'l

5  Conduct 1.18, Cmt. 5.  Paul Hastings' purported notification to KEXIM – by means

6  of a footnote in its December 4 letter – was tardy, not prompt.  Paul Hastings sent

7  its letter over one week after it associated as counsel in this case (and even longer

8  after it presumably began representing ASI and Ms. Liang); and it did so only in

9  response to KEXIM's December 3 letter, rather than proactively as the rule

10  contemplates so KEXIM could have ascertained compliance with the rule.  The

11  notice requirement would be unnecessary if the lawyer could wait to notify the

12  former client until after he or she conducted work on behalf of the adverse client.

13    Paul Hastings' late notice also fails to identify the lawyers or staff the firm

14  considers to have received KEXIM's confidential information.  In the *Kang* action,

15  Paul Hastings only screened Jong Han Kim.  Miller Decl. ¶ 4, Ex. E at 35.  But the

16  firm represented that numerous partners, and unnamed associates, would work on

17  KEXIM's case.  Park Decl. ¶ 8, Ex. B at 11.  Those partners work in California

18  offices of Paul Hastings.  They – and all other associates and staff members that

19  assisted with the response – must be included in the screen.  *See Henriksen v. Great*

20  *Am. Sav. & Loan*, 11 Cal. App. 4th 109, 116 n.6 (1992) (describing the typical

21  elements of an adequate ethical screen, which include, among other things,

22  screening tainted lawyers, and also noting inadequacies with the disqualified law

23  firm's description in a declaration of its screening procedures).  In addition to being

24  late, Paul Hastings' notice does not allow KEXIM to determine whether the firm's

25  ethical screen complies with the California Rules of Professional Conduct.  Paul

26  Hastings violated Rule 1.18(d)(2)(ii).  Paul Hastings cannot represent ASI and Ms.

27  Liang because none of the exceptions – and even none of the elements of the

28  exceptions – in Rule 1.18(d) applies.  The firm must be disqualified.

- 17 -

### 3.   Public Policy Supports Disqualifying Paul Hastings

The "most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation." *SpeeDee Oil*, 20 Cal. 4th at 1147.  The "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *Id.* at 1145.  For Paul Hastings to obtain KEXIM's material confidential information about this litigation, and then attempt to represent ASI and Ms. Liang in the same litigation, undermines these important policy considerations.  In addition to those considerations, courts also consider the client's right to counsel, the lawyer's interest in representing the client, the financial burden on the client to replace disqualified counsel, and whether the moving party seeks to disqualify the lawyer for tactical reasons. *SpeeDee Oil*, 20 Cal. 4th at 1145.

Disqualifying Paul Hastings does not implicate ASI's or Ms. Liang's right to counsel.  ASI has had the same lead counsel, Christopher Queally, for almost three years.  He and his firms have also represented Ms. Liang since KEXIM added her as a defendant.  Paul Hastings is only assisting, not replacing, Gordon Rees, who has vigorously litigated this case for years.  ASI and Ms. Liang associated Paul Hastings only two weeks ago, and they can either rely on Gordon Rees or hire another firm to help Gordon Rees.  Nonetheless, the "important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil*, 20 Cal. 4th at 1145.

As it does not affect their right to counsel, disqualifying Paul Hastings does not impose a financial burden on ASI and Ms. Liang or the firm.  KEXIM notified all parties of Paul Hastings' conflict within one week after ASI and Ms. Liang filed a notice of association.  After spending one week discussing the conflict in correspondence, KEXIM now files this motion two weeks after the notice of association.  Two weeks of working on the case – during half of which Paul Hastings knew KEXIM objected to its representation of KEXIM's adversary and

- 18 -

1    intended to move to disqualify if the law firm did not withdraw – does not equate to

2    substantial expense or an important interest in representing ASI or Ms. Liang.  Nor

3    would it impose a financial hardship on ASI or Ms. Liang to rely on Gordon Rees

4    or find other counsel to assist Gordon Rees.  ASI, Ms. Liang, and Gordon Rees

5    have known for over four months the trial in *Kang* and this trial would start within

6    two months of each other.  They cannot use that excuse to violate the California

7    Rules of Professional Conduct and the important ethical policy against law firms

8    switching sides.

9         KEXIM does not seek to disqualify Paul Hastings for tactical reasons.  In

10   *SpeeDee Oil*, the Supreme Court held there is little concern for tactical abuse when

11   the prospective client had genuinely sought the tainted lawyer's services and then

12   moved quickly to disqualify lawyer's firm.  *SpeeDee Oil*, 20 Cal. 4th at 1145, n.2.

13   Like *SpeeDee Oil*, KEXIM was genuinely interested in hiring Paul Hastings and

14   could not have predicted Paul Hastings would then try to represent ASI and Ms.

15   Liang.  Paul Hastings associated in as counsel in *Kang* on November 13, 2018.

16   Miller Decl. ¶ 3, Ex. D at 27-28.  But until the firm associated in as counsel in this

17   case, which it did on November 26, 2018, KEXIM could not have reasonably

18   sought relief.  After the Notice of Association, KEXIM quickly informed Paul

19   Hastings of the conflict and its intention to move to disqualify.  Miller Decl. ¶ 7,

20   Ex. G.  There is no tactical abuse here.  California's policy considerations strongly

21   favor disqualifying Paul Hastings.

22        **4.    The Alameda County Superior Court Disqualified Paul**

23             **Hastings for Less Severe Reasons Than Exist Here**

24        The court in *Kang* disqualified Paul Hastings from representing ASI for the

25   same underlying reason here – the firm had pitched to represent the plaintiff and

26   then tried to represent the defendant.  Compared to Paul Hastings' pitch to KEXIM,

27   the firm's pitch to KT had less egregious facts; the Alameda court still found Paul

28   Hastings' actions warranted disqualification under Rule 1.18.

- 19 -

Paul Hastings' pitch to KT only involved three lawyers in its Korea office, and only one of those lawyers still works at the firm. Miller Decl. ¶ 4, Ex. E at 34. Conversely, Paul Hastings' response to KEXIM's RFP identified four lawyers, all of whom still work at the firm, from three offices, including two in California. *See* Park Decl. ¶ 8, Ex. B at 11. KT apparently did not provide documents to Paul Hastings, and the firm apparently did not prepare a written proposal. *See* Miller Decl. ¶ 4, Ex. E at 34. Yet, KEXIM provided an RFP to Paul Hastings and, at the firm's request, numerous additional documents, and Paul Hastings responded with a written proposal. Park Decl. ¶ 6; Lee Decl. ¶ 3. Jong Han Kim explained to KT that Paul Hastings had to approve the retention of a new client, signaling the firm had not conducted a conflicts check and may not agree to represent KT. *See* Miller Decl. ¶ 4, Ex. E at 34. In contrast, in its proposal to KEXIM, Paul Hastings affirmatively stated it had no conflict of interest in representing KEXIM, and was ready and willing to begin work. Park Decl. ¶ 8, Ex. B at 13.

The court in *Kang* chided Paul Hastings for not checking conflicts. Miller Decl. ¶ 6, Ex. F at 280:22-281:9. Based only on a one-hour meeting between Paul Hastings and KT, the court in *Kang* disqualified Paul Hastings under Rule 1.18. *Id.* at 281:22-24. Apparently, Paul Hastings similarly did not check conflicts here, which prevented a timely screen. Paul Hastings also met with KEXIM for over an hour to discuss this case. Park Decl. ¶ 6. As described above, it did much more: it requested and received additional documents from KEXIM; and it prepared a lengthy and detailed proposal to KEXIM detailing its qualifications, personnel, fees, and proposed legal strategy.

It is remarkable that even <u>after</u> having been disqualified in *Kang*, Paul Hastings attempts to betray another prospective client by seeking to represent ASI and Ms. Liang here, perhaps hoping this Court will be more tolerant of ethical lapses. However, the disqualification orders in *Kang* and *Skybell* confirm California federal and state courts agree: Rule 1.18 prevents a law firm from

- 20 -

KEXIM'S MOTION TO DISQUALIFY PAUL HASTINGS AND FOR
AN ORDER TO SHOW CAUSE REGARDING GORDON REES

1  receiving confidential information from a prospective client and then switching

2  sides.

3  **C.**   **The Court Should Issue an Order to Show Cause Why Gordon**

4  **Rees Should Not Be Disqualified**

5  Paul Hastings has assisted Gordon Rees in this litigation for at least two

6  weeks, during most of which Paul Hastings had not established an ethical screen.

7  Not only did this expose KEXIM's confidential information to lawyers at Paul

8  Hastings, it may have also exposed the information to lawyers at Gordon Rees.

9  In its meet and confer letters, KEXIM requested Gordon Rees affirm it had

10  not received confidential information from Paul Hastings, and Gordon Rees

11  immediately destroy all documents and communications exchanged with Paul

12  Hastings.  *See* Miller Decl. ¶ 7, Ex. G at 46-48.  Christopher Queally alleges,

13  without corroboration, Gordon Rees has not received KEXIM's confidential

14  information from Paul Hastings.  Miller Decl. ¶ 12, Ex. M at 63.  This is

15  insufficient given the importance of protecting KEXIM's confidences and the risk

16  they have been exposed.  Gordon Rees also has not confirmed whether it has

17  destroyed documents and communications the firm exchanged with Paul Hastings.

18  To ensure Gordon Rees has not received KEXIM's confidential information

19  from Paul Hastings, KEXIM therefore requests the Court issue an order to show

20  cause why Gordon Rees should not be disqualified.  The order should require the

21  lawyers at Gordon Rees working on this case to confirm, in writing and under oath,

22  they have not received KEXIM's confidential information from Paul Hastings.

23  This is the only way to ensure KEXIM's confidences are protected.

24  **IV.**   **CONCLUSION**

25  For the foregoing reasons, the Court should disqualify Paul Hastings from

26  representing ASI and Ms. Liang in any capacity in this litigation.  Paul Hastings

27  may not obtain confidential information from KEXIM and then represent adverse

28  parties in the same litigation.  The Supreme Court codified Rule 1.18 to make that

clear.  Because Paul Hastings risked exposing KEXIM's confidential information to
Gordon Rees, the Court should also issue an order to show cause why Gordon Rees
should not be disqualified.


Dated:  December 10, 2018                    WHITE & CASE LLP


                                            By:   /s/  Bryan A. Merryman
                                                  Bryan A. Merryman

                                            Attorneys for Plaintiff
                                            The Export-Import Bank of Korea

- 22 -